ACCEPTED
03-14-00706-CV
4407712
THIRD COURT OF APPEALS
AUSTIN, TEXAS
3/6/2015 4:11:28 PM
JEFFREY D. KYLE
CLERK

# NO. 03-14-00706-CV

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
3/6/2015 4:11:28 PM
JEFFREY D. KYLE
Clerk

ENTERGY TEXAS, INC.,

**Appellant,**

**v.**

PUBLIC UTILITY COMMISSION OF TEXAS, *ET AL.*,

**Appellees.**

**BRIEF OF APPELLEE**

Filed by: Public Utility Commission of Texas

| | |
|---|---|
| KEN PAXTON<br>Attorney General of Texas | ELIZABETH R. B. STERLING<br>Assistant Attorney General<br>State Bar No. 19171100<br>Elizabeth.Sterling@texasattorneyg<br>eneral.gov |
| CHARLES E. ROY<br>First Assistant Attorney General | |
| JAMES E. DAVIS<br>Deputy Attorney General for<br>Civil Litigation | MEGAN M. NEAL<br>Assistant Attorney General<br>State Bar No. 24043797 |
| JON NIERMANN<br>Chief, Environmental Protection<br>Division | Environmental Protection<br>Division<br>P.O. Box 12548, MC-066<br>Austin, Texas 78711-2548<br>512.463.2012<br>512.457.4616 (fax) |

March 6, 2015

**Oral Argument Requested**

# Identity of Parties and Counsel

| Party | Counsel |
|---|---|
| Entergy Texas, Inc., Plaintiff in the district court, Appellant and Appellee before this Court | Marnie A. McCormick<br>John F. Williams<br>Duggins Wren Mann & Romero, LLP<br>P. O. Box 1149<br>Austin, Texas 78767-1149<br>512.744.9300<br>512.744.9399 (fax)<br>mmccormick@dwmrlaw.com<br>jwilliams@dwmrlaw.com<br>(in district court, also Patrick J. Pearsall) |
| Public Utility Commission of Texas, Defendant in the district court, Appellee before this Court | Ken Paxton<br>Attorney General of Texas<br>(in district court, Greg Abbott)<br><br>Charles E. Roy<br>First Assistant Attorney General<br>(in district court, Daniel Hodge)<br><br>James E. Davis<br>Deputy Attorney General for Civil Litigation<br>(in district court, John B. Scott)<br><br>Jon Niermann<br>Chief, Environmental Protection Division |

| | Assistant Attorneys General: Elizabeth R. B. Sterling Elizabeth.Sterling@texasattorneygeneral.gov Megan Neal Megan.Neal@texasattorneygeneral.gov Environmental Protection Division Office of the Attorney General P.O. Box 12548, MC-066 Austin, Texas 78711-2548 512.463.2012 512.457.4616 (fax) |
|---|---|
| Office of Public Utility Counsel, Intervenor in the district court and Appellee before this Court | Ross Wyatt Henderson Assistant Public Counsel Office of Public Utility Counsel P.O. Box 12397 1701 N. Congress Avenue, Ste 9-180 Austin, Texas 78711-2397 512.936.7500 512.936.7520 (fax) Ross.Henderson@opuc.texas.gov (in district court, Sara J. Ferris) |

| | |
|---|---|
| State Agencies, Intervenors in the district court and Appellees before this Court | Katherine H. Farrell<br>Assistant Attorney General<br>Administrative Law Division<br>Energy Rates Section<br>Office of the Attorney General<br><br>P.O. Box 12548  MC 018-12<br>Austin, Texas 78711-2548<br>512.475.4237<br>512.320.0167 (fax)<br>katherine.farrell@texasattorneygeneral.gov<br>(in district court, Susan M. Kelley and Bryan L. Baker) |
| Texas Industrial Energy Consumers, Intervenors in the district court and Interested Parties before this Court | Rex VanMiddlesworth<br>Benjamin Hallmark<br>Thompson & Knight LLP<br>98 San Jacinto Blvd., Ste. 1900<br>Austin, Texas 78701<br>512.469.6100<br>512.469.6180 (fax)<br>rex.vanm@tklaw.com<br>benjamin.hallmark@tklaw.com<br>(in district court, Meghan Griffiths at Andrews Kurth, LLP) |

# Table of Contents

Identity of Parties and Counsel. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Table of Contents. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

Index of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . viii

Glossary.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xi

Statement of the Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xii

Statement Regarding Oral Argument. . . . . . . . . . . . . . . . . . . . . . . . . . xii

Issues Presented.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xii

Statement of Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A. The Commission decided Entergy's rate case, Docket 39896. . . . . . . . 1

    B. The Commission addressed the question of Entergy's rate-case
       expenses in this case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

       1. The ALJ considered ratepayers' arguments against some of
          Entergy's requested rate-case expenses. . . . . . . . . . . . . . . . . . . 8

          a. Depreciation expenses of Entergy's affiliated company. . . . . . 9

          b. Rate-case expenses to advocate for abandoning the two-
             bucket policy for including incentive compensation in rates.
             . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

          c. Excessive rate-case expenses. . . . . . . . . . . . . . . . . . . . . . . 13

          d. Adjustments to rate-case expenses. . . . . . . . . . . . . . . . . . . 15

       2. The Commission issued its Order in this case. . . . . . . . . . . . . . . 18

    C. Entergy appealed. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Summary of the Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

   I. Standard of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

      A. Substantial-evidence Standard. . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

      B. Arbitrary-and-capricious Standard . . . . . . . . . . . . . . . . . . . . . . . . . 23

  II. The Commission has discretion to decide that expenses Entergy incurred making a long-shot argument for overturning a well-established Commission policy were unreasonable expenses for ratepayers to reimburse. (Responds to Entergy Issue 1). . . . . . . . 24

      A. The Commission may allow the utility to recover only reasonable expenses. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

      B. The Commission applied the law to the evidence and determined that it was *un*reasonable for Entergy to recover rate-case expenses incurred to argue that the Commission should abandon its two-bucket policy concerning incentive compensation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

 III. The lack of a Commission rule about rate-case expenses for incentive-compensation arguments did not relieve the Commission of its statutory duty to allow the utility to recover only reasonable rate-case expenses. (Responds to Entergy Issue 2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

      A. Entergy's arguments that the Commission departed from earlier policy in this case are unavailing . . . . . . . . . . . . . . . . . . . 33

      B. The Commission was merely applying the statutes to the evidence and argument in this case, not promulgating a new rule. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

      C. Entergy's arguments that the Commission engaged in *ad hoc* rulemaking are unavailing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

1. This case is distinguishable from *Witcher* . . . . . . . . . . . . . . . . 35

2. Entergy improperly relies on the irrelevant thought processes of individual commissioners in the course of the case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

3. A rule was adopted when the Commission subsequently conducted formal rulemaking proceedings . . . . . . . . . . . . . . . 38

IV. The Commission's decision about the amount of rate-case expenses to exclude should be affirmed. (Responds to Entergy Issue 3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

A. Entergy—the party with the burden to prove rate-case expenses—failed to provide the information needed to show exactly how much of its rate-case expenses were incurred to make the unreasonable long-shot argument. . . . . . . . . . . . . . . . 39

B. Substantial evidence supports the Commission's decision about the amount of rate-case expenses attributable to the unreasonable argument in the rate case . . . . . . . . . . . . . . . . . . . . 43

C. The Commission's decision is reasonable—neither arbitrary and capricious nor an abuse of discretion .. . . . . . . . . . . . . . . . . . . . . 44

V. Entergy failed to meet its burden under Utilities Code § 36.058 to prove depreciation charged by its affiliate for rate-case expenses was reasonable and necessary and no higher than the costs charged to other affiliates. (Responds to Entergy Issue 4). . . . . . . . 47

A. The Utilities Code imposes additional requirements to show that amounts paid to affiliates are reasonable expenses . . . . . . . 47

B. Entergy's evidence is insufficient to meet its burden of proof. . . 48

1. Entergy failed to explain what depreciation expenses of Service Company were included . . . . . . . . . . . . . . . . . . . . . . . . 49

vi

2.  Entergy failed to provide evidence that including Service Company's depreciation expense made the expenses comparable. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  52

Prayer. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  53

Certificate of Compliance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  55

Certificate of Service. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  56

**APPENDICES**

Order. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  A

Proposal for Decision.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  B

Chart of PUC Dockets Addressing the Two-Bucket Incentive Compensation Policy Statutes. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  C

Statutes and Rules. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  D

Certified Copy of ETI Ex. 41 from Docket 39896[1]. . . . . . . . . . . . . . . . . .  E

---

[1] ETI Exhibit 41 from Docket 39896 includes an appendix of supporting information on a CD. That CD is too voluminous to be filed electronically. Therefore, the Commission has copied only those parts of the CD that it has cited, changed them to PFD format, and attached them to the body of Exhibit 41. The Commission stands ready to provide the Court or any other party a copy of the entire CD on request.

# Index of Authorities

**Cases**                                                                      **Pages**

*Anderson v. R.R. Comm'n,*
    963 S.W.2d 217 (Tex. App.—Austin 1998, pet. denied). . . . . . . . . . . .  22

*Cent. Power and Light Co. v. Pub. Util. Comm'n,*
    36 S.W.3d 547 (Tex. App.—Austin 2000, pet. denied). . . . . . . . . . . . .  48

*Cities of Abilene v. Pub. Util. Comm'n,*
    146 S.W.3d 742 (Tex. App.—Austin 2004, no pet.). . . . . . . . . . . . . . .  23

*City of El Paso v. Pub. Util. Comm'n,*
    883 S.W.2d 179 (Tex. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23

*City of El Paso v. Pub. Util. Comm'n,*
    916 S.W.2d 515 (Tex. App.—Austin 1995, writ dism'd). . . . . . . . . . . . .  16

*City of Frisco v. Tex. Water Rights Comm'n,*
    579 S.W.2d 66 (Tex. Civ. App.—Austin 1979, writ ref'd n.r.e.). . .  29, 37

*Indust. Utils. Serv., Inc. v. Tex. Natural Res. Conservation Comm'n,*
    947 S.W.2d 712 (Tex. App.—Austin 1997, writ denied). . . . . . . . . . . .  35

*McHaney v. Tex. Comm'n on Envtl. Quality,*
    No. 03-13-00280-CV, 2015 WL 869197 (Tex. App.—Austin February 27,
    2015, no pet. h.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  38

*Oncor Elec. Delivery Co. LLC v. Pub. Util. Comm'n,*
    406 S.W.3d 253 (Tex. App.—Austin 2013, no pet.). . . . . . . . . . . . . . . .  24

*Pedernales Elec. Coop., Inc. v. Pub. Util. Comm'n,*
    809 S.W.2d 332 (Tex. App.—Austin 1991, no writ). . . . . . . . . . . . . . . . 37

*Pub. Util. Comm'n v. Gulf States Utils. Co.,*
    809 S.W.2d 201 (Tex. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

# Index of Authorities (Cont'd)

**Cases (Cont'd)**                                              **Pages**

*State of Tex. Agencies and Insts. Of Higher Learning v. Pub. Util. Comm'n,*
   450 S.W.3d 615 (Tex. App.—Austin 2014, pet. filed). . . . . . . . . . .   31, 32

*Tex. Health Facilities Comm'n v. Charter Med.-Dallas, Inc.,*
   665 S.W.2d 446 (Tex. 1984).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   23

*Tex. State Bd. Of Pharmacy v. Witcher,*
   447 S.W.3d 520 Tex. App.—Austin 2014, pet. filed). . . . . . . . . . . . . . .   35


**Statutes**

Tex. Gov't Code
   § 2001.174. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   22
   § 2001.175(e). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   37

Tex. Util. Code
   § 15.001. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   22
   § 31.001. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   25
   § 33.023(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    8
   § 36.002. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    1
   § 36.051. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    2
   § 36.058. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   21, 47, 48, 49, 53
   § 36.058(c)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   52
   § 36.061(b)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3, 24
   § 36.062. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   36
   § 36.062(4). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   25
   § 39.451. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    1
   § 39.452(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    1


**Rules**

16 Tex. Admin. Code
   § 25.231(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    2

## Index of Authorities (Cont'd)

| **Rules (Cont'd)** | **Pages** |
|---|---|
| § 25.231(b)(2)(J) | 36 |
| § 25.245(b)(6) | 47 |

**Other**

39 Tex. Reg. 571 (2014), *adopted* 39 Tex. Reg. 6434 (2014)
(to be codified at 16 Tex. Admin. Code § 25.245). . . . . . . . . . . . . . . . . 38

# Glossary

ALJ                          Administrative Law Judge

APA                         Administrative Procedure Act. Tex. Gov't Code §§ 2001.001–.902

Commission or PUC   Public Utility Commission of Texas

Docket 39896         *Application of Entergy Texas for Authority to Change Rates, Reconcile Fuel Costs, and Obtain Deferred Accounting Treatment*, P.U.C. Docket 39896, the rate case that generated the rate-case expenses that Entergy sought to recover in this case

Entergy                Entergy Texas, Inc., the utility that asked the Commission for rate-case expenses in this case

ERCOT                Electric Reliability Council of Texas

OPUC                Office of Public Utility Counsel, intervenor at the Commission, intervenor-defendant at district court, appellee in this Court

Order                  The Commission's order on rehearing that is the subject of this lawsuit

PFD                   Proposal for Decision prepared by the ALJ in this case

Service Company     Entergy Services, Inc., an affiliate of Entergy that services the entire family of related companies

State Agencies        State Agencies of Texas that are customers of Entergy, an intervenor at the Commission, intervenor-defendant in the district court, and appellee before this Court

TIEC                 Texas Industrial Electric Consumers, intervenor at the Commission

## Statement of the Case

Entergy challenges the district court's judgment in an administrative appeal that affirmed the Public Utility Commission's order. The Commission set the rate-case expenses that Entergy is entitled to recover from ratepayers for reasonable expenses incurred in a prior rate case.

## Statement Regarding Oral Argument

Oral argument would be helpful to allow the Court to ask any questions it may have about the ratemaking or rate-case-expense cases.

## Issues Presented

1. Did the Commission have discretion to decide that expenses Entergy incurred to make an argument in the rate case that it had almost no chance to win were unreasonable expenses for ratepayers to reimburse?

2. Does the Commission's statutory duty "not to consider for ratemaking purposes … any other expenditure … the regulatory authority finds to be unreasonable, unnecessary, or not in the public interest" authorize it to exclude Entergy's unreasonable expenses even though the Commission had no rule about Entergy making this particular argument?

3. The administrative record shows that, in addition to obtaining expert testimony to support the unreasonable argument, Entergy included the argument in its rate-filing package, responded to discovery about the argument, and filed briefs about the argument. Entergy knew what it paid expert witnesses but did not track work by its staff and outside attorneys on an issue-by-issue basis. Was the Commission reasonable to decide that some of Entergy's expenses for staff and outside attorneys were for making the unreasonable argument? Was the Commission reasonable to estimate the amount of Entergy's total unreasonable expenses using a method supported by testimony in the record?

4. Did the Commission reasonably find that Entergy failed to meet its burden to show that depreciation expenses for unspecified capital assets of its affiliated Service Company should be included in recoverable rate-case expenses?

## Statement of Facts

Entergy Texas, Inc. (Entergy) appeals an order of the Public Utility Commission of Texas (Commission) setting the amount that the utility may recover from ratepayers for expenses that Entergy incurred in connection with its rate case, P.U.C. Docket 39896.

### A. The Commission decided Entergy's rate case, Docket 39896.

Entergy initiated a rate case at the Commission. Entergy, an electric utility that provides service to parts of southeast Texas, is situated outside the Electric Reliability Council of Texas (ERCOT) and remains a fully integrated utility—it generates electricity, transmits and distributes electricity, and sells electricity to retail customers in its service area. That business remains fully regulated by the Commission, which sets the rates Entergy can charge.[2] So, in 2011 Entergy filed a rate case with the

---

[2] As Entergy explained in its brief, it was initially included among utilities that were to transition to competition, but is currently subject to regulation under Chapter 36 of the Utilities Code. *See* Tex. Util. Code §§ 39.451, .452(a). Thus, Entergy's rates remain regulated by the Commission. *See* Tex. Util. Code § 36.002.

1

Commission, Docket 39896.[3]  Entergy asked to increase rates by over $100 million; the Commission's order in Docket 39896 allowed the utility to increase rates by approximately $27.7 million.[4]

The basic statutory formula the Commission uses to set rates is

$$(\text{rate of return} \times \text{invested capital}) + \text{reasonable and necessary expenses} = \text{revenue requirement.}^{[5]}$$

The Commission then designs rates to give the utility a reasonable opportunity to recover its revenue requirement.[6]  Although the utility's reasonable and necessary expenses included in rates are based on the utility's actual expenses over a twelve-month period called the "test year,"[7]

---

[3]    Tex. Pub. Util. Comm'n, *Application of Entergy Texas, Inc. for Authority to Change Rates, Reconcile Fuel Costs, and Obtain Deferred Accounting Treatment*, Docket 39896, (November 28, 2011)(Entergy's *Application of Entergy Texas, Inc. for Authority to Change Rates, Reconcile Fuel Costs* Application of Entergy Texas, Inc. for Authority to Change Rates, Reconcile Fuel Costs) *available at* http://interchange.puc.texas.gov/WebApp/Interchange/application/dbapps/filings/pgSearch_Results.asp?TXT_CNTR_NO=39896&TXT_ITEM_NO=2. (Subsequent citations to this docket will be listed as "Docket 39896.")

[4]    AR Item 32 at 3.  Item 32 is the proposal for decision, which will be cited as "AR, PFD" hereinafter.  The administrative record (AR) in this case (Docket 40295) was admitted into evidence as Joint Exhibits 1 and 2.  R.R. at 6:11–6:20.  It consists of two volumes of filings, which are referenced as "item"; one volume of exhibits; and one transcript that are all contained in one box. Citations to the Administrative Record will be in the form "AR, Item(s) ____," for filings, "AR, ____ Ex(s). ____," for exhibits, and "AR, Tr. at ____" for transcripts.  In the Order, findings of fact will be cited as "FF__" and conclusions of law will be cited as "CL __."

[5]    *See* Tex. Util. Code § 36.051.

[6]    *Id.*

[7]    *See* 16 Tex. Admin. Code § 25.231(a).

2

which is used as a predictor of expense that will occur in the future, one significant expense does not occur every year—the expense of bringing a rate case.  So that amount is usually separately calculated and recovered from ratepayers through amortization so that the utility will stop recovering once rate-case expenses are fully recovered. Utilities Code Section 36.061(b)(2) specifically authorizes the Commission to allow a utility to recover rate-case expenses.[8]

Originally, Entergy's request to recover rate-case expenses was part of the Docket 39896 rate case but the Commission granted the parties' request to sever it into a separate docket, P.U.C. Docket 40295, the contested case on appeal in this lawsuit.[9]  The Commission did not incorporate the entire record of Docket 39896 into the record of this case, but, at the hearing on this case, the administrative law judge took official notice of the Docket 39896 record.[10]

---

[8]  "(b) The regulatory authority may allow as a cost or expense ... (2) reasonable costs of participating in a proceeding under this title not to exceed the amount approved by the regulatory authority." Tex. Util. Code § 36.061(b)(2).

[9]  Docket 39896, (April 4, 2012) (SOAH Order No. 13: Granting Unopposed Motion to Sever Rate Case Expense Issues) *available at* http://interchange.puc.state.tx.us/WebApp/Interchange/Documents/39896_591_7227 42.PDF.

[10]  AR, Tr. at 16.

One issue in the Docket 39896 rate case—whether incentive compensation for financially based goals should be recovered through rates as a reasonable and necessary expense—is relevant to the amount of rate-case expenses awarded in this case. An amount for payroll costs is usually included among the utility's reasonable and necessary expenses. Although some utilities had included incentive compensation for top executives before, in AEP Texas Central Company's rate case filed in 2003 (Docket 28840),[11] for the first time, a utility asked to include incentive compensation as part of the payroll costs for all its employees. Most of the utility's incentives in that case were paid according to two sets of performance measures, financial and operational. In that case the Commission found:

> 169. The financial measures are of more immediate benefit to shareholders, and the operating measures are of more immediate benefit to ratepayers.

---

[11] Tex. Pub. Util. Comm'n, *Application of AEP Texas Central Company for Authority to Change Rates*, Docket 28840 *available at* http://interchange.puc.texas.gov/WebApp/Interchange/application/dbapps/filings/pgControl.asp?TXT_UTILITY_TYPE=A&TXT_CNTRL_NO=28840&TXT_ITEM_MATCH=1&TXT_ITEM_NO=&TXT_N_UTILITY=&TXT_N_FILE_PARTY=&TXT_DOC_TYPE=ALL&TXT_D_FROM=&TXT_D_TO=&TXT_NEW=true (Subsequent citations to this PUC Docket will be listed as "Docket 28840.")

170.  Incentives to achieve operational measures are necessary and reasonable to provide T&D utility services, but those to achieve financial measures are not.[12]

Thus, the Commission held that AEP proved that incentive compensation should be included in rates only for operational measures.[13]  In its brief to this Court, Entergy refers to this as two buckets of incentive compensation.[14]

Evidently, using incentive compensation to pay all employees had become fashionable, because the Commission was presented with similar requests by other utilities in subsequent rate cases.  The Commission consistently maintained the distinction between operational-goal and financial-goal buckets for incentive compensation.  Incentive compensation that belongs in the operational-goal bucket is recoverable, but incentive compensation that belongs in the financial-goal bucket is not included as a reasonable and necessary expense in rates because it is of more immediate benefit to shareholders.  Because different utilities can structure incentive compensation differently, there is always a fact question about whether a

---

[12]  Docket 28840(August 15, 2005)(PUC's Final Order) *available at* http://interchange.puc.state.tx.us/WebApp/Interchange/Documents/28840_878_487259.PDF.

[13]  Docket 28840 (August 15, 2005)(PUC's Final Order) CL 45 *available at* http://interchange.puc.state.tx.us/WebApp/Interchange/Documents/28840_878_487260.PDF.

[14]  Entergy Appellant's Br. at 14.

particular type incentive compensation goes in the operational-goal bucket or the financial-goal bucket. But the basic policy that only incentive compensation to meet operational goals can be included in rates remains.

In Docket 39896, Entergy asked the Commission to abandon the distinction between buckets and allow not only the incentive compensation in the operational-goal bucket, but also any incentive compensation in the financial-goal bucket. Entergy's rate-filing package included testimony by two different witnesses supporting that argument.[15] The issue was hotly contested; Entergy responded to discovery concerning that argument, and it filed five separate briefs at the Commission supporting that argument.[16]

---

[15]   *See* Entergy Appellant's Br. at 29 (discussing testimony of Mr. Gardner and Dr. Hartzell about the issue).

[16]   Docket 39896 (December 20, 2011)(TIEC's RFIs to Entergy Texas, Inc.) *available at* http://interchange.puc.state.tx.us/WebApp/Interchange/Documents/39896_46_713737.PDF; (January 3, 2012) (Cities' 7th RFI)) *available at* http://interchange.puc.state.tx.us/WebApp/Interchange/Documents/39896_62_714652.PDF; (January 13, 2012)(Cities' 10th RFI) *available at* http://interchange.puc.state.tx.us/WebApp/Interchange/Documents/39896_141_715598.PDF; (January 17, 2012)(Cities' 12th RFI to Entergy Texas, Inc.) *available at* http://interchange.puc.state.tx.us/WebApp/Interchange/Documents/39896_150_715744.PDF; (February 1, 2012) (Cities' 18th RFI to Entergy Texas, Inc.) *available at* http://interchange.puc.state.tx.us/WebApp/Interchange/Documents/39896_266_717069.PDF; (February 2, 2012) (Commission Staff's 10th RFI to Entergy Texas, Inc. Question Nos. 10-1 Through 10-8) *available at* http://interchange.puc.state.tx.us/WebApp/Interchange/Documents/39896_280_717145.PDF; (February 9, 2012) (OPUC's 10th RFI to Entergy Texas, Inc.) *available at* http://interchange.puc.state.tx.us/WebApp/Interchange/Documents/39896_322_717721.PDF; (February 21, 2012 (Texas Energy Consumers' 9th RFI)*available at* http://interchange.puc.state.tx.us/WebApp/Interchange/Documents/39896_373_718754.PDF; (March 5, 2012)(Cities' 23rd RFI)*available at* http://interchange.puc.state.tx.us/WebApp/Interchange/Documents/39896_415_7199

All the other parties opposed eliminating the distinction between the two buckets.[17]

The Commission did not agree with Entergy's argument to eliminate the two buckets but did find that some of the types of incentive compensation that other parties claimed were for financial goals really fit in the operational-goal bucket. The Commission stated in Finding of Fact 129 that "[i]ncentive compensation that is based on financial measures is of more immediate and predominant benefit to shareholders, whereas incentive compensation based on operational measures is of more immediate and predominant benefit to ratepayers."[18] In rate-case Docket 39896, the Commission did not allow Entergy to include $6,196,037 (as

42.PDF; (April 16, 2012) (State's 11th RFI to Entergy Texas, Inc.) *available at* http://interchange.puc.state.tx.us/WebApp/Interchange/Documents/39896_655_723 481.PDF; Docket 39896, (May 18, 2012) (Entergy's Initial Brief) *available at* http://interchange.puc.state.tx.us/WebApp/Interchange/application/dbapps/filings/pg Search_Results.asp?TXT_CNTR_NO=39896&TXT_ITEM_NO=719; (May 30, 2012)(Entergy's Reply Brief) *available at* http://interchange.puc.state.tx.us/WebApp/Interchange/application/dbapps/filings/pg Search_Results.asp?TXT_CNTR_NO=39896&TXT_ITEM_NO=754; (July 23, 2012)(Entergy's Exceptions to Proposal for Decision) *available at* http://interchange.puc.state.tx.us/WebApp/Interchange/Documents/39896_775_7318 38.PDF; (October 4, 2012)(Entergy's Motion for Rehearing)*available at* http://interchange.puc.state.tx.us/WebApp/Interchange/Documents/39896_816_738 263.PDF; (November 21, 2012)(Entergy's 2nd Motion for Rehearing) *available at* http://interchange.puc.state.tx.us/WebApp/Interchange/Documents/39896_828_742 851.PDF.

[17]   AR, PFD at 22.

[18]   AR, Item 55 (Order) at FF 129.

well as the FICA taxes Entergy would have paid on the payroll) in rates "because it was related to financial measures that are not reasonable and necessary for the provision of electric service."[19]  Entergy did not appeal the Commission's order in rate-case Docket 39896 on that issue.

## B.    The Commission addressed the question of Entergy's rate-case expenses in this case.

After it was severed from the rate case, the Commission sent this rate-case-expense proceeding to the State Office of Administrative Hearings.  In addition to Entergy and the Cities[20] that were seeking to recover rate-case expenses, parties included Commission Staff; the Office of Public Utility Counsel, which, by statute, represents residential and small commercial utility customers; Texas Industrial Energy Consumers; and State Agencies.

### 1. The ALJ considered ratepayers' arguments against some of Entergy's requested rate-case expenses.

Each of the ratepayer groups other than the Cities raised challenges to some of the rate-case expenses requested by Entergy and the Cities. Among those challenges, State Agencies claimed that Entergy was not entitled to recover for the depreciation of assets recorded by its affiliate, Entergy Services, Inc. (Service Company).  OPUC claimed that Entergy

---

[19]    *Id*. at FF 133.

[20]    Generally, cities that participate in rate cases at the Commission can require the utility to reimburse their costs.  *See* Tex. Util. Code § 33.023(b).

8

should not recover the expenses it incurred in the rate case arguing that the Commission should abandon the two-bucket approach to incentive compensation.

### a. Depreciation expenses of Entergy's affiliated company

State Agencies argued that the Commission should deny Entergy's request to include depreciation of assets owned by Entergy's affiliated Service Company. Entergy contended that the costs at issue were "a loader to [Entergy] labor costs covering depreciation on office expenses and capital."[21] Entergy conceded that such costs would typically be embedded in a vendor's labor costs billed to the Company.[22]

The ALJ recommended that Entergy not be allowed to recover the depreciation expenses. He not only stated that Entergy had not cited to any precedent which would justify the recovery of these apparently unusual rate- case expenses, but also found that Entergy failed to prove the reasonableness of the expenses under the more stringent standards that are applicable to affiliate expenses.[23]

---

[21]   AR, Item 25 at 12.

[22]   *Id.*

[23]   *Id.*

### b. Rate-case expenses to advocate for abandoning the two-bucket policy for including incentive compensation in rates.

Commission Staff, State Agencies, and OPUC argued that Entergy should not recover any rate-case expenses it incurred in attempting to eliminate the distinction between operational-goal and financial-goal buckets of incentive compensation. Commission Staff argued that by challenging "overwhelming Commission precedent," Entergy did not act reasonably.[24] Commission Staff contended that the Commission has such an unequivocal history of denying recovery for financially based incentive-compensation payments that "[Entergy] should have known that litigating a position opposed to [it] was not a reasonable use of resources."[25] State Agencies pointed out that Docket 39896 was merely the latest of three recent cases in which Entergy sought, but failed to obtain, authority to charge ratepayers for its financially based incentive costs (the others being Dockets 34800 and 37744).[26]

The ALJ, who had also been an ALJ in the Docket 39896 rate case, agreed with Commission Staff, State Agencies, and OPUC. He noted that

---

[24]  AR, Item 30 at 5.

[25]  AR, Item 24 at 8.

[26]  AR, Item 23 at 7.

throughout the rate case, Entergy took an aggressive position and made a long-shot argument seeking to eliminate the two-bucket approach to including incentive compensation in rates.[27]

The ALJ opined that Entergy's citation to the cases over the years, where other utilities requested recovery of financially based incentive compensation, hurt Entergy's cause more than it helped because all of the requests were unanimously denied by the Commission. The ALJ thought those cases disproved Entergy's claim that the two-bucket approach was undergoing continuing clarification.[28]

The ALJ also found that Entergy overstated and distorted the facts when it suggested that commissioners have expressed some concern with the Commission precedent.[29] The ALJ noted that the statements Entergy relied upon all came from a single commissioner, not multiple commissioners.[30] Moreover, the comments that Entergy put in evidence show that the commissioner considered the Commission's two-bucket precedent binding;

---

[27] AR, PFD at 23.

[28] *Id.*

[29] *Id.*

[30] *Id.* at 23–24.

11

he thought that any change should be accomplished by rulemaking, not an *ad hoc* change in a particular rate case.[31]

The ALJ also found Entergy's reliance on the recent order at the State Office of Administrative Hearings in a rate case for SWEPCO to be misplaced. In the SWEPCO case, the ALJs stated that the utility was not *legally precluded* from seeking recovery for its financially based incentive compensation. The ALJ in this case stated: "It is one thing to acknowledge that a utility has a legal right to pursue a long-shot theory. It is another thing entirely, however, to hold that the ratepayers must pay the costs of the utility's pursuit of that long-shot."[32]

In this case, the Commission did not decide that a utility could never argue in a contested case that the Commission should change its policy.[33] But the Commission did decide that when Entergy argued that the agency should change such a well-established policy, the argument was such a long

---

[31]  *Id*. at 24.

[32]  *Id*.

[33]  AR, PFD at 24

shot—so unlikely to persuade—that it was *un*reasonable for ratepayers to bear the expense.[34]

### c. Excessive rate-case expenses

Several parties also claimed that Entergy's rate-case expenses were generally too high and that rate-case expenses were high in relationship to the amount by which Entergy's rates were raised. Ratepayers also complained that Entergy had filed three rate cases in the last four years. Ratepayers were then required to pay rate-case expenses that Entergy incurred in each of those cases.[35]

State Agencies expressed concern that, as a general matter, expenses from rate cases before the Commission appear to be "getting out of hand."[36] Commission Staff "firmly agree[d]" with that concern.[37] State Agencies worried that utilities have no incentive to minimize the number of rate-case proceedings or the efficiency of rate-case presentation because they assume their costs will simply be passed on to ratepayers.[38] State Agencies urged

---

[34] AR, Order at FF 18f; AR, PFD at 24 ("Simply put, the ALJ concludes that [Entergy] did not act reasonably when it incurred expenses litigating for recovery of its financially-based incentive costs in the face of clear and consistent precedent to the contrary on the issue.")

[35] AR, PFD at 28.

[36] AR, Item 23 at 1-2.

[37] AR, Item 30 at 13.

[38] AR, Item 23 at 1-2.

the Commission to allocate rate-case expenses so that the utility was incentivized to more productively and efficiently use its time in rate cases.[39] OPUC agreed that the standard for evaluating the amount of rate-case expenses to recover from ratepayers ought to give a utility pause before deciding to pursue overly aggressive or novel arguments.[40] Similarly, Commission Staff and OPUC were concerned about the frequency of Entergy rate cases over recent years. Docket 39896 was the third Entergy rate case in four years. Each case resulted in a rate increase and an obligation for the ratepayers to pay Entergy's rate-case expenses.[41]

Staff and OPUC also expressed concern about the overall size of the rate-case expenses in this case in relation to the outcome of the underlying rate case. Total rate case expenses ($8.8 million) equal roughly one-third of the total approved rate increase in Docket 39896 ($27.7 million).[42] Commission Staff, State Agencies, and OPUC all expressed the concern that Entergy was unreasonable because it did not provide good stewardship in incurring rate-case expenses.[43]

---

[39]  *Id.* at 5.

[40]  AR, Item 22 at 8.

[41]  AR, Item 24 at 3; AR, Item 22 at 2-3, 7-8.

[42]  AR, Item 24 at 4; AR, Item 22 at 7.

[43]  *See, e.g.*, AR Item 30 at 13.

**d. Adjustments to rate-case expenses**

The ratepayer parties suggested three ways to adjust Entergy's rate-case-expense request to account for problems with Entergy's request:

- *The 50/50 approach.* State Agencies' primary recommendation was to charge ratepayers for only 50% of total rate case-expenses, arguing that shareholders, who reap benefits from a rate increase, ought to also share in the cost of obtaining that rate increase.[44]

- *The Results-Obtained Approach.* Alternatively, State Agencies argued that Entergy should recover only 26.4% of its rate-case expenses—the ratio between the increase in rates that the Commission authorized in Docket 39896 ($27.7 million) and the rate increase Entergy asked for in that case ($104.8 million). OPUC also advocated that approach.[45]

- *The Issue-Specific Reduction Approach.* Alternatively, OPUC and Commission Staff advocated reducing the amount Entergy requested in rate-case expenses by the ratio between the amounts Entergy sought in rates for unreasonable, overly aggressive issues and the total rate increase sought by Entergy. They wanted to include both financially

---

[44] AR, Item 23 at 3.

[45] AR, Item 22 at 11.

based incentive payments of $6.5 million, and transmission-equalization payments of $9 million as the numerator of the ratio.

The ALJ agreed with the general concerns raised by Commission Staff, State Agencies, and OPUC; he believed that a substantial cut to Entergy's rate-case expenses was warranted, but only considered the issue-specific reduction appropriate.[46]

The ALJ recognized that Section 36.061(b) of the Utilities Code gives the Commission discretion. He also recognized a number of factors—such as the time and labor required; the nature of the case; the size of the interest at stake; and the benefits to the client—that have been deemed relevant to determining the reasonableness of rate-case expenses. *See City of El Paso v. Pub. Util. Comm'n*, 916 S.W.2d 515, 522 (Tex. App.—Austin 1995, writ dism'd). The ALJ also noted that the parties agreed that Rule 1.04(b) of the Texas Disciplinary Rules of Professional Conduct provides factors that can be considered when determining reasonableness of rate case expenses.[47]

The ALJ rejected the 50/50 approach on the basis that it is contrary to Commission precedent. He also rejected the results-obtained approach although he did not find it contrary to Commission precedent. He

---

[46] AR, PFD at 30–32.

[47] AR, ETI Ex. 8 at 18-19.

considered it a punitive and hindsight-driven approach to cost recovery, rather than basing cost recovery on whether a utility acted reasonably at the time it incurred such costs.[48]

The ALJ found the issue-specific approach entirely consistent with Commission precedent because the disallowance is a result of specific, unreasonable actions by Entergy.[49]

The ALJ found that Entergy bore the burden of proving its reasonable expenses, and that burden necessarily requires that it separate out any unreasonable expenses. Having failed to do so with respect to financially based incentives and transmission equalization payments, he found that it was reasonable for the Commission to use the issue-specific reduction approach to calculate those expenses.[50]

The ALJ proposed that most of the rate-case expenses requested by Entergy—$7,344,113—be found reasonable and necessary and allowed as a cost or expense by Entergy. That proposal reduced Entergy's requested amount of rate-case expenses for several small specific charges, for $207,683 in depreciation of office equipment owned by Entergy's affiliated

---

[48]   AR, PFD at 31–32.

[49]   *Id*. at 32.

[50]   AR, Item 24 at 15.

company, and for $1,275,738 attributable to "unreasonable and overly aggressive arguments pursued by [Entergy] in Docket 39896 related to both financially-based incentive compensation and transmission equalization payments."[51] The ALJ also proposed a fact finding:

17. The amount of rate case expenses sought by ETI ($8.8 million) is high, both in absolute terms, and in relation to the rate increase ultimately obtained by ETI in Docket 39896 ($27.7 million).[52]

## 2. The Commission issued its Order in this case.

The Commission considered the ALJ's proposal for decision and "adopt[ed] in part and revers[ed] in part."[53] The Commission adopted Fact Finding 17 about Entergy's rate-case expenses being excessive. And the Commission agreed with the proposal to exclude the Service Company's depreciation expenses. But the Commission allowed Entergy to recover expenses incurred for arguments related to transmission-equalization payments, contrary to the ALJ's proposal. The Commission did not allow Entergy to recoup from ratepayers those expenses incurred to argue that the Commission should abandon its two-bucket policy concerning incentive compensation included in rates. The Commission stated: "Specifically, the

---

[51] AR, PFD FF 18f.

[52] AR, PFD FF 17.

[53] AR, Order at 1.

18

Commission agrees with the ALJ that reductions should be made to Entergy's recoverable rate-case expenses for Entergy attempting to recover financially-based incentive compensation in base rates."[54]

The Commission further stated that it "has repeatedly ruled that a utility cannot recover the cost of financially-based incentive compensation because financial measures are of more immediate benefit to shareholders and financial measures are not necessary or reasonable to provide utility services."[55] The Commission concluded "that it should follow its well-established policy here."[56] The Commission cited four cases concerning three different utilities from 2005 through 2011 where the agency refused to allow recovery of incentive compensation based on financial goals.[57]

The Commission also adopted the ALJ's the use of the issue-specific reduction approach to determine how to calculate an appropriate reduction in rate-case expenses because the utility took a long-shot position trying to

---

[54] AR, Order at 2.

[55] *Id.*

[56] *Id.*

[57] *Id.*

convince the Commission to abandon its well established two-bucket policy about including incentive compensation in rates.[58]

## C.    Entergy appealed.

Entergy filed this suit for judicial review of the Commission's order to challenge the amount of rate-case expenses that the Commission ordered. OPUC, TIEC, and State Agencies intervened in the case.  After reviewing the briefs of the parties and considering their arguments at the hearing on the merits, the district court, the Honorable Amy Clark Meachum presiding, affirmed the Commission's order.[59]  Entergy appealed to this Court.

## Summary of the Argument

In this rate-case-expense proceeding, the Commission reasonably decided that one of Entergy's arguments in its related rate case was so unlikely to prevail that any cost to make the argument was unreasonable. Thus, the associated expenses were not included in rate-case expenses that the utility could recover from ratepayers.  This decision is reasonable because the Utilities Code allows only reasonable rate-case expenses to be recovered, includes a policy of protecting the interests of both the utility and its customers, and prohibits the Commission from including unreasonable

---

[58]   *Id.*

[59]   C.R. 232-34.

expenses in rates. Moreover, those statutes give the Commission enough authority to find the expenses unreasonable without first adopting a rule. And the fact that the Commission subsequently adopted a comprehensive rule about rate-case expenses shows even more clearly that this contested-case decision was not improper rulemaking.

Entergy's expenses to make the argument were not limited to the fees of expert witnesses on the issue because the issue was included in the utility's rate-filing package, the utility responded to numerous discovery requests on the issue, and the utility filed five briefs addressing the issue at the Commission. All of that necessarily involved work by Entergy's staff and outside attorneys. But Entergy, the party with the burden to prove the expenses, did not track its expenses for staff and outside attorneys on an issue-by-issue basis. Thus, the Commission reasonably used a method proposed by expert testimony in the case to estimate the amount of rate-case expenses incurred to make the unreasonable long-shot argument.

The Commission properly excluded depreciation expenses of Service Company, an affiliate of Entergy, from rate-case expenses because Entergy failed to show that they met the requirements in Utilities Code 36.058. Entergy did not clearly explain what was being depreciated and why it was a legitimate rate-case expense nor did Entergy show that the charges were not

higher than the charges to other affiliates or third parties for the same type of services.

## Argument

## I. Standard of Review

As in any lawsuit, the plaintiff has the burden of proof in a suit for judicial review of an agency's order in a contested case. For an administrative appeal of the Commission's order in a contested case, that means that the plaintiff must show reversible error in the Commission's order; the substantial-evidence rule described in Section 2001.174 of the Administrative Procedure Act controls.[60] That rule is very deferential to the agency, but the deference is described differently depending on the type of error alleged. Complaints in this case invoke the substantial-evidence standard, and the arbitrary-and-capricious standard.

### A.   Substantial-evidence Standard

When reviewing an agency's fact finding, a court uses the deferential substantial-evidence standard. It prohibits a court from substituting its judgment for the agency's as to the weight of evidence.[61] "A court that is reviewing purely factual administrative findings … may determine only

---

[60]   *See Anderson v. R.R. Comm'n*, 963 S.W.2d 217, 219 (Tex. App.—Austin 1998, pet. denied); Tex. Util. Code § 15.001; Tex. Gov't Code § 2001.174.

[61]   *Pub. Util. Comm'n v. Gulf States Utils. Co.*, 809 S.W.2d 201, 211 (Tex. 1991).

22

whether substantial evidence supports those findings."[62] The true test is not whether the agency reached the correct conclusion, but whether some reasonable basis exists in the record for the agency's action.[63] "At its core, the substantial evidence rule is a reasonableness test or a rational basis test."[64]

## B.    Arbitrary-and-capricious Standard

The Texas Supreme Court has recognized the limits of the arbitrary-and-capricious standard of review when applied to agency decisions: "The arbitrary and capricious standard of review historically has been construed narrowly, and we do not think that the legislature intended it to be interpreted as a broad, all-encompassing standard for reviewing the rationale of agency actions."[65] Courts must uphold a Commission decision if "some reasonable basis exists in the record for the action taken by the agency."[66]

---

[62]    *Cities of Abilene v. Pub. Util. Comm'n*, 146 S.W.3d 742, 748 (Tex. App.—Austin 2004, no pet.).

[63]    *Tex. Health Facilities Comm'n v. Charter Med.-Dallas, Inc.*, 665 S.W.2d 446, 452 (Tex. 1984).

[64]    *City of El Paso v. Pub. Util. Comm'n*, 883 S.W.2d 179, 185 (Tex. 1994).

[65]    *Charter Med.*, 665 S.W.2d at 454.

[66]    *City of El Paso*, 883 S.W.2d at 185.

**II.  The Commission has discretion to decide that expenses Entergy incurred making a long-shot argument for overturning a well-established Commission policy were unreasonable expenses for ratepayers to reimburse. (Responds to Entergy Issue 1)**

**A.  The Commission may allow the utility to recover only reasonable expenses.**

The Commission performed its statutory duty to determine whether rate-case expenses are reasonable, to balance interests of both the utility and its ratepayers when determining reasonableness, and to allow the utility to recover only reasonable rate-case expenses.

The Utilities Code gives the Commission discretion when deciding how much to award a utility in rate-case expenses. In a 2013 appeal of rate-case expenses for Oncor Electric Delivery Co., LLC, this Court recognized that "section 36.061(b)(2) gives the Commission the discretion to disallow improper expenses."[67]  And that statute only allows a utility to recover *reasonable* rate-case expenses.[68]  The express purpose of the section of the Public Utilities Code that applies to electric utilities is "to establish a comprehensive and adequate regulatory system for electric utilities to

---

[67]  *Oncor Elec. Delivery Co. LLC v. Pub. Util. Comm'n*, 406 S.W.3d 253, 264 (Tex. App.—Austin 2013, no pet.).

[68]  Tex. Util. Code § 36.061(b)(2) ("The regulatory authority may allow as a cost or expense … (2) *reasonable* costs of participating in a proceeding under this title not to exceed the amount approved by the regulatory authority." (emphasis added).).

assure rates, operations, and services that are just and reasonable to the consumers *and* to the electric utilities."[69] Thus, when regulating electric utilities, the Commission must weigh the interests of both the utilities and consumers. In addition, the Utilities Code prohibits the Commission from considering for ratemaking purposes, "any other expenditure … the regulatory authority finds to be unreasonable, unnecessary, or not in the public interest."[70]

Thus, the Commission may not simply allow a utility to recover expenses because the utility incurred them to bring a rate case. Instead, the Commission must determine whether the expenses are reasonable, and the Commission is prohibited from allowing the utility to recover expenses that the Commission finds *un*reasonable. And in deciding what is reasonable, the Commission must weigh the interests of both the utilities and its ratepayers. That is exactly what the Commission reasonably did in this case.

---

[69]   Tex. Util. Code § 31.001 (emphasis added).

[70]   Tex. Util. Code § 36.062(4).

**B.** **The Commission applied the law to the evidence and determined that it was *un*reasonable for Entergy to recover rate-case expenses incurred to argue that the Commission should abandon its two-bucket policy concerning incentive compensation.**

Although Entergy incurred expenses to bring the Docket 39896 rate case and claimed that they were all reasonable, various ratepayer groups challenged some of those expenses. Commission Staff, State Agencies, and OPUC all argued that Entergy was *un*reasonable to incur expenses to argue in the rate case that the Commission should abandon its two-bucket approach to incentive compensation.[71] They argued that it was so unlikely that Entergy could prevail on that argument that it was not reasonable for Entergy to have expended time and expenses to make the argument.[72] They argued that was *un*reasonable for ratepayers to bear the cost of Entergy making such a long-shot argument.

The ALJ who heard this rate-case-expense case noted that he had also heard the Entergy Docket 39896 rate case[73] when he called Entergy's rate-case argument to abandon the two-bucket approach not only a long shot, but also overly aggressive.[74] He may have been considering both the fervor

---

[71] AR, PFD at 22.

[72] *Id.* at 22–23.

[73] *Id.* at n.87.

[74] *Id.* at 23.

of the argument and the amount of time and energy devoted to making the

argument.  The record of Docket 39896 reveals

- that in its rate-filing package, the filing that initiated the rate case,

    Entergy included testimony of two witnesses arguing that the

    Commission should abandon the two-bucket approach, one an outside

    expert;[75]

- Entergy had to respond to nine different discovery requests about the

    argument from TIEC (industrial ratepayers), Cities, Commission Staff,

    OPUC (representing residential ratepayers), and State Agencies;[76] and

---

[75]    *See* Entergy Appellant's Br. at 29 (listing both Mr. Gardner and Dr. Hartzell as witnesses on the issue).

[76]    Docket 39896 (December 20, 2011)(TIEC's RFIs to Entergy Texas, Inc.) *available at* http://interchange.puc.state.tx.us/WebApp/Interchange/Documents/39896_46_713737.PDF; (January 3, 2012) (Cities' 7th RFI)) *available at* http://interchange.puc.state.tx.us/WebApp/Interchange/Documents/39896_62_714652.PDF; (January 13, 2012)(Cities' 10th RFI) *available at* http://interchange.puc.state.tx.us/WebApp/Interchange/Documents/39896_141_715598.PDF; (January 17, 2012)(Cities' 12th RFI to Entergy Texas, Inc.) *available at* http://interchange.puc.state.tx.us/WebApp/Interchange/Documents/39896_150_715744.PDF; (February 1, 2012) (Cities' 18th RFI to Entergy Texas, Inc.)  *available at* http://interchange.puc.state.tx.us/WebApp/Interchange/Documents/39896_266_717069.PDF; (February 2, 2012) (Commission Staff's 10th RFI to Entergy Texas, Inc. Question Nos. 10-1 Through 10-8) *available at* http://interchange.puc.state.tx.us/WebApp/Interchange/Documents/39896_280_717145.PDF; (February 9, 2012) (OPUC's 10th RFI to Entergy Texas, Inc.) *available at* http://interchange.puc.state.tx.us/WebApp/Interchange/Documents/39896_322_717721.PDF; (February 21, 2012 (Texas Energy Consumers' 9th RFI)*available at* http://interchange.puc.state.tx.us/WebApp/Interchange/Documents/39896_373_718754.PDF; (March 5, 2012)(Cities' 23rd RFI)*available at* http://interchange.puc.state.tx.us/WebApp/Interchange/Documents/39896_415_719942.PDF; (April 16, 2012) (State's 11th RFI to Entergy Texas, Inc.) *available at* http://interchange.puc.state.tx.us/WebApp/Interchange/Documents/39896_655_723

- Entergy included briefing arguing that the Commission should abandon its two-bucket approach in five different briefs filed with the Commission.[77]

The ALJ and the Commission justly used the term "long shot" to describe Entergy's argument that the Commission should abandon its two-bucket approach to including incentive compensation in rates. Since AEP Texas Central Company tried to recover incentive compensation for all its employees in 2004, the Commission has steadfastly maintained a two-bucket approach—allowing recovery of incentive compensation that fits within the operational-goal bucket and disallowing recovery of incentive compensation that fits within the financial-goal bucket.[78] Moreover, the statements from a Commission open meeting that an Entergy witness

---

481.PDF.

[77] Docket 39896, (May 18, 2012) (Entergy's Initial Brief) *available at* http://interchange.puc.state.tx.us/WebApp/Interchange/application/dbapps/filings/pgSearch_Results.asp?TXT_CNTR_NO=39896&TXT_ITEM_NO=719; (May 24, 2012)(Entergy's Reply Brief) *available at* http://interchange.puc.state.tx.us/WebApp/Interchange/application/dbapps/filings/pgSearch_Results.asp?TXT_CNTR_NO=39896&TXT_ITEM_NO=754; (July 23, 2012)(Entergy's Exceptions to Proposal for Decision) *available at* http://interchange.puc.state.tx.us/WebApp/Interchange/Documents/39896_775_731838.PDF; (October 4, 2012)(Entergy's Motion for Rehearing)*available at* http://interchange.puc.state.tx.us/WebApp/Interchange/Documents/39896_816_738263.PDF; (November 21, 2012)(Entergy's 2nd Motion for Rehearing) *available at* http://interchange.puc.state.tx.us/WebApp/Interchange/Documents/39896_828_742851.PDF.

[78] *See* Appendix C to this brief listing various Commission rate cases from Docket 28840 forward and the Commission's treatment of incentive compensation.

attached to his testimony do not support Entergy's position; they were 1) only the statements of a single commissioner[79] and 2) included a statement that the two-bucket policy was so firmly in place that any change would need to be done through a rulemaking proceeding.[80] Entergy had no reasonable basis to think it likely that the Commission would abandon the two-bucket approach to incentive compensation in Docket 39896. Thus, it was *un*reasonable for Entergy to have expended so much time and expense on the argument and *un*reasonable to require ratepayers to bear the expense.

Entergy tries to make the Commission's decision that Entergy's argument to abandon the two- bucket approach was such a long shot that ratepayers should not bear the expenses appear less reasonable by mischaracterizing the facts. But what Entergy did was to argue that the well-established policy of dividing incentive compensation into two buckets—one for operational goals and the other for financial goals—should

---

[79] Such statements are generally irrelevant. "It is immaterial what a commissioner may have said or thought in the process of arriving at his decision." *City of Frisco v. Tex. Water Rights Comm'n*, 579 S.W.2d 66, 72 (Tex. Civ. App.—Austin 1979, writ ref'd n.r.e.).

[80] AR, ETI Ex. 12, Ex. SFM-R-1, p. 8 of 9 (statements of Commissioner Anderson at the Commission's July 30, 2009 open meeting) ("But it seems to be a long and accepted precedent, and unless we were to open up a separate rulemaking or a project to change that, to put the—everybody on notice, I'm hesitant to do it in a particular case.").

be abandoned.[81]  It did not merely argue whether its incentive-compensation plans fit in the operational-goal bucket or the financial-goal bucket.

Although Entergy is correct that the question whether a particular form of incentive compensation belongs in the operational-goal or financial-goal bucket is a question of fact, that does not change the well-established policy that there are two buckets:  incentive compensation that belongs in the operational-goal bucket may be recovered in rates and incentive compensation that belongs in the financial-goal bucket may not.  But in its

---

[81]  In its initial brief in the rate-case-expense proceeding at the Commission, Entergy stated:

> The Company requests that it be allowed to recover its test year costs of incentive compensation. The Company recognizes that costs of incentive compensation tied to financial goals have been disallowed in several prior rate cases in Texas. The market prevalence of using financial goals as a part of incentive compensation programs has not been disputed. Rather, the Commission has previously denied recovery of such costs because of a lack of evidence showing sufficient customer benefits.  In this case, however, the Company has assembled evidence not previously considered by the Commission that shows the benefits to customers of using financial measures in incentive compensation programs. The evidence includes the testimonies of Company witness Gardner, Vice President of HR Programs for the Entergy Companies, and Dr. Jay C. Hartzell, who is Chair of the Finance Department, Professor of Finance, and the Allied Bancshares Centennial Fellow at the McCombs School of Business at the University of Texas at Austin. The new evidence also includes empirical studies that support the Company's position that customers benefit from incentive compensation programs that use financial measures and goals that encourage the financial health of the company.

Docket 39896 (May 18. 2012) (Entergy's Initial Br.) *available at* http://interchange.puc.texas.gov/WebApp/Interchange/application/dbapps/filings/pgSearch_Results.asp?TXT_CNTR_NO=39896&TXT_ITEM_NO=719 at 129–30.

brief to this Court, Entergy, after arguing the factual question about which bucket should hold a particular type of incentive compensation, pivots to the statement: "The findings that Commission policy was cemented long ago, and that it was unreasonable for ETI to seek recovery of financially-based incentives, simply cannot withstand scrutiny."[82] Entergy is wrong. The Commission can reasonably hold that its policy about two buckets for incentive compensation is so well-established that it was unreasonable to ask ratepayers to foot the bill for Entergy challenging the well established policy even while the Commission entertains fact questions about which bucket holds individual incentive compensation plans.

This Court has recently acknowledged both the Commission's long-standing policy and the fact question that applies to individual types of incentive compensation. In the Oncor rate case, this Court recognized both "Commission precedent disallowing compensation payments that are tied to financial-performance measures rather than those tied to strictly operational measures"[83] and that "the question of whether [a utility's]

---

[82] Entergy Appellant's Br. at 16.

[83] *State of Tex. Agencies and Insts. of Higher Learning v. Pub. Util. Comm'n*, 450 S.W.3d 615, 659-60 (Tex. App.—Austin 2014, pet. filed).

incentive-compensation payments were 'financial' rather than 'operational' in nature is one of fact."[84]

But the Commission is not saying that a utility cannot recover its expenses in connection with arguments about incentive compensation. Nor did the Commission say that the rate-case expenses were unreasonable merely because Entergy argued against agency precedent. It characterized Entergy's arguments as a long shot and overly aggressive. These are important qualifiers. The two-bucket precedent for including incentive compensation in rates was well established. Even Entergy in its first issue in its brief says that the Commission has "historically stated a policy of disallowing incentive compensation that is tied to "financial" as opposed to "operational" measures … ."[85] Thus, although Entergy does not use the phrase "well established," it accepts the premise. Entergy knew that the Commission had a well-established policy of allowing incentive compensation in rates only for operational goals, not for financial goals. Nonetheless, Entergy argued that the two-bucket policy should be abandoned. The utility should have known that was too much of a long shot to have any reasonable likelihood of prevailing. The Commission

---

[84] *Id*. at 660.

[85] Entergy Appellant's Br. at x.

reasonably refused to make ratepayers pay the utility to make such a long-shot argument.

**III.  The lack of a Commission rule about rate-case expenses for incentive-compensation arguments did not relieve the Commission of its statutory duty to allow the utility to recover only reasonable rate-case expenses.  (Responds to Entergy Issue 2)**

Neither Entergy's arguments that the Commission changed its policy about rate-case expenses in this case nor its arguments that the Commission could not decide this case without first adopting a rule stand up to scrutiny.

**A.  Entergy's arguments that the Commission departed from earlier policy in this case are unavailing.**

Entergy's argument that the Commission's decision to deny the utility's expenses to make an unreasonable argument is a change in policy are based on a mischaracterization of the Commission's decision.  Entergy's arguments rely on the Commission previously allowing utilities to argue about which incentive-compensation expenses belong in the operational-goal bucket.  But that is not the long-shot argument that Entergy made. Instead, Entergy argued that the Commission should abandon its two-bucket policy.  Entergy shows no examples of allowing rate-case expenses for arguments to change the two-bucket policy since it became well-established policy.

**B.** **The Commission was merely applying the statutes to the evidence and argument in this case, not promulgating a new rule.**

The Utilities Code by itself authorizes and requires the Commission to exclude unreasonable expenses from the rate-case expenses a utility may collect from ratepayers and put Entergy on notice that unreasonable expenses could not be recovered.

There was no need for the Commission to adopt a rule before deciding this case. The Commission cannot avoid its duty to apply the statutes just because it has not yet adopted a rule to cover every situation that may arise. The Commission could not dodge the issue and neglect its statutory duty by noting that it had no rule about how to treat rate-case expenses and certainly no rule about the very particularized question of how to treat rate-case expenses incurred to argue about including incentive compensation in rates. The Commission had to decide the issue based on statutes, the evidence, and the argument presented in this case.

Applying the statutes to the evidence and arguments in this case, the Commission recognized that a utility can make arguments in a rate case that are so unlikely to prevail that it is unreasonable for ratepayers to bear the burden of the expenses the utility incurred to make those arguments. This

is not a new policy of general application; it is merely an outcome from the statute.

This Court upheld that same outcome in a 1997 water utility case. The Court upheld denying any rate-case expenses to a utility that brought a rate case that it wanted to lose. "[T]he Commission could have determined that any expenses incurred in seeking a surcharge [the utility] did not want were unreasonable, unnecessary or not in the public interest and that the utility's customers should never have to pay them."[86]

## C. Entergy's arguments that the Commission engaged in *ad hoc* rulemaking are unavailing.

### 1. This case is distinguishable from *Witcher*.

Entergy's reliance on *Texas State Board of Pharmacy v. Witcher*,[87] is misplaced because the actions of the Commission are entirely different from the actions of the Texas State Board of Pharmacy. Unlike *Witcher*, the Commission had no unstated policy for all cases that it applied to determine whether Entergy should recover rate-case expenses. Instead, the Commission had both a statute and a rule that prohibited including

---

[86] *Indust. Utils. Serv., Inc. v. Tex. Natural Res. Conservation Comm'n*, 947 S.W.2d 712, 718 (Tex. App.—Austin 1997, writ denied).

[87] 447 S.W.3d 520 (Tex. App.—Austin 2014, pet. filed).

unreasonable expenses in rates.[88]  Once the Commission decided that the

expenses Entergy incurred to make the argument were unreasonable, the

published rule and statute prohibited the Commission from including those

expenses in rates.

The "rule" that the court found to be impermissible *ad hoc* rulemaking in

*Witcher* was an unpublished rule, was applied in contravention of the

agency's published rule as applied to the facts, and was announced in the

order as a policy of general application; in this case, the only rule is a

published rule prohibiting recovery of unreasonable expenses, it was

applied in harmony with the fact findings, and the Commission did not

announce any new policy of general application.

### 2. Entergy improperly relies on the irrelevant thought processes of individual commissioners in the course of the case.

To support its argument that the Commission should have adopted a

rule, Entergy improperly cites the comment of one of the commissioners

during the Commission's open meeting in this contested case.[89]  That

quoted language is not part of the administrative record in this case and

therefore not part of the record that the Court should consider.  In an

---

[88]  Tex. Util. Code § 36.062; 16 Tex. Admin. Code § 25.231(b)(2)(J).

[89]  Entergy Appellant's Br. at 18; 21–22.

36

administrative appeal, "[the] court shall conduct the review sitting without a jury and is confined to the agency record … ."[90]  And this Court has explained, "[t]he thought processes or motivations of an administrator are irrelevant in the judicial determination whether the agency order is reasonably sustained by appropriate findings and conclusions that have support in the evidence."[91]  The fact that the Commission's final order does not reach the same conclusion as the statement of Commissioner Nelson that Entergy quoted, shows that through the process of deliberation, she reached a different conclusion.  That demonstrates the inappropriateness of citing to thought processes of an administrator as evidence of what the Commission actually decided.

And just last week, this Court noted that a statement similar to Commisisoner Nelson's request for a rulemaking showed that the agency was *not* adopting a rule in its order.  In *McHaney v. Texas Commission on Environmental Quality*, this Court stated:  "The comment made by a TCEQ commissioner at a hearing that 'if there is need for clarity in our rules, I would encourage our staff to look at that and see *if we need to go through*

---

[90]  Tex. Gov't Code § 2001.175(e).

[91]  *Pedernales Elec. Coop., Inc. v. Pub. Util. Comm'n,* 809 S.W.2d 332, 342 (Tex. App.—Austin 1991, no writ) (quoting *City of Frisco v. Tex. Water Rights Comm'n,* 579 S.W.2d 66, 72 (Tex. Civ. App.—Austin 1979, writ ref'd n.r.e.)).

*the rule making* or provide some other guidance" (emphasis in original)

strongly implies that rulemaking is not occurring at that hearing.[92]

### 3. A rule was adopted when the Commission subsequently conducted formal rulemaking proceedings.

Although the Commission did not adopt a rule in this case, the

Commission *did* adopt a rate-case-expense rule through the formal

rulemaking process in 2014.[93]  That further indicates that the Commission

was not adopting a rule in this case.  The actual rulemaking, deciding a rule

of general application for all cases, was done in formal rulemaking.  In this

case the Commission merely decided the issues required to determine what

Entergy should receive in rate-case expenses.  The Commission utilized both

formal rulemaking and its authority to decide matters that arise in a single

contested case in the proper context.

Entergy's curious argument—that because it argues that the exceptions to

*ad hoc* rulemaking do not apply in this case, the Commission adopted a

rule—is illogical.  The logical question is whether the Commission actually

adopted a rule in this contested case.  It did not; it adopted a rule in a formal

---

[92]  *McHaney v. Texas Comm'n on Envtl. Quality*, No. 03-13-00280-CV, 2015 WL 869197 at *8 (Tex. App.—Austin Feb. 27, 2015, no. pet. h.).

[93]  39 Tex. Reg. 571 (2014), *adopted* 39 Tex. Reg. 6434 (2014) (to be codified at 16 Tex. Admin. Code § 25.245).

38

rulemaking. Here the Commission decided only the questions necessary to resolve this contested case.

## IV. The Commission's decision about the amount of rate-case expenses to exclude should be affirmed. (Responds to Entergy Issue 3)

### A. Entergy—the party with the burden to prove rate-case expenses—failed to provide the information needed to show exactly how much of its rate-case expenses were incurred to make the unreasonable long-shot argument.

Because Entergy did not track its expenses on an issue-by-issue basis, the Commission used a proxy to identify the unreasonable expenses Entergy incurred to make its overly aggressive, long-shot argument that the Commission should abandon the two-bucket approach to incentive compensation. Entergy complains that the Commission did not use its actual expenses, but, because Entergy did not keep track of its expenses on an issue-by-issue basis, Entergy fails to identify the actual expenses Entergy incurred in staff and outside counsel expenses to make the unreasonable argument. Therefore, based on the evidence in the case, the Commission used a proxy to determine the amount of issue-specific rate-case expenses that were attributable to the argument. The Commission applied a ratio to the total amount of rate-case expenses Entergy requested. The ratio compared disallowed financial-goal bucket incentive-compensation expenses Entergy requested but did not receive to the total increase in rates

39

that Entergy sought in the Docket 39896 rate case.  That resulted in a $522,244.66 decrease in requested rate-case expenses.  The Commission described that amount as  "the amount of rate-case expenses related to financially-based incentive compensation using the issue-specific reduction approach."[94]

Once the Commission decided that Entergy's financially based incentive-compensation arguments were unreasonable and overly aggressive, it needed to decide how much of the rate-case expenses were attributable to that argument.  The expenses to employ outside expert witnesses in Docket 39896 to support the unreasonable argument could be identified, but the Commission found that those were not the only expenses.  Entergy's rate-case expenses included the cost of its staff, the staff of its affiliate Service Company, and its outside counsel.  They decided to make the unreasonable argument, hired the experts, and included the arguments in the rate-filing package that initiated the rate case.  In addition, they had to respond to discovery on the issue.[95]  Finally, Entergy briefed the issue at the State

---

[94]    AR, Order at 3.

[95]    Tex. Pub. Util. Comm'n, *Application of Entergy Texas, Inc. for Authority to Change Rates, Reconcile Fuel Costs, and Obtain Deferred Accounting Treatment*, Docket 39896 (December 20, 2011)(TIEC's RFIs to Entergy Texas, Inc.) *available at* http://interchange.puc.state.tx.us/WebApp/Interchange/Documents/39896_46_713737.PDF; (January 3, 2012) (Cities' 7th RFI)) *available at* http://interchange.puc.state.tx.us/WebApp/Interchange/Documents/39896_62_714652.PDF; (January 13, 2012)(Cities' 10th RFI) *available at*

Office of Administrative Hearings and before the Commission.[96]  To

accomplish all this, some of the time of Entergy and Service Company

employees as well as the time of  outside counsel had to have been devoted

to the issue.  The fees of the expert witnesses did not capture all these

additional expenses.

---

http://interchange.puc.state.tx.us/WebApp/Interchange/Documents/39896_141_7155 98.PDF; (January 17, 2012)(Cities' 12th RFI to Entergy Texas, Inc.) *available at* http://interchange.puc.state.tx.us/WebApp/Interchange/Documents/39896_150_7157 44.PDF; (February 1, 2012) (Cities' 18th RFI to Entergy Texas, Inc.)  *available at* http://interchange.puc.state.tx.us/WebApp/Interchange/Documents/39896_266_7170 69.PDF; (February 2, 2012) (Commission Staff's 10th RFI to Entergy Texas, Inc. Question Nos. 10-1 Through 10-8) *available at* http://interchange.puc.state.tx.us/WebApp/Interchange/Documents/39896_280_7171 45.PDF; (February 9, 2012) (OPUC's 10th RFI to Entergy Texas, Inc.) *available at* http://interchange.puc.state.tx.us/WebApp/Interchange/Documents/39896_322_7177 21.PDF; (February 21, 2012 (Texas Energy Consumers' 9th RFI)*available at* http://interchange.puc.state.tx.us/WebApp/Interchange/Documents/39896_373_7187 54.PDF; (March 5, 2012)(Cities' 23rd RFI)*available at* http://interchange.puc.state.tx.us/WebApp/Interchange/Documents/39896_415_7199 42.PDF; (April 16, 2012) (State's 11th RFI to Entergy Texas, Inc.) *available at* http://interchange.puc.state.tx.us/WebApp/Interchange/Documents/39896_655_723 481.PDF.

[96]    Tex. Pub. Util. Comm'n, *Application of Entergy Texas, Inc. for Authority to Change Rates, Reconcile Fuel Costs, and Obtain Deferred Accounting Treatment*, Docket 39896, (May 18, 2012) (Entergy's Initial Brief) *available at* http://interchange.puc.state.tx.us/WebApp/Interchange/application/dbapps/filings/pg Search_Results.asp?TXT_CNTR_NO=39896&TXT_ITEM_NO=719; (May 24, 2012)(Entergy's Reply Brief) *available at* http://interchange.puc.state.tx.us/WebApp/Interchange/application/dbapps/filings/pg Search_Results.asp?TXT_CNTR_NO=39896&TXT_ITEM_NO=754; (July 23, 2012)(Entergy's Exceptions to Proposal for Decision) *available at* http://interchange.puc.state.tx.us/WebApp/Interchange/Documents/39896_775_7318 38.PDF; (October 4, 2012)(Entergy's Motion for Rehearing)*available at* http://interchange.puc.state.tx.us/WebApp/Interchange/Documents/39896_816_738 263.PDF; (November 21, 2012)(Entergy's 2nd Motion for Rehearing) *available at* http://interchange.puc.state.tx.us/WebApp/Interchange/Documents/39896_828_742 851.PDF.

But when Entergy was asked to calculate the amount of rate-case expenses devoted to any particular issue, the utility's witnesses repeatedly testified that Entergy did not keep track of rate-case expenses on an issue-by-issue basis. At the hearing, Entergy witness Considine testified: "Employees charge their time and expenses to a rate case project code that's set up specifically for Docket 39896." In response to the question, "But not issue specific?" Considine replied, "No, ma'am."[97] Again, Considine testified, "The Company tracks time on a project level basis, and the entire project related to the rate case as a whole."[98] In response to a question about separating rate-case expenses concerning another issue in the rate case, Considine indicated that he would not estimate how much time was devoted to a particular issue because it would be a guess.[99]

In response to a request for information about the rate-case expenses related to a different issue in the rate case, Entergy responded: "Costs related to the preparation and presentation of testimony are not accounted for in the manner requested. Costs are accumulated on a project level basis and related to the rate case as a whole."[100]

---

[97] AR, Tr. at 35.

[98] *Id*. at 45.

[99] *Id*. at 45-46.

[100] AR, State's Ex. 4.

**B.**   **Substantial evidence supports the Commission's decision about the amount of rate-case expenses attributable to the unreasonable argument in the rate case.**

Lacking any evidence from Entergy—the party with the burden to prove that its rate-case expenses were reasonable—that identified the exact amount of rate-case expenses that Entergy incurred to argue for abandoning the two-bucket policy, the Commission had to find a way to measure the rate-case expenses associated with that argument.  The Commission looked to evidence in the administrative record and applied a method supported by OPUC witness Benedict.  He proposed using  a percentage; he compared the amount of disallowed financial-goal bucket incentive compensation that Entergy sought in the rate case to the total amount by which Entergy wanted to increase rates in Docket 38986.  That ratio was applied to the total amount of rate-case expenses Entergy requested to find the percentage of rate-case expenses attributable to Entergy's unreasonable long-shot arguments.[101]  The ALJ and the Commission used this method to determine how much of Entergy's rate-case expenses were for the unreasonable and overly aggressive rate-case expenses.

---

[101]   AR, OPUC Ex. 1 at 10.

Thus, the way the Commission determined the amount of requested rate-case expenses attributable to the unreasonable and overly aggressive argument is supported by substantial evidence in the record.

## C.   The Commission's decision is reasonable—neither arbitrary and capricious nor an abuse of discretion.

Entergy unsuccessfully argues that the Commission's computation of unreasonable rate-case expenses is different from the Commission's usual practice.  But the Commission followed its practice of excluding only that portion of the expenses that were unreasonable and its method to determine that amount is similar to that used in an earlier Commission decision, its 2004, Docket 28840 Order.[102]

Contrary to Entergy's claims, the Commission's actions were consistent with other rate-case-expense cases:  The Commission denied the utility's rate-case-expense request to the extent it concerned a single, unreasonable expense—the expense associated with the argument that the Commission should abandon the two-bucket approach to determining incentive compensation included in rates.  The Commission refused to generally cut rate-case expenses in half, based on the assumption that half of the costs benefitted the shareholders or to cut rate-case expenses based on the

_____

[102]  Docket 28840 (July 2, 2004) (Proposal for Decision) at 125 *available at* http://interchange.puc.texas.gov/WebApp/Interchange/application/dbapps/filings/pgSearch_Results.asp?TXT_CNTR_NO=28840&TXT_ITEM_NO=636.

utility's success in raising rates.[103]  The Commission's issue-specific

approach is consistent with only denying unreasonable rate-case expenses.

Moreover, the Commission's decision in this case is remarkably similar

to the way it decided how much of the cities' requested rate-case expenses

should not be allowed in the earlier case.  Although the Commission did not

use the term "proxy" in Docket 28840, the Commission went through an

analysis similar to the one here to determine how much of the rate-case

expenses were reasonable and should be recovered.  In Docket 28840, the

Commission decided that a survey that the cities' expert used was "seriously

flawed and that conclusions drawn from the data cannot reasonably be

supported under current legal standards"[104]  Without any analysis of the

amount the expert spent on each part of her study or testimony, the ALJs in

that case stated:  "Although Dr. Goodfriend's survey and the portion of her

testimony upon which it is based may be flawed, that criticism does not fit

the remainder of her testimony.  Therefore, the ALJs recommend a

disallowance of one-half of Dr. Goodfriend's expenses … ."[105]  The

---

[103]  AR, PFD at 31.

[104]  Docket 28840 (July 2, 2004) (Proposal for Decision) at 125 *available at* http://interchange.puc.texas.gov/WebApp/Interchange/application/dbapps/filings/pgSearch_Results.asp?TXT_CNTR_NO=28840&TXT_ITEM_NO=636.

[105]  *Id*. at 121-22.

Commission adopted that decision in its final order.[106]  Obviously, the Commission went to less effort in that case than here to identify the amount of expense to allocate to a single part of rate-case expenses.

And the Commission did not in this case mandate that every utility keep track of its rate-case expenses on an issue-by-issue basis.  It noted that Entergy could not complain that exact rate-case expenses attributable to the unreasonable argument were not used because Entergy, the party with the burden to prove all the reasonable rate-case expenses it seeks to recover from ratepayers, did not account for its expenses in a way that would allow the Commission to determine the exact amount.[107]  But the computation the Commission makes—using an issue-specific method to determine those costs that is based on evidence in the record—was reasonable.

Finally, the Commission did not adopt a rule:  it made no general statement in this case that all utilities must keep track of their rate-case

---

[106]  Docket 28840 (Mar. 3, 2006) (Order) FF 29, *available at* http://interchange.puc.state.tx.us/WebApp/Interchange/Documents/31433_32_504890.PDF.

[107]  The PFD that the Commission adopted states:
Staff counters (and the ALJ agrees)that [Entergy] bore the burden of proving its reasonable expenses, and that burden necessarily requires that it separate out any unreasonable expenses. Having failed to do so with respect to financially-based incentives …, it is reasonable for the Commission to use the Issue-Specific Reduction Approach as a proxy for calculating those expenses.
AR, PFD at 32-33.

expenses on an issue-by-issue basis. The Commission did address that question when it formally adopted a new rule.[108] Thus, the Commission properly decided only the case before it and properly went through formal rulemaking to adopt a rule.

Because the Commission was not making any new policy decision of general application, it did not adopt a rule in its order in this case. It was simply using the evidence presented to determine facts in this case.

## V. Entergy failed to meet its burden under Utilities Code § 36.058 to prove depreciation charged by its affiliate for rate-case expenses was reasonable and necessary and no higher than the costs charged to other affiliates. (Responds to Entergy Issue 4)

### A. The Utilities Code imposes additional requirements to show that amounts paid to affiliates are reasonable expenses.

Expenses paid to a utility's affiliate are subject to increased scrutiny to ensure that no expenses are included that would not be similarly recovered in an arms-length transaction. Entergy failed to meet the heightened standard imposed under Utilities Code § 36.058 when it sought

---

[108] 16 Tex. Admin. Code § 25.245(b)(6).

depreciation of the assets of the Service Company.[109]  For each item or class

of items, Entergy had the burden to prove that the expenses were

reasonable and necessary, and that the price was not higher than the prices

charged by the supplying affiliate to its other affiliates, or to a nonaffiliated

person within the same market area or under the same market conditions.[110]

The Commission must presume that affiliate expenses should not be

included in rates unless these conditions are met.[111]  Thus, Entergy had to

overcome the presumption against affiliate expenses to recover depreciation

expenses for Service Company in rate-case expenses.  It failed to do so.

## B.    Entergy's evidence is insufficient to meet its burden of proof.

Regarding depreciation of Service Company's assets, the Court should

uphold the Commission's factual determination that Entergy failed to

provide evidence sufficient to meet the level of scrutiny that applies to

---

[109]  Tex. Util. Code § 36.058; *Cent. Power & Light Co. v. Pub. Util. Comm'n*, 36 S.W.3d 547, 564 (Tex. App.—Austin 2000, pet. denied) ("Because of the possibility for self-dealing between affiliated companies, however, expenses paid to an affiliated entity are presumptively *not* included in the rate base.  A utility can overcome this presumption against affiliate expenses only if it demonstrates that its payments are 'reasonable and necessary for each item or class of items as determined by the commission.'").

[110]  Tex. Util. Code § 36.058.

[111]  Tex. Util. Code § 36.058; *Cent. Power & Light Co.*, 36 S.W.3d at 564.

48

expenses paid to affiliates, and Entergy's reliance on the rate case for support is misplaced.

## 1. Entergy failed to explain what depreciation expenses of Service Company were included.

The quality and character of proof of depreciation expenses that Entergy provided is not the same in both the rate case and the rate-case-expense docket. The Commission has explained that "independent evidence must be provided in order to meet the statutory requirement to develop findings of fact based on an item or class of items basis."[112] Entergy did not provide sufficient independent evidence to include Service Company's depreciation as part of the utility's rate-case expenses. Entergy failed to include studies, comparison to affiliates, comparison to alternative providers, and evidence of costs to Service Company on a stand-alone basis.[113] Utility Code § 36.058 requires strict compliance, and Entergy did not meet the statutory standard. The Commission found: "$207,683 in depreciation of office equipment owned by [Service Company] (an affiliated company of [Entergy]) and used

---

[112] Tex. Pub. Util. Comm'n, *Application of Entergy Gulf States, Inc. For Approval of its Transition to Competition Plan and the Tariffs Implementing the Plan, and for the Authority to Reconcile Fuel Costs, to Set Revised Fuel Factors, and to Recover a Surcharge for Under-Recovered Fuel Costs*, Docket No. 16705,(Oct. 13, 1998) (Second Order on Rehearing) at 85, FF 150. *available at* http://interchange.puc.texas.gov/WebApp/Interchange/application/dbapps/filings/pgSearch_Results.asp?TXT_CNTR_NO=16705&TXT_ITEM_NO=5006 . (Subsequent citations to this PUC Docket will be cited "Docket 16705.")

[113] *Id.*

by [Service Company] employees for their work in Docket 39896 is not reasonable and is properly disallowed."[114]

In this case, Entergy's witness Considine testified in response to State Agencies' challenge to $207,683 in depreciation expense for Entergy's affiliate as rate-case expenses.[115] State Agencies claimed that the utility failed to support the amounts with detail. In response, Mr. Considine attached detail that was supposed to respond to State Agencies' concern.[116] That detail lists many items for depreciation, but the plethora of data still fails to explain what is being depreciated. Although the spreadsheets include project code, year, month, resource code, resource description, monthly amount, and journal ID number, all that data fails to explain why those depreciation amounts are relevant to Entergy's participation in the rate case. The resource code is a number without any key, and the resource description simply states "Depreciation & Amort Expenses."[117] There is no way to know whether Entergy's affiliate is depreciating only property used to do work necessary for Entergy's rate case or whether it is depreciating every asset it owns.

---

[114] AR, Order at FF 18a.

[115] AR, Entergy Ex. 7 at 9 of 11.

[116] AR, Entergy Ex. 7 at Ex. MPC-R-1.

[117] *See id.*

Entergy attempts to support the expenses by relying on Stephanie

Tumminello's testimony in Docket No. 39896 where she stated that the

depreciable assets "consist *primarily* of computer equipment, computer

software systems, communications equipment, furniture, fixtures, leasehold

improvements, and aircraft."[118]  Entergy's reliance on this testimony fails

because it refers to expenses during the test year rather than rate-case

expenses, many of which occurred after the test year, during the rate case.[119]

The rate-case expenses are subject to entirely different project codes and

billing methods.[120]  And it is not clear that the same assets are being

depreciated in the rate-case expense proceedings as were depreciated in the

test year.  For example, Ms. Tumminello testified that test-year expenses

were adjusted to remove depreciation of aircraft,[121] but whether it was also

removed from rate-case expenses is a mystery.  This borrowed testimony

---

[118]   Docket No. 39896, ETI Ex. 41 (Tuminello Direct at 79 of 98)(emphasis added).  (A certified copy is attached as Appendix E.)

[119]   *Id*. at 77 of 98.

[120]   *Id*. at 8, 45.

[121]   *Id*. at 79 of 98.

from the rate case fails to meet the standard requiring independent evidence to support the item or class of items.[122]

### 2. Entergy failed to provide evidence that including Service Company's depreciation expense made the expenses comparable.

Further, Entergy failed to provide evidence required by the statute: Entergy did not demonstrate that the depreciation price Service Company charged Entergy is no higher than the prices charged to other affiliates.[123] For the test-year expenses, Ms. Tumminello's testimony regarding depreciation was supported with numerous reports, benchmarks, and comparisons.[124] But there is no such support for the rate-case-expense depreciation. Although Mr. Considine testified that Service Company charges Entergy its actual costs, this is insufficient without supporting evidence showing that the prices charged to Entergy were not higher than

---

[122] Docket 16705(Oct. 14, 1998) (Second Order on Rehearing) at 85, FF 150. *available at* http://interchange.puc.texas.gov/WebApp/Interchange/application/dbapps/filings/pgSearch_Results.asp?TXT_CNTR_NO=16705&TXT_ITEM_NO=5006.

[123] Tex. Util. Code § 36.058(c)(2).

[124] *See* Docket No. 39896 ETI Ex. 41 (Tumminello Direct), Ex. SBT-20 Entergy Arkansas Test Year Billing to Affiliates; Ex. SBT-21 Entergy Gulf States Louisiana Test Year Billings to Affiliates; SBT-22 Entergy Louisiana Test Year Billings to Affiliates; SBT-23 Entergy Mississippi Test Year Billings to Affiliates; Ex. SBT-24Entergy New Orleans Test Year Billings to Affiliates; SBT-25 Non-regulated Test Year Billings to Regulated Affiliates. (A certified copy is attached as Appendix F.)

those charged to its other affiliates.[125]   There is no information that enables the Commission to independently evaluate the costs that Service Company charged to Entergy compared to its other affiliates.  Entergy failed to meet its burden.

The only evidentiary support Entergy offered to prove that depreciation should be included in its rate-case expenses is a meaningless spreadsheet and a Service Company employee's conclusory statement that the depreciation expense is reasonable and necessary.  The Commission reasonably decided that the evidence failed to meet the heightened standard for allowing affiliate expenses under Utilities Code § 36.058.  The Commission properly excluded Service Company's depreciation from rate-case expenses, and the Commission's order should be affirmed.

## Prayer

The Commission asks the Court to affirm the district court's judgment, which affirmed the Commission's order.  The Commission also asks for all other relief to which it is entitled.

---

[125]  Tex. Util. Code § 36.058; *see also* Docket 16705 (Oct. 14, 1998) (Second Order on Rehearing) at 85, FF 153. *available at* http://interchange.puc.texas.gov/WebApp/Interchange/application/dbapps/filings/pgSearch_Results.asp?TXT_CNTR_NO=16705&TXT_ITEM_NO=5006.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for
Civil Litigation

JON NIERMANN
Division Chief
Environmental Protection Division

 */s/ Elizabeth R. B. Sterling*
Elizabeth R. B. Sterling
Assistant Attorney General
State Bar No. 19171100

MEGAN M. NEAL
Assistant Attorney General
State Bar No. 24043797

Environmental Protection Division
Office of the Attorney General
P.O. Box 12548, MC-066
Austin, Texas  78711-2548
512.463.2012
512.457.4616 (fax)
Elizabeth.Sterling@texasattorneygeneral.gov

COUNSEL FOR PUBLIC UTILITY
COMMISSION OF TEXAS

## Certificate of Compliance

I certify that the foregoing computer-generated document has 11,080 words, calculated using the computer program WordPerfect 12, pursuant to Texas Rule of Appellate Procedure 9.4.

_/s/ Elizabeth R. B. Sterling_
Elizabeth R. B. Sterling

# Certificate of Service

I hereby certify that on this the 6th day of March 2015, a true and correct copy of the foregoing document was served on the following counsel electronically, through an electronic filing service and by email.


/s/ *Elizabeth R. B. Sterling*
Elizabeth R. B. Sterling

## Counsel for Appellant Entergy Texas, Inc.:

Marnie A. McCormick
John F. Williams
Duggins Wren Mann & Romero, LLP
P. O. Box 1149
Austin, Texas 78767-1149
512.744.9300
512.744.9399 (fax)
mmccormick@dwmrlaw.com
jwilliams@dwmrlaw.com


## Counsel for Appellant Office of Public Utility Counsel:

Ross Wyatt Henderson
Assistant Public Counsel
Office of Public Utility Counsel
P.O. Box 12397
Austin, Texas 78711-2397
512.936.7500
512.936.7520 (fax)
Ross.Henderson@opuc.texas.gov

**Counsel for State Agencies:**

Katherine H. Farrell
Assistant Attorney General
Administrative Law Division
Energy Rates Section
Office of the Attorney General
P.O. Box 12548  MC 018-12
Austin, Texas 78711-2548
512.475.4237
512.320.0167 (fax)
Katherine.Farrell@texasattorneygeneral.gov

**Counsel for Texas Industrial Energy Consumers:**

Rex VanMiddlesworth
Benjamin Hallmark
Thompson & Knight LLP
98 San Jacinto Blvd., Ste. 1900
Austin, Texas 78701
512.469.6100
512.469.6180 (fax)
rex.vanm@tklaw.com
benjamin.hallmark@tklaw.com

# APPENDIX A

# <u>Order</u>



| APPLICATION OF ENTERGY | § | PUBLIC UTILITY COMMISSION |
| TEXAS, INC. FOR RATE CASE | § | |
| EXPENSES PERTAINING TO PUC | § | OF TEXAS |
| DOCKET NO. 39896 | § | |

## ORDER

This Order addresses the rate-case expenses pertaining to Docket No. 39896,[1] Entergy Texas, Inc.'s last rate case. Entergy requested $8.8 million in rate-case expenses associated with Docket No. 39896—$7.6 million for Entergy's own rate-case expenses and $1.2 million for Cities' rate-case expenses. The proposal for decision in this docket was issued on February 19, 2013. In the proposal for decision, the ALJ recommended allowing Cities' rate-case expenses incurred through August 31, 2012, plus up to $75,800 in rate-case expenses as they are incurred after August 31, 2012. The ALJ also recommended that Entergy's rate-case expenses be reduced to account for Entergy taking certain positions in the rate case regarding financially-based incentive compensation and transmission equalization expenses. The Commission considered the proposal for decision at the April 11 and April 25, 2013 open meetings. The Commission adopts in part and reverses in part the proposal for decision, including findings of fact and conclusions of law.

### I.    Estimated Rate-Case Expenses

The Commission reverses the proposal for decision regarding Cities' $75,800 in estimated rate-case expenses to be incurred after August 31, 2012.[2] In Docket No. 37772, the Commission found that approving estimated rate-case expenses for two different parties representing Cities is not in the public interest and disallowed their recovery in the rate-case expense surcharge, but did not prohibit the Cities from seeking recovery of actual rate-case

---

[1] *Application of Entergy Texas, Inc. for Authority to Change Rates, Reconcile Fuel Costs, and Obtain Deferred Accounting Treatment*, Order on Rehearing, Docket No. 39896 (Nov. 2, 2012).

[2] Proposal for Decision at 4-8 (Feb. 19, 2013).

90

expenses in the utility's next rate case.[3]  The Commission affirms that holding here:  Cities cannot recover for estimated rate-case expenses in this docket, but may seek recovery in Entergy's next rate case.  To reflect its determination on this issue, the Commission adds new finding of fact 16A, modifies conclusion of law 7, and adds new conclusion of law 10.

## II.  Proportional Reduction

The Commission affirms the proposal for decision regarding the need to reduce Entergy's recoverable expenses due to an unreasonable position pursued by Entergy in the rate case[4] and also affirms the use of the "issue-specific reduction approach" to determine how to calculate an appropriate reduction in rate-case expenses when the utility takes positions that are in conflict with Commission precedent.[5]

Specifically, the Commission agrees with the ALJ that reductions should be made to Entergy's recoverable rate-case expenses for Entergy attempting to recover financially-based incentive compensation in base rates.  The Commission has repeatedly ruled that a utility cannot recover the cost of financially-based incentive compensation because financial measures are of more immediate benefit to shareholders and financial measures are not necessary or reasonable to provide utility services.[6]  The Commission concludes that it should follow its well-established policy here.

However, the ALJ did not include all of the impacts attendant to the disallowance for incentive compensation.[7]  To calculate the amount of the reduction in rate-case expenses related to financially-based incentive compensation, the Commission starts with Entergy's initial rate-

---

[3] *Application of Southwestern Electric Power Company for Rate Case Expenses Pertaining to Docket No. 37364*, Order at 1-2, Docket No. 37772 (Oct. 21, 2010).

[4] Proposal for Decision at 29-30.

[5] *Id.* at 32-34.

[6] *Application of AEP Texas Central Company for Authority to Change Rates*, Docket No. 28840, Proposal for Decision at 92-97, Findings of Fact Nos. 164-170, Order at 35 (Aug. 15, 2005); *Application of AEP Texas Central Company for Authority to Change Rates*, Docket No. 33309, Proposal for Decision at 116-121, Finding of Fact No. 82, Order on Rehearing at 12 (March 4, 2008); *Application of Oncor Electric Delivery Company, LLC, for Authority to Change Rates*, Docket No. 35717, Proposal for Decision at 96-100, Finding of Fact No. 93, Order on Rehearing at 22 (Nov. 30, 2009); and *Application of CenterPoint Electric Delivery Company, LLC, for Authority to Change Rates*, Docket No. 38339, Proposal for Decision at 66-67, Findings of Fact Nos. 81-83, Order on Rehearing at 22 (June 23, 2011).

[7] Docket No. 39896, Order on Rehearing at 5-6, 7-8 (Nov. 2, 2012).

case expense request, reduced by $208,494 in disallowances made by the ALJ[8] and affirmed by the Commission. The Commission further reduces this amount by an additional $522,244.66, which is the amount of rate-case expenses related to financially-based incentive compensation using the issue-specific reduction approach.

The Commission disagrees with the ALJ that Entergy's rate-case expenses should be reduced due to Entergy's request for transmission equalization (MSS-2 expenses).[9] Even though Entergy did not meet the burden of proof that the requested expenses were known and measureable changes to test-year expenses, the request for the MSS-2 expenses did not conflict with clear Commission precedent.

Accounting for these reductions, the Commission finds that rate-case expenses for ETI in the amount of $6,896,037.73 are reasonable and necessary. Consequently, the Commission is approving a total amount of $8,021,806.34 in allowable rate-case expenses in this docket.

To reflect its determinations on the proportional reduction issue, the Commission modifies finding of fact 18 and conclusion of law 9.

### III. Affiliate Payments

The Commission also finds that the price for Entergy's affiliate payments is not higher than the prices charged by the supplying affiliate for the same item or class of items to its other affiliates or divisions or a nonaffiliated person within the same market area or having the same market conditions. The Commission adds new finding of fact 19 and new conclusion of law 11 to reflect that Entergy met the requirements in PURA § 36.058 regarding payments to its affiliates for its rate-case expenses.

The Commission also makes minor corrections to conclusions of law 6 and 8 to incorporate the statutory reference into the language of the conclusion of law. Consistent with the discussion above, the Commission adopts the following findings of fact and conclusions of law:

---

[8] Proposal for Decision at 33-34.

[9] *Id.* at 25-27.

## IV.    Findings of Fact

1. Entergy Texas, Inc. (ETI or the Company) is an investor-owned electric utility with a retail service area located in southeastern Texas.

2. On November 28, 2011, ETI filed an application (the ETI Application) requesting, among other things, approval of a proposed increase in annual base rate revenues of approximately $111.8 million over adjusted test year revenues, and a new rider for recovery of costs related to purchased power capacity.

3. On November 29, 2011, the Public Utility Commission of Texas (Commission or PUC) referred the ETI Application to the State Office of Administrative Hearings (SOAH) for a hearing and the matter was assigned docket number 39896 (Docket 39896).

4. On April 4, 2012, in Docket 39896, the ALJs issued SOAH Order No. 13 severing rate-case expense issues into a new docket, the case at issue here, Application of Entergy Texas, Inc. for Rate Case Expenses Severed from PUC Docket No. 39896, Docket No. 40295.

5. The hearing on the merits in Docket 39896 was held in April-May 2012.

6. The Proposal for Decision (PFD) in Docket 39896 was issued July 6, 2012.

7. The Commission issued its final order in Docket 39896 on November 2, 2012.

8. The hearing on the merits in the present docket, Docket 40295, was held on November 28, 2012. The record closed on December 21, 2012, following the filing of post-hearing briefs.

9. The following parties were granted intervenor status in this docket: Office of Public Utility Counsel (OPUC); the cities of Anahuac, Beaumont, Bridge City, Cleveland, Conroe, Dayton, Groves, Houston, Huntsville, Montgomery, Navasota, Nederland, Oak Ridge North, Orange, Pine Forest, Rose City, Pinehurst, Port Arthur, Port Neches, Shenandoah, Silsbee, Sour Lake, Splendora, Vidor, and West Orange (Cities); State Agencies; and Texas Industrial Energy Consumers (TIEC). The staff (Staff) of the Commission was also a participant in this docket.

10. In Docket 39896, ETI adjusted its request for a proposed increase in annual base rate revenues to approximately $104.8 million over adjusted Test Year revenues.

11. In the PFD in Docket 39896, the ALJs recommended an overall rate increase of $28.3 million.

12. In its final order in Docket 39896, the Commission largely followed the recommendations contained in the PFD, but reduced ETI's overall rate increase to $27.7 million.

13. In this docket, ETI seeks to recover $8.8 million in rate-case expenses associated with Docket 39896.

14. Of that total, $7.6 million was incurred by ETI and $1.2 million was incurred by Cities.

15. Cities proved that, through August 31, 2012, they reasonably incurred rate-case expenses of $1,125,768.61 in Docket 39896 and this docket.

16. Cities reasonably estimated that their total rate-case expenses in Docket 39896 and this docket after August 31, 2012 will total $75,800.

16A. The Commission finds that Cities' estimated expenses are not recoverable as rate-case expenses in this docket.

17. The amount of rate-case expenses sought by ETI ($8.8 million) is high, both in absolute terms, and in relation to the rate increase ultimately obtained by ETI in Docket 39896 ($27.7 million).

18. Rate-case expenses for ETI in the amount of $6,896,037.73 are reasonable and necessary and should be allowed as a cost or expense by the Company. This amount is calculated by reducing the requested amount by the amounts listed and for the reasons stated below:

    a. $207,683 in depreciation of office equipment owned by Entergy Services, Inc. (ESI) (an affiliated company of ETI) and used by ESI employees for their work in Docket 39896 is not reasonable and is properly disallowed.

    b. $281 for meals over $25 was erroneously sought by ETI, is not reasonable, and is properly disallowed.

c.     $10 for clothing purchased by an attorney for ETI is not reasonable and is properly disallowed.

d.     $40 for laundry charges by an attorney for ETI is not reasonable and is properly disallowed.

e.     $480 for a lodging charge unsupported by receipts is not reasonable and is properly disallowed.

f.     $522,244.66 attributable to unreasonable and overly aggressive arguments pursued by ETI in Docket 39896 related to financially-based incentive compensation is properly disallowed.

19.     The price for Entergy's affiliate payments is not higher than the prices charged by the supplying affiliate for the same item or class of items to its other affiliates or divisions or a nonaffiliated person within the same market area or having the same market conditions.

## V. Conclusions of Law

1.     ETI is a "public utility" as that term is defined in the Public Utility Regulatory Act (PURA) § 11.004(1) and an "electric utility" as that term is defined in PURA § 31.002(6).

2.     The Commission exercises regulatory authority over ETI and jurisdiction over the subject matter of this application pursuant to PURA §§ 32.001, 32.101, 33.002, 33.051, and 36.101-111.

3.     SOAH has jurisdiction over matters related to the conduct of the hearing and the preparation of a proposal for decision in this docket, pursuant to PURA § 14.053 and Tex. Gov't Code § 2003.049.

4.     This docket was processed in accordance with the requirements of PURA and the Texas Administrative Procedure Act, Tex. Gov't Code Chapter 2001.

5.     Pursuant to PURA § 33.051, the Commission has jurisdiction over an appeal from a municipality's rate proceeding.

6.     Pursuant to PURA § 33.023, Cities bore the burden to prove that the rate-case expenses they incurred were reasonable.

7.  Cities are entitled to reimbursement by ETI for rate-case expenses of $1,125,768.61 incurred in Docket 39896 and this docket through August 31, 2012.

8.  Pursuant to PURA § 36.061(b), ETI bore the burden of proving that the rate-case expenses it incurred in Docket No. 39896 were reasonable.

9.  ETI proved the reasonableness of its rate-case expenses in the amount of $6,896,037.73, and is entitled to claim that amount as a cost.

10. Consistent with Commission precedent, it is not in the public interest to permit recovery of estimated rate-case expenses.

11. Entergy met the requirements of PURA § 36.058 regarding payments to its affiliate for its rate-case expenses.

## VI. Ordering Paragraphs

In accordance with these findings of fact and conclusions of law, the Commission issues the following orders:

1.  The Proposal for Decision prepared by the SOAH ALJs is adopted to the extent consistent with this Order.

2.  All other motions, requests for entry of specific findings of fact and conclusions of law, and any other requests for general or specific relief, if not expressly granted, are denied.

3.  Cities' and ETI's requests to recover rate-case expenses are granted to the extent consistent with this Order.

SIGNED AT AUSTIN, TEXAS the 21st day of May 2013

**PUBLIC UTILITY COMMISSION OF TEXAS**

_____
DONNA L. NELSON, CHAIRMAN

_____
KENNETH W. ANDERSON, JR., COMMISSIONER

q:\cadm\orders\final\40000\40295fo.docx

# APPENDIX B

# <u>Proposal for Decision</u>

# State Office of Administrative Hearings



2013 FEB 19 PM 3:24

**Cathleen Parsley**
**Chief Administrative Law Judge**

**February 19, 2013**

TO: Stephen Journeay, Director                    <u>**Courier Pick-up**</u>
    Commission Advising and Docket Management
    William B. Travis State Office Building
    1701 N. Congress, 7th Floor
    Austin, Texas 78701

RE: SOAH Docket No. 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
    PUC Docket No. 40295

    *Application of Entergy Texas, Inc. for Rate Case Expenses Pertaining to PUC*
    *Docket No. 39896*

Enclosed is the Proposal for Decision (PFD) in the above-referenced case. By copy of this letter, the parties to this proceeding are being served with the PFD.

Please place this case on an open meeting agenda for the Commissioners' consideration. There is no deadline in this case. Please notify me and the parties of the open meeting date, as well as the deadlines for filing exceptions to the PFD, replies to the exceptions, and requests for oral argument.

Sincerely,

Hunter Burkhalter
Administrative Law Judge

HB/mle
Enclosure
xc:     All Parties of Record

67

2013 FEB 19 PM 3: 24

APPLICATION OF ENTERGY
TEXAS, INC. FOR RATE CASE
EXPENSES PERTAINING TO PUC
DOCKET NO. 39896

§
§
§
§
§
§

BEFORE THE STATE OFFICE

OF

ADMINISTRATIVE HEARINGS

## TABLE OF CONTENTS

I. BACKGROUND ................................................................................................................. 1

II. JURISDICTION, NOTICE, AND PROCEDURAL HISTORY ...................................... 2

III. PARTIES ......................................................................................................................... 2

IV. DISCUSSION ................................................................................................................. 3

    A.    Overview ................................................................................................................. 3

    B.    Cities' Rate Case Expenses ................................................................................... 4

    C.    ETI's Rate Case Expenses .................................................................................... 8

        1.    Challenges to Specific ETI Rate Case Expenses That are
            Relatively Quantifiable ............................................................................. 8

            a.    Costs Associated with Gerald Tucker, ETI's
                Consulting Expert ........................................................................ 8
            b.    Costs Associated with "Lessons Learned" ................................ 10
            c.    ESI Depreciation Costs ............................................................... 11
            d.    Miscellaneous Internal Rate Case Expenses ............................. 13
            e.    Costs Associated with the Calpine-Carville PPA ...................... 13
            f.    Specific Items That State Agencies Contend Cast Doubt on
                ETI's Overall Scrutiny of Its Expenses ..................................... 15

                (1)    External Legal Fees ......................................................... 16
                (2)    Meals and Snacks ........................................................... 17
                (3)    Courier and Taxi Services .............................................. 18
                (4)    Meals Over $25 ............................................................... 19
                (5)    Clothing and Laundry Service ....................................... 20
                (6)    Airfare and Lodging ....................................................... 20

2.      **Challenges to Specific ETI Rate Case Expenses That are Difficult to
        Quantify** .......................................................................................................... **21**

        a.      **Financially-Based Incentive Compensation** ............................... **21**
        b.      **Transmission Equalization (MSS-2) Expenses** .......................... **25**
        c.      **Purchased Power Capacity Rider** ................................................. **27**

3.      **Proportional Reduction** ........................................................................... **28**

D.      **Recovery Method** ......................................................................................... **34**

1.      **Rate Case Expense Allocation and the Recovery Mechanism** ................ **34**
2.      **ETI's Request to Earn a Return on the Unpaid Balance of Rate
        Case Expenses** ............................................................................................. **35**

V. **CONCLUSION** .......................................................................................................... **36**

VI. **PROPOSED FINDINGS OF FACT, CONCLUSIONS OF LAW, AND
    ORDERING PARAGRAPHS** ..................................................................................... **36**

A.      **Findings of Fact** ........................................................................................... **36**

B.      **Conclusions of Law** ...................................................................................... **38**

C.      **Proposed Ordering Paragraphs** ................................................................. **39**

| | | |
|---|---|---|
| APPLICATION OF ENTERGY TEXAS, INC. FOR RATE CASE EXPENSES PERTAINING TO PUC DOCKET NO. 39896 | §<br>§<br>§<br>§<br>§ | BEFORE THE STATE OFFICE<br><br>OF<br><br>ADMINISTRATIVE HEARINGS |

## PROPOSAL FOR DECISION

## I. BACKGROUND

Entergy Texas, Inc. (ETI) is an investor-owned electric utility with a retail service area located in southeastern Texas. ETI serves retail and wholesale electric customers in Texas. On November 28, 2011, ETI filed an application requesting approval of an increase in annual base rate revenues, a reconciliation of fuel costs, and authority to defer costs for the transition to the Midwest Independent System Operator (the ETI Application). On November 29, 2011, the Commission referred the ETI Application, PUC Docket No. 39896, to SOAH (Docket 39896). On April 4, 2012, the Administrative Law Judges (ALJs) presiding over Docket 39896 issued an order severing from Docket 39896 the issues relating to ETI's request to recover its rate case expenses and creating this docket, Docket 40295, for consideration of the rate case expenses.

In this Proposal for Decision (PFD), the ALJ recommends as follows:

- That Cities[1] be allowed to recover from ETI a total of $1,201,569 in rate case expenses (representing $1,125,769 in rate case expenses incurred through August 31, 2012, plus up to $75,800 in rate case expenses as they are incurred after August 31, 2012); and

- That ETI be allowed to recover a total of $7,344,113 in rate case expenses.

---

[1] The Cities are: the Cities of Anahuac, Beaumont, Bridge City, Cleveland, Conroe, Dayton, Groves, Houston, Huntsville, Montgomery, Navasota, Nederland, Oak Ridge North, Orange, Pine Forest, Rose City, Pinehurst, Port Arthur, Port Neches, Shenandoah, Silsbee, Sour Lake, Splendora, Vidor, and West Orange.

## II.   JURISDICTION, NOTICE, AND PROCEDURAL HISTORY

The Public Utility Commission of Texas (Commission or PUC) has jurisdiction over ETI and this rate case expenses hearing pursuant to Texas Utility Code, Public Utility Regulatory Act (PURA) §§ 32.001, 33.002, and 35.004. The State Office of Administrative Hearings (SOAH) has jurisdiction over the contested case hearing, including the preparation of the proposal for decision (PFD) pursuant to PURA § 14.053 and Texas Government Code § 2003.049(b). ETI's notice of its application and notice of the hearing were not contested and, therefore, do not require further discussion here but will be addressed in the proposed findings of fact and conclusions of law.

The hearing on the merits in Docket 39896 was held in April–May, 2012. The PFD was issued on July 6, 2012. A Final Order in Docket 39896 was issued by the Commission on September 14, 2012. In response to motions for rehearing submitted by multiple parties, the Commission issued an Order on Rehearing on November 2, 2012, in Docket 39896.[2]

The hearing on the merits in the present docket, Docket 40295, was held on November 28, 2012. The record remained open for the filing of post-hearing briefs. The record closed on December 21, 2012.

## III.   PARTIES

In addition to ETI, the following entities were granted party status in this case: Texas Industrial Energy Consumers (TIEC); State of Texas agencies and institutions of higher education (State Agencies); Office of Public Utility Counsel (OPUC); Cities; and the staff of the Public Utility Commission (Staff).

---

[2]  Multiple second motions for rehearing were denied by the Commission on December 4, 2012.

The following is a list of the parties who participated in the hearing and their counsel:

| PARTIES | REPRESENTATIVES |
| --- | --- |
| ETI | Steven H. Neinast, Wajiha Rizvi, and George Hoyt |
| Cities | Stephen Mack |
| TIEC | Meghan Griffiths |
| State Agencies | Susan Kelley |
| OPC | Sarah Ferris |
| Staff | Brennan Foley |

## IV.   DISCUSSION

### A.   Overview

In the ETI Application, ETI requested, among other things, approval of an increase in annual revenues of approximately $104.8 million, proposed tariff schedules including new riders to recover costs related to purchased-power capacity and renewable-energy credit requirements, and final reconciliation of its fuel costs. Prior to the hearing, the Commission effectively denied ETI's request for a purchased-power capacity rider by removing it as an issue to be addressed in the hearing on the ETI Application. In their PFD, the ALJs recommended an overall rate increase for ETI of $28.3 million, did not recommend approving the renewable-energy credit rider sought by ETI, and recommended approving ETI's request to reconcile fuel and purchased power costs during the Reconciliation Period.[3] Ultimately, the Commission largely followed the recommendations contained in the PFD, but reduced the overall rate increase to $27.7 million.[4]

In this docket, Michael P. Considine, a Manager in the Regulatory Accounting Department of Entergy Services, Inc. (ESI), ETI's service company affiliate, testified in support of the company's claim for recovery of rate case expenses. He explained that ETI is seeking authority to recover its

---

[3] *Application of Entergy Texas, Inc. for Authority to Change Rates, Reconcile Fuel Costs, and Obtain Deferred Accounting Treatment*, Docket 39896, Proposal for Decision (July 6, 2012).

[4] *Application of Entergy Texas, Inc. for Authority to Change Rates, Reconcile Fuel Costs, and Obtain Deferred Accounting Treatment*, Docket 39896, Order on Rehearing (November 1, 2012).

rate case expenses over a three-year period, while earning a return on the unamortized balance.[5] ETI seeks to recover $8,752,545[6] in rate case expenses associated with Docket 39896 that were incurred and paid as of September 30, 2012.[7] Of that total, $7,635,236 was incurred by ETI and $1,117,309 was incurred by Cities. Of the total amount, ETI classifies $3,908,214 as "external" rate case expenses (*i.e.*, those expenses paid to outside accounting services, outside counsel, and outside consultants), and $4,844,362 as "internal" rate case expenses (*i.e.*, those expenses related to direct expenses, payroll, benefits, and taxes of ETI and Entergy Services, Inc. (ESI), an affiliated company of ETI).[8] Mr. Considine offered the opinion that all of ETI's internal rate case expenses were reasonable and necessary.[9] Another ETI witness, Stephen F. Morris, offered his opinion that all of ETI's external rate case expenses were reasonable and necessary.[10] Mr. Morris is an attorney and certified public accountant who was retained by ETI to review the company's external rate case expenses.[11] ETI also seeks authority to defer until its next rate case all rate case expenses incurred in Docket 39896 after September 30, 2012.[12]

## B.     Cities' Rate Case Expenses

Pursuant to PURA § 33.023, any municipality participating in a ratemaking proceeding may engage attorneys, consultants, and others to assist it, and the electric utility "shall" reimburse the municipality for its "reasonable cost" of participating in the ratemaking proceeding "to the extent the [Commission] determines is reasonable."

---

[5] ETI Ex. 1 (Considine Direct) at 62.

[6] Initially, ETI sought recovery of $8,752,576. In its briefing, however, ETI explains that it is reducing the amount it seeks to $8,752,545 (a reduction of $31) to account for two excessive charges for meals. ETI Init. Br. at 1 n. 1.

[7] ETI Ex. 6 (Considine Supp.) at 1.

[8] ETI Ex. 6 (Considine Supp.) at 3, 5, and attachment MPC-SD-5. The $1,117,309 in expenses incurred by Cities is included as part of ETI's "internal" expenses.

[9] ETI Ex. 6 (Considine Supp.) at 7.

[10] ETI Ex. 8 (Morris Direct) at 18.

[11] ETI Ex. 8 (Morris Direct) at 1-2.

[12] Transcript from Hearing on the Merits (Tr.) at 17.

In this case, Cities seek reimbursement for rate case expenses totaling $1,201,568.61. Cities identify this amount as the "total actual and estimated rate case expenses" incurred by Cities in four forums: (1) ETI's base rate cases before the municipalities; (2) participation in Docket 39896; (3) participation in any appeals of Docket 39896; and (4) participation in the present case, Docket 40295.[13] Of the $1,201,568.61 total, $1,125,768.61 represents actual expenses incurred by Cities through August 31, 2012, while $75,800 represents Cities' estimated expenses through completion of Dockets 39896 and 40295, and any appeal.[14] Cities offered the expert testimony of Amalija "Amy" Hodgins, a former ALJ, who opined that these expenses were reasonable and should be reimbursed.[15]

No party challenged the reasonableness of Cities' expenditures through August 31, 2012 (*i.e.*, $1,125,768.61), and the ALJ can find no reason to do so either.

Staff challenges, however, Cities' attempt to recover their estimated expenses after that date (*i.e.*, $75,800). Cities seek to be reimbursed for these estimated expenses only "if and when they occur," up to the maximum of $75,800.[16] Ms. Hodgins offered her opinion that the amount of the estimated expenses is reasonable.[17] In reliance upon Commission precedent from 2005, Ms. Hodgins argued that estimated rate case expenses are reimbursable. Ms. Hodgins testified as follows:

> Projected rate case expenses can be, and routinely have been, found reasonable and reimbursable by this Commission. The fact that a municipality's rate case expenses have not all been incurred, as of the date of the determination of the reasonableness of rate case expenses, does not render them unreasonable. Expenses need only be reasonable and incurred to be recoverable.

---

[13] Cities Init. Br. at 2.

[14] Cities Init. Br. at 5.

[15] *See* Cities Ex. No. 1 (Hodgins Direct) and Ex. No. 2 (Hodgins Supp.).

[16] Cities Ex. 2 (Hodgins Supp.) at n. 6.

[17] Cities Ex. 2 (Hodgins Supp.) at 13-14.

> The future activities and corresponding costs, that are the subject of estimation, are necessary to complete a proceeding before the Commission. The Commission in CenterPoint's CTC case found estimated costs to complete a case were recoverable once the estimated expenses were incurred and known and measurable. . . . Accordingly, it is reasonable for the Commission, in this proceeding, to consider and allow the Cities to recover the estimated costs to complete this proceeding, including possible judicial appeals, if and when those expenses are incurred.[18]

Staff argues, based upon Commission precedent, that Cities are not entitled to reimbursement for estimated future rate case expenses.[19] Staff does not challenge the reasonableness of the amount of estimated expenses, nor does any other party. Rather, Staff asserts that the Commission precedent relied upon by Ms. Hodgins has been superseded by more recent precedent. Specifically, in 2010, the Commission decided a case in which it disallowed estimated rate case expenses. In Docket 37772, the Commission disallowed recovery of estimated expenses, holding that "approving *estimated* rate-case expenses is not in the public interest," but allowed the cities involved in that case to seek "recovery of actual rate-case expenses included in the estimates in [the utility's] next rate case."[20] Thus, Staff argues that Cities' attempt to obtain its estimated expenses should be disallowed.

Staff further argues that Cities should not be entitled to recover the expenses associated with the preparation of the portion of Ms. Hodgins' testimony in which she advocates in support of the recovery of Cities' estimated expenses. By Staff's calculation, this reduction amounts to $1,208.42 (representing Cities' actual costs for Ms. Hodgins' testimony related to the recovery of estimated expenses).[21] No other party joins Staff in its opposition to Cities' estimated expenses.

The ALJ recommends that Cities' request with regard to its estimated expenses be granted. Pursuant to Section 33.023 of PURA, Cities are entitled to reimbursement for their expenses

---

[18] Cities Ex. 1 (Hodgins Direct) at 6-7; *citing Application of CenterPoint Energy Houston Electric, LLC for Competition Transition Charge*, Docket No. 30706, Order at 31 and FOFs 72-74 (Jul. 14, 2005)(Docket 30706).

[19] Staff Init. Br. at 6.

[20] *Application of Southwestern Electric Power Company for Rate Case Expenses Pertaining to Docket No. 37364*, Docket 37772, Order at 1-2 (Oct. 21, 2010)(emphasis in original)(Docket 37772).

[21] Staff Init. Br. at 7.

reasonably incurred in this case. As noted above, no party challenged the reasonableness of Cities' estimation that its expenses after August 2012 would total $75,800. The ALJ concludes that the estimate is reasonable.[22] Most importantly, the ALJ notes that Cities are not actually seeking reimbursement of estimated rate case expenses. Rather, Cities asks for: (1) approval now of the reasonableness of its estimated expenses; but (2) reimbursement of those expenses only after they are incurred, and only up to the estimated amount of $75,800. Cities argue that, from a policy standpoint, it is more economical and efficient for Cities to request reimbursement of reasonable estimated rate case expenses to the extent they are incurred in this case, rather than requiring Cities to wait and ask for reimbursement of those expenses when ETI files a new rate case at some point in the future, a contingency which might not occur for many years. The ALJ agrees. The ALJ further believes that it would be unfair if Cities were obligated to wait until ETI files a new rate case in order to recover its estimated expenses from the present case. Any such arrangement would delay, potentially for years, Cities' recovery of its actual expenses in the present rate case, a result which seems contrary to the clear intent expressed in PURA § 33.023 that municipalities are entitled to reimbursement for their reasonable rate cases expenses. Moreover, such an arrangement would obligate Cities to participate in a future ETI rate case that they might otherwise have no interest in becoming a party to.

For these reasons, the ALJ recommends:

(1)    that Cities' rate case expenses be found to be reasonable in the amount of $1,201,568.61 (consisting of $1,125,768.61 in actual expenses incurred by Cities through August 31, 2012, and $75,800 in estimated expenses to be incurred by Cities after August 31, 2012 through completion of Dockets 39896 and 40295, and any appeal);

(2)    that ETI be ordered to reimburse Cities for $1,125,768.61 in actual expenses incurred by Cities through August 31, 2012; and

---

[22] Indeed, the ALJ notes that Cities attached to their Reply Brief an affidavit from Ms. Hodgins attesting to the fact that, from September through November 2012, Cities actually incurred expenses of $43,525.45 (or 57% of the estimated $75,800). Cities Reply Br. at 4-5, and attached affidavit.

(3)    that ETI be ordered to reimburse Cities for actual expenses incurred by Cities after August 31, 2012, through completion of Dockets 39896 and 40295 and any appeal up to a maximum possible amount of $75,800.

## C.    ETI's Rate Case Expenses

Pursuant to PURA Section 36.061(b), the Commission "may" allow a utility to recover its "reasonable costs of participating in a [ratemaking proceeding] not to exceed that amount approved" by the Commission.

ETI seeks recovery of $8,752,545 in rate case expenses associated with Docket 39896 that were incurred and paid as of September 30, 2012. However, that total includes only the $1,125,768.61 in expenses *incurred* by Cities through August 31, 2012, but does not also include the $75,800 in expenses *estimated* for Cities as discussed above. Because the ALJ is recommending that Cities' estimated expenses be approved as outlined above, the ALJ deems ETI's overall request to have been increased by $75,800 to a total amount of $8,828,345.

The parties other than ETI challenged various components of ETI's rate case expenses. Those challenges are discussed as follows.

### 1.    Challenges to Specific ETI Rate Case Expenses That are Relatively Quantifiable

#### a.    Costs Associated with Gerald Tucker, ETI's Consulting Expert

In Docket 39896, ETI retained Gerald Tucker as a consulting expert to assist in the preparation of the utility's case dealing with affiliate transactions. Mr. Tucker is an accountant who has experience regarding affiliate costs in Commission rate cases and who has commonly assisted ETI in its rate cases.[23]

---

[23] ETI Ex. 8 (Morris Direct) at 29-30.

State Agencies contend that Mr. Tucker's fees should be disallowed. No party other than State Agencies challenged Mr. Tucker's expenses. State Agencies complain that Mr. Tucker: (1) did not testify; (2) provided services that were described by ETI in only "the most general terms;" and (3) provided services (such as reviewing witness testimony, reviewing discovery responses, benchmarking, and assisting in preparing witnesses for deposition) that were duplicative of services provided by ETI's legal counsel or other consultants. Accordingly, State Agencies argue that the $116,119 representing Mr. Tucker's fees should be excluded from rate case expenses.[24]

ETI responds by contending that, over the last 20 years or so, the Commission has, at times, disallowed large percentages of utility companies' affiliate expenses, based upon the fact that ALJs and the Commissioners have had difficulty understanding the complex information supplied by utilities concerning affiliate transactions. In light of that history, ETI contends that it reasonably relied upon the expertise and accounting experience of Mr. Tucker to assist it in preparing and presenting information about the company's affiliate transactions in order to assure that it was understandable. According to ETI, Mr. Tucker has been involved in all rate cases of ETI and its predecessor since in 1997. ETI contends that Mr. Tucker's participation in Docket 39896 enabled the company to present clearer and more accurate information about its affiliate transactions. Moreover, ETI disputes that Mr. Tucker's work was duplicative of the work performed by the company's attorneys, pointing out that Mr. Tucker provided expertise from the accounting perspective, rather than from the legal perspective.[25]

The ALJ recommends that Mr. Tucker's fees be included in the rate case expenses. State Agencies are essentially arguing that it was solely the job of ETI's attorneys and its testifying experts to prepare the case regarding affiliate transactions and, therefore, any work performed by Mr. Tucker with regard to affiliate transactions was purely duplicative. The ALJ disagrees. As pointed out by ETI, the notion that multiple people with varied expertise cannot provide valuable input on a complex issue like affiliate transactions is overly simplistic. ETI demonstrated that Mr. Tucker

---

[24] State Agencies Init. Br. at 18-19.

[25] ETI Init. Br. at 10-11; ETI Ex. 7 (Considine Supp.) at 9-10.

provided real expertise that benefited the company in the presentation of its case. In other words, ETI proved the reasonableness of Mr. Tucker's expenses.

### b.          Costs Associated with "Lessons Learned"

In Docket 39896, ETI included several charges from its law firm, Duggins, Wren, Mann & Romero (Duggins Wren), for "lessons learned," as shown in a July 26, 2011 invoice from the law firm. The charges total $5,743.50.[26] According to ETI, the charges relate to a memo provided to ETI by the firm which contained a "detailed analysis of developments in ETI's last rate case as well as developments in four recent pertinent cases at the PUCT that had taken place since the last ETI rate case."[27] The memo identified procedural and substantive issues for ETI to consider while preparing its rate case in Docket 39896.[28]

State Agencies contend that any "lessons learned" should have already been learned in the prior rate case and, therefore, any "refreshing [of] the learning curve ... should be a shareholder, not ratepayer, expense. Bringing one's attorneys 'up to speed' for the third rate case filed in five years ought to be regarded as the legal equivalent of a 'luxury item.'"[29] No party other than State Agencies challenged the "lessons learned" expenses.

ETI responds by contending that State Agencies are essentially seeking to punish the company for its efforts to learn from the past. ETI also contends that State Agencies' argument would have the perverse effect of increasing, rather than decreasing rate case expenses. According to ETI:

---

[26] ETI Ex. 8 (Morris Direct) at 29-30.

[27] ETI Ex. 12 (Morris Rebuttal) at 28-29 (Attachment SFM-R-3).

[28] ETI Ex. 12 (Morris Rebuttal) at 28-29 (Attachment SFM-R-3).

[29] State Agencies Init. Br. at 19.

Incurring these costs to analyze lessons learned from litigating prior rate cases and important aspects of non-ETI Commission rate cases, if anything, reduces overall rate case expenses by supporting a more efficient case presentation and avoiding prior issues that lead to contention among the parties.[30]

The ALJ agrees and recommends that the "lessons learned" expenses be included in the rate case expenses. ETI demonstrated that the expenses were reasonable because they benefited the company in the presentation of its case.

### c.      ESI Depreciation Costs

ETI identified, as part of its "internal" rate case expenses, $207,683 in "Depreciation & Amort" expenses.[31] As explained by ETI witness Considine, the expenses are for the depreciation of assets (apparently office equipment) used by ESI employees who participated in the rate case.[32] Mr. Considine further testified that the costs were a reasonable and necessary part of ESI providing services for the rate case.[33]

State Agencies contend that recovery of such depreciation expenses should be denied because: (1) such a recovery is unprecedented; (2) ETI has failed to prove that the expenses were reasonable and necessary; and (3) the expenses were not "incurred" for the rate case. As to the last point, State Agencies explains: "ESI's depreciable property exists, and is presumably depreciated, whether or not proceedings in Texas take place. As such, this 'cost' was not necessary for ETI's participation in the rate case and should be disallowed."[34] No party other than State Agencies challenged the depreciation expenses.

---

[30]  ETI Init. Br. at 13.

[31]  ETI Ex. 7 (Considine Rebuttal) at 9-11 and Attachment MPC-R-1.

[32]  ETI Ex. 7 (Considine Rebuttal) at 11.

[33]  ETI Ex. 7 (Considine Rebuttal) at 11.

[34]  State Agencies Init. Br. at 20.

ETI responds by explaining that the costs at issue are "a loader to ESI labor costs covering depreciation on office expenses and capital." Notably, however, ETI also concedes that such costs would "typically [be] embedded in a vendor's labor costs billed to the Company."[35]

The ALJ recommends that the depreciation expenses be disallowed. ETI has not cited to any precedent which would justify the recovery of these apparently unusual rate case expenses. Moreover, ETI has failed to prove the reasonableness of the expenses under the more stringent standards that are applicable to affiliate expenses. As explained in *Railroad Comm'n v. Rio Grande Valley Gas Company*, unlike arms-length transactions, affiliate transactions "are clearly tainted with the possibility of self-dealing."[36] The Commission and the courts have consistently placed a greater burden of proof upon a utility company to prove the reasonableness of transactions with its affiliated companies because of the potential for self-dealing.

In this case, ETI is seeking reimbursement of $2.9 million for payments it made to its affiliate, ESI, for work done by ESI employees relevant to Docket 39896, *plus* $207,683 for depreciation of the assets used by the ESI employees in their work.[37] This is in stark contrast to its arms-length dealings with outside consultants. For example, ETI is seeking reimbursement for $2.4 million in expenses from Duggins Wren, but it is not also seeking to recover depreciation expenses for Duggins Wren's equipment. If the work done by ESI employees had, instead, been done by outside consultants, it is very doubtful that the outside consultants would also have expected an ETI payment for the depreciation of their equipment. Thus, the very nature of ETI's depreciation request calls its validity into question. Simply put, ETI has failed to establish that it is entitled to recover a depreciation expense related to an affiliate transaction because it would not similarly recover such an expense in an arms-length transaction with an unaffiliated company.

---

[35] ETI Init. Br. at 12.

[36] 683 S.W.2d 783, 786 (Tex. App.—Austin 1985, no pet.).

[37] ETI Ex. 7 (Considine Rebuttal) at Attachment MPC-R-1.

### d. Miscellaneous Internal Rate Case Expenses

Under the heading of "Internal Rate Case Expenses (Non-Payroll)," ETI seeks recovery of a number of categories of expenses. State Agencies challenge the following four categories:

- "business meals/entertainment" in the amount of $3,852;
- "other employee expenses" in the amount of $3,423;
- "employee mtgs/functions" in the amount of $7,762; and
- "utility bills" in the amount of $2,518.[38]

According to State Agencies, the justification for these charges has not been explained, nor are they reasonable and necessary. No other party challenged these expenses.

ETI responds by explaining, in great detail, where the supporting documentation can be found, within the company's exhibits, to justify each of the expenses.[39] Without repeating that discussion here, the ALJ is convinced that the evidence in the record supports the conclusion that the expenses are reasonable and should be recovered by ETI.

### e. Costs Associated with the Calpine-Carville PPA

In a "Recommendation" filed prior to the hearing in this matter, OPUC argued that the Commission should disallow the recovery of any rate case expenses associated with the regulatory approval of the Calpine-Carville Purchased Power Agreement (the Calpine-Carville PPA). In Docket 39896, ETI sought, and obtained, regulatory approval of the Calpine-Carville PPA. The affiliate expenses related to the contract were assigned to Project F3PPWET308. The Project F3PPWET308 costs were approved for recovery in Docket 39896.[40] As a result, OPUC

---

[38] ETI Ex. 7 (Considine Rebuttal) at Attachment MPC-R-1; *see also* State Agencies Init. Br. at 21.

[39] ETI Reply Br. at 23-24.

[40] *Application of Entergy Texas, Inc. for Authority to Change Rates, Reconcile Fuel Costs, and Obtain Deferred Accounting Treatment*, Docket 39896, Proposal for Decision at 236 (July 6, 2012).

contends that ETI has already recovered its expenses associated with the Calpine-Carville PPA and, if it were allowed to recovery those expenses again, it would be receiving a double recovery.[41] OPUC did not identify a specific dollar amount that it believes should be disallowed. Moreover, OPUC did not discuss this issue in any of its post-hearing briefing. In their post-hearing briefing, State Agencies "concurred" with OPUC's recommendation, but provided no discussion of the issue.[42]

ETI did discuss this issue in its post-hearing briefing. The company points out, correctly, that the Commission has already specifically rejected OPUC's double recovery argument. In Docket 39896, OPUC argued that the costs ETI sought related to the Calpine-Carville PPA should have been denied in that docket because they were, among other things, rate case expenses. The Commission specifically disagreed and allowed recovery of the costs in that docket.[43] In other words, because the Commission has already concluded that ETI did not recover any rate case expenses associated with the Calpine-Carville PPA in Docket 39896, the company will not be receiving a double recovery if it recovers such expenses in this docket.

Further, as explained by ETI witness Considine, costs were charged to Project F3PPWET308 (the internal project code for the Calpine-Carville PPA development costs) as the contract was being developed. Those costs were recovered in Docket 39896. On the other hand, costs were charged to Project F5PPETX011 (the internal project code for the rate case in Docket 39896) as testimony or other hearing-related work was performed for Docket 39896. According to ETI, it is only the latter costs, associated with Project F5PPETX011, that are being sought here. As a result, no double recovery will occur.[44] The ALJ concludes that ETI has the better argument on this issue, and

---

[41] *Application of Entergy Texas, Inc. for Rate Case Expenses Pertaining to PUC Docket No. 39896*, Docket 40295, OPUC's Recommendation and Request for Hearing at 2-3 (November 6, 2012).

[42] State Agencies Reply Br. at 20.

[43] *Application of Entergy Texas, Inc. for Authority to Change Rates, Reconcile Fuel Costs, and Obtain Deferred Accounting Treatment*, Docket 39896, Proposal for Decision at 236 (July 6, 2012).

[44] ETI Ex. 7 (Considine Rebuttal) at 7-9.

recommends that ETI be allowed to recover its rate case expenses associated with the Calpine-Carville PPA.

### f.     Specific Items That State Agencies Contend Cast Doubt on ETI's Overall Scrutiny of Its Expenses

State Agencies performed what they described as a number of "spot check" reviews of ETI's costs and identified several errors or items that they contend should be disallowed. Moreover, State Agencies contend that it is not only these specific items which should be disallowed. Rather, they argue that the flaws they have identified should cast doubt on the overall adequacy of the internal review process utilized by ETI in quantifying its rate case expenses. According to State Agencies, "[i]dentification of these questionable costs underscores the need for conservative, rather than liberal, standards for allowing rate case expenses."[45] Similarly, State Agencies argue that these items demonstrate ETI's "lack of diligence in exercising basic economic restraint."[46]

Staff agrees that State Agencies' examination of these issues "call[s] into question the thoroughness of ETI's review of its rate case expenses."[47] Staff further points out that, because the testimony of ETI witness Considine (who was the company's prime witness supporting the reasonableness of its internal rate case expenses) contained "mistakes that he was engaged to identify," his testimony "is of limited value."[48] In its Reply Brief, Staff reiterates: "Staff shares the concerns raised by State Agencies regarding the adequacy of ETI's review of its rate case expenses."[49] Similarly, OPUC agrees that State Agencies' examples illustrate that, as to rate case expenses, ETI did not act as a prudent gatekeeper.[50]

---

[45]  State Agencies Init. Br. at 7.

[46]  State Agencies Reply Br. at 9.

[47]  Staff Init. Br. at 12.

[48]  Staff Init. Br. at 12.

[49]  Staff Reply Br. at 9.

[50]  OPUC Init. Br. at 1.

### (1)     External Legal Fees

ETI seeks to recover roughly $2.4 million in legal fees paid to the Duggins Wren law firm.[51] State Agencies argue that this amount should be reduced. ETI witness Stephen Morris was hired to review ETI's external legal expenses and testify about the reasonableness of those expenses.[52] State Agencies question the objectivity, quality, and extent of Mr. Morris' review. For example, State Agencies point out that, rather than being retained by ETI, he was retained by Duggins Wren, the firm whose fees he was to review.[53] Staff agrees that this arrangement "likely undermined Mr. Morris' objectivity."[54]

State Agencies also contend that, based upon his invoices, Mr. Morris spent only a "minimal" amount of time reviewing Duggins Wren's bills.[55] Yet, by State Agencies' own reckoning, Mr. Morris and his associate spent roughly 21 hours reviewing Duggins Wren bills.[56] Mr. Morris testified as to the reasonableness of the hourly rates charged by Duggins Wren. State Agencies argue, however, that Mr. Morris' focus was too narrow and he should have, instead, been critical of the fact that too many Duggins Wren attorneys, twelve, were involved in the case.[57] State Agencies are also critical of the fact that Mr. Morris apparently did not scrutinize Duggins Wren's bills for duplicative legal work. For example, State Agencies point out that on April 25, 2012, a day from the hearing in Docket 39896, five Duggins Wren attorneys billed a total of 26.3 hours for a hearing day that lasted less than seven hours and in which in-house ETI lawyers defended many of the witnesses. On the next day, April 26, six Duggins Wren attorneys billed a total of 24.4 hours for a hearing day that lasted less than eight hours and in which only three Duggins Wren attorneys participated.[58] State

---

[51] ETI Ex. 7 (Considine Rebuttal) at Attachment MPC-R-1.

[52] ETI Ex. 8 (Morris Direct) at 2.

[53] State Agencies Init. Br. at 10.

[54] Staff Reply Br. at 9.

[55] State Agencies Init. Br. at 10.

[56] State Agencies Init. Br. at 12.

[57] State Agencies Init. Br. at 9.

[58] State Agencies Init. Br. at 13.

Agencies contend that "a reduction is in order" for the Duggins Wren costs, but do not suggest what size the reduction should be.

ETI responds by defending the reasonableness of the Duggins Wren costs. For one thing, ETI points out that the $2.4 million in legal fees paid to Duggins Wren includes fees and expenses for five consultants billed through Duggins Wren without mark-up.[59] Additionally, ETI explains that the huge scope of the hearing necessitated substantial legal work. ETI presented 39 witnesses who discussed hundreds of categories of costs. ETI points out that while it used the services of 12 attorneys, they were opposed by 15 attorneys: four for Staff; three for TIEC; three for Cities; and one each for State Agencies, OPUC, U.S. Department of Energy, Kroger, and Wal-Mart.[60]

The ALJ is unswayed by State Agencies' arguments. Given the size and complexity of Docket 39896, the legal costs involved do not appear to be inordinate. Mr. Morris testified, credibly, that the fees and expenses charged by Duggins Wren were reasonable and necessary. The ALJ does not recommend any reduction of the fees in response to State Agencies' arguments.

### (2)     Meals and Snacks

State Agencies identified 19 entries in Duggins Wren invoices whereby the firm charged ETI for meals or snacks. According to State Agencies, most of these purchases occurred during business hours and involved only law firm personnel. ETI personnel were only occasionally involved in these purchases. Almost all of the charges were for meals or snacks delivered to Duggins Wren's offices. The purchases total $2,723.54.[61] State Agencies contend that these costs were not necessary for participation in Docket 39896 and should be disallowed.

---

[59] ETI Reply Br. at 19; ETI Ex. 6 (Considine Supp.) at 8.

[60] ETI Reply Br. at 19.

[61] State Agencies Init. Br. at 14-15.

Moreover, State Agencies point out that Duggins Wren is applying a different standard to itself than it applies to its own contractors. Pursuant to the contract by which Duggins Wren hired Mr. Morris, meals while he or his staff are located at his office are not reimbursable.[62] Thus, State Agencies conclude that Duggins Wren should be held to the same standard when passing on rate case expenses for office meals, beverages, and snacks.[63]

ETI responds by pointing out that the charges were not done routinely, but only when necessary to enable personnel "to work over lunch and dinner to meet certain deadlines . . . and as an alternative to purchasing reimbursable meals at restaurants when out-of-town members of the rate case team worked in Austin."[64] ETI describes the expenses as a reasonable part of prosecuting a laborious rate case. The ALJ agrees and does not recommend any disallowance of these costs.

### (3)    Courier and Taxi Services

State Agencies identified 20 dates in Duggins Wren invoices whereby the firm charged ETI for courier, taxi, or Federal Express charges for delivery of documents that State Agencies argue could have been delivered electronically. The charges total $1,004.52.[65] State Agencies contend that these costs were not necessary for participation in Docket 39896 and should be disallowed. State Agencies again point out that Duggins Wren is applying a different standard to itself than it applies to its own contractors. The contract by which Duggins Wren hired Mr. Morris states that "advances in technology, specifically transmission of information and documentation by e-mail, scanning, . . . etc. have made routine . . . delivery of hard copy documents less critical and, in many

---

[62]  State Agencies Ex. 15 at. 3.

[63]  State Agencies Init. Br. at 14.

[64]  ETI Reply Br. at 20.

[65]  State Agencies Init. Br. at 16-17.

cases, unnecessary."[66] Thus, State Agencies conclude that Duggins Wren should be held to the same standard when passing on rate case expenses for document delivery.[67]

ETI responds by explaining the context of many of the charges. For example, two of the three cab fares were for a paralegal to attend and transport voluminous documents to the hearing, and the third was to transport the same paralegal to the Commission for legal research.[68] As to the courier and FedEx charges, ETI points out that Commission rules *require* some types of documents to be physically delivered for filing, and that the use of couriers and FedEx is sometimes entirely appropriate. ETI argues that it was "completely reasonable" for ETI to have incurred roughly $1,000 in courier and FedEx charges over the course of a rate case of the size and scope of Docket 39896. The ALJ agrees and recommends no disallowance of these charges.

### (4) Meals Over $25

ETI asserts that its intent was to exclude from its rate case expenses any meals above $25 per person.[69] State Agencies have, however, identified at least six meals above $25 that were erroneously included as a part of ETI's rate case expenses.[70] ETI admits that at least some of these charges were included in error.[71] ETI disputes, however, the notion that these errors should call into question the overall reliability of its rate case expenses.

The ALJ agrees with ETI. This was a large case with a large number of expenses. The relatively few errors with respect to meals uncovered by State Agencies do not lead the ALJ to doubt the overall accuracy of ETI's accounting. Nevertheless, by the ALJ's reckoning, the total amount

---

[66] State Agencies Ex. 15 at 4.

[67] State Agencies Init. Br. at 16.

[68] ETI Reply Br. at 20.

[69] State Agencies Ex. 5.

[70] State Agencies Exs. 1, 12; State Agencies Reply Br. at Atts. 3, 6.

[71] Tr. at 40.

that should be disallowed for meals over $25 (*i.e.*, the amount by which the meals exceeded $25/meal) is $281.04.

### (5)    Clothing and Laundry Service

State Agencies identified, as part of ETI's requested rate case expenses, a $10.44 invoice from a Duggins Wren attorney for the purchase of a shirt and socks "due to unexpected extended stay."[72] Similarly, OPUC contests a $40.33 laundry charge incurred by the same attorney for the same reason.[73] ETI witness Considine generally agreed that clothing charges by attorneys working on the rate case should not be passed through to ratepayers as a rate case expense.[74]

ETI argues that the expenses were reasonable because they were brought about by an unplanned, but necessary, extension of the attorney's business trip.[75] Mr. Morris testified that such expenses can be considered reasonable.[76] Nevertheless, ETI has agreed to no longer request reimbursement for the $10.44 clothing charge. Because laundry has to be done regardless of where one finds oneself, the ALJ recommends that the $40.33 laundry charge likewise be disallowed.

### (6)    Airfare and Lodging

State Agencies identify several charges for airfare by ETI employees or consultants that were in the $500 to $650 range. State Agencies fault ETI for not controlling costs by securing discount, or at least more economical, fares.[77] Similarly, State Agencies complain that, too often, ETI employees or consultants "went 'first class' on accommodations," incurring charges of more than $200 per night

---

[72] State Agencies Ex. 17 at 20.

[73] OPUC Init. Br. at 1-2.

[74] Tr. at 43.

[75] ETI Reply Br. at 22.

[76] Tr. at 67-68.

[77] State Agencies Reply Br. at 11-12.

and, on occasion, $300 per night. State Agencies also complain of inadequate documentation of lodging charges, pointing to a $479.55 lodging charge without any underlying receipts.[78] ETI makes no response to these complaints.

The ALJ acknowledges that these complaints raise a legitimate concern. It is human nature to be more carefree with "other people's money" than with one's own. The complaints raised by State Agencies suggest that ETI may have been more lax with its spending because it believed that airfare and lodging expenses would ultimately be borne by its ratepayers. Nevertheless, other than for the $479.55 lodging charge, State Agencies' complaints are too vague and unproven to justify any specific disallowance recommendations by the ALJ. For example, although it might not always cost $600 to get from Point A to Point B, such a fare might be unavoidable under certain circumstances. Without evidence in the record demonstrating that ETI paid $600 for an airfare when a cheaper fare was available, the ALJ cannot conclude that the fare was unreasonable. The same logic applies to the lodging complaints. Accordingly, the ALJ recommends no large disallowances related to airfare and lodging charges, but does recommend disallowing the $479.55 lodging charge that is unsupported by receipts.

## 2. Challenges to Specific ETI Rate Case Expenses That are Difficult to Quantify

### a. Financially-Based Incentive Compensation

One of the hotly contested issues in Docket 39896 concerned ETI's request to recover, through its rates, incentive compensation paid to its employees that was tied to the company's financial goals (financially-based incentive compensation). In Docket 39896, all parties, including ETI, agreed that Commission precedent mandated that financially-based incentive compensation is not recoverable. Nevertheless, in its application, ETI asked the Commission to reconsider its precedents on this issue. ETI contended that the reason why cost recovery had been denied for financially-based incentive compensation in prior rates cases was that, in those prior cases, there was

---

[78] State Agencies Reply Br. at 13-14.

a lack of evidence showing sufficient benefits to ratepayers. ETI asserted that it assembled evidence not previously considered by the Commission showing the benefits to ratepayers of using financial measures in incentive compensation programs.

All of the other parties in Docket 39896 opposed ETI's efforts to recover the costs of its financially-based incentive compensation, uniformly agreeing that the Commission has a well-established and straightforward policy that incentive compensation tied to financial goals is not recoverable. In the PFD in Docket 39896, the ALJs concluded that ETI should not be entitled to recover its financially-based incentive compensation costs:

> Simply put, the ALJs conclude that ETI has failed to establish a sufficient justification for overturning the well-established Commission policy that financially based incentive compensation is not recoverable.[79]

The Commission agreed and ordered that $6,196,037 plus associated FICA taxes (representing ETI's financially-based incentive compensation payments) should be removed from ETI's Operating and Maintenance (O&M) expenses, and $335,752.96 (representing ETI's capitalized incentive compensation that was financially-based) should be excluded from ETI's rate base.[80]

In this docket, Staff, State Agencies, and OPUC contend that ETI should not be entitled to recover any rate case expenses it incurred in attempting to recover its financially-based incentive costs in Docket 39896. For example, Staff argues that, by challenging "overwhelming Commission precedent," ETI did not act reasonably when it incurred expenses litigating for recovery of its financially-based incentive costs.[81] Staff contends that the Commission has such an "unequivocal" history of denying recovery for financially-based incentive payments that "ETI should have known

---

[79] *Application of Entergy Texas, Inc. for Authority to Change Rates, Reconcile Fuel Costs, and Obtain Deferred Accounting Treatment*, Docket 39896, Proposal for Decision at 236 (July 6, 2012).

[80] *Application of Entergy Texas, Inc. for Authority to Change Rates, Reconcile Fuel Costs, and Obtain Deferred Accounting Treatment*, Docket 39896, Order on Rehearing at 17-18, 24-25 (November 1, 2012)

[81] Staff Reply Br. at 5; *see also* Staff Init. Br. at 7-10.

that litigating a position opposed to [it] was not a reasonable use of resources."[82]  State Agencies point out that Docket 39896 was merely the latest of three recent cases in which ETI sought, but failed to obtain, authority to charge ratepayers for its financially-based incentive costs (the others being Dockets 34800 and 37744).[83]

ETI defends its decision to seek to recover financially-based incentive costs in Docket 39896 by contending that the issue of the compensability of such costs is undergoing "continuing clarification" at the Commission.[84]  Moreover, ETI suggests that, in open meetings, "Commissioners" have expressed some concern with the Commission's precedents on this issue and suggested recovery might be allowed in a "properly organized and evidenced" case.[85]  Finally, ETI points to a recent SOAH order in an on-going SWEPCO rate case in which the ALJs denied State Agencies' attempt to have stricken testimony proffered by SWEPCO regarding financially-based incentive compensation.[86]

The ALJ agrees with Staff, State Agencies, and OPUC.  It was obvious throughout the hearing in Docket 39896 that ETI was taking an aggressive position and making a "long-shot" argument in seeking recovery for its financially-based incentive compensation.[87]  In its briefing in the present case, ETI cites to a number of cases in which, over the years, other utilities have requested recovery of financially-based incentive compensation. These examples, however, hurt ETI's cause more than they help it because all of the requests were unanimously denied by the Commission. This hardly suggests that the issue is undergoing "continuing clarification." Likewise, ETI's suggestion that "Commissioners" have expressed some concern with the Commission precedent overstates and distorts the facts.  The statements relied upon by ETI came from a single Commissioner,

---

[82]  Staff Init. Br. at 8.

[83]  State Agencies Init. Br. at 7-8.

[84]  ETI Init. Br. at 7.

[85]  ETI Init. Br. at 7; ETI Ex. 12 (Morris Rebuttal) at 5-6.

[86]  *Application of Southwestern Electric Power Company for Authority to Change Rates and Reconcile Fuel Costs*, Docket No. 40443, SOAH Order No. 17 (Dec. 13, 2012).

[87]  The ALJ in the present case was also one of the presiding ALJs in Docket 39896.

Mr. Anderson, not multiple Commissioners. Moreover, in that statement, Commissioner Anderson only obliquely implied that he might prefer to allow recovery for financially-based incentive costs, but he agreed that Commission precedent mandates otherwise, and the Commission voted unanimously to disallow such costs in the case before them. Additionally, Commissioner Anderson has stated that, if the Commission were to ever discontinue "such a long and accepted precedent," it should do so through "rulemaking" rather than "do it in a particular case."[88]

Finally, ETI's reliance on the recent SOAH order in the SWEPCO case is similarly misplaced. In that order, the ALJs effectively held that SWEPCO was not *legally precluded* from seeking recovery for its financially-based incentive compensation. It is one thing to acknowledge that a utility has a legal right to pursue a long-shot theory. It is another thing entirely, however, to hold that the ratepayers must pay the costs of the utility's pursuit of that long-shot.

Simply put, the ALJ concludes that ETI did not act reasonably when it incurred expenses litigating for recovery of its financially-based incentive costs in the face of clear and consistent precedent to the contrary on the issue. As such, the ALJ recommends that ETI's expenses be cut by some amount to account for this issue. The problem then becomes how to quantify the size of the disallowance. A few of ETI's expenses relating to the pursuit of its financially-based incentive compensation are clear. ETI utilized the services of Dr. Jay Hartzell as an expert witness on this issue. In total, ETI paid Dr. Hartzell at least $12,825 in consulting fees, plus $13,680 in legal fees related to the preparation of his testimony.[89] This, however, does not capture ETI's entire cost of litigating the issue of financially-based incentive compensation. Substantial costs were incurred, for example, in discussing the issue at the hearing and in post-hearing briefing. These additional amounts are not in the record. In Section IV.C.3 of this PFD, below, the ALJ discusses various possible approaches for reducing the amount of rate case expenses recovered by ETI to account for the financially-based incentive compensation issue.

---

[88] Staff Reply Br. at 6; OPUC Ex. 3; Open Meeting Tr. at 190 (July 30, 2009).

[89] ETI Ex. 10 (Morris Supp. Direct) at 15-16; State Agencies Ex. 3.

### b.     Transmission Equalization (MSS-2) Expenses

Another of the hotly contested issues in Docket 39896 concerned ETI's request to recover, through its rates, roughly $9 million more for transmission equalization payments than it actually paid in the Test Year. ETI is one of several "Entergy Operating Companies" that shares usage of an Entergy transmission grid. Payments for use of the grid (the transmission equalization payments) are made among the Entergy Operating Companies based upon a highly complex formula set out in the "MSS-2" agreement.

In the Test Year at issue in Docket 39896, ETI made transmission equalization payments totaling roughly $1.7 million. Rather than seeking to recover only $1.7 million, however, ETI sought to recover roughly $10.7 million, which it claimed represented its anticipated transmission equalization payments in the Rate Year. ETI claimed the additional $9 million was based on the company's estimates of transmission construction projects that were expected to have been completed by or during the Rate Year.

All other parties in Docket 39896 opposed ETI's effort to recover more than its Test Year expenses. The ALJs concluded that ETI failed to meet its burden to prove that its proposed Rate Year MSS-2 costs were known and measurable.[90] The Commission agreed and ordered that only ETI's Test Year costs should be counted.[91] The Commission described ETI's projection of its Rate Year expenses as "uncertain and speculative."[92]

In this docket, Staff, OPUC, and State Agencies contend that ETI should not be entitled to recover any rate case expenses it incurred in attempting to recover the additional $9 million in

---

[90] *Application of Entergy Texas, Inc. for Authority to Change Rates, Reconcile Fuel Costs, and Obtain Deferred Accounting Treatment*, Docket 39896, Proposal for Decision at 116 (July 6, 2012).

[91] *Application of Entergy Texas, Inc. for Authority to Change Rates, Reconcile Fuel Costs, and Obtain Deferred Accounting Treatment*, Docket 39896, Order on Rehearing at 20-21, FOFs 87-94 (November 1, 2012).

[92] *Application of Entergy Texas, Inc. for Authority to Change Rates, Reconcile Fuel Costs, and Obtain Deferred Accounting Treatment*, Docket 39896, Order on Rehearing at 20, FOF 90 (November 1, 2012).

projected transmission equalization payments.[93] As explained by Staff: "It was clearly unreasonable for ETI to have sought recovery for [its projected Rate Year costs] due to the exceedingly speculative nature of those costs, and therefore a disallowance to its requested rate case expense amount should be imposed."[94] OPUC witness Nathan Benedict testified that, by seeking the additional $9 million, ETI was, in effect, challenging the precedent that post-Test Year adjustments must be known and measurable.[95]

ETI responds by first disputing the notion that it was "challenging precedent" by seeking the additional $9 million.

> ETI did not incur rate case expenses in pursuit of a position contrary to the well-established 'known and measurable' standard for PTYAs [post Test Year adjustments]. Rather, the Commission disagreed that the evidence put forth by ETI *met* that standard. This is a very important distinction. Finding that evidence put forth by a utility did not meet an established standard does not equate to a finding that the utility unreasonably contested the *applicability* of such standard.[96]

ETI further points out that the evidence in the record supported its contention that its actual post-Test Year transmission equalization payments were on an upward trend.[97]

The ALJ recommends that ETI's rate case expenses associated with its pursuit of the additional $9 million for post-Test Year transmission equalization payments be disallowed. The ALJ acknowledges the distinction made by ETI: It sought not to challenge the "known and measurable" precedent, but merely failed to meet the standard. In this regard, ETI's position as to transmission equalization payments was perhaps less controversial than its position as to financially-based incentive compensation. Nevertheless, ETI took another "long-shot" position as to its transmission equalization payments. Its claim was based on future transmission construction projects that might

---

[93] OPUC Init. Br. at 9-10, 12; Staff Init. Br. at 13; State Agencies Reply Br. at 17.

[94] Staff Init. Br. at 13.

[95] OPUC Ex. 1 (Benedict Direct) at 7-8.

[96] ETI Init. Br. at 8 (emphasis in original, footnotes omitted).

[97] ETI Reply Br. at 16.

never be undertaken and that were found by the Commission to have been speculative. Accordingly, the ALJ concludes that ETI did not act reasonably when it litigated the issue, and recommends that ETI's expenses related to this issue not be passed on to the ratepayers.

Having concluded that these rate case expenses should not be paid by the ratepayers, the problem again becomes how to quantify the expenses. ETI did not structure its rate case expenses in such a manner as to make it possible to determine how much of the expenses were incurred in pursuing the additional $9 million in transmission equalization payments.[98] In Section IV.C.3 of this PFD, below, the ALJ discusses various possible approaches for reducing the amount of rate case expenses recovered by ETI to account for the transmission equalization payments issue.

### c.      Purchased Power Capacity Rider

In Docket 39896, ETI initially requested a Purchased Power Capacity Rider (PPCR), instead of including purchased capacity costs in base rates. The Commission, however, rejected the PPCR request in a Supplemental Preliminary Order on the grounds that the Commission already had a then-pending rulemaking effort underway to determine the structure of such a rider for all generating utilities.[99]

In this docket, Staff, OPUC, and State Agencies argue that ETI should not be entitled to recover any rate case expenses it incurred in attempting to secure a PPCR because it was too speculative in light of the pending rulemaking effort.[100]

ETI responds by contending that the mere fact that there was a rulemaking effort underway with respect to PPCRs did not mean that ETI was somehow precluded from seeking a PPCR through its application.   Moreover, ETI notes that, in briefing during Docket 39896, Staff, State Agencies,

---

[98]  Tr. at 45-46.

[99]  *Application of Entergy Texas, Inc. for Authority to Change Rates, Reconcile Fuel Costs, and Obtain Deferred Accounting Treatment*, Docket 39896, Supplemental Preliminary Order at 2 (Jan. 9, 2012).

[100]  OPUC Init. Br. at 10; Staff Init. Br. at 14 and Reply Br. at 8-9; State Agencies Reply Br. at 17.

and TIEC all took the position that there was no legal impediment to ETI's seeking a PPCR in the rate case.[101]

The ALJ agrees with ETI and does not recommend any disallowances in relation to the PPCR request. The fact that there was a pending proposed rule at the time ETI asked for the rider should not be viewed as precluding ETI's request. Indeed, the very uncertainty inherent in the rulemaking process suggested that the accepted practices with regard to purchased capacity costs were in a state of flux and, therefore, it was reasonable for ETI to pursue the rider.

### 3.    Proportional Reduction

In addition to the above challenges to specific items of expense incurred by ETI, a number of parties raised more generic concerns about the company's rate case expenses. State Agencies expressed concern that, as a general matter, rate case expenses in cases before the Commission appear to be "getting out of hand."[102] Staff "firmly agrees" with this concern.[103] State Agencies worry that utilities have no incentive to minimize the number of rate case proceedings or the efficiency of rate case presentation because they assume their costs will simply be passed on to ratepayers.[104] State Agencies urge the Commission to allocate rate case expenses in such a way that incentivizes utilities to more productively and efficiently use their time in rate cases.[105] OPUC agrees that the standard for evaluating the amount of rate cases expenses to be reimbursed ought to be structured so as to give a utility pause before deciding to pursue overly aggressive or novel arguments.[106]

---

[101]  ETI Reply Br. at 16-17.

[102]  State Agencies Init. Br. at 1-2.

[103]  Staff Reply Br. at 13.

[104]  State Agencies Init. Br. at 1-2.

[105]  State Agencies Init. Br. at 5.

[106]  OPUC Init. Br. at 8.

Along these same lines, Staff and OPUC expressed concern about the frequency of ETI rate cases over recent years. Docket 39896 was the third ETI rate case in four years. Each case resulted in a rate increase and an obligation for the ratepayers to pay ETI's rate case expenses.[107] Staff and OPUC also expressed concern about the overall size of the rate case expenses in relation to the outcome of the underlying rate case. Total rate case expenses ($8.8 million) equal roughly one-third of the total approved rate increase ($27.7 million).[108] Staff, State Agencies, and OPUC all expressed the concern that ETI did not provide good stewardship in incurring rate case expenses.[109]

In order to address these concerns, the parties have suggested a number of methodologies for reducing the rate case expenses.

- **The 50/50 approach.** State Agencies advocate two approaches for reducing the level of recovery of rate case expenses. State Agencies' primary recommendation is that ratepayers be charged for only 50% of total rate case expenses. State Agencies argue that this approach would recognize that shareholders, who reap benefits from a rate increase, ought to also share in the cost of obtaining that rate increase.[110]

- **The Results-Obtained Approach.** Alternatively, State Agencies advocate allowing ETI to recover only 26.4% of its rate case expenses, which is the ratio between the rate increase obtained in Docket 39896 ($27.7 million) and the increase sought by ETI ($104.8 million). In other words, because ETI obtained only 26.4% of the rate increase it sought, State Agencies contend that ETI similarly ought to be reimbursed for only 26.4% of its rate case expenses.[111] OPUC also advocates this approach.[112]

- **The Issue-Specific Reduction Approach.** Alternatively, OPUC and Staff advocate an approach whereby ETI's recovery of rate case expenses is reduced by the ratio between the amounts unsuccessfully sought by ETI for financially-based incentive payments and transmission equalization payments and the rate increase sought by ETI. ETI unsuccessfully sought financially-based incentive payments of $6.5

---

[107] Staff Init. Br. at 3; OPUC Init. Br. at 2-3, 7-8.

[108] Staff Init. Br. at 4; OPUC Init. Br. at 7.

[109] *See, e.g.*, Staff Reply Br. at 13.

[110] State Agencies Init. Br. at 3,

[111] State Agencies Init. Br. at 3, 22.

[112] OPUC Init. Br. at 11.

million, and transmission equalization payments of $9 million, for a total of $15.5 million. ETI sought a total rate increase of $104.8 million. Under this approach, $15.5 million would be divided by $104.8 million to arrive at a reduction factor of 14.8%. Thus, ETI's rate case expenses would be reduced by 14.8%.[113]

Not surprisingly, ETI vigorously opposes all of these approaches.

The ALJ agrees with the general concerns raised by Staff, State Agencies, and OPUC, and believes that a substantial cut to ETI's rate case expenses is warranted. Before evaluating the merits of the various approaches, however, it is helpful to revisit the applicable law relative to rate case expenses.

As noted previously, pursuant to PURA Section 36.061(b), the Commission "may" allow a utility to recover its "reasonable costs of participating in a [ratemaking proceeding] not to exceed the amount approved" by the Commission. This verbiage indicates that the Commission can approve some amount that is *less* than the reasonable costs. Section 36.061(b) vests the Commission with "broad discretion" to determine the amount of rate cases expenses that should be recovered,[114] and its determination can be set aside only if it acts without reference to guiding rules or principles.[115] There is precedent, albeit from a different agency, suggesting that it is within the agency's discretion to find overall rate case expenses to be unreasonable even if the underlying individual cost items are found to be reasonable.[116] Because Section 36.061(b) states that rate case expenses "may" be recovered, OPUC contends (and the ALJ agrees) that the Commission is not required to grant

---

[113] OPUC Init. Br. at 12; Staff Reply Br. at 3. OPUC identifies the reduction factor as 14.5%. However, the ALJ believes this is in error. OPUC witness Benedict testified that the financially-based incentive payments were **$6.2 million** and the transmission equalization payments were $9 million, for a total of $15.2 million. Tr. at 85-86. By dividing $15.2 million by $104.8 million, one arrives at a reduction factor of 14.5%. However, the Commission disallowed $6.2 million in financially-based incentive compensation, *plus* $336,000 of ETI's capitalized financially-based incentive compensation, for a total of **$6.5** million in disallowances related to financially-based incentive payments. *Application of Entergy Texas, Inc. for Authority to Change Rates, Reconcile Fuel Costs, and Obtain Deferred Accounting Treatment*, Docket 39896, Order on Rehearing at 17-18, 24-25 (November 1, 2012).

[114] *City of El Paso v. Public Util. Comm'n*, 916 S.W.2d 515, 522 (Tex. App.-Austin 1995, writ dism'd by agr.).

[115] *City of Amarillo v. Railroad Comm'n of Texas*, 894 S.W.2d 491, 495 (Tex. App.-Austin 1995, writ den.).

[116] *City of Port Neches v. Railroad Comm'n of Texas*, 212 S.W.3d 565, 581 (Tex. App.-Austin 2006, no pet.)

recovery of every reasonable expense and can take into account other considerations. As explained by OPUC, "[w]ithout this discretion, rate case expense proceedings would be rendered into mere accounting exercises."[117] A number of factors--such as the time and labor required; the nature of the case; the size of the interest at stake; and the benefits to the client--have been deemed relevant to determining the reasonableness of rate case expenses.[118] Moreover, the parties agree that Rule 1.04(b) of the Texas Disciplinary Rules of Professional Conduct also provides a number of factors that can be considered when determining reasonableness of rate case expenses.[119]

With these basic parameters in mind, the ALJ turns to evaluating the three approaches outlined above. The ALJ begins by rejecting the 50/50 Approach. ETI and Staff argue that the approach is contrary to Commission precedent.[120] The ALJ agrees. Given that there are clear Commission precedents rejecting this approach, the ALJ recommends that it be rejected here.

The ALJ also recommends rejection of the Results-Obtained Approach, while acknowledging that it has some strong arguments in its favor. ETI argues that the approach is counter to Commission precedent.[121] However, according to Staff, the approach has been neither adopted nor rejected by the Commission. In other words, it is an issue of first impression.[122] OPUC and State Agencies support the use of this approach. It is unclear whether Staff explicitly supports this approach. However, Staff describes it as an "appealing" methodology "because it would provide a utility an incentive not to overreach in its rate increase request."[123] Moreover, Staff argues that the methodology is akin to the performance-based standards regarding generation plant performance that

---

[117] OPUC Init. Br. at 11.

[118] *City of El Paso*, 916 S.W.2d at 522.

[119] ETI Ex. 8 (Morris Direct) at 18-19.

[120] Staff Init. Br. at 10; ETI Init. Br. at 19-20.

[121] ETI Init. Br. at 14.

[122] Staff Init. Br. at 10.

[123] Staff Init. Br. at 12.

the Commission has approved in the past. For these reasons, Staff concludes that the Commission has the legal authority to apply the Results-Obtained Approach in this case.[124]

ETI complains, however, that it is a punitive and hindsight-driven approach to cost recovery, rather than basing cost recovery on whether a utility acted reasonably at the time it incurred such costs.[125] This is the primary reason why the ALJ recommends against the Results-Obtained Approach. Because it is an issue of first impression, ETI had no prior notice that its rate case expenses might be subject to such a standard. The ALJ simply believes it would be unacceptably draconian to slash ETI's rate case expenses by 73.6% based upon a standard that ETI could not have known, beforehand, would be applied to it.

The ALJ recommends adoption of the Issue-Specific Reduction Approach in this case. Staff, OPUC, and State Agencies all support its use. ETI argues that use of the approach is unprecedented.[126] Staff counters (and the ALJ agrees) that, far from being unprecedented, the approach is entirely consistent with Commission precedent because the disallowance is a result of specific, unreasonable actions by ETI.[127]

ETI argues that the Issue-Specific Reduction Approach is improper because there is no evidence that the 14.8% reduction equals the amount of expenses it incurred pursuing financially-based incentive costs and transmission equalization payments.[128] Staff counters (and the ALJ agrees) that ETI bore the burden of proving its reasonable expenses, and that burden necessarily requires that it separate out any unreasonable expenses. Having failed to do so with respect to financially-based

---

[124] Staff Init. Br. at 11.

[125] ETI Init. Br. at 17.

[126] ETI Init. Br. at 19.

[127] Staff Init. Br. at 14.

[128] ETI Init. Br. at 18.

incentives and transmission equalization payments, it is reasonable for the Commission to use the Issue-Specific Reduction Approach as a proxy for calculating those expenses.[129]

There is also a point of disagreement as to the proper application of the Issue-Specific Reduction Approach. ETI argues that the proponents of the approach are using the wrong denominator in its formulation. Rather than dividing $15.5 million by $104.8 million (the size of the *rate increase* sought by ETI), ETI asserts that $15.5 million ought to be divided by $2.1 billion (the size of *all* of ETI's costs). ETI explains that, in Docket 39896, it was obligated to prove all of its costs, not just the amount of the increase it sought. Under such a formula, the reduction factor would be less than 1%.[130] As pointed out by Staff and OPUC,[131] ETI's reasoning is flawed. The entire purpose of this proceeding was for ETI to obtain a rate increase, not to preserve its preexisting rates. Indeed, the petition is styled "Application . . . for Authority to *Change* Rates . . . ."[132] There would have been no need for a rate case if ETI merely sought approval of the same level of revenue approved in the last rate case. Because a revenue increase was the driving factor for this case, the amount of revenue increase requested is the appropriate benchmark to compare against disallowances.

Having concluded that the Issue-Specific Reduction Approach should be utilized in this case, the ALJ now discusses the application of the formula to the rate case expenses. As explained in the second paragraph of Section IV.C of this PFD, in order to take into account the $75,800 of estimated expenses for Cities, the ALJ recommends increasing ETI's overall rate case expenses request to $8,828,345. From that amount, the ALJ subtracts the specific disallowances discussed in Section IV.C.1 of this PFD:

---

[129] Staff Init. Br. at 15.

[130] ETI Init. Br. at 18.

[131] Staff Reply Br. at 12; OPUC Reply Br. at 4-5.

[132] Emphasis added.

- $207,683 for depreciation;

- $281 meals over $25;

- $10 for clothing;

- $40 for laundry service; and

- $480 lodging.

This leaves a balance of $8,619,851. When that balance is reduced by 14.8%, the remainder is $7,344,113. It is this amount of rate case expenses that the ALJ recommends ETI be allowed to recover.

## D.    Recovery Method

### 1.    Rate Case Expense Allocation and the Recovery Mechanism

ETI proposes to allocate the approved rate case expenses among its retail classes using a revenue allocator based upon ETI's pro forma Test Year revenues. Staff proposes, instead, that the allocation be based on each retail rate classes's revenue requirement as approved by the Commission. Staff argues that its approach would be more consistent with recent Commission precedent.[133] Staff's specific recommendation is as follows:

> [T]hat ETI's Schedule RCE-2 rates be set in the compliance phase of this proceeding by multiplying the approved total amount by Staff's recommended class allocator and dividing the resulting class share both by ETI's proposed three-year amortization period and also by ETI's proposed class billing determinants.[134]

---

[133] Staff Init. Br. at 17; Staff Ex. 1 (Murphy Direct) at 4-5.

[134] Staff Ex. 1 (Murphy Direct) at 5.

Staff further recommends that ETI be required to track its collections on Rider RCE and terminate billing in the month in which the approved amount has been billed.[135] ETI does not object to Staff's approach to allocation, so long as the Commission's final order includes standard language allowing the company to seek recovery of any additional rate case expenses incurred after September 30, 2012, in its subsequent rate case.[136] Staff does not object to this request by ETI.[137] No other party objects to this approach, and the ALJ can find no reason to do so either.

## 2.    ETI's Request to Earn a Return on the Unpaid Balance of Rate Case Expenses

ETI asks that it be allowed to recover its rate case expenses over three years, and that it be allowed to recover a return on the unpaid balance of the expenses during that time.[138] No party objects to the three-year duration, but Staff opposes ETI's request to earn interest on its rate case expenses, contending that the Commission has consistently refused the recovery of a return on unamortized rate case expenses.[139] State Agencies agree with Staff.[140]

ETI responds by arguing that it is simply seeking to recover a necessary component of a cost that is amortized over a period of time. According to ETI, the request for a return on the unpaid balance merely represents the time value of money and the cost of the company's lost opportunity to use the funds elsewhere.[141] ETI cites to several Commission precedents in which a utility was allowed to recover interest on various cost-of-service items, including Docket 39896, in which ETI was allowed to earn a return on the unamortized balance of its Hurricane Rita Regulatory Asset over

---

[135] Staff Ex. 1 (Murphy Direct) at 5.

[136] ETI Ex. 7 (Considine Rebuttal) at 5.

[137] Staff Init. Br. at 18.

[138] ETI Ex. 5 (Considine Rebuttal) at 7.

[139] Staff's Init. Br., pp. 5-6.

[140] State Agencies' Reply Br., pp. 3, 16.

[141] ETI's Reply Br., pp. 23-24.

five years.[142] ETI does not, however, cite to any Commission precedent specifically authorizing a return on unpaid rate case expenses.

Staff has the better argument. In Docket 30706, CenterPoint Energy Houston Electric (CenterPoint) sought to recover its rate case expenses over three years with a return on the unpaid balance. The Commission rejected CenterPoint's request for a return, explicitly noting its "practice of not permitting utilities to receive interest on unpaid rate-case expenses."[143] Consistent with this clear Commission precedent, the ALJ recommends that ETI's request to recover a return on the unpaid balance of its rate case expenses during the three-year payoff period be denied.

## V.   CONCLUSION

The ALJ recommends that the Commission implement the findings of the ALJ set forth in the discussion above by adopting the following proposed findings of fact and conclusions of law in the Commission's final order.

## VI.   PROPOSED FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDERING PARAGRAPHS

### A.   Findings of Fact

1.   Entergy Texas, Inc. (ETI or the Company) is an investor-owned electric utility with a retail service area located in southeastern Texas.

2.   On November 28, 2011, ETI filed an application (the ETI Application) requesting, among other things, approval of a proposed increase in annual base rate revenues of approximately $111.8 million over adjusted test year revenues, and a new rider for recovery of costs related to purchased power capacity.

---

[142] Docket 39896, Proposal for Decision at 17-23; *see also, Petition of Texas-New Mexico Power Company for Approval of Regulatory Asset Treatment of Expenses Related to System Benefit Fund Payments*, Docket No. 26942, Order at 4 (Findings of Fact 26-29)(Aug. 22, 2003).

[143] *Application of CenterPoint Energy Houston Electric, LLC for a Competition Transition Charge*, Docket No. 30706, Order at 32 (Jul. 14, 2005).

3.      On November 29, 2011, the Public Utility Commission of Texas (Commission or PUC) referred the ETI Application to the State Office of Administrative Hearings (SOAH) for a hearing and the matter was assigned docket number 39896 (Docket 39896).

4.      On April 4, 2012, in Docket 39896, the ALJs issued SOAH Order No. 13 severing rate case expense issues into a new docket, the case at issue here, *Application of Entergy Texas, Inc. for Rate Case Expenses Severed from PUC Docket No. 39896*, Docket No. 40295.

5.      The hearing on the merits in Docket 39896 was held in April-May 2012.

6.      The Proposal for Decision (PFD) in Docket 39896 was issued July 6, 2012.

7.      The Commission issued its final order in Docket 39896 on November 2, 2012.

8.      The hearing on the merits in the present docket, Docket 40295, was held on November 28, 2012. The record closed on December 21, 2012, following the filing of post-hearing briefs.

9.      The following parties were granted intervenor status in this docket: Office of Public Utility Counsel (OPUC); the cities of Anahuac, Beaumont, Bridge City, Cleveland, Conroe, Dayton, Groves, Houston, Huntsville, Montgomery, Navasota, Nederland, Oak Ridge North, Orange, Pine Forest, Rose City, Pinehurst, Port Arthur, Port Neches, Shenandoah, Silsbee, Sour Lake, Splendora, Vidor, and West Orange (Cities); State Agencies (State Agencies); and Texas Industrial Energy Consumers (TIEC). The staff (Staff) of the Commission was also a participant in this docket.

10.     In Docket 39896, ETI adjusted its request for a proposed increase in annual base rate revenues to approximately $104.8 million over adjusted Test Year revenues.

11.     In the PFD in Docket 39896, the ALJs recommended an overall rate increase of $28.3 million.

12.     In its final order in Docket 39896, the Commission largely followed the recommendations contained in the PFD, but reduced ETI's overall rate increase to $27.7 million.

13.     In this docket, ETI seeks to recover $8.8 million in rate case expenses associated with Docket 39896.

14.     Of that total, $7.6 million was incurred by ETI and $1.2 million was incurred by Cities.

15.     Cities proved that, through August 31, 2012, they reasonably incurred rate case expenses of $1,125,768.61 in Docket 39896 and this docket.

16.     Cities reasonably estimated that their total rate case expenses in Docket 39896 and this docket after August 31, 2012 will total $75,800.

17.     The amount of rate case expenses sought by ETI ($8.8 million) is high, both in absolute terms, and in relation to the rate increase ultimately obtained by ETI in Docket 39896 ($27.7 million).

18.     Rate case expenses for ETI in the amount of $7,344,113 are reasonable and necessary and should be allowed as a cost or expense by the Company. This amount is calculated by reducing the requested amount by the amounts listed and for the reasons stated below:

a.      $207,683 in depreciation of office equipment owned by Entergy Services, Inc. (ESI) (an affiliated company of ETI) and used by ESI employees for their work in Docket 39896 is not reasonable and is properly disallowed.

b.      $281 for meals over $25 was erroneously sought by ETI, is not reasonable, and is properly disallowed.

c.       $10 for clothing purchased by an attorney for ETI is not reasonable and is properly disallowed.

d.      $40 for laundry charges by an attorney for ETI is not reasonable and is properly disallowed.

e.      $480 for a lodging charge unsupported by receipts is not reasonable and is properly disallowed.

f.       $1,275,738 attributable to unreasonable and overly aggressive arguments pursued by ETI in Docket 39896 related to financially-based incentive compensation and transmission equalization payments is properly disallowed.

## B.     Conclusions of Law

1.      ETI is a "public utility" as that term is defined in the Public Utility Regulatory Act (PURA) § 11.004(1) and an "electric utility" as that term is defined in PURA § 31.002(6).

2.      The Commission exercises regulatory authority over ETI and jurisdiction over the subject matter of this application pursuant to PURA §§ 32.001, 32.101, 33.002, 33.051, and 36.101-111.

3.      SOAH has jurisdiction over matters related to the conduct of the hearing and the preparation of a proposal for decision in this docket, pursuant to PURA § 14.053 and Tex. Gov't Code § 2003.049.

4.      This docket was processed in accordance with the requirements of PURA and the Texas Administrative Procedure Act, Tex. Gov't Code Chapter 2001.

5.      Pursuant to PURA § 33.051, the Commission has jurisdiction over an appeal from a municipality's rate proceeding.

6.      Cities bore the burden to prove that the rate case expenses they incurred were reasonable. PURA § 33.023.

7.      Cities are entitled to reimbursement by ETI for:

    a.      rate case expenses of $1,125,768.61 incurred in Docket 39896 and this docket through August 31, 2012; and

    b.      actual expenses incurred by Cities in Docket 39896 and this docket after August 31, 2012, including any appeals, up to a maximum possible amount of $75,800.

8.      ETI bore the burden of proving that the rate case expenses it incurred in Docket 39896 were reasonable. PURA § 36.061(b).

9.      ETI proved the reasonableness of its rate case expenses in the amount of $7,344.113, and is entitled to claim that amount as a cost.

## C.      Proposed Ordering Paragraphs

In accordance with these findings of fact and conclusions of law, the Commission issues the following orders:

1.      The Proposal for Decision prepared by the SOAH ALJs is adopted to the extent consistent with this Order.

2.      All other motions, requests for entry of specific findings of fact and conclusions of law, and any other requests for general or specific relief, if not expressly granted, are denied.

3.      Cities' and ETI's requests to recover rate case expenses are granted to the extent consistent with this Order.

**SIGNED February 19, 2013.**

HUNTER BURKHALTER
ADMINISTRATIVE LAW JUDGE
STATE OFFICE OF ADMINISTRATIVE HEARINGS

# APPENDIX C

## **<u>Chart of PUC Dockets Addressing the Two-Bucket Incentive Compensation Policy Statutes</u>**

# Chart of PUC Dockets Addressing the Two-Bucket Incentive Compensation Policy

| Docket | Date | Proceeding | Decision |
|--------|------|-----------|----------|
| 28840 | 2005.08.15 | Tex. Pub. Util. Comm'n, *AEP Texas Central Co. Application for Authority to Change Rates*, Docket http://interchange.puc.texas.gov/WebApp/Interchange/application/dbapps/filings/pgSearch_Results.asp?TXT_CNTR_NO=28840&TXT_ITEM_NO=878 | Final Order<br><br>FF 169: The financial measures are of more immediate benefit to shareholders, and the operating measures are of more immediate benefit to ratepayers.<br><br>FF 170: Incentives to achieve operational measures are necessary and reasonable to provide T&D utility services, but those to achieve financial measures are not.<br><br>CL 40: The Applicant met its burden of proof with regard to incentive compensation but only with respect to that portion relating to Operational Measures; the amount includible in the cost of service is 34% of $4.42 million. |
| 33309 | 2008.03.04 | Application of AEP Texas Central Company for Authority to Change Rates http://interchange.puc.state.tx.us/WebApp/Interchange/Documents/33309_769_577453.PDF | Order on Rehearing<br><br>FF 82: TCC's inclusion of annual and long-term incentive compensation related to financial incentives in cost of service is unreasonable because it is not necessary for the provision of T&D utility services. |
| 34800 | 2009.03.16 | Application of Entergy Gulf States, Inc. for Authority to Change Rates And to Reconcile Fuel Costs http://interchange.puc.state.tx.us/WebApp/Interchange/Documents/34800_2046_611798.PDF | Final Order Based on contested stipulation<br><br>FF 46. The stipulated revenue requirement does not include any amounts for financial based incentive compensation. |
| 35717 | 2009.11.30 | Application of Oncor Electric Delivery Company, LLC for Authority to Change Rates http://interchange.puc.state.tx.us/WebApp/Interchange/Documents/36530_65_630084.PDF | Order on Rehearing<br>FF 92. Incentive compensation based on financial measures or goals is of more immediate benefit to shareholders.<br>FF 93. Of the amount Oncor requested for incentive compensation, $5,082,326 should be removed because it is related to financial measures that are unreasonable and unnecessary for the provision of T&D utility services. |

| 38339 | 2011.06.23 | Application of CenterPoint Electric Delivery Company, LLC, for Authority to Change Rates<br><br>http://interchange.puc.state.tx.us/WebApp/Interchange/Documents/38339_906_701290.PDF | Order on Rehearing<br><br>FF81. The evidence demonstrates that CenterPoint's short-term incentive compensation plan (STI) is a reasonable and necessary component of a total compensation package required to recruit, retain, and motivate employees.<br><br>FF 82. CenterPoint's long-term incentive-compensation plan (LTI) is not a reasonable and necessary component of CenterPoint's total compensation package.<br><br>FF 83. The corporate and financial goals of STI are directly tied to metrics such as customer service and safety.<br><br>PFD at 66:<br><br>The core of the intervenors' argument is that CenterPoint's LTI (and, in the case of TIEC, over half of its STI) violates Commission precedent because it is tied to financial measures. The intervenors argue that substantial precedent exists requiring a disallowance of CenterPoint's financial-based incentive compensation. In Docket No. 28840, the Commission adopted the ALJs' findings that the portions of American Electric Power Company's (AEP) incentive compensation program that were tied to operational performance measures are recoverable through rates but that portions tied to financial performance measures are not. The ALJs examined AEP's "CIP" incentive compensation program and determined that 66 percent of the program was tied to financial [67] measures. The Commission agreed with the ALJs that these measures "are of more immediate benefit to shareholders" and are not "necessary and reasonable to provide T&D utility service." |

| | | | |
|---|---|---|---|
| 40443 | 2014.03.06 | Application of Southwestern Electric Power Company for Authority to Change Rates and Reconcile Fuel Costs<br><br>Order on Rehearing<br><br>http://interchange.puc.state.tx.us/WebApp/Interchange/Documents/40443_1155_782838.PDF | Order on Rehearing  p. 13<br><br>Therefore, the Commission modifies finding of fact 147 to clarify that the portion of SWEPCO's annual and long-term incentive payments that are capitalized and that are financially-based are excluded from SWEPCO's rate base because the benefits of such payments inure most immediately and predominantly to SWEPCO's shareholders, rather than its electric customers.  Also, an error in finding of fact 220 is corrected to reflect that, of SWEPCO's annual incentive compensation of $10,728,117, $3,523,732 is disallowed as financial goals. These same findings are clarified to reflect that the part of the long-term incentive compensation program that includes performance units is disallowed as being based on financial measures, and the part that includes restricted stock units is allowed - $3,130,757 is disallowed from the $5,175,829 in long-term incentive compensation.<br><br><br>FF 214. SWEPCO sought to recover in rate base a total amount of $10,728,117 paid as annual incentive compensation to its employees and $5,175,829 paid for long-term incentive compensation.<br><br>FF 215. The PUC permits a utility to recover in its base rate incentives that are designed to achieve "operational measures" and that are necessary and reasonable to provide utility services, but not incentive programs that are designed to achieve "financial measures."<br><br>FF 216. Operational measures are those designed to encourage a utility's employees to meet goals and standards relating to the efficient operation of the utility, a benefit to shareholders<br><br>and ratepayers alike.<br><br>FF 217. Financial measures are those designed to encourage employees to achieve financial targets, a benefit primarily to shareholders.<br><br>FF 218. SWEPCO's "Regulatory," "Strategic," and "Margin Generating" annual incentive goals relate to financial measures.<br><br>FF 219. SWEPCO's long term incentive awards in the form of performance units relate to financial measures.<br><br>FF 220. Of SWEPCO's annual incentive compensation of $10,728,117, $3,523,732 should be disallowed as financial goals. Of SWEPCO's long-term compensation, all but<br><br>$2,045,072 of the total should be disallowed as financial goals. |

# APPENDIX D

# Statutes and Rules

**Government Code**

**Sec. 2001.175. PROCEDURES FOR REVIEW UNDER SUBSTANTIAL EVIDENCE RULE OR UNDEFINED SCOPE OF REVIEW.**

(a) The procedures of this section apply if the manner of review authorized by law for the decision in a contested case that is the subject of complaint is other than by trial de novo.

(b) After service of the petition on a state agency and within the time permitted for filing an answer or within additional time allowed by the court, the agency shall send to the reviewing court the original or a certified copy of the entire record of the proceeding under review. The record shall be filed with the clerk of the court. The record may be shortened by stipulation of all parties to the review proceedings. The court may assess additional costs against a party who unreasonably refuses to stipulate to limit the record, unless the party is subject to a rule adopted under Section 2001.177 requiring payment of all costs of record preparation. The court may require or permit later corrections or additions to the record.

(c) A party may apply to the court to present additional evidence. If the court is satisfied that the additional evidence is material and that there were good reasons for the failure to present it in the proceeding before the state agency, the court may order that the additional evidence be taken before the agency on conditions determined by the court. The agency may change its findings and decision by reason of the additional evidence and shall file the additional evidence and any changes, new findings, or decisions with the reviewing court.

(d) The party seeking judicial review shall offer, and the reviewing court shall admit, the state agency record into evidence as an exhibit.

(e) A court shall conduct the review sitting without a jury and is confined to the agency record, except that the court may receive evidence of procedural irregularities alleged to have occurred before the agency that are not reflected in the record.

**Utilities Code**

**Sec. 31.001. LEGISLATIVE FINDINGS; PURPOSE OF SUBTITLE.**

(a) This subtitle is enacted to protect the public interest inherent in the rates and services of electric utilities. The purpose of this subtitle is to establish a comprehensive and adequate regulatory system for electric utilities to assure rates, operations, and services that are just and reasonable to the consumers and to the electric utilities.

(b) Electric utilities are by definition monopolies in many of the services provided and areas they serve. As a result, the normal forces of competition that regulate prices in a free enterprise society do not always operate. Public agencies regulate electric utility rates, operations, and services, except as otherwise provided by this subtitle.

(c) The wholesale electric industry, through federal legislative, judicial, and administrative actions, is becoming a more competitive industry that does not lend itself to traditional electric utility regulatory rules, policies, and principles. As a result, the public interest requires that rules, policies, and principles be formulated and applied to protect the public interest in a more competitive marketplace. The development of a competitive wholesale electric market that allows for increased participation by electric utilities and certain nonutilities is in the public interest.

**Sec. 36.002. COMPLIANCE WITH TITLE.**

An electric utility may not charge or receive a rate for utility service except as provided by this title.

**Sec. 36.051. ESTABLISHING OVERALL REVENUES.**

In establishing an electric utility's rates, the regulatory authority shall establish the utility's overall revenues at an amount that will permit the utility a reasonable opportunity to earn a reasonable return on the utility's invested capital used and useful in providing service to the public in excess of the utility's reasonable and necessary operating expenses.

# Sec. 36.058. CONSIDERATION OF PAYMENT TO AFFILIATE.

(a) Except as provided by Subsection (b), the regulatory authority may not allow as capital cost or as expense a payment to an affiliate for:

(1) the cost of a service, property, right, or other item; or

(2) interest expense.

(b) The regulatory authority may allow a payment described by Subsection (a) only to the extent that the regulatory authority finds the payment is reasonable and necessary for each item or class of items as determined by the commission.

(c) A finding under Subsection (b) must include:

(1) a specific finding of the reasonableness and necessity of each item or class of items allowed; and

(2) a finding that the price to the electric utility is not higher than the prices charged by the supplying affiliate for the same item or class of items to:

(A) its other affiliates or divisions; or

(B) a nonaffiliated person within the same market area or having the same market conditions.

(d) In making a finding regarding an affiliate transaction, the regulatory authority shall:

(1) determine the extent to which the conditions and circumstances of that transaction are reasonably comparable relative to quantity, terms, date of contract, and place of delivery; and

(2) allow for appropriate differences based on that determination.

(e) This section does not require a finding to be made before payments made by an electric utility to an affiliate are included in the utility's charges to consumers if there is a mechanism for making the charges subject to refund pending the making of the finding.

(f) If the regulatory authority finds that an affiliate expense for the test period is unreasonable, the regulatory authority shall:

(1) determine the reasonable level of the expense; and

(2) include that expense in determining the electric utility's cost of service.

## Sec. 36.061. ALLOWANCE OF CERTAIN EXPENSES.

(a) The regulatory authority may not allow as a cost or expense for ratemaking purposes:

(1) an expenditure for legislative advocacy; or

(2) an expenditure described by Section 32.104 that the regulatory authority determines to be not in the public interest.

(b) The regulatory authority may allow as a cost or expense:

(1) reasonable charitable or civic contributions not to exceed the amount approved by the regulatory authority; and

(2) reasonable costs of participating in a proceeding under this title not to exceed the amount approved by the regulatory authority.

(c) An electric utility located in a portion of this state not subject to retail competition may establish a bill payment assistance program for a customer who is a military veteran who a medical doctor certifies has a significantly decreased ability to regulate the individual's body temperature because of severe burns received in combat. A regulatory authority shall allow as a cost or expense a cost or expense of the bill payment assistance program. The electric utility is entitled to:

(1) fully recover all costs and expenses related to the bill payment assistance program;

(2) defer each cost or expense related to the bill payment assistance program not explicitly included in base rates; and

(3) apply carrying charges at the utility's weighted average cost of capital to the extent related to the bill payment assistance program.

## Sec. 36.062. CONSIDERATION OF CERTAIN EXPENSES.

The regulatory authority may not consider for ratemaking purposes:

(1) an expenditure for legislative advocacy, made directly or indirectly, including legislative advocacy expenses included in trade association dues;

(2) a payment made to cover costs of an accident, equipment failure, or negligence at a utility facility owned by a person or governmental entity not selling power in this state, other than a payment made under an insurance or risk-sharing arrangement executed before the date of loss;

(3) an expenditure for costs of processing a refund or credit under Section 36.110; or

(4) any other expenditure, including an executive salary, advertising expense, legal expense, or civil penalty or fine, the regulatory authority finds to be unreasonable, unnecessary, or not in the public interest.

## APPENDIX E

## Certified Copy of ETI Ex. 41 from Docket 39896

ETI Exhibit 41 from Docket 39896 includes an appendix of supporting information on a CD. That CD is too voluminous to be filed electronically. Therefore, the Commission has copied only those parts of the CD that it has cited, changed them to PFD format, and attached them to the body of Exhibit 41. The Commission stands ready to provide the Court or any other party a copy of the entire CD on request.

Record Copy

APR 2 4 2012

KP

DOCKET NO. 39896

| | | |
|---|---|---|
| APPLICATION OF ENTERGY | § | PUBLIC UTILITY COMMISSION |
| TEXAS, INC. FOR AUTHORITY | § | |
| TO CHANGE RATES AND | § | OF TEXAS |
| RECONCILE FUEL COSTS | § | |

DIRECT TESTIMONY

OF

STEPHANIE B. TUMMINELLO

ON BEHALF OF

ENTERGY TEXAS, INC.

NOVEMBER 2011

CERTIFIED TO BE A TRUE AND CORRECT
COPY OF THE ORIGINAL ON FILE WITH THE
PUBLIC UTILITY COMMISSION OF TEXAS
CENTRAL RECORDS DIVISION

BY:
DATE: 3/9/2015

ENTERGY TEXAS, INC.
DIRECT TESTIMONY OF STEPHANIE B. TUMMINELLO
2011 RATE CASE

# TABLE OF CONTENTS

| | | | Page |
|---|---|---|---|
| I. | Name and Qualifications | | 1 |
| II. | Introduction | | 3 |
| III. | Background Information Regarding Entergy Corporation and its Subsidiaries | | 8 |
| IV. | Affiliate Transaction Regulation | | 15 |
| V. | Affiliate Case Layout | | 25 |
| VI. | The Affiliate Billing Process | | 41 |
| VII. | ESI Service Billings | | 44 |
| | A. | Overview of the ESI Billing Process | 44 |
| | B. | Summary of ESI Billings to Affiliated Companies | 55 |
| | C. | Billing Methods | 57 |
| | | 1. Billing Method Overview | 57 |
| | | 2. Billing Method Calculations | 64 |
| | D. | Service Company Recipient Allocation (also referred to as Shared Services Loader) | 65 |
| | E. | Payroll Loaders | 70 |
| VIII. | Other Affiliate Billings | | 73 |
| IX. | Sponsored Classes of Affiliate Costs | | 74 |
| | A. | Overview | 74 |
| | B. | Depreciation Class | 76 |
| | | 1. Description of Class | 76 |

|   |   | 2. | Necessity | 79 |
|---|---|---|---|---|
|   |   | 3. | Reasonableness | 81 |
|   |   | 4. | How Costs are Charged | 84 |
|   | C. | | Service Company Recipient Offsets (also referred to as Shared Services Loader Offsets) | 86 |
|   |   | 1. | Description of Class | 86 |
|   | D. | | Other Expenses Class | 87 |
|   |   | 1. | Description of Class | 87 |
|   |   | 2. | Necessity | 91 |
|   |   | 3. | Reasonableness | 92 |
|   |   | 4. | How Costs are Charged | 92 |
| X. | | | Sponsored Affiliate Pro Forma Adjustments | 93 |
| XI. | | | Benchmarking of ESI COsts | 94 |
| XII. | | | Conclusion | 98 |

## EXHIBITS

| | |
|---|---|
| Exhibit SBT-A | Affiliate Billings – by Witness, Class and Department |
| Exhibit SBT-A.1 | Roadmap to Exhibit SBT-A |
| Exhibit SBT-B | Affiliate Billings – by Witness, Class and Project |
| Exhibit SBT-B.1 | Roadmap to Exhibit SBT-B |
| Exhibit SBT-C | Affiliate Billings – by Witness, Class, Department and Project |
| Exhibit SBT-C.1 | Roadmap to Exhibit SBT-C |
| Exhibit SBT-D | Affiliate Billings – Pro Forma Summary – by Witness, Class and Pro Forma |
| Exhibit SBT-D.1 | Roadmap to Exhibit SBT-D |
| Exhibit SBT-E | Project Summaries |
| Exhibit SBT-F | Electronic Format of SBT Exhibits and Workpapers on Compact Disc |
| Exhibit SBT-1 | Professional Work Experience |
| Exhibit SBT-2 | Entergy System Subsidiaries Discussion |
| Exhibit SBT-3 | Regulated/Non-Regulated Affiliate Organization Charts |
| Exhibit SBT-4A | Service Agreement Between ESI and Entergy Texas, Inc. |
| Exhibit SBT-4B | Service Agreement Between ESI and Entergy Arkansas |
| Exhibit SBT-4C | Service Agreement Between ESI and EGS Holdings, Inc. |
| Exhibit SBT-4D | Service Agreement Between ESI and Entergy Gulf States Louisiana |
| Exhibit SBT-4E | Service Agreement Between ESI and Entergy Louisiana Holdings, Inc. |
| Exhibit SBT-4F | Service Agreement Between ESI and Entergy Louisiana |
| Exhibit SBT-4G | Service Agreement Between ESI and Entergy Louisiana Properties, LLC |

| | |
|---|---|
| Exhibit SBT-4H | Service Agreement Between ESI and Entergy Mississippi |
| Exhibit SBT-4I | Service Agreement Between ESI and Entergy New Orleans |
| Exhibit SBT-4J | Service Agreement Between ESI and Entergy Corporation |
| Exhibit SBT-4K | Service Agreement Between ESI and Entergy Operations |
| Exhibit SBT-4L | Service Agreement Between ESI and Entergy Power |
| Exhibit SBT-4M | Service Agreement Between ESI and Entergy Enterprises |
| Exhibit SBT-4N | Service Agreement Between ESI and System Fuels |
| Exhibit SBT-4O | Service Agreement Between ESI and System Energy |
| Exhibit SBT-4P | Service Agreement Between ESI and Entergy New Nuclear Utility Development, LLC |
| Exhibit SBT-5 | Functions and Classes |
| Exhibit SBT-6 | Families and Functions |
| Exhibit SBT-7 | Affiliates That Receive Services from ESI |
| Exhibit SBT-8 | ESI Test Year Per Book Billings to Affiliates by Project |
| Exhibit SBT-9 | ESI Annual Billings to Affiliates 2008 – 2010 |
| Exhibit SBT-10A | FERC Order Accepting Entergy's Service Company Cost Allocation Request |
| Exhibit SBT-10B | FERC Order Accepting ESI's October 28, 2010 Filing Request |
| Exhibit SBT-11 | Affiliate Billing Exclusions by Class |
| Exhibit SBT-12 | Pro Forma Documentation List |
| Exhibit SBT-13 | Flow of Test Year Affiliate Costs – G-6 Schedules and Supporting Information |
| Exhibit SBT-14 | Elements of ETI's Cost of Service |
| Exhibit SBT-15 | Affiliate Billing Process Discussion |

Exhibit SBT-16    ESI Time and Expense Training

Exhibit SBT-17    Direct vs. Allocated ESI Test Year Per Book Billings to Affiliates

Exhibit SBT-18    Definition of Terms – Direct, Indirect, Allocated, and Overhead

Exhibit SBT-19    ESI Billing Methods – Basis for Calculation and Types of Costs Allocated Using Billing Methods

Exhibit SBT-20    Entergy Arkansas Test Year Billings to Affiliates

Exhibit SBT-21    Entergy Gulf States Louisiana Test Year Billings to Affiliates

Exhibit SBT-22    Entergy Louisiana Test Year Billings to Affiliates

Exhibit SBT-23    Entergy Mississippi Test Year Billings to Affiliates

Exhibit SBT-24    Entergy New Orleans Test Year Billings to Affiliates

Exhibit SBT-25    Entergy Non-Regulated Affiliates Test Year Billings to Regulated Affiliates

Exhibit SBT-26    ESI Net Book Value of Assets

Exhibit SBT-27    Service Company Property Per Employee with Graph

Exhibit SBT-28A    ESI Benchmarking Analysis Peer Group

Exhibit SBT-28B    Service Company O&M as a Percentage of Total Company O&M

Exhibit SBT-28C    Service Company O&M as a Percentage of Total Company Revenue

Exhibit SBT-28D    Service Company O&M as a Percentage of Total Company Assets

Exhibit SBT-28E    Service Company O&M Per Service Company Employee

I.    NAME AND QUALIFICATIONS

Q.    PLEASE STATE YOUR NAME AND BUSINESS ADDRESS.

A.    My name is Stephanie B. Tumminello.   During the Commission's last review in Docket No. 37744 and during the test period in this case through June 24, 2011, my name was Stephanie B. Neyland.  My business address is 639 Loyola Avenue, New Orleans, LA 70113.

Q.    BY WHOM ARE YOU EMPLOYED AND IN WHAT CAPACITY?

A.    I am employed by Entergy Services, Inc. ("ESI" or "Entergy Services") as Manager of Affiliate Accounting and Allocations, which was formerly Intrasystem Affiliate Billing ("ISABill").[1]

Q.    ON WHOSE BEHALF ARE YOU TESTIFYING IN THIS PROCEEDING?

A.    I am testifying on behalf of Entergy Texas, Inc. ("ETI" or the "Company").

Q.    PLEASE DESCRIBE YOUR EDUCATIONAL BACKGROUND.

A.    I have a Bachelor of Science degree in Accounting from the University of New Orleans.  I am a Certified Public Accountant licensed in the State of Louisiana.

---

[1] This is distinct from the intra-system bill invoicing process discussed by Company witness Patrick J. Cicio.

Q.  PLEASE BRIEFLY DESCRIBE YOUR PROFESSIONAL EXPERIENCE.

A.  I have been employed by ESI for approximately 15 years and have held various positions in the Accounting and Finance organizations. ESI is one of the service companies providing services to Entergy Corporation and its subsidiaries.[2] My work experience is described in more detail in Exhibit SBT-1.

Q.  WHAT ARE THE PRINCIPAL AREAS OF YOUR RESPONSIBILITY AS MANAGER OF AFFILIATE ACCOUNTING AND ALLOCATIONS?

A.  I am responsible for the intrasystem affiliate billing processes of the Entergy Service Companies: ESI, Entergy Operations, Inc. ("EOI"), Entergy Enterprises, Inc. ("EEI"), and Entergy Nuclear Operations, Inc. ("ENUC"). I oversee these companies' billing processes and procedures to ensure they are in compliance with applicable requirements of the retail regulators of the Entergy Operating Companies,[3] the Public Utility Holding Company Act of 2005 ("PUHCA 2005"), and Federal Energy Regulatory Commission ("FERC") regulations.[4]

---

[2]  Each of these subsidiaries is a separate legal entity.

[3]  I use the name "Entergy" or "Entergy Companies" to mean, collectively, Entergy Corporation and its direct and indirect subsidiaries. Each of these subsidiaries is a separate legal entity. The Entergy Operating Companies ("Operating Companies") are: ETI; Entergy Arkansas, Inc. ("EAI" or "Entergy Arkansas"); Entergy Gulf States Louisiana, L.L.C. ("EGSL," "EGSLA," or "Entergy Gulf States Louisiana"); Entergy Louisiana, LLC ("ELL" or "Entergy Louisiana"); Entergy Mississippi, Inc. ("EMI" or "Entergy Mississippi"); and Entergy New Orleans, Inc. ("ENOI" or "Entergy New Orleans").

[4]  See Exhibit SBT-2 for a discussion of the regulation of Entergy Corporation's subsidiaries.

My responsibilities also include billings, allocations, approval of billing method assignments on project codes, and updating and maintaining processes for allocations related to the affiliates. I have overall responsibility for all affiliate billing functions.

My responsibilities include oversight for the review of the elements of billable project code ("PC") requests and the approval of each billable PC. I am also responsible for analyzing the amounts billed to affiliates to ensure that the billing process is efficient and effective. In addition, I have oversight for the provision of advice and training for ESI employees regarding affiliate billing issues. My accounting responsibility for ESI as a business unit ("BU"; also known as "legal entity" or "LE") includes providing information required for the preparation of the ESI FERC Form 60, Annual Report of Centralized Service Companies, as well as the FERC Form 60 reports for EOI, EEI and ENUC.

## II.    INTRODUCTION

Q.    WHAT IS THE PURPOSE OF YOUR TESTIMONY?

A.    The primary purpose of my testimony is to provide an overview of ETI's affiliate case. I also discuss the regulation of affiliate transactions. In addition, I explain how the affiliate portion of the Company's filing is organized. I address several affiliate transaction-related issues, such as the affiliate billing processes used by ESI, the Operating Companies, other

regulated affiliates,[5] and non-regulated affiliates to collect and bill costs to their affiliates, including ETI, for services rendered. A more detailed discussion of the purpose of my testimony is provided below.

Affiliate Case Layout: In the Affiliate Case Layout section of my testimony, I describe how affiliate charges to ETI have been organized into classes, explain how the affiliate case is organized and how it ties to the G-6 schedules and supporting workpapers,[6] and introduce the other affiliate witnesses. I describe how the information in this filing is presented for the purpose of showing:

- affiliate costs charged to ETI are necessary;

- affiliate costs charged to ETI are reasonable;

- the prices charged to ETI for each class of items are no higher than the prices charged to other affiliates, or to non-affiliates, for the same or similar class of items; and

- the allocated amounts represent the actual cost of services to ETI.

I also explain why the affiliate costs charged to ETI do not include prohibited expenses and that the services provided to ETI by affiliates are not duplicative of services provided internally by ETI or other affiliates.

Each affiliate cost witness will provide testimony supporting the reasonableness and necessity of the specific affiliate classes that he or

---

[5] Entergy's regulated affiliates include the Operating Companies as well as System Fuels, Inc. ("SFI" or "System Fuels"); EOI; ESI; System Energy Resources, Inc. ("SERI" or "System Energy"); and Entergy New Nuclear Utility Development, LLC.

[6] Schedule G-6 is a section within the Public Utility Commission of Texas' ("Commission's") Rate Filing Package ("RFP"). It includes a summary of test year affiliate transactions.

she sponsors. These affiliate witnesses will also support the appropriateness of the billing methods that are used for the classes that they address. Exhibits that show, in consistent formats, the affiliate expenses for each class accompany each witness's testimony. As the affiliate overview witness, my testimony collects and assembles all of those individual class exhibits into one exhibit for ease of review.

Affiliate Transaction-Related Issues: In connection with my discussion of the affiliate billing processes, I will:

(a) provide background information regarding Entergy Corporation and its regulated and non-regulated subsidiaries;

(b) describe the affiliate billing process, including discussions regarding project billings, loaned resource billings, co-owner billings, and controls;

(c) discuss the ESI service billings, including an overview of the billing process, a summary of ESI charges to affiliated companies, the service company recipient allocation process, billing methods, and allocation rates and statistics;

(d) discuss billings to ETI during the test year; and

(e) describe the pro forma adjustments associated with the affiliate billings to ETI included in this filing and discuss those pro forma adjustments that I sponsor.

In addition to the overview of affiliates charges, I sponsor three specific classes of affiliate costs: (1) Depreciation (which pertains to depreciation and amortization of ESI assets used in providing services); (2) Service Company Recipient Offsets (sometimes referred to as "Shared Services Loader Offsets"); and (3) Other Expenses.

Q.   WHAT EXHIBITS ARE YOU INCLUDING AS PART OF YOUR TESTIMONY?

A.   The exhibits that I am including as part of my testimony appear in the list following the Table of Contents. Because these exhibits are voluminous and include a number of spreadsheets, I have provided all of my exhibits, workpapers, and schedule information on the attached CD, labeled Exhibit SBT-F, rather than in paper form.

Q.   DO YOU SPONSOR OR CO-SPONSOR ANY SCHEDULES IN THE RATE FILING PACKAGE?

A.   Yes, I co-sponsor several Rate Filing Package ("RFP") schedules filed in this proceeding. I am co-sponsoring with other witnesses the following schedules:

- Schedule G-6
- Schedule G-6.1
- Schedule G-6.2

I am also co-sponsoring the following workpapers included in support of Schedule G-6 of the RFP:

| G-6 WPs | G-6.1 WPs | G-6.2 WPs |
| --- | --- | --- |
| WP/G-6 (set 1) | WP/G-6.1 (set 1) | WP/G-6.2 (set 1) |
| WP/G-6 (set 2) | WP/G-6.1 (set 2) | WP/G-6.2 (set 2) |
| WP/G-6 (set 3) | WP/G-6.1 (set 3) | WP/G-6.2 (set 3) |
| WP/G-6 (set 4) | WP/G-6.1 (set 4) | WP/G-6.2 (set 4) |

WP/G-6 (set 5)        WP/G-6.1 (set 5)      WP/G-6.2 (set 5)

WP/G-6 (set 6)        WP/G-6.1 (set 6)      WP/G-6.2 (set 6)

These schedules and supporting workpapers were prepared by me or under my direct supervision.

Q.   ON WHAT BASIS WERE THE SCHEDULES THAT YOU JUST MENTIONED PREPARED?

A.   They were prepared from the books and records of ESI and its affiliates and are accurate summaries of the business records on which they are based.   Deloitte & Touche LLP ("D&T"), the independent auditor for Entergy Corporation and subsidiaries, has performed a review of the historical financial information included in Schedules A through W (excluding L and R) of the RFP, and have reported its findings in Schedule S.

Q.   WHAT TEST YEAR IS ETI USING IN THIS FILING?

A.   The test year in this case is the twelve months ended June 30, 2011.

Q.   WHAT IS THE DOLLAR AMOUNT OF AFFILIATE CHARGES THAT ETI HAS INCLUDED IN THE TEST YEAR COST OF SERVICE?

A.   RFP Schedule G-6 shows that the Company's "Total ETI Adjusted" amount for affiliate charges for the test year is $78,998,777.

Additionally, there are capitalized affiliate charges included in the ETI capital additions that the Company is seeking to place in rate base. These capital additions are addressed by other witnesses. ESI costs are directly charged or allocated to capital work orders in the same manner as costs are allocated to operations and maintenance expense-based project codes, the latter of which are discussed in detail in my testimony.

Q.    WHAT TYPE OF SYSTEM DO THE ENTERGY COMPANIES USE TO CAPTURE COSTS?

A.    The Entergy Companies use a project costing application (PowerPlant) that provides a single point of entry for all PCs (that is, "project codes"). A PC is an alpha numeric code that is assigned to individual projects established within organizations (also referred to as "departments"). Each PC is applicable to a specific assignment or activity. For example, a PC would be assigned to a project to develop a specific software application, a specific construction project, an employee training project, or any of a myriad of activities that are necessary to run a utility.

III.    BACKGROUND INFORMATION REGARDING ENTERGY
         CORPORATION AND ITS SUBSIDIARIES

Q.    PLEASE BRIEFLY DESCRIBE ENTERGY CORPORATION.

A.    Entergy Corporation owns both regulated and non-regulated companies. Exhibit SBT-2 provides a detailed discussion of Entergy Corporation

subsidiaries. Exhibit SBT-3 is an organization chart for Entergy Corporation and its subsidiaries, including both regulated and direct non-regulated companies, as of June 30, 2011.

Q. PLEASE BRIEFLY DESCRIBE ENTERGY CORPORATION AND ITS WHOLLY-OWNED REGULATED SUBSIDIARIES.

A. Entergy Corporation owns all of the outstanding common stock of six retail Operating Company subsidiaries: ETI, EAI, EGSL, ELL, EMI, and ENOI. As of June 30, 2011, these Operating Companies provided electric service to approximately 2.7 million customers in the states of Arkansas, Louisiana, Mississippi, and Texas.

Entergy Corporation also owns all of the outstanding common stock of System Energy, ESI, and EOI, which are regulated by the Nuclear Regulatory Commission ("NRC") and/or the FERC. System Energy is a nuclear generating company that sells the generating capacity and energy from its 90% interest in the Grand Gulf nuclear plant at wholesale to its only customers: EAI, ELL, EMI, and ENOI. ESI is a service company established to provide professional services primarily to Entergy's regulated utilities or Operating Companies.

EOI is also a service company, and was established to provide nuclear management and operations and maintenance services to Entergy's regulated nuclear plants: Arkansas Nuclear One; River Bend;

Waterford 3; and Grand Gulf. Although these plants are operated by EOI,

they are owned by: EAI; EGSL; ELL; and System Energy, respectively.

Q. PLEASE PROVIDE AN OVERVIEW OF ENTERGY'S NON-REGULATED

SUBSIDIARIES.

A. Entergy's non-regulated subsidiaries include, among others, EEI, Entergy

Power, LLC ("EPL"), a wholesale power producer that is a subsidiary of

Entergy Asset Management, Inc., and ENUC, a service company

established to provide nuclear management and operations services to

Entergy's non-regulated nuclear plants. For a more detailed discussion of

Entergy's direct non-regulated affiliates, please refer to Exhibit SBT-2.

Q. FROM WHICH OF THE ENTERGY SUBSIDIARIES DOES ETI RECEIVE

THE MOST SIGNIFICANT LEVEL OF AFFILIATE CHARGES?

A. ETI receives the most significant level of affiliate charges from ESI. In

addition to affiliate charges from ESI, ETI receives charges from the other

Operating Companies, EOI, and from certain non-regulated affiliates.

Q. WHY IS ESI THE SOURCE OF MOST OF ETI'S AFFILIATE CHARGES?

A. Centralization of activities through the creation of service companies

results in economies of scale and provides a pool of centralized expertise

for Entergy Corporation's regulated utility affiliates. As noted previously,

ESI, EOI, EEI, and ENUC are the four primary service companies. EOI

provides services to the regulated nuclear plants, and EEI and ENUC provide services to non-regulated affiliates, as more fully described in Exhibit SBT-2. I provide an overview of the services provided by ESI.

Q. PLEASE DESCRIBE THE PURPOSE AND FUNCTION OF ESI.

A. ESI is authorized to conduct business as a service company by a temporary order issued by the Securities and Exchange Commission ("SEC") in March 1963, which was made permanent in March 1965. ESI was formed as, and continues to be, primarily a service company for the Operating Companies. Costs incurred by ESI to provide services to all regulated companies, including ETI, are billed at cost and do not produce a profit. ESI also performs services for some of Entergy's non-regulated companies through ESI's Service Agreement with EEI. These services are billed at cost plus 5%. Exhibit SBT-2 provides a more detailed discussion of ESI's purpose and function.

Q. WHAT TYPES OF SERVICES DOES ESI PROVIDE?

A. The services ESI provides to its affiliates include general executive, management, advisory, administrative, human resources, accounting, legal, regulatory, and engineering services. These services are provided in accordance with Service Agreements entered into by ESI and the respective affiliates to which it provides services. The Service Agreements between ESI and its affiliates are included as Exhibits SBT-

4A through SBT-4P. These Service Agreements outline the general types of services that ESI provides.

ESI provides services according to functional groupings that reflect the way ESI is organized. See Exhibits SBT-5 and SBT-6 for details, which I discuss in more detail later in my testimony. These groupings are reflected in the presentation of ETI's affiliate expenses in this filing and represent a compilation of the services that are provided to ETI by ESI.

The types of services outlined in the Service Agreements between ESI and the affiliates that it serves have been grouped in classes that are discussed later in my testimony for the purpose of presentation in this filing. Exhibit SBT-7 shows the affiliates that receive services from ESI.

Q. IS THE SERVICE AGREEMENT BETWEEN ESI AND ETI DIFFERENT IN SUBSTANCE FROM THE SERVICE AGREEMENTS ESI HAS WITH THE OTHER AFFILIATED COMPANIES?

A. No. The Service Agreements between ESI and each of the other Entergy affiliates discussed previously are the same in substance. However, the types and amounts of services vary among the companies.

Q. ARE ALL NON-REGULATED ENTERGY COMPANIES PARTIES TO SERVICE AGREEMENTS WITH ESI?

A. No. ESI does not directly provide services to all of the non-regulated affiliates. ESI, however, does provide services directly to EPL and EEI,

and has service agreements with these two non-regulated companies. When ESI provides services to EEI, the provision of these services is often the result of a request for services made by a non-regulated company to EEI. When that situation arises, the billing for that service is made by ESI to EEI and, in turn, EEI bills the non-regulated company for the service. As shown on Exhibit SBT-8, total ESI billings to EPL and EEI were .03% and 16.06%, respectively, of ESI's total billings to all affiliates during the test year.[7] As indicated in Exhibit SBT-9, total ESI billings to EPL declined from 2008 to 2010, while billings to EEI increased from 2008 to 2010.

Q. WHAT TYPES OF SERVICES ARE PROVIDED BY ESI TO THE NON-REGULATED AFFILIATES THROUGH EEI?

A. Although ESI was formed to serve primarily Entergy Corporation's regulated utility operations, there are three general categories of services that ESI provides to the non-regulated companies through EEI. The first type of services provided by ESI through EEI are those provided solely to EEI or a non-regulated affiliate. For instance, ESI provides services with regard to specific non-routine projects, tax issues, legal issues, or accounting issues directly associated with EEI or a non-regulated affiliate. These costs are billed 100% to EEI.

---

[7] Exhibit SBT-8 includes a schedule of ESI billings to affiliates during the test year.

The second type of services provided by ESI through EEI is the type of services that concurrently are used by both the regulated and non-regulated Entergy affiliates. For example, non-regulated companies participate in certain payroll, human resources, benefits, accounts payable, communications, and support services primarily provided to the regulated companies. However, the level of such services may differ between the regulated and non-regulated affiliates. For example, ESI processes all of the payroll transactions for the regulated affiliates, whereas ESI processes some, but not all, of the non-regulated companies' payroll transactions. In this instance, the billing method for allocating the costs assigned to the associated PC is calculated based on the number of paychecks issued for those companies for which the services are provided.

The third type of ESI service provided and billed to EEI is for EEI's allocable share of ESI's overhead and departmental costs. ESI, like any corporation, incurs costs that are necessary to maintain and support its existence. Therefore, ESI's expenses for its own overhead costs, such as accounting, tax, legal, and other support, must be distributed reasonably to all of the legal entities that ESI serves, including EEI.

Further, each department (also referred to as "organization") within ESI must incur costs that are not related to any specific service, but which are costs that are attributable to a department. EEI is billed for a portion of these costs. These include items such as administrative labor costs

associated with office and general service employees (including not only salaries and wages but also other related employment costs), rent and utilities, depreciation, materials and supplies, telephone use, and postage.

Q.  DOES ESI PROVIDE ANY SERVICES TO THE REGULATED OR NON-REGULATED COMPANIES FREE OF CHARGE OR AT A DISCOUNT?

A.  No.  ESI costs incurred to provide services to its regulated affiliates are billed at cost and to non-regulated affiliates at cost plus 5% (in accordance with a June 1999 SEC order).

### IV.  AFFILIATE TRANSACTION REGULATION

Q.  ARE YOU FAMILIAR WITH THE STANDARDS USED BY THE PUBLIC UTILITY COMMISSION OF TEXAS ("COMMISSION") TO DETERMINE THE REASONABLENESS OF EXPENSES ASSOCIATED WITH AFFILIATE TRANSACTIONS AND THE ELIGIBILITY OF SUCH EXPENSES FOR INCLUSION IN COST OF SERVICE?

A.  Yes.  I am not an attorney, but part of my job responsibility is to be familiar with the legal standards (rules, statutes, and court cases) governing affiliate transactions and cost recovery in Commission proceedings. Section 36.058 of the Public Utility Regulatory Act ("PURA") and *Railroad*

*Commission of Texas v. Rio Grande Valley Gas Company*[8] set forth the affiliate standard applicable to Commission rate proceedings. This standard involves a four-part inquiry that addresses: (1) the necessity of the affiliate services on a class of items basis; (2) the reasonableness of the costs related to the class; (3) the compliance with the "no higher than" standard, which requires that the price for the same or similar services provided be no higher for one affiliate or non-affiliated person than for another affiliate or non-affiliated person;[9] and (4) whether the price charged reasonably approximates (or represents) the actual cost of the services. I also explain that the price charged excludes costs that may not be allowed for ratemaking purposes, and that charges are not duplicated.

Q. ARE YOU FAMILIAR WITH THE REQUIREMENTS OF SUB-SECTION (f) OF PURA SECTION 36.058?

A. Yes. It is my understanding that if the Commission determines that the requested amount of an affiliate expense during the test period is unreasonable, then, instead of disallowing the entire affiliate expense, the Commission must determine the reasonable level of the affiliate expense and include that reasonable level in the utility's cost of service.

---

[8]   683 S.W.2d 783 (Tex. App.-Austin 1984 no writ).

[9]   ESI does not provide services to non-affiliated entities.

Q.    DOES THE COMMISSION'S RFP APPLICABLE TO ETI PROVIDE ANY GUIDANCE REGARDING HOW TO DEMONSTRATE THE REASONABLENESS AND NECESSITY OF AFFILIATE CHARGES?

A.    No. ETI is required to use, and is using for this case, the Electric Utility Rate Filing Package for Generating Utilities (Sept. 9, 1992). This is the RFP for fully-bundled electric utilities such as ETI. Section V of the Commission's RFP for unbundled transmission and distribution utilities,[10] however, provides a set of "guiding principles" with illustrative types of evidence that may be used to support the affiliate charges, including historical cost trends, process improvements, benchmarking, outsourcing, third-party reviews, operating statistics, and other metrics. These guiding principles are not, strictly speaking, applicable to this case because ETI is not an "unbundled" transmission and distribution utility. Nonetheless, each Company affiliate cost witness has relied upon these guiding principles to marshal the evidence to support his or her affiliate costs.

Q.    HOW DO THE AFFILIATE COSTS INCLUDED IN THE COMPANY'S REVENUE REQUIREMENT COMPLY WITH APPLICABLE STANDARDS IN TEXAS STATUTES AND RULES?

A.    Each affiliate cost witness sponsors testimony supporting his or her specific affiliate classes. Their testimony, in conjunction with my

---

[10]    Investor Owned Utility Transmission & Distribution Cost of Service Rate Filing Package (April 2, 2003).

testimony, demonstrates that the affiliate costs meet the standards I describe above for recovery of affiliate charges. Also, Company witness Jeanne J. Kenney presents additional support by demonstrating the reasonableness of ETI's costs from an overall benchmarking perspective. Other witnesses support the reasonableness of categories of costs, such as compensation and benefits (by ETI witness Kevin G. Gardner) and the supplies and acquisition processes (by ETI witness Joseph M. Hunter).

Q.   WHAT OTHER REGULATORY REQUIREMENTS REGARDING AFFILIATE TRANSACTIONS ARE RELEVANT TO A REVIEW OF AFFILIATE TRANSACTIONS?

A.   I am advised that prior to February 8, 2006, Entergy Corporation was a holding company registered under the Public Utility Holding Company Act of 1935 ("PUHCA 1935") and, therefore, was subject to the oversight of the SEC. ESI, which is a service company established in accordance with PUHCA 1935, was subject to regulation by the SEC. Effective February 8, 2006, however, pursuant to the Energy Policy Act of 2005 ("EPAct 2005"), PUHCA 1935 was repealed and the Public Utility Holding Company Act of 2005 ("PUHCA 2005") was enacted. Section 1275(b) of EPAct 2005 provides that:

> In the case of non-power goods or administrative or management services provided by an associate company organized specifically for the purpose of providing such goods or services to any public utility in the same holding company system, at the election of the system or a State

9-264

commission having jurisdiction over the public utility, the [FERC], after the effective date of this subtitle, shall review and authorize the allocation of the costs for such goods or services to the extent relevant to that associate company.

Q. WHAT REGULATIONS HAS FERC ISSUED RELATED TO SERVICE COMPANIES TO REPLACE THE SEC REGULATIONS?

A. On December 8, 2005, the FERC issued Order No. 667, which added Part 366 to its regulations to implement the repeal of PUHCA 1935 and the enactment of PUHCA 2005. Under the definitions provided in the PUHCA 2005 regulations, ESI is a "service company" in that it was organized specifically for the purpose of providing non-power goods or services to a "public utility" within the same holding company system. Each of the Operating Companies is a "public utility" as defined in the PUHCA 2005 regulations. The PUHCA 2005 regulations also include Section 366.5, which essentially mirrors the language of Section 1275(b) of the EPAct 2005, and adds that "[s]uch election to have the [FERC] review and authorize cost allocations shall remain in effect until further [FERC] order."

On October 19, 2006, the FERC issued Order No. 684, "Financial Accounting, Reporting and Records Retention Requirements under the Public Utility Holding Company Act of 2005." This order establishes regulations for service companies related to the Uniform System of Accounts ("USofA"), the filing of the FERC Form 60, and records retention requirements.

On February 21, 2008, the FERC issued Order No. 707, "Cross-Subsidization Restrictions on Affiliate Transactions." This order codified, among other things, the FERC requirements for the pricing of non-power goods and services provided by a service company and between other affiliates. On July 17, 2008, the FERC issued Order No. 707-A, "Order on Rehearing." This order granted rehearing and clarification, in part, of Order No. 707.

Q. WHAT ARE THE FERC REQUIREMENTS FOR THE PRICING OF NON-POWER GOODS AND SERVICES PROVIDED BY A SERVICE COMPANY?

A. FERC Order Nos. 667 and 667-A allowed traditional, centralized service companies that previously used the SEC's "at cost" standard for the pricing of sales of non-fuel, non-power goods and services to FERC-jurisdictional utilities to continue to use that "at cost" standard (the "at cost" standard means, as I understand it, that cost of the services does not include a component of profit.) Further, in its Order Nos. 667 and 667-A, the FERC indicated that "at cost" pricing of non-power goods and services provided by traditional, centralized service companies such as ESI to associate public utilities is presumed to be reasonable. Specifically, in Order No. 667 the FERC stated:

> Fundamentally, we agree...that centralized provision of accounting, human resources, legal, tax and other such services benefits ratepayers through increased efficiency

and economies of scale. Further we recognize that it is frequently difficult to define the market value of the specialized services provided by centralized service companies. Accordingly, the Commission will apply a rebuttable presumption that costs incurred under "at cost" pricing of such services are reasonable.

FERC Order Nos. 707 and 707-A prohibit, among other things, a franchised public utility with "captive customers" from receiving non-power goods and services from a centralized service company at a price above cost. This "at cost" pricing requirement for service company billings is consistent with previous FERC and SEC requirements. ESI is in compliance with the pricing requirements of FERC Order Nos. 707 and 707-A. ESI's compliance with the FERC's "at cost" requirement helps to ensure that ESI affiliate costs charged to ETI are reasonable.

Q. DID THE ENTERGY COMPANIES REQUEST A REVIEW OF COST ALLOCATIONS BY FERC FOLLOWING THE ENACTMENT OF PUHCA 2005?

A. Yes. On October 13, 2006, ESI, on behalf of the Operating Companies, submitted a filing to the FERC requesting that FERC: (a) review and accept the cost allocation methods included in the service agreements used for the sale of non-power goods and services by ESI and EOI to the Operating Companies; and (b) accept the existing service agreements effective as of February 8, 2006. The filing was made pursuant to Section 1275(b) of the EPAct 2005, Section 205 of the Federal Power Act, and

Section 366.5(a) and Part 35 of the FERC's regulations (18 C.F.R.). In electing to make this filing, ESI sought a determination by the FERC with respect to the appropriate allocation and pricing of services provided by ESI and EOI to the Operating Companies.

Q. DID THE FERC ISSUE AN ORDER IN CONNECTION WITH THE ENTERGY COMPANIES' FILING IN THIS MATTER?

A. Yes. On December 12, 2006, the FERC issued an order accepting the service agreements and proposed methods of cost allocation effective February 8, 2006, as requested in the Entergy Companies' filing. In that order, the FERC agreed that Section 1275(b) of EPAct 2005 was intended to vest authority in a federal regulator to help avoid disparate regulatory treatments with respect to service company cost allocations. The FERC order accepting ESI's and EOI's service company cost allocation request is included as Exhibit SBT-10A.

Q. DOES PUHCA 2005 CONTAIN ANY PROCEDURES FOR CHANGING COST ALLOCATIONS REVIEWED AND ACCEPTED BY THE FERC?

A. No. PUHCA 2005 does not separately specify procedures for changing cost allocations reviewed and accepted by the FERC. However, in its December 12, 2006 order discussed above, the FERC explained that any changes to a FERC-filed rate, including the cost allocation provisions,

must be made in accordance with Section 205 and 206 of the Federal Power Act.

Q.   HAVE THERE BEEN ANY MODIFICATIONS TO THE ENTERGY COMPANIES' COST ALLOCATION FORMULAS DURING THE TEST YEAR?

A.   Yes.  On October 28, 2010, ESI, on behalf of the Operating Companies, submitted a filing to the FERC requesting that FERC review and accept a proposed new cost allocation formula based on the historical usage of servers, platforms, and mainframes.  On December 20, 2010, the FERC issued an order accepting ESI's October 28, 2010 cost allocation request. The FERC order accepting ESI's cost allocation request is included as Exhibit SBT-10B.

Q.   DOES THE FERC EXERCISE ANY ADDITIONAL OVERSIGHT AUTHORITY OVER ENTERGY'S SERVICE COMPANIES?

A.   Yes.  The FERC, in its oversight role, is authorized to conduct periodic audits of service company transactions.  The FERC also requires that centralized service companies file an annual report on FERC Form 60.

Q. HAS THE FERC CONDUCTED ANY AUDITS OF ENTERGY CORPORATION'S SERVICE COMPANIES?

A. Yes. As noted above, the FERC, under the authority of the Public Utility Holding Company Act of 2005, is authorized to periodically conduct audits of service companies. These service company audits include an examination of each service companies' compliance with cross-subsidization restrictions on affiliate transactions at 18 C.F.R. Part 35, accounting, recordkeeping, and reporting requirements at 18 C.F.R. Part 366, compliance with the Uniform System of Accounts ("USofA") for centralized service companies at 18 C.F.R. Part 367, and preservation of records requirements for service companies at 18 C.F.R. Part 368. During the most recent FERC audit of Entergy Corporation's four service companies, including ESI, covering the period January 2006 through December 2008, the FERC tested for compliance with the aforementioned regulations by conducting tests of the service companies' cost allocations and the charges billed by the service companies. The FERC reviewed and tested the supporting details for the service companies' cost allocation methodologies, tested the centralized service companies' costs and accounting, and reviewed selected service companies' billings and the corresponding associated franchised public utilities' accounting for the billings. The FERC letter order dated December 9, 2009 in connection with this audit found there were no significant deficiencies related to the

allocation methodologies, accounting, or pricing of service company transactions.[11]

## V.   AFFILIATE CASE LAYOUT

Q.   WHAT IS THE PURPOSE OF THIS SECTION OF YOUR TESTIMONY?

A.   This section of my testimony provides an overview of how the Company's affiliate transaction case is organized to meet the affiliate standard in Texas, including: an explanation of why the case is organized in this manner; an explanation of how the testimony and exhibits of each of the affiliate witnesses link to G-6 Schedules; and an explanation of how the testimony, exhibits and G-6 Schedules relate to the PCs that I describe in more detail later in my testimony.

Q.   HOW DO THE AFFILIATE COSTS PRESENTED IN THIS CASE RELATE TO THE RATES THE COMPANY SEEKS TO ESTABLISH IN THIS CASE?

A.   The Company's cost of providing services includes both costs incurred directly by the Company and affiliate charges. As discussed earlier, the Commission determines the eligibility of affiliate costs for recovery in rates based on the standards required by law. The Company has presented its affiliate information in a manner that will permit the Commission to review

---

[11]   Workpaper WP/SBT-1 includes the FERC letter order dated December 9, 2009.

its affiliate costs for compliance with the affiliate standard. The affiliate costs are a component of the rates the Company is requesting to implement in this docket.

Q. PLEASE DESCRIBE THE COMPANY'S ORGANIZATION OF ITS AFFILIATE CASE.

A. The Company's affiliate case is organized to correspond to the way in which ETI and ESI are organized and managed. ESI's business is divided into two basic functional groupings or "families." These families are (1) Corporate Support, and (2) Operations.

Q. ARE THE TWO FAMILIES FURTHER BROKEN DOWN INTO SMALLER GROUPINGS?

A. Yes. Within each of these families, we have more discrete functions or service categories. Thus, for example, as shown in Exhibit SBT-6, entitled "Families and Functions," the "Operations" family (shorthand for Utility Operations Group) is comprised of traditional utility functions such as Generation, Transmission, Distribution, and Customer Service.

Q.   ARE THESE "FUNCTIONS" THE "CLASSES" THAT THE COMPANY HAS IDENTIFIED FOR PURPOSES OF MEETING THE AFFILIATE STANDARD IN PURA, WHICH REQUIRES COSTS TO BE ORGANIZED ON AN ITEM OR CLASS OF ITEMS BASIS?

A.   Not necessarily.  In some cases, there is only one class within a function.  But the functions are not always the classes the Company proposes for purposes of proving its compliance with the affiliate standard set forth in PURA.  The Company determined that some of these functions may be too broad for purposes of meeting the affiliate standard and may not permit the detailed review of affiliate transactions envisioned by the Commission.  Further, the Company wanted to ensure that the witnesses who explain the affiliate services provided to ETI have the requisite degree of accountability and technical knowledge to provide sufficient detailed information concerning each class of services (that is "class of items") that they sponsor.

Q.   HOW DID THE COMPANY SEPARATE THESE FUNCTIONS INTO CLASSES OF SERVICES FOR PURPOSES OF PROVING COMPLIANCE WITH THE AFFILIATE STANDARD?

A.   The Company and ESI focused on the way they organize and operate their businesses in order to identify classes of services for purposes of meeting the affiliate standard.  Thus, the Company looked at the various departments that compose each function and grouped these departments

into classes based on factors such as the extent to which the departments provided interrelated services or had some other logical connection to each other. For example, departments such as accounts payable and cash operations, payroll, fixed asset operations, revenue operations, external reporting, and Affiliate Accounting and Allocations were included in the Financial Services Class of services. A similar process was followed for identifying classes within each of the functions shown on Exhibit SBT-5. Additionally, some cost items were grouped based on resource code instead of department code[12] (examples of these include depreciation and income taxes) and based on physical location for Nelson 6 co-owner costs.

Q. HOW MANY CLASSES OF AFFILIATE CHARGES ARE THERE IN THE COMPANY'S CASE, AND WHO SPONSORS THEM?

A. Affiliate services provided to ETI are grouped into 25 classes of items in the Company's filing. Exhibit SBT-5 shows the functions composing each family as well as the classes that make up each function. For example, Exhibit SBT-5 shows that there are six functions within the Corporate Support family. Below each function are the classes that compose that function and the name of the witness who sponsors that affiliate class of

---

[12] A resource code indicates the type of costs used or consumed in the conduct of work activities, while a department code indicates which organization provides the services (and budgets, captures and reports on the related costs for those services).

services. This exhibit also shows the Total ETI Adjusted amount for each class of affiliate services. For example, the Financial Services class, which is sponsored by Company witness Donna S. Doucet, is in the Finance function. This exhibit does not include the level of test year affiliate charges for capital additions.

Q. WHAT INFORMATION DOES EACH WITNESS PROVIDE WITH RESPECT TO THE CLASSES OF SERVICES THAT HE OR SHE SPONSORS?

A. Although the testimony of each of the affiliate witnesses varies depending on subject matter, there are certain common elements that I will explain. Each witness who sponsors a class of services describes why those services are necessary; explains why the costs of those services are reasonable; discusses the billing methods used to ensure that prices paid by ETI are no higher than the prices paid by other Entergy affiliates for the same or similar services; and also explains that the costs paid by ETI represent the actual costs of the services provided. In addition, each affiliate witness has included as exhibits to his or her testimony a schematic that highlights by family and function the class or classes that he or she is supporting, *i.e.*, an exhibit identical to my Exhibits SBT-5 and SBT-6.

Q. ARE THERE ANY OTHER EXHIBITS THAT ARE COMMON TO ALL AFFILIATE WITNESSES?

A. Yes. Each affiliate witness sponsors key affiliate cost-related exhibits that are designated by letters (*i.e.*, A, B, C, D) instead of numbers. For ease of reference, I will refer to them as Exhibits A, B, C, and D. For example, the affiliate cost exhibits supporting Company witness Doucet's testimony are labeled Exhibits DSD-A, DSD-B, DSD-C, and DSD-D. These exhibits present the cost of affiliate services in various levels of detail for each class of services included in Schedule G-6 of the Company's Application. For each class of services sponsored by the witness, Exhibits A, B and C include all affiliate billings that originate at ESI, billings to ETI from the other Operating Companies (EAI, EGSL, ELL, EMI, or ENOI), and billings to ETI from other affiliates. In addition, Exhibit D contains information about test year pro forma adjustments, if any, affecting each class of services sponsored by the witness. For the convenience of the parties, I have included my Exhibits SBT-A, SBT-B, SBT-C, and SBT-D, which are compilations of all witnesses' Exhibits A, B, C, and D, respectively. My Exhibit SBT-D differs slightly from the witnesses' Exhibit D in that it includes FERC accounts.[13]

---

[13] Workpaper WP/SBT-2 provides, among other things, FERC account information for pro forma adjustments included on Exhibit SBT-D.

Q. PLEASE DESCRIBE THE INFORMATION THAT IS CONTAINED IN EXHIBIT A.

A. Exhibit A is entitled, "Affiliate Billings – by Witness, Class and Department." Exhibit A shows for each class of services sponsored by that witness the amounts by department for the test year. The information presented in Exhibit A permits the reviewer to examine which departments had charges within each class of services and the amounts of test year costs for each department within the class.

Q. PLEASE SUMMARIZE HOW TO CALCULATE THE TEST YEAR AMOUNT FOR EACH CLASS OF SERVICES DESCRIBED IN EXHIBIT A OF EACH WITNESS' TESTIMONY.

A. To calculate the test year amount for a class of service described in Exhibit A, the reviewer need only add Column "E" (ETI Per Books) + Column "F" (Exclusions) + Column "G" (Pro Forma Amount) to arrive at the Total ETI Adjusted amount shown in Column "H," which is the amount, by billing entity, included in the G-6 workpapers for this class of services.

Q. HAVE YOU PREPARED AN EXHIBIT THAT SUMMARIZES THE CONTENTS OF COLUMN "F" (EXCLUSIONS) IN EXHIBITS A, B, C, AND D?

A. Yes. Exhibit SBT-11, entitled "Affiliate Billing Exclusions by Class," shows by function and by class all exclusions from ETI's test year affiliate

expenses for the Corporate Support family and the Operations family. As shown in this exhibit, test year exclusions totaled approximately $17.7 million. Exclusions include amounts charged to FERC USofA capital accounts (FERC accounts 107 to 118); other balance sheet accounts (FERC accounts 152 to 242); and below the line accounts (FERC accounts 408202 to 426500). With the exception of amounts charged to certain capital accounts, these exclusions are made in order to arrive at a total cost amount that does not include costs that may not be recovered in rates, such as expenses prohibited from being included in rates by Texas law. Amounts included in the exclusions category do not represent pro forma adjustments.

Q. HAVE YOU PREPARED AN EXHIBIT TO ASSIST THE REVIEWER IN TRACKING THE DATA PRESENTED IN EXHIBIT A?

A. Yes. I have prepared Exhibit SBT-A.1 for that purpose. This "roadmap" exhibit illustrates in a brief and easily understandable way, what specific information is provided in each column of Exhibit A.

Q. PLEASE DESCRIBE EXHIBIT B THAT IS ATTACHED TO EACH WITNESS'S TESTIMONY.

A. Exhibit B is entitled, "Affiliate Billings – by Witness, Class and Project." Exhibit B shows for each class of services sponsored by that witness the amounts by project code (also referred to as a "PC") for the test year. The

information presented in Exhibit B permits the reviewer to examine the following: which PCs were charged within each class of services; which billing method was used; and the amounts included in test year costs for each PC within the class. From here, the reviewer can, in turn, refer to the Project Summaries included as Exhibit SBT-E for additional detail concerning each PC included in each class within the Company's filing. I discuss the information presented in the Project Summaries in greater detail later in my testimony.

Q.   PLEASE DESCRIBE EXHIBIT C.

A.   Exhibit C, which is entitled "Affiliate Billings – by Witness, Class, Department and Project," is a combination of Exhibits A and B. This additional sort of the data, by department and project, allows the reviewer to determine which department charged a particular PC for the particular services. For example, Company witness Doucet's Exhibit DSD-C allows the reviewer to trace a total of $26,678 Total ETI Adjusted test year amount, including pro forma adjustments, to the Financial Services Class billings to project code "F3PPF72700." Exhibit DSD-C further shows that these services were performed by the following billing departments: FA256, FA259, FA26A, FN2F1, and RA2IA.[14]

---

[14]   Workpaper WP/SBT-3 provides the department descriptions for each department code.

Q. PLEASE DESCRIBE EXHIBIT D.

A. Exhibit D, entitled "Affiliate Billings – Pro Forma Summary – by Witness, Class and Pro Forma," contains information about test year pro forma adjustments affecting the class or classes that a particular Company witness sponsors. The witnesses' Exhibit D contains a brief description of the nature of the pro forma adjustment, assigns the adjustment an identifying number, shows the billing entity of the transaction, shows which witness supports the pro forma, and presents the amount of the pro forma that is included in the "Total" column of Schedule G-6.2. In addition to the items described above, Exhibit SBT-D also contains the FERC account for each pro-forma adjustment.

Q. HAVE YOU PREPARED ANY DOCUMENTS REGARDING THE PRO FORMA ADJUSTMENTS INCLUDED IN EXHIBIT SBT-D?

A. Yes. Exhibit SBT-12 includes summary information regarding each pro forma adjustment included in Schedule G-6.2. This Exhibit includes the pro forma number, title, description, ETI pro forma amount, and supporting witness. The main purpose of this exhibit is to accumulate in one place all originating affiliate pro forma adjustments to the test year, and to provide additional supporting detail for why the pro forma was made.

Also, workpapers WP/SBT-2a through WP/SBT-2s include calculations for each pro forma adjustment. WP/SBT-2 is an index to the

calculations included to assist the reviewer in locating the calculation for any pro forma adjustment listed in Schedule G-6.2.

Q. HAVE YOU PREPARED ANY ADDITIONAL DOCUMENTS THAT WILL ASSIST REVIEWERS IN UNDERSTANDING THE INFORMATION CONTAINED IN EACH COLUMN OF EXHIBITS B THROUGH D?

A. Yes. Although the Company believes that the level of detail that it has provided in this filing is more than sufficient to enable the Commission to evaluate the Company's affiliate costs, the Company recognizes that it may be difficult for a reviewer to recall the type of information that is provided in each column of each of these exhibits. For this reason, I have included in my testimony as Exhibits SBT-B.1, SBT-C.1, and SBT-D.1 "roadmaps" that show what question is answered by each column in each exhibit, similar to "roadmap" Exhibit SBT-A.1 that I described earlier.

Q. ARE YOU SPONSORING ALL COSTS CONTAINED IN EXHIBITS SBT-A, SBT-B, SBT-C, AND SBT-D?

A. No. My Exhibits SBT-A, SBT-B, SBT-C, and SBT-D are an aggregation of all the Exhibits A, B, C, and D for each affiliate witness in the Company's case. Although the affiliate witnesses have attached their Exhibits A, B, C, and D to their direct testimony, it may be more convenient for the reviewer to have a single copy of all these exhibits in one place to facilitate review of the Company's filing. I am a co-sponsor of these exhibits because

these cost exhibits include the classes of costs I sponsor (that is, the Depreciation, Service Company Recipient Offsets, and the Other Expenses classes), the exclusions and pro forma adjustments (some of which I sponsor) to the test year affiliate charges for all classes of costs, and the application of the cost allocation methods to the PCs.

Q. HAVE YOU PREPARED ADDITIONAL WORKPAPERS SUPPORTING EACH OF THE G-6 SCHEDULES?

A. Yes. I have prepared six different sorts of the G-6 schedules, which are in addition to the required FERC account presentation contained in Schedules G-6, G-6.1 and G-6.2. The Company is providing this information in its direct filing in this case to facilitate an efficient, timely review of the Company's affiliate case.

Q. HAS THE COMPANY MADE THIS INFORMATION AVAILABLE IN ELECTRONIC FORM?

A. Yes. As I explained above, Exhibit SBT-F is a compact disc that includes this information. The Company has invoked Microsoft Excel's "Auto Filter" command in the spreadsheet files to help users find information quickly.

Q. PLEASE DESCRIBE THE VARIOUS WORKPAPERS THAT THE COMPANY HAS PREPARED IN CONNECTION WITH ITS SCHEDULES G-6, G-6.1, AND G-6.2.

A. There are six variations of Schedules G-6, G-6.1, and G-6.2 included in the workpapers to the G-6 schedules. They are:

1) Affiliate billings by billing entity to ETI by billing method and project code (WP/G-6 (set 1); WP/G-6.1 (set 1); and WP/G-6.2 (set 1));

2) Affiliate billings by billing entity to ETI by FERC account and class (WP/G-6 (set 2); WP/G-6.1 (set 2); and WP/G-6.2 (set 2));

3) Affiliate billings by billing entity to ETI by class, project code, and billing method (WP/G-6 (set 3); WP/G-6.1 (set 3); and WP/G-6.2 (set 3));

4) Affiliate billings by billing entity to ETI by class, by FERC account, project code, and billing method (WP/G-6 (set 4); WP/G-6.1 (set 4); and WP/G-6.2 (set 4));

5) Affiliate billings by billing entity to ETI by FERC account, project code, and billing method (WP/G-6 (set 5); WP/G-6.1 (set 5); and WP/G-6.2 (set 5)); and

6) Affiliate billings by billing entity to ETI by project code, billing method, and FERC account (WP/G-6 (set 6); WP/G-6.1 (set 6); and WP/G-6.2 (set 6)).

Q. WHAT IS THE RELATIONSHIP BETWEEN EXHIBITS A, B, C, AND D AND THE COMPANY'S G-6 SCHEDULES?

A. The G-6 schedules present the Company's request for all affiliate billings, for the test year, by FERC account and billing entity, as follows:

1) Schedule G-6 – Total ETI Adjusted amount of affiliate billings,

2)  Schedule G-6.1 – total per books affiliate billings (after exclusions), and

3)  Schedule G-6.2 – pro forma adjustments to affiliate billings.

The Commission's RFP requires the G-6 schedules to be presented by FERC account.

Exhibits A, B, and C present the same amounts that are in the Schedules G-6, G-6.1, and G-6.2, but in various sorts of detail within each class arranged in a way so that the witnesses can further show that the costs meet the Commission's affiliate standards. As stated previously, the Company has sorted the amounts by department, by project code, and by both department and project code in Exhibits A, B, and C, respectively. Exhibit D presents for each class of services additional detail on the pro forma adjustments included in Schedule G-6.2. With the use of the workpaper set WP/G-6 (set 4), the reviewer can follow amounts in Exhibits A through D through to the G-6 schedules, which are presented in the required FERC account format. Thus, for example, the reviewer can trace cost data related to a particular class to a FERC account, to a project code, and to a billing method by referring to WP/G-6 (set 4). Similarly, if a reviewer desired to determine what other types of projects or activities were billed utilizing a particular billing method shown in a Company witness's Exhibit C, the reviewer need only turn to WP/G-6 (set 1) in order to ascertain this information. I have prepared a chart illustrating how the affiliate cost information fits together (see Exhibit SBT-13).

Q.    PLEASE EXPLAIN HOW ONE WOULD GET FROM YOUR COST EXHIBITS TO THE G-6 SCHEDULES.

A.    Note that the same process I will describe below can be used for any of the Exhibits A through C. I will use as an example my Depreciation Affiliate Class, which can be found on Exhibit SBT-A. To trace the data into the G-6 schedules, one would first need to obtain the subtotals of the class by billing entity. The subtotal in Column H (Total ETI Adjusted) of $1,777,986 for billing entity ESI agrees with the workpaper set WP/G-6 (set 4), which is sorted by billing entity, class, FERC account, project code, and billing method. The Depreciation Class is billed to various FERC accounts, as seen on WP/G-6 (set 4). Each of these FERC account totals for the Depreciation Class can be traced into workpaper set WP/G-6 (set 2), which is sorted by billing entity, FERC account and then by class. On WP/G-6 (set 2), each FERC account is subtotaled.

Q.    HOW COULD A REVIEWER OBTAIN MORE DETAILED INFORMATION ABOUT A PARTICULAR PROJECT CODE?

A.    For each project code, a reviewer could "drill down" to a very detailed level of information contained in the Project Summaries included in my Exhibit SBT-E. The Project Summaries, which are supported by all witnesses of classes that charged to a particular project code, are arranged in project code order and are indexed by page number.

Q. WHAT INFORMATION IS INCLUDED IN EACH PROJECT SUMMARY?

A. Each Project Summary shows the following information for each project code:

- test year billings to ETI by FERC account;

- test year billings to ETI by class of services;

- a statement of the purpose of the project code;

- the primary activities encompassed by the project code;

- the products or deliverables resulting from the project code; and

- the billing method associated with the project code and a justification for that billing method.

Q. HOW ELSE CAN THE PROJECT SUMMARIES BE USED AS A TOOL FOR REVIEWING AFFILIATE DATA?

A. The Project Summaries can be used to trace project code data from the Exhibits B and C into the G-6 Schedules. For example, Financial Services Class costs related to Project Code F3PPF72700, entitled "Cognos Reporting Support," can be found on Exhibit SBT-B. The Total ETI Adjusted amount for the Financial Services Class for this project is $26,678 for the test year. From Exhibit B, one can obtain a good deal of information about the services provided – billing method, project description, Total ETI Adjusted amount, etc. For example, Billing Method GENLEDAL is applied to Project Code F3PPF72700. If more detail is required to verify why Billing Method GENLEDAL is appropriate, or which

other classes may have charged this project, or the types of activities being provided, one could go to the index of Project Summaries included with Exhibit SBT-E and locate the page number for the Project Summary for Project Code F3PPF72700 (page 961 of Exhibit SBT-E). The FERC account amounts for this PC can be traced into workpaper set 5 - billings by FERC account, project code, and billing method (WP/G-6 (set 5), WP/G-6.1 (set 5), and WP/G-6.2 (set 5)). On WP/G-6 (set 5), each FERC account is subtotaled by billing entity, and this subtotal will agree to Schedule G-6 for that FERC account.

## VI.    THE AFFILIATE BILLING PROCESS

Q.   PLEASE DESCRIBE THE AFFILIATE TRANSACTIONS THAT PRIMARILY AFFECT ETI'S COST OF SERVICE IN THIS APPLICATION.

A.   Two categories of affiliate costs affected ETI's cost of service for the test year:

- the cost of the services ESI provides that are directly billed or allocated to ETI; and

- charges from other Operating Companies and from ETI's other affiliates that are directly billed to ETI for services rendered.

Exhibit SBT-14 depicts the relationship between affiliate costs and ETI's cost of service. To understand these categories of affiliate transactions, it is important to understand the affiliate billing process.

Q.     PLEASE DESCRIBE THE PROCESS USED BY THE ENTERGY COMPANIES TO CHARGE AFFILIATES FOR SERVICES PROVIDED.

A.     ESI and the other Entergy-affiliated companies use three mechanisms to bill affiliates for services rendered: (1) project billings; (2) loaned resource billings; and (3) co-owner billings. These mechanisms are included in the affiliate billing process ("billing process"). Project billings are transactions billed to affiliates for services rendered using PCs to determine how costs should be billed to affiliates. Loaned resource billings are transactions that bill charges directly to the Department and/or Business Unit that is the recipient of the services provided. Loaned resource billings include charges for the payroll applicable to "loaned" employees (for example line crews from one Operating Company sent to assist another Operating Company in storm restoration), transportation, and materials and supplies. Co-owner billings include costs incurred by one affiliate for the operation and maintenance of a jointly-owned plant, and subsequently transferred to another affiliate based on their ownership. During the test year, EGSL transferred costs to ETI related to the jointly-owned Nelson 6 plant using the co-owner billing process. The co-owner billing process and the Nelson 6 billings are discussed more fully in the Direct Testimony of Company witness Winfred W. Garrison. Service companies such as ESI typically bill via project billings. Other affiliates can only use loaned resource billings or co-owner billings when billing or transferring costs to an affiliate.

Q. PLEASE SUMMARIZE THE CONTROLS THAT HAVE BEEN ESTABLISHED TO HELP ENSURE THAT BILLINGS TO AFFILIATES PROPERLY REFLECT THE ACTUAL COST OF AN ITEM OR SERVICE.

A. There are several controls in place to help ensure that billings to affiliates represent the actual costs of items or services provided to such affiliates. These process controls include:

- Multiple Approvals of PCs
- Approval of Loaned Resource Billing Transactions
- Co-owner Allocation Rules
- Approval of Source Documentation
- Budget Process Activities
- Monthly Allocation Results and Billing Analysis
- Authorization Required to Access Corporate Applications
- Billing Analysis Review Team ("BART") Monthly Reviews of ESI Billings
- Employee Training
- Internal Reviews of Affiliate Transactions and Processes
- External Reviews and Audits of Affiliate Transactions and Processes
- Sarbanes-Oxley Controls and Testing
- FERC Compliance Controls and Testing
- Affiliate Transactions Policy

Each of the controls is an integral part of a multi-faceted process that is designed to bill the appropriate share of reasonable and necessary

costs to the Operating Companies. A more detailed description of these billing controls is included in Attachment 8 to my Exhibit SBT-15. Exhibit SBT-15 is an exhibit that explains a number of different aspects of the ESI billing process.

## VII.    ESI SERVICE BILLINGS

### A.    Overview of the ESI Billing Process

Q.    PLEASE PROVIDE A BRIEF EXPLANATION OF YOUR EXHIBIT SBT-15: "AFFILIATE BILLING PROCESS DISCUSSION."

A.    As I discussed earlier, ESI and the other Entergy-affiliated companies use three mechanisms to bill affiliates for services rendered: (1) project billings; (2) loaned resource billings; and (3) co-owner billings. These mechanisms are included in the affiliate billing process, which is discussed in detail in my Exhibit SBT-15, "Affiliate Billing Process Discussion." For further clarification, I have included nine attachments to Exhibit SBT-15:

1)    SBT-15 Attachment 1 – Comparison of Affiliate Billing Mechanisms Overview;

2)    SBT-15 Attachment 2 – Affiliate Billings by Billing Type;

3)    SBT-15 Attachment 3 – Project Code Set-Up and Use Flowchart;

4)    SBT-15 Attachment 4 – Guidelines for Completing a Project Scope Statement;

5)    SBT-15 Attachment 5 – The Service Company Billing Process Flowchart;

6)    SBT-15 Attachment 6 – ESI Billing Method Tables;

7) SBT-15 Attachment 7 –Billing Method Summary;

8) SBT-15 Attachment 8 – Affiliate Billing Process Controls; and

9) SBT-15 Attachment 9 – Deloitte & Touche, LLP's 2010 Independent Accountant's Report on Applying Agreed-Upon Procedures (dated June 23, 2011).

Q. PLEASE DESCRIBE THE ESI BILLING PROCESS.

A. As shown in Attachment 2 to Exhibit SBT-15, the vast majority of ESI's billings to ETI are project billings. In order to bill an affiliate for services provided via a project billing, a transaction must have an assigned PC. Each PC is assigned a single billing method that determines how costs captured under the PC will be distributed. The billing method results in either a "direct" billing (billed 100% to one affiliate) or an "allocation" to multiple affiliates. When services are provided to multiple affiliates, charges for services rendered by ESI are allocated using billing methods based on FERC-accepted formulae.

Q. WHEN IS THE PROJECT CODE ASSIGNED TO A TRANSACTION?

A. The PC is assigned at the time the transaction is entered into a source system (e.g., Time Entry System, Accounts Payable). The employee submitting the charge is most familiar with the charge, and is responsible for applying the correct PC to the transaction. In addition, the employee's

budget coordinator may assist in determining the correct PC for a specific cost.

In addition, several allocations, such as payroll and other loaders, will create additional transactions. They will typically follow the PCs used on the source transactions for which they are based.

Q. PLEASE DESCRIBE THE TIME ENTRY SYSTEMS USED BY THE ENTERGY COMPANIES.

A. The Entergy Companies use both the PeopleSoft Time & Labor system and the ESTER system for time entry. ESTER is the acronym for "Entergy's System for Time Entry and Reporting." Both systems are electronic time and attendance systems and are an important part of the Entergy Companies' cost and service tracking process. Employees or timekeepers are responsible for populating electronic timesheets each pay period with appropriate accounting codes, including PCs, and actual hours worked, among other things. At the end of each pay period, the employee's supervisor is responsible for reviewing and approving the timesheet data.

Q. PLEASE SUMMARIZE THE CONTROLS THAT ARE IN PLACE TO ENSURE THE ACCURACY OF THE INFORMATION RECORDED ON THE TIMESHEETS IN TIME & LABOR AND ESTER.

A. In addition to the individual responsibilities of employees and supervisors described above, both the Time & Labor and ESTER systems have been programmed with certain validation functionality (*e.g.*, validity and compatibility edits for the accounting code input data) and notification procedures to alert the employee when accounting code values, including PCs, are invalid, incompatible, or incomplete. Training on the Time & Labor and ESTER systems is conducted within each department. Assistance is also available through the payroll administrator and through the Financial Processes Help Desk, also referred to as the Financial Operations Center ("FOC") Help Desk.

Each ESI employee is ultimately responsible for charging the costs that he or she incurs to the appropriate PC, and thus appropriately billing the companies receiving the services. As a guide, ESI Time and Expense Training materials are posted on the Affiliate Accounting and Allocations section of the Entergy Companies' internal web. All ESI employees are required to acknowledge their review of these training materials on an annual basis. This training stresses the importance of choosing the correct PC. It also discusses the role of billing methods in billing the appropriate companies for services rendered, and emphasizes that direct billing is preferred over allocating charges where possible. The training

also reviews how to determine which PC should be used for specific services. These ESI Time and Expense Training materials are included as Exhibit SBT-16.

As discussed earlier in my testimony, and as discussed in Attachment 8 of Exhibit SBT-15, there are several other controls in place to ensure that billings to affiliates properly reflect the actual cost of an item or service.

Q. HOW ARE PROJECT CODES INITIATED AND MADE AVAILABLE FOR USE?

A. As I previously mentioned, the Entergy Companies use a project costing application (PowerPlant) that provides a single point of entry for all PCs. When a particular department determines that a new project or service is being initiated, PowerPlant is used by that department to set up the PC. During set-up, the preparer of the PC request enters several elements to establish a PC. The preparer provides a descriptive title for the PC and determines the appropriate billing method, which may directly bill one affiliate or allocate costs to multiple affiliates. The billing method is determined based on cost causation principles for the particular project. The preparer also describes the scope of the PC, including its overall purpose, the primary activities to be performed, the products or deliverables expected, and a justification of the billing method selected.

This scope, as well as all of the attributes associated with the PC, are stored in PowerPlant and can be referenced by users as needed.

Exhibit SBT-15 includes a more detailed discussion of the project billing process used by ESI. A breakdown of ESI's billings by project code is shown in Exhibit SBT-8.

Q.   DOES THE AFFILIATE BILLING PROCESS ENSURE THAT THE COSTS CHARGED BY ESI TO ETI ARE NO HIGHER THAN THE COSTS CHARGED TO OTHER AFFILIATES FOR THE SAME OR SIMILAR ACTIVITIES AND SERVICES?

A.   Yes. The following features of the billing system help ensure that ESI does not charge a higher unit cost to ETI than to other affiliates for the same or similar activities and services:

1)   ESI always bills its services to regulated companies at cost, with no profit added, based on cost causation;

2)   the billing method is selected based on the principle of cost causation to ensure that every affiliate that causes the cost in the PC is appropriately included in the allocation of costs; and

3)   because each PC has only one billing method associated with it, all affiliates that receive the service are charged at the same unit rate for a given PC; therefore, the cost for a given unit of service is equal for all affiliates receiving the service.

Q. HOW DOES THE AFFILIATE BILLING PROCESS ENSURE THAT THE PRICE CHARGED BY ESI TO ETI REPRESENTS THE ACTUAL COST OF SERVICES?

A. With respect to direct billings, because ESI charges no more than actual costs for services provided to regulated companies, the price charged to ETI represents the actual cost. With respect to allocated costs, because ESI charges the regulated companies at cost and utilizes the principle of cost causation in identifying a billing method, the unit price charged to ETI represents the actual cost.

Q. DOES YOUR TESTIMONY INCLUDE A SUMMARY OF CONTROLS TO ENSURE THE ACCURACY OF THE ESI AFFILIATE BILLINGS?

A. Yes. Those controls are generally summarized in the Affiliate Billing Process section of my testimony. In addition, these controls are discussed in more detail in Attachment 8 of Exhibit SBT-15.

Q. ARE THERE ANY REVIEWS OF THE CONTROLS OVER THE ACTIVITIES AND SERVICES AND THE RELATED COSTS THAT ESI PROVIDES?

A. Yes. Internal Audit reviews the controls and performs tests of transactions and balances related to affiliate billings. Specifically related to the implementation of the Sarbanes-Oxley Act, Internal Audit reviews the risks, control activities, and testing of those control activities associated

with the affiliate billing process. Their review includes the related funding, allocations, and intercompany account reconciliation processes associated with the overall affiliate billing process.

In addition, external reviews and audits of affiliate transactions and processes are conducted routinely. For instance, D&T performs certain agreed upon procedures annually at the request of the Entergy Companies to satisfy a requirement included in an October 1992 Settlement Agreement, as amended, between certain regulators and the Entergy Companies that pertains to billings from affiliates to EEI. D&T selects several intercompany transactions billed to EEI by affiliates to ensure that they were billed in accordance with PUHCA 2005 affiliate billing requirements. D&T's "Independent Accountants' Report on Applying Agreed-Upon Procedures" for the year ended December 31, 2010, is included as Attachment 9 to Exhibit SBT-15.

In addition, the annual external audit of Entergy Corporation and its subsidiaries' financial statements performed by D&T helps to detect whether the inter-company accounts and billing processes are producing any material misstatements in the financial statements. The Sarbanes-Oxley Act also requires that an independent auditor attest to the accuracy of the Entergy Companies' disclosure regarding the effectiveness of its internal controls. In this connection, D&T also reviews risks, control activities, and testing of control activities associated with the affiliate billing processes.

Further, in its oversight role under PUHCA 2005, the FERC is authorized to conduct audits of Entergy service company transactions. As discussed earlier in my testimony, the most recent FERC audit of the four service companies, including ESI, covered the period January 2006 through December 2008.

Q. DO YOU HAVE ANY INDEPENDENT VERIFICATION THAT THE CONTROLS ARE FUNCTIONING PROPERLY?

A. Yes. PwC performed an independent attestation examination of management's assertion on the presentation of costs billed by ESI and other Entergy affiliates to ETI for the twelve-months ended June 30, 2011.[15] PwC's attestation examination included, among other things, (1) consideration of controls surrounding the affiliate billing process; (2) documentation included in the PC scope statements, including a description of the PC's use and purpose, the activities associated with that particular project, the expected deliverables from activities in the project, and justification for the billing method to be used for billing the costs accumulated in the project; and (3) testing of affiliate service charges billed during the test year for this docket.

---

[15] Workpaper WP/SBT-4 includes ESI's management assertion and PwC's report in connection with this attestation examination.

Q. PLEASE EXPLAIN WHAT YOU MEAN BY "PC SCOPE STATEMENTS."

A. A PC scope statement is a narrative description of the work that is to be undertaken to which each PC is assigned. The PC scope statements, included as part of the Project Summaries in my Exhibit SBT-E, provide information regarding the purpose of the project, the primary activities to be undertaken under the project, the primary products or deliverables of the project, the billing method that applies to the project, and the justification for that billing method. I have discussed the contents of these Project Summaries in more detail previously in my testimony.

Q. PLEASE SUMMARIZE YOUR UNDERSTANDING OF PWC'S CONCLUSIONS RELATING TO AFFILIATE SERVICE CHARGES.

A. PwC's independent attestation examination of management's assertion on the presentation of costs allocated by ESI and other affiliates to ETI concluded that management's assertion was fairly stated in all material respects. Management asserted that ESI has allocated costs accumulated in identified PCs on a cost causative basis using billing methods that ensure accurate recording and billing of the costs associated with the provision of the related services. Management further asserted that billing methods used to allocate costs by ESI ensure that costs charged to ETI reasonably approximate the actual costs of services provided and are no higher than the costs charged to other affiliates for similar services.

Q.  PLEASE SUMMARIZE YOUR UNDERSTANDING OF PWC'S CONCLUSIONS RELATING TO PC SCOPE STATEMENTS.

A.  PwC concluded that management's assertion regarding the PC scope statements was fairly stated in all material respects, *i.e.*, the PC scope statements adequately described the project purpose, primary activities, products or deliverables, and rationale for billing method assignment.

Q.  DOES THE TOTAL ETI ADJUSTED AMOUNT ON THE G-6 SCHEDULES INCLUDE THE RECOMMENDATIONS MADE BY PWC AS A RESULT OF ITS ATTESTATION EXAMINATION OF MANAGEMENT'S ASSERTION ON THE PRESENTATION OF COSTS ALLOCATED BY ESI AND OTHER AFFILIATES TO ETI?

A.  Yes. The Total ETI Adjusted amount on the G-6 schedules reflects all of the pro forma adjustments on Exhibit SBT-D. This exhibit includes various adjustments due to PC billing method changes (Pro Forma Number AJ21-04). The net effect of these adjustments is an increase in costs billed to ETI of $7,368 which is included in the Total ETI Adjusted amount in test year affiliate charges.

B.    Summary of ESI Billings to Affiliated Companies

Q.    WHAT WERE TOTAL BILLINGS FROM ESI TO THE AFFILIATED COMPANIES DURING THE TEST YEAR?

A.    ESI billed approximately $883 million to its affiliate companies during the test year for services provided. The following exhibits to my testimony contain schedules that present views of ESI billings to affiliates:

- Exhibit SBT-8 - ESI Test Year Per Book Billings to Affiliates by Project

- Exhibit SBT-17 – Direct vs. Allocated ESI Test Year Per Book Billings to Affiliates

Q.    WHAT HAPPENS TO CHARGES THAT ARE BILLED BY ESI TO THE OTHER SERVICE COMPANIES, SUCH AS EOI AND EEI?

A.    After ESI bills another service company for services rendered, the billed service company affiliate in turn bills the costs to its affiliates. For instance, when ESI bills EOI for services rendered, EOI will bill one or more of the regulated nuclear plants that it serves (e.g., EGSL's River Bend facility) for the cost. When ESI bills EEI for services rendered, the costs are billed by EEI to one or more of its affiliates. No costs billed by ESI to EOI and EEI are subsequently billed by those Business Units to ETI.

Q. WHAT IS THE LEVEL OF CHARGES FROM ESI TO ETI DURING THE TEST YEAR?

A. ESI billed ETI approximately $84 million during the test year, or approximately 9.5% of ESI's total billings to all affiliates during the test year (as seen on Exhibit SBT-8). This figure is a total per book number, which includes expense and capital amounts billed to ETI. After taking into account exclusions and pro forma adjustments for ESI charges billed to ETI, the Total ETI Adjusted number is approximately $69 million (the remaining $10 million of the Total Requested amount relates to charges from other Entergy affiliates).

Q. HAVE THERE BEEN ANY CHANGES TO THE ESI BILLING PROCESS SINCE THE COMMISSION'S LAST REVIEW OF THE AFFILIATE BILLING PROCESS IN DOCKET NO. 37744?

A. With the exception of the changes in the Service Company Recipient allocation process discussed later in my testimony, there have been no substantive changes to the ESI billing process since the Commission's last review of ETI's rates in Docket No. 37744.

C.     Billing Methods

1.     Billing Method Overview

Q.   IN SECTION VII.A ABOVE YOU DESCRIBED HOW A BILLING METHOD CHOSEN FOR A PROJECT CODE ENSURES THAT ETI IS BILLED ONLY THOSE COSTS ATTRIBUTABLE TO ETI.  DO YOU HAVE AN EXHIBIT THAT PROVIDES MORE INFORMATION REGARDING THE BILLING METHOD ASSIGNMENT PROCESS?

A.   Yes.  As described in the billing process discussion in Exhibit SBT-15, after the preparer of a PC request selects a billing method, it is reviewed for reasonableness by both the intermediate approver of the PC and the Affiliate Accounting and Allocations team that I oversee.  If the billing method selected does not appear to reflect cost-causation, the approver may contact the preparer for clarification as to why the billing method was chosen, or may reject the request until the billing method is adequately justified or another billing method is selected to ensure that the billing method is appropriate for the services provided under the PC. Attachment 4 to Exhibit SBT-15 contains guidelines for preparing PC scope statements, including the selection and justification of a cost-causative billing method.

Q.    PLEASE EXPLAIN HOW ESI DEFINES "DIRECT" VERSUS "ALLOCATED" BILLINGS.

A.    ESI defines direct billings as those that are billed 100% to one affiliate. Costs included in direct billings are incurred exclusively for the benefit of one affiliate. ESI defines allocated billings as those that are distributed using a formula that allocates costs to two or more affiliates. Costs included in allocated billings are incurred for the benefit of more than one affiliate.

Q.    PLEASE DISTINGUISH BETWEEN THE TERMS "DIRECT," "ALLOCATED," "INDIRECT," AND "OVERHEAD."

A.    Each of these terms has been defined by ESI and the FERC. They are also defined within the Service Agreements between ESI and its affiliates that were accepted by the FERC in its December 12, 2006 order in connection with ESI's October 13, 2006 request for review and acceptance of service company cost allocations. ESI's definitions of the terms "direct" and "allocated," as used throughout this testimony, are described in the preceding paragraph. These terms relate to how costs are distributed – to one affiliate (direct), or to more than one affiliate (allocated). The term "overhead" refers to costs that include (1) costs necessary for the existence of ESI as an entity, and (2) costs that are attributable to a department but aren't related to any one specific project. "Indirect" is a term used by ESI to also describe those costs that are

attributable to the overall operation of a department and not to a specific service. Exhibit SBT-18 is a chart showing how these terms are defined by the three groups (ESI, the FERC, and the Service Agreements accepted by the FERC) listed above.

Q. DOES ESI BILL DIRECTLY FOR SERVICES PROVIDED TO THE REGULATED AFFILIATES WHENEVER APPROPRIATE?

A. Yes. The former SEC regulations required that service costs be billed directly to an affiliate as long as such costs can be reasonably identified as caused by an affiliate. Under PUHCA 2005, the FERC adopted this "carryover" SEC provision.

However, it is important to note that the fundamental purpose of a service company such as ESI is to achieve benefits from consolidation and economies of scale for multiple companies. Therefore, the bulk of ESI's costs may necessarily be incurred to provide common services required by multiple companies, which require an allocation of costs. For example, there are several filings that are required by regulatory agencies that include information for numerous affiliates. Because one filing often serves multiple legal entities, the employees working on that document will charge their time using a PC that employs an allocation factor that represents a cost-causative relationship to the work performed.

Direct billings from ESI to ETI were 26.36% of ETI's total charges from ESI during the test year. Although each of the Operating Companies

received a similar mix between allocated and direct billings, ETI had the second highest percentage of direct ESI billings of all Entergy Operating Companies during the test year. Exhibit SBT-17 depicts the percentage of direct versus allocated billings from ESI to each of the affiliates to which ESI provides service.

Q.   DOES ESI DIRECTLY BILL EEI FOR SERVICES PROVIDED TO EEI ON BEHALF OF THE NON-REGULATED AFFILIATES WHENEVER APPROPRIATE?

A.   Yes. As noted above, the Operating Companies have similar operations, which provide opportunities for consolidation of services provided to them by ESI. Although the provision of similar services by a single provider results in economies of scale, this often requires an allocation of costs instead of direct charging. However, because Entergy Corporation's non-regulated subsidiaries require many services that are not similar to those of the regulated utility Operating Companies, the non-regulated companies are not likely to share as many "consolidated" services as the regulated companies. Instead, because of the variation in requested services provided to the non-regulated affiliates, direct billings to the non-regulated affiliates occur more often than direct billings to the Entergy Operating Companies. As shown on Exhibit SBT-17, direct billings to EEI (which receives the majority of non-regulated billings and, in turn, bills the appropriate subsidiary) represent 46.5% of the total billings by ESI to EEI.

As noted above, many services provided by ESI to non-regulated affiliates are billed by ESI to EEI, rather than to the individual non-regulated affiliates that receive those services. This does not mean, however, that ESI is "underbilling" the non-regulated affiliates for the services they receive. The billing methods applied to the project codes applicable to these services ensure that the non-regulated affiliates are paying for their applicable share of these costs (if allocated), or the full cost if the project code direct bills the entire cost to EEI. Exhibit SBT-15 Attachment 6c includes the statistics of each non-regulated company that were included in calculating billing methods.

Q. DOES ESI EVER USE MORE THAN ONE BILLING METHOD FOR A GIVEN PC?

A. No. Because each PC captures a specific service, each PC has only one billing method assigned to it, and the billing method is selected to ensure that every affiliate receiving the service also receives an appropriate allocation. Therefore, the costs related to all services performed under a PC that is not directly billed are allocated among affiliates using the same criterion (such as number of accounts payable transactions or number of customers). The use of a single billing method ensures that all affiliates causing costs to be incurred and receiving the service pay an appropriate proportion of the costs. This also ensures that the affiliates are, in total, charged no more and no less than 100% of the costs for services provided

under the PC. Also, the use of a single billing method, which is assigned based on cost causation principles, ensures that each affiliate is paying the same per unit price for the same service, and that the prices charged to ETI are no higher than the prices charged by ESI to the other affiliates for similar services.

Q. AFTER THE COSTS OF ESI'S SERVICES ARE CAPTURED BY A PC, HOW ARE COSTS ALLOCATED AMONG THE APPROPRIATE COMPANIES?

A. One billing method is assigned to each PC for each service company. Depending on the assigned billing method, the cost of services rendered will be billed directly to a single affiliate or allocated among several affiliates. Billing methods are based on allocation formulae. Under PUHCA 2005, these allocation formulae must be reviewed and accepted by the FERC. Each allocation formula is based on data relevant to the affiliated companies.

There are approximately 50 formulae currently in use by ESI that are used to derive billing methods. The FERC has reviewed and accepted each of these formulae. Examples of these allocation formulae are: total average number of customers, number of personal computers, and transmission line miles.

One allocation formula may be the basis of several billing methods used in the project billing process. For example, ESI has several billing

methods that use the total number of customers allocation formula, including: Billing Method CUSEOPCO, based on average electric customers for the utility Operating Companies; and Billing Method CUSTEGOP, based on average electric and gas customers for the utility Operating Companies. Billing methods that use a common basis for allocation, such as those mentioned above, are referred to collectively as a "billing method family." Attachment 6b to Exhibit SBT-15 provides the billing methods used during the test year. This exhibit includes each billing method, the title of each billing method, and the percentage of total costs allocated to each affiliate for each billing method.

Q.   PLEASE SUMMARIZE HOW THE BILLING METHODS WORK.

A.   Services that are provided by ESI to only one affiliate are billed using direct billing methods, which by definition bill only one affiliate. Services that are provided to more than one affiliate are allocated in accordance with formulae reviewed and accepted by FERC. As previously discussed, billing methods that distribute costs using these formulae are often termed allocation methods. There were 179 direct and allocated billing methods derived from FERC-accepted formulae in order to bill ESI affiliate costs to the affiliated companies during the test year. Of these billing methods, approximately 40% are direct billing methods (one billing method for each business unit ESI serves directly), and the remainder represent variations of the allocation formulae, as discussed above. However, as noted on

Attachment 7 of SBT-15, only 74 of the 179 ESI billing methods were used to bill costs to ETI during the test year as reflected in the Total ETI Adjusted amount.

### 2. Billing Method Calculations

Q. WHAT ARE THE ESI ALLOCATION BILLING METHODS ("ALLOCATION METHODS") THAT WERE USED TO BILL COSTS FOR SERVICES TO ETI DURING THE TEST YEAR?

A. Exhibit SBT-19 is a chart that includes each ESI allocation method that was used to bill costs to ETI during the test year. The chart provides the billing method number, the billing method family to which each method is associated, the basis on which the method is calculated, and the types of costs that are allocated using each method.

Q. DID ESI USE ANY ALLOCATION METHODS TO ALLOCATE COSTS TO ETI DURING THE TEST YEAR OTHER THAN THOSE INCLUDED IN EXHIBIT SBT-19?

A. No.

Q. PLEASE DESCRIBE HOW EACH ALLOCATION METHOD EMPLOYED BY ESI DURING THE TEST YEAR IS CALCULATED.

A. Each allocation method is calculated by taking each business unit's pro rata share of the cost driver statistics (such as number of accounts

payable transactions or number of employees). For each allocation method, Attachment 6 of Exhibit SBT-15 includes the percentages allocated to each affiliate as well as the statistics used to come up with those percentages. For Attachment 6b, all non-regulated percentages and statistics are included in the "EEI" column. Attachment 6c was prepared to provide the individual non-regulated companies included in the statistics for "EEI."

Previously required by the SEC under PUHCA 1935 and now recognized by FERC under PUHCA 2005, all ESI services to ETI are billed at cost. The specific billing method chosen for a particular type of charge is selected to provide an appropriate matching of costs with the cost drivers. Every affiliate that causes the cost and receives the service provided is included in the cost allocation.

D.    Service Company Recipient Allocation (also referred to as Shared Services Loader)

Q.    DOES THE ESI AFFILIATE BILLING PROCESS INCLUDE A MECHANISM THAT CAPTURES AND ALLOCATES THE COSTS ASSOCIATED WITH SERVICES THAT ESI PROVIDES TO ITSELF?

A.    Yes. In addition to being the provider of services to affiliates, ESI also provides services to itself so that it, in turn, can provide services to its affiliates. Therefore, under cost causation billing, ESI is also a receiver of costs associated with the services it provides. The mechanism that

allocates the costs associated with the services ESI receives is currently known as the "Service Company Recipient Allocation." This allocation is actually comprised of several types of costs, including information technology, desktops and telephones (discussed more specifically by Company witness Julie F. Brown), facilities-related costs such as rents and space management (discussed more specifically by Company witness Thomas C. Plauché), Human Resources-related costs (discussed more specifically by Company witness Kevin G. Gardner), and the like.

Q. HOW DOES ESI CAPTURE THE COSTS ASSOCIATED WITH ESI SERVICES RECEIVED?

A. ESI captures the costs associated with ESI services received by including ESI as one of the legal entities to which ESI costs may be billed. Examples of cost causative allocation methods of which ESI is a recipient are APTRNALL (Accounts Payable Transactions), GENLEDAL (General Ledger Transactions), and PRCHKALL (Payroll Checks Issued). Because ESI creates Accounts Payable ("AP") invoices, has its own General Ledger ("GL") transactions, and has employees who receive payroll checks, a portion of the costs are caused by ESI. Also, like other affiliates, ESI may directly bill costs to itself for services solely caused by ESI using a direct billing method. Examples of costs that may be directly billed to ESI are office supplies, professional fees, and rent associated with ESI employees only.

Q. WHERE DOES ESI RECORD THE COSTS ASSOCIATED WITH ESI SERVICES THAT ARE BILLED TO ESI?

A. During the PC billing process, all ESI expenses billed to ESI are deferred on the balance sheet using a clearing account (Account 184SSL). In particular, all of the costs received by ESI in the PC billing process are assigned to Account 184SSL and further separated by the following functions: Information Technology, Support – Operations, Support – Corporate, Supply Power – Nuclear, and President/CEO.

Q. HOW ARE THE COSTS ACCUMULATED IN ACCOUNT 184SSL ALLOCATED?

A. A second-tier allocation called Service Company Recipient Allocation clears the Account 184SSL balance and distributes the costs to the affiliates that are using the services of ESI employees. This is also consistent with cost causation principles. It is appropriate to bill companies a pro-rata share of ESI costs based on the amount and type of ESI services they receive because the demand for ESI services drives the costs associated with ESI.

Q. PLEASE DESCRIBE THE SERVICE COMPANY RECIPIENT ALLOCATION PROCESS.

A. During the PC billing process, both the "pool" and "basis" for the Service Company Recipient Allocation are created. The pool is the portion of

monthly costs associated with services received by ESI, which occurs when ESI bills itself. Such costs within this pool are identified by function. The basis is the total monthly labor billings to each affiliate to which ESI provides services in a given month. Such billings are also identified by function. Thus, a loader rate for each function can be calculated.

Q. HOW IS THE LOADER RATE CALCULATED?

A. The loader rate for each function is determined by dividing the total amount of costs in the pool for a function for that month by the total amount of labor billings (the basis) to affiliates for each function for the same month. Though typically stable, the monthly loader rates may vary as the functional pool and basis vary. The loader rate then is applied to labor billing results to distribute the costs in the pool. The Affiliate Accounting and Allocations group reviews the pool and basis amounts monthly to ensure that they are reasonable.

Q. PLEASE PROVIDE AN EXAMPLE OF THE SERVICE COMPANY RECIPIENT ALLOCATION PROCESS.

A. In the following example, the Human Resources ("HR") department provides staffing services to the Fossil organization. The HR employees assign their time to a PC that bills based on the number of fossil-fueled generation plant ("Fossil") employees within each Entergy Corporation subsidiary. Because ESI has Fossil employees, ESI receives a portion of

the billing, which is assigned to the 184SSL account. This is classified as an overhead cost for ESI Fossil employees. During the same billing process, ESI Fossil employees bill their labor out to those companies receiving their services via the billing method assigned to each PC used.

Once the PC billing process described above is complete, the Service Company Recipient Allocation begins. In this second-tier allocation, the total dollar amount that was billed to ESI for services provided to ESI Fossil employees by Human Resources (contained within the Support-Corporate pool) is distributed to the labor amounts that were billed by the ESI Fossil group (the basis), thereby loading the Fossil organization's labor billings with their share of service company recipient charges.

Q. WHY DOES ESI USE THIS TWO-TIERED APPROACH FOR BILLING?

A. The two-tiered approach is used to ensure that all the costs (both overhead and direct) are paid for by the affiliates that cause the costs. It is important that ETI be able to determine the total cost associated with its projects and services. The Service Company Recipient Allocation ensures that overheads associated with managing each ESI function are loaded to the projects to which those functional employees charged their time. This enables each project to be fully-loaded with both the direct costs assigned to the project as well as service company recipient charges.

Q.   HAVE THERE BEEN ANY CHANGES IN THIS PROCESS SINCE THE COMMISSION'S LAST REVIEW IN DOCKET NO. 37744?

A.   Yes. The Service Company Recipient Allocation's basis was adjusted in January 2010 to include not only labor billings to ESI affiliates, but also labor costs that remain at ESI such as capital or other balance sheet items maintained at ESI. Prior to the change, the basis included only labor billings to affiliates from ESI. As a result of the change, ESI-owned capital projects (not included in cost of service) are loaded with the service company recipient charges as well. In addition, beginning in January 2010, the number of functional rates was changed from sixteen to five. This change was implemented to streamline the process so that internal customers could more easily analyze and predict their service company recipient costs.

### E.   Payroll Loaders

Q.   WHAT ARE PAYROLL LOADERS?

A.   Payroll loaders allocate payroll-related costs, specifically payroll taxes, employee benefits, post-employment benefits, stock options, certain incentive compensation, and paid time off. Each of these costs has its own loader. These payroll-related costs are loaded to projects so that each project is fully-loaded with both the direct labor costs and the associated payroll loaders.

Q.    PLEASE SUMMARIZE THE PAYROLL LOADERS PROCESS.

A.    The Human Resources department provides Affiliate Accounting and Allocations with base standard rates for employee benefits, post-employment benefits, and stock options, while the Compensation and Benefits Design department provides the base standard rates for incentives. These base standard rates are based on total payroll. The base standard rate for payroll taxes is calculated by the Affiliate Accounting and Allocations group based on payroll taxes paid during the prior year as a percentage of the total payroll paid during the prior year. Because payroll allocations load only on productive payroll rather than total payroll, the Affiliate Accounting and Allocations group adjusts these base standard rates by productive factors to generate actual loader rates. The actual loader rate for paid time off is also calculated by the Affiliate Accounting and Allocations group based on the percentage of non productive payroll to productive payroll.

The loader rates for employee benefits, post-employment benefits, stock options, incentives, and paid time off are applied to productive straight-time payroll (excluding overtime). The loader rate for payroll taxes is applied to total productive payroll (including overtime). All loaders are assigned the same PC as the labor, so that they properly follow the same billing distribution as the labor dollars on which they are based. As I explained earlier in my testimony, each PC is assigned one billing method

that will most appropriately allocate the charges to the companies receiving the services based on cost-causation principles.

Q. HOW OFTEN ARE LOADER RATES REVIEWED AND ADJUSTED, IF NEEDED?

A. The loader rates for payroll taxes, employee benefits, post-employment benefits, stock options, incentives, and paid time off, are reviewed for reasonableness by the Affiliate Accounting and Allocations group on a quarterly basis and adjusted, or trued-up, on an annual basis.

Q. HAVE THERE BEEN ANY CHANGES IN THIS PROCESS SINCE THE COMMISSION'S LAST REVIEW IN DOCKET NO. 37744?

A. Yes. In Docket No. 37744 (test period including the twelve months ended June 30, 2009) the payroll loaders included employee benefits, post-employment benefits, incentives, payroll taxes, and paid time off. The post-employment benefits loader was comprised of payroll related costs associated with stock options, pensions, and other post-employment benefits. In July 2010, the payroll related costs associated with stock options were separated into its own payroll loader. The stock option payroll loader was created to identify those costs with a separate, unique resource code. The post-employment benefits loader now excludes the payroll related costs associated with stock options.

## VIII. OTHER AFFILIATE BILLINGS

Q. BESIDES ESI, WHICH ENTERGY COMPANIES BILLED ETI FOR SERVICES RENDERED DURING THE TEST YEAR?

A. Each of the Operating Companies billed ETI for services rendered. There are several reasons for the Operating Companies to provide services to one another. For instance, materials from the storeroom of one Operating Company are often transferred to another. Also, one Operating Company may assist another in an emergency situation, such as during a storm and subsequent storm restoration. An Operating Company affiliate can also transfer a percentage of the operating costs of a shared plant to another Operating Company affiliate through the co-owner billing process. As noted previously, during the test year, EGSL transferred operating costs to ETI related to the jointly-owned Nelson 6 plant. In addition, certain of Entergy Corporation's non-regulated affiliates also loaned services to ETI. These services primarily relate to loaned labor and material transfers.

The following exhibits provide a listing of test year per book billings by project/activity code for each Operating Company to its affiliates and for non-regulated affiliates to the regulated affiliates:

- Exhibit SBT-20 – Entergy Arkansas Billings to Affiliates;
- Exhibit SBT-21 – Entergy Gulf States Louisiana Billings to Affiliates;
- Exhibit SBT-22 – Entergy Louisiana Billings to Affiliates;
- Exhibit SBT-23 – Entergy Mississippi Billings to Affiliates;

- Exhibit SBT-24 – Entergy New Orleans Billings to Affiliates; and

- Exhibit SBT-25 – Entergy Non-Regulated Affiliates Billings to Regulated Affiliates

IX.    SPONSORED CLASSES OF AFFILIATE COSTS

A.    Overview

Q.    WHAT IS THE PURPOSE OF THIS SECTION OF YOUR TESTIMONY?

A.    I sponsor the following three classes of affiliate costs:

(1)    Depreciation.  The Depreciation Class includes the cost for the depreciation and amortization of ESI assets.  These assets are used by ESI in the provision of services to its affiliate companies;

(2)    Service Company Recipient Offsets.  The Total ETI Adjusted amount for the Service Company Recipient Offsets Class is zero.  This class is set up for Accounting purposes only; and

(3)    Other Expenses.  The Other Expenses Class primarily includes payroll-related costs that have not yet been loaded to individual departments, the credit ETI received from the 5% upcharge to the non-regulated affiliates, and other miscellaneous costs not associated with other specific classes.

As shown on my Exhibits SBT-5 and SBT-6, these three classes are in the Accounting Entries function, which is included in the Corporate Support family.

Q.    WITH REGARD TO THE THREE CLASSES THAT YOU SPONSOR, DO THE BILLINGS PROVIDED TO ETI DURING THE TEST YEAR MEET

THE COMMISSION STANDARDS FOR INCLUSION OF SUCH COSTS

IN RATES?

A.    Yes.  The billings to ETI during the test year in the three classes of costs

that I sponsor meet the Commission standards for inclusion of such costs

in rates (noting, again, that there are no costs from the Service Company

Recipient Offsets Class included in the Total ETI Adjusted amounts in this

case).  Specifically:

1.    The charges billed to ETI during the test year were reasonable and necessary for the operation of ETI.

2.    The amount charged to ETI through the PC billing process, the co-owner billing process, and the loaned resource billing process for each cost or class of costs during the test year are no higher than the amount charged to the other affiliates or non-affiliated persons for these classes of costs.

3.    The amounts charged to ETI during the test year represent the actual costs of services provided to ETI.

4.    As with all other classes of affiliate costs, expenses that are not allowed for ratemaking purposes are included in the billed expenses, but are excluded from the Total ETI Adjusted amount as below-the-line expenses in accounts such as Account No. 426, and/or are included in the pro forma adjustments shown on Schedule G-6.2, and, therefore, are not included in cost of service.

5.    The items charged to ETI are not duplicative of items already provided by or for ETI.

B.      Depreciation Class

1.      Description of Class

Q.   PLEASE BRIEFLY DESCRIBE THE DEPRECIATION CLASS OF AFFILIATE COSTS.

A.   This class represents the cost of depreciation and amortization of ESI assets. These assets are used by ESI for the provision of services to its affiliate companies.

Q.   WHAT IS THE TOTAL ETI ADJUSTED AMOUNT FOR THIS CLASS OF SERVICES?

A.   As shown in Exhibits SBT-A, SBT-B, and SBT-C, the Total ETI Adjusted amount for this class of services is $1,777,986. Of this amount, ESI directly billed 27% of the amount, and allocated 73% of the amount, to ETI. The following table summarizes this information for the Depreciation Class. The table shows for each class the following information:

| Total Billings | Dollar amount of total Test Year billings and charges from ESI to all Entergy Business Units, plus the dollar amount of all other affiliate charges to ETI that originated from any Entergy Business Unit. This is the amount from Column (C) of the cost exhibits SBT-A, SBT-B, and SBT-C. |
|---|---|
| Total ETI Adjusted | ETI's adjusted amount for electric cost of service after pro forma adjustments and exclusions. |
| % Direct Billed | The percentage of the ETI adjusted test year amount that was billed 100% to ETI. |
| % Allocated | The percentage of the ETI adjusted test year amount that was allocated to ETI. |

| Class | Total Billings | Total ETI Adjusted | | |
| | | Amount | % Direct | % Allocated |
|---|---|---|---|---|
| Depreciation | $26,406,546 | $1,777,986 | 27% | 73% |

Q. PLEASE DESCRIBE THE EXHIBITS THAT SUPPORT THE INFORMATION INCLUDED IN THE TABLE ABOVE.

A. Please see Exhibits SBT-A, SBT-B, and SBT-C, which I described above in connection with my affiliate overview presentation. For each of these exhibits, the amounts in the columns represent the following information:

| | |
|---|---|
| **Column (A) –**<br>**Support** | Dollar amount of total Test Year billings and charges from ESI to all Entergy Business Units, plus the dollar amount of all other affiliate charges to ETI that originated from any Entergy Business Unit. |
| **Column (B) –**<br>**Service Company**<br>**Recipient** | Dollar amount that was included in the service company recipient allocation. Service company recipient charges are the cost of services that ESI provides to itself, which in turn are charged to affiliates that receive those services. The service company recipient allocation process is described earlier in my testimony. |
| **Column (C) –**<br>**Total** | Represents the sum of Columns (A) and (B). |
| **Column (D) –**<br>**All Other BU's** | That portion of Column (C) that was billed and charged to Business Units other than ETI. |
| **Column (E) –**<br>**ETI Per Books** | Represents the difference between Columns (C) and (D). |
| **Column (F) –**<br>**Exclusions** | Represents amounts that are excluded from ETI electric cost of service. The exclusions are described in my testimony. |
| **Column (G) –**<br>**Pro Forma Amount** | Pro Forma Amounts include adjustments for known and measurable changes, and corrections. |
| **Column (H) –**<br>**Total ETI Adjusted** | ETI adjusted amount requested for recovery in this case for this class (Column (E) plus Columns (F) and (G)). |

I have explained the adjustments with respect to Column F (Exclusions) and Column G (Pro Forma Amount) earlier in my testimony.

Q.    ARE THERE ANY PRO FORMA ADJUSTMENTS TO THIS CLASS?

A.    Yes.  The pro forma adjustments for the Depreciation Class are shown on Exhibit SBT-D, which also indicates the Company witnesses who sponsor those pro forma adjustments, and lists the pro forma adjustments by account.  As indicated on Exhibit SBT-D, I sponsor three pro forma adjustments to the Depreciation Class.  Exhibit SBT-12 describes the pro forma adjustments to the Depreciation Class in greater detail.

## 2.    Necessity

Q.    WHAT KINDS OF ASSETS ARE OWNED BY ESI THAT RESULT IN THE DEPRECIATION THAT IS THEN CHARGED TO THE AFFILIATE COMPANIES?

A.    In order to provide services to its affiliate companies, ESI must invest in certain depreciable assets to support its operations.  These assets consist primarily of computer equipment, computer software systems, communications equipment, furniture, fixtures, leasehold improvements, and aircraft.  However, a pro forma adjustment was made to remove Company aircraft costs, including depreciation on aircraft, from the Company's cost of service.

Q.    PLEASE DESCRIBE HOW THE DEPRECIATION OF ESI'S ASSETS IS CALCULATED.

A.    The purpose of depreciation is to distribute the cost of an asset over its expected useful life. Total depreciation expense over the life of an asset is equal to the asset's cost (less any proceeds realized upon disposal). ESI uses the straight-line method to calculate the annual depreciation expense for its assets. Use of this depreciation method results in the cost of an asset being distributed evenly over the expected useful life of the asset. For example, an asset costing $1,000 that has an expected service life of 10 years would result in depreciation expense for this asset of $100 per year for a period of 10 years ($1,000 divided by 10 years = $100 per year or 10% a year). This method of calculating depreciation is appropriate under generally accepted accounting principles. The straight-line method is also the most commonly used and accepted depreciation method. According to an American Institute of Certified Public Accountants survey of 544 companies in 2009, 89% use the straight-line method of depreciation versus other methods, which are primarily accelerated methods of depreciation.[16] Exhibit SBT-26 is a summary of ESI's assets, including plant in service, accumulated depreciation, net plant, and the service life used to calculate depreciation.

---

[16] American Institute of Certified Public Accountants (AICPA); Accounting Trends & Techniques – 2010.

Q.   PLEASE EXPLAIN WHY THE DEPRECIATION COSTS BILLED TO ETI ARE NECESSARY.

A.   ESI requires certain assets to support the operations that provide services to its affiliates, including ETI. The depreciation cost is the result of distributing the cost of these assets over their expected service lives to the recipients of the services provided by ESI. These assets enable ESI to provide the services required by its affiliates, including ETI, in the most efficient, effective, and reliable manner possible. Without such assets to support its operations, ESI could not provide the services that are required by its affiliates, including ETI. Depreciation of those assets is a necessary and proper component of the cost of owning and using the assets to provide services.

### 3.   Reasonableness

Q.   HAVE YOU REVIEWED THE DEPRECIATION EXPENSE TO DETERMINE WHETHER THE CHARGES WERE REASONABLE?

A.   Yes. The charges to ETI for the costs I sponsor are reasonable for the operation of ETI because the method of calculating depreciation (straight-line method) is appropriate under generally accepted accounting principles and is the most common method used. In addition, the price charged by ESI to ETI for this item represents the actual cost of this item.

Q.    WHAT OBJECTIVE SOURCES SUPPORT YOUR OPINION THAT THE DEPRECIATION COSTS BILLED BY ENTERGY SERVICES TO ETI ARE REASONABLE?

A.    Exhibit SBT-27 is a benchmarking study prepared under my supervision that compares the dollar amount of assets per employee for ESI to the dollar amount of assets per employee for other PUHCA 2005 service companies. This measure, cost of assets per employee, is appropriate because employees drive the need for assets in service companies. Because the number of employees would be the primary determinant of the level of the assets that would be required, assets per employee is a valid measure. Exhibit SBT-27 compares the service company property per employee of ESI to the service company property per employee of six other PUHCA 2005 service companies with at least $100 million of service company property as of December 31, 2010. This exhibit shows ESI's cost of assets per employee, while slightly higher than the average, is reasonable compared to that of the other PUHCA 2005 service companies. This comparison is based on service company headcount information contained in the respective corporate Forms 10-K and service company property information contained in each service company's FERC Form 60 Annual Report for the period ending December 31, 2010. However, the service company property for Southern Company Services, Inc., Entergy Services, Inc., Exelon Business Services Company, and American Electric Power Service Corporation on Exhibit

SBT-27 differs from what was reported on the companies' 2010 FERC Form 60s. These were the only companies that included Transportation Equipment in their Service Company Property. Beginning with the FERC Form 60 Annual Report for the period ending December 31, 2008, the service company property category "Aircraft and Airport Equipment" was eliminated and included in "Transportation Equipment." A pro forma adjustment was made (AJ21-01) to remove Company aircraft costs from the Company's cost of service. Therefore, to be consistent with the costs included in this case, the Transportation Equipment was removed from the total Service Company Property for all companies before the benchmarking study was completed. Because the benchmarking study supports the reasonableness of the level of assets being depreciated, and the procedures used to depreciate the assets are appropriate and consistent with well accepted accounting practices, the ultimate level of depreciation is likewise reasonable.

With the exception of depreciation on aircraft, ESI distributes the costs associated with the depreciation and amortization of ESI assets based on the labor cost billed to each affiliate. Distributing ESI's depreciation and amortization costs in this manner is an appropriate allocation of these costs because ESI employee labor is a reasonable measure of the level of services provided by ESI employees to affiliates, and employees and the services they provide drive the need for the assets utilized by ESI in its operations. Depreciation on aircraft is included as a

component of total flight costs of ESI aircraft. Flight costs are charged to specific PCs based on the PC(s) associated with the ridership and purpose of a particular flight. However, as noted above, a pro forma adjustment was made to remove Company aircraft costs, including depreciation on aircraft, from the Company's cost of service.

### 4. How Costs are Charged

Q. DO THE DEPRECIATION COSTS CHARGED BY ENTERGY SERVICES TO ETI UNDER THIS CLASS REASONABLY APPROXIMATE THE COSTS OF THOSE ITEMS?

A. Yes. The depreciation costs charged are based on the actual costs of the assets supporting ESI's operations and do not include any profit or markup.

Q. IS THE PRICE CHARGED TO ETI FOR DEPRECIATION NO HIGHER THAN THE PRICE CHARGED TO OTHER AFFILIATES?

A. Yes. The price charged to ETI is no higher than the price charged by ESI to the other affiliates for depreciation on a per unit basis. With the exception of depreciation on aircraft, ESI depreciation expense is loaded onto each ESI labor dollar, and then billed out to affiliates. The depreciation loader is assigned the same PC as labor, so that it properly follows the same billing distribution as the labor dollars on which it is based. As explained in my testimony, each PC is assigned one billing

method that will most appropriately allocate the charges to the companies receiving the services based on cost-causation principles. Thus, depreciation cost is billed to each affiliate at the same rate for each dollar of labor charged, ensuring that costs are equitably distributed to each affiliate.

Q. HOW ARE THE COSTS OF THIS CLASS CAPTURED AND BILLED TO ETI?

A. With the exception of depreciation on aircraft, the cost associated with this class is initially captured in Project Code F5PCZUDEPX, Depreciation and Amortization, and then these costs are distributed directly to ESI PCs based on the labor charged to the project codes. The receiving PCs then bill the depreciation costs (along with all other costs charged to the PC) to ESI's affiliates based on the assigned billing method for each project. During the test year, projects receiving depreciation costs billed $1,777,986 Total ETI Adjusted, which includes pro forma adjustments, to ETI. Exhibit SBT-B shows the costs included in this class by project code.

Q. WHAT BILLING METHOD IS USED TO ALLOCATE THIS EXPENSE ITEM TO THE VARIOUS ENTITIES THAT RECEIVE SERVICES FROM ESI?

A. As noted, with the exception of depreciation on aircraft, ESI assigned depreciation costs to projects based on labor charged to projects and then

billed these costs to affiliates based on the billing method assigned to each project. The use of assets required to support ESI employee service functions results in the depreciation and amortization cost. Labor charged to projects is an appropriate allocation for this cost because ESI employee labor is a reasonable measure of the level of services provided by ESI employees to affiliates. This process distributes the depreciation and amortization of assets necessary for the ESI employees to provide services to its affiliates in a manner consistent with the distribution of ESI labor to the affiliates that receive services.

C.     Service Company Recipient Offsets (also referred to as Shared Services Loader Offsets)

1.     Description of Class

Q.     PLEASE BRIEFLY DESCRIBE THIS CLASS OF AFFILIATE COSTS.

A.     This class represents the corresponding credit to Service Company Recipient Allocation transactions. As discussed earlier in my testimony, the Service Company Recipient Allocation is the mechanism by which the costs of services provided by ESI employees to operate ESI that are initially billed to ESI through the PC billing process are distributed to ESI's affiliates in a second tier allocation. ESI records the costs associated with ESI services received in a "clearing account" on its balance sheet. These costs reside temporarily in this clearing account until they are distributed to affiliates that are using the services of ESI employees. There are two

components of the Service Company Recipient Allocation process: the recording of costs in the clearing account during the PC billing process; and removal from or credit to the clearing account during the second tier allocation process. Because the costs are distributed to all affiliates based on the labor billings of ESI employees, the allocated costs are reflected in the other affiliate classes. The loader offset, which is charged to a balance sheet clearing account, is reflected in the Service Company Recipient Offsets Class. Because the loader offset is charged to a balance sheet account at ESI, loader offset amounts are not included in the Total ETI Adjusted, as shown on my Exhibits SBT-A, SBT-B, and SBT-C.

### D.    Other Expenses Class

#### 1.    Description of Class

Q.    PLEASE DESCRIBE THIS CLASS OF AFFILIATE COSTS.

A.    This class reflects $1,756,009 of costs resulting from certain accounting adjustments. It primarily includes costs related to payroll, the credit from the 5% upcharge to the non-regulated affiliates, and other miscellaneous costs that are not associated with any other specific affiliate class.

Q    PLEASE DESCRIBE THE ADJUSTMENTS THAT RESULTED IN THE PAYROLL-RELATED COSTS INCLUDED IN THIS CLASS.

A.   Certain payroll-related adjustments, which resulted in the payroll-related costs in this class, are primarily the result of the use of standard estimated rates throughout the year, which differ from actual recorded charges at the end of the year. The costs resulting from the payroll-related adjustments account for approximately $2.3 million. (As I explain below, there is a credit that offsets this amount by $500,000.) Company witness Gardner discusses the reasonableness of various types of payroll-related costs, including employee benefits, teamsharing, and other incentive compensation and payroll taxes. I address the residual amount of these payroll-related costs that have not been loaded to specific departments.

Q.   BESIDES THESE PAYROLL-RELATED COSTS, WHAT OTHER COSTS ARE INCLUDED IN THE OTHER EXPENSES CLASS?

A.   Also included in the Other Expenses Class is a credit of approximately $500,000 of other expenses. The other expenses within this class are primarily made up of credits related to the 5% upcharge to the non-regulated companies, and other miscellaneous accounting adjustments of approximately $240,000.

Q. WHAT PERCENTAGES OF THE TOTAL ETI ADJUSTED FOR THIS CLASS WERE DIRECT BILLED AND ALLOCATED TO ETI?

A. As shown on Exhibit SBT-A, SBT-B, and SBT-C, the Total ETI Adjusted amount for this class of services is $1,756,009. Of this amount, ESI directly billed the $500,000 credit described above (which is -13.9% of the Total ETI Adjusted amount) and allocated the payroll-related costs (which is 113.9% of the Total ETI Adjusted amount) to ETI. The following table summarizes this information for the Other Expenses Class. I described the column names previously in the Depreciation Class section of my testimony.

| Class | Total Billings | Total ETI Adjusted | | |
| | | Amount | % Direct | % Allocated |
|---|---|---|---|---|
| Other Expenses | $36,585,596 | $1,756,009 | -13.9% | 113.9% |

Q. PLEASE DESCRIBE THE EXHIBITS THAT SUPPORT THE INFORMATION INCLUDED IN THE TABLE ABOVE.

A. Exhibits SBT-A through SBT-C support the information for this class in the same manner as I discussed earlier in my testimony. For each exhibit, the amounts in the columns represent the same information as described above with regard to my Depreciation Class.

Q. ARE THERE ANY PRO FORMA ADJUSTMENTS TO THIS CLASS?

A. Yes. The pro forma adjustments for the Other Expenses Class are shown on Exhibit SBT-D, which also indicates the Company witnesses who sponsor those pro forma adjustments. As indicated on Exhibit SBT-D, there were eleven pro forma adjustments made to the Other Expenses Class. Exhibit SBT-12 describes the pro forma adjustments to this Class in greater detail.

Q. WHAT ARE THE MAJOR COST COMPONENTS OF THE CHARGES FOR THIS CLASS?

A. The major cost components for charges from ESI to ETI are as follows:

| Cost Component | Dollars | % of Total |
|---|---|---|
| Payroll and Employee Costs | $2,280,649 | 129.88% |
| Outside Services | $112,325 | 6.4% |
| Office and Employee Expenses | $1 | 0% |
| Service Company Recipient | $105,361 | 6% |
| Other | $-742,327 | -42.27% |
| TOTAL | $1,756,009 | 100% |

Q. WHAT IS THE IMPORTANCE OF THESE COST CATEGORIES?

A. The foregoing table is common to most affiliate witnesses in this case. I directly sponsor the costs shown in this table because they comprise the

Total ETI Adjusted amount for the Other Expenses Class. This breakout of costs provides an additional view of the components of the costs in this class. For example, the table demonstrates that 129.88% of the costs are for compensation, employee benefits, and other labor-related expenses ("Payroll and Employee Costs"). These costs are the result of certain payroll-related adjustments, which I discussed earlier in this section. Company witness Gardner discusses overall payroll and benefits-related structure and practices. The Other expenses in this class, as I previously discussed, include the credits related to the 5% upcharge to the non-regulated affiliates, and other miscellaneous accounting adjustments.

## 2. Necessity

Q. PLEASE EXPLAIN WHY THE ADJUSTMENTS THAT RESULTED IN THE COSTS BILLED TO ETI UNDER THE OTHER EXPENSES CLASS ARE NECESSARY.

A. As explained above, the adjustments resulting in the payroll-related costs included in the Other Expenses Class are necessary to reflect costs associated with reasonable and necessary compensation and benefit programs that Company witness Gardner discusses in his direct testimony. The remaining costs in this class were necessary to properly reflect accounting entries in the Company's books in accordance with generally accepted accounting standards.

3.     Reasonableness

Q.   HAVE YOU REVIEWED THE COSTS IN THE OTHER EXPENSES CLASS TO DETERMINE WHETHER THE ADJUSTMENTS WERE REASONABLE?

A.   Yes.  The adjustments that result in the payroll-related costs in the Other Expenses Class are reasonable because they were made in accordance with generally accepted accounting standards to reflect timing differences associated with book entries.  There is no duplication or over-recovery of actual costs.  The reasonableness of the compensation and benefit programs associated with these payroll-related costs are discussed by Company witness Gardner.  As stated, the remaining adjustments are reasonable (and necessary) to reflect proper and accepted accounting practices with regard to the Company's books.

4.     How Costs are Charged

Q.   DO THE COSTS CHARGED BY ESI TO ETI UNDER THE OTHER EXPENSES CLASS REASONABLY APPROXIMATE THE COSTS OF THOSE ITEMS?

A.   Yes, they do.  The costs charged under the Other Expenses Class, which are the result of certain adjustments, are based on actual costs and do not include any profit or markup.

Q.    IS THE PRICE CHARGED TO ETI FOR ADJUSTMENTS CHARGED UNDER THIS CLASS NO HIGHER THAN THE PRICE CHARGED TO OTHER AFFILIATES?

A.    Yes. The adjustments that resulted in the costs in this class ensure that the total costs charged to ETI are no higher than the price charged by ESI to the other affiliates for the costs charged under the Other Expenses Class. The adjustments that resulted in the payroll-related costs in this class are part of a true-up process to adjust payroll-related account balances for the use of standard estimated rates during the year. The account balance true-ups follow the same billing distribution as the original payroll loaders with the same PCs used for labor costs. As I explained earlier in my testimony, each PC is assigned one billing method that will most appropriately allocate the charges to the companies receiving the services based on cost-causation principles. This basis of cost allocation ensures that the price charged to ETI is no higher than the price charged to other affiliates.

X.    SPONSORED AFFILIATE PRO FORMA ADJUSTMENTS

Q.    DO YOU SPONSOR ANY OF THE PRO FORMA ADJUSTMENTS TO THE TEST YEAR INCLUDED IN EXHIBIT SBT-12?

A.    Yes. Exhibit SBT-12 identifies the pro forma adjustments that I sponsor.

Q. PLEASE DISCUSS THE PRO FORMA ADJUSTMENTS TO THE TEST YEAR COSTS THAT YOU SPONSOR.

A. The adjustments to the test year affiliate costs that I sponsor are listed below.

- AJ21-04 – PwC Changes in Billing Methods

- AJ21-11 – Correct Capital Project Codes

- AJ21-14 – Billing Method Change for Project Code F3PCTDOR01

These test year pro forma adjustments are described in greater detail in Exhibit SBT-12 and Exhibit SBT-D, which includes details of the pro forma adjustments by account.

Q. ARE THERE ANY ADDITIONAL AFFILIATE PRO FORMA ADJUSTMENTS TO THE TEST YEAR THAT ARE SPONSORED BY SOMEONE OTHER THAN YOU?

A. Yes. Please refer to Exhibit SBT-12 for a listing and description of the affiliate pro forma adjustments to the test year sponsored by other Company witnesses.

XI.   BENCHMARKING OF ESI COSTS

Q. ARE ESI'S COSTS OF PROVIDING ITS SUPPORT SERVICES COMPARABLE TO OTHER SERVICE COMPANIES?

A. ESI's costs are generally in line with those of peer service companies.

Q.   HAVE YOU DONE ANY TYPE OF ANALYSIS TO REACH THE CONCLUSION THAT ESI'S COSTS ARE GENERALLY IN LINE WITH THOSE OF PEER SERVICE COMPANIES?

A.   Yes, I conducted a benchmarking analysis comparing ESI's costs with the costs of peer service companies using publicly available information in the December 31, 2010 FERC Form 60 for a peer group of service companies and the December 31, 2010 Form 10-K for the related holding companies.

Q.   PLEASE DESCRIBE HOW YOU DEVELOPED YOUR LIST OF PEER GROUP SERVICE COMPANIES.

A.   I identified the list of service companies that submitted a December 31, 2010 Form 60 to the FERC. The FERC Form 60 is required to be filed by all utility service companies serving multiple jurisdictions. For 2010, 38 service companies, including ESI, submitted the FERC Form 60. Several of these companies have multiple service companies that provide specific services that are not comparable to ESI, including those that provide nuclear generation operations. My analysis excluded those service companies that provide specific services that are not comparable to ESI. In order to ensure direct comparability, my analysis also excluded service companies with a non-U.S. based parent company and companies with fewer than 1 million customers. To ensure that the analysis was performed among similar companies, I then included only those companies whose holding company systems were classified as "Electric

Utilities" by the Global Industry Classification Standard. Lastly, I excluded those companies whose service company headcount information is not publicly available in the Form 10-K or whose FERC Form 60 does not include service company property. The resulting 2010 ESI peer group used in my benchmarking analysis includes Allegheny, AEP, Exelon, FirstEnergy, Northeast Utilities, PEPCO, and Southern Company. A high level overview of the peer group selection process is included in Exhibit SBT-28A.

Q. PLEASE DESCRIBE THE FERC FORM 60 DATA AND THE FORM 10-K DATA THAT WAS USED IN YOUR BENCHMARKING ANALYSIS.

A. My benchmarking analysis captured service company O&M expense as a percentage of total company O&M, service company O&M expense as a percentage of total company revenue, service company O&M expense as a percentage of total company assets, and service company O&M expense per service company employee. The service company O&M expense is publicly available in the FERC Form 60. The total company O&M, total company revenue, total company assets, and service company headcount are publicly available in the Form 10-K. Cost comparisons were calculated on a per-unit basis rather than a total cost basis due to differing levels of granularity and aggregation in the total costs.

Q. WHAT WERE THE RESULTS OF YOUR BENCHMARKING ANALYSIS FOR EACH OF THE COST COMPARISONS LISTED ABOVE?

A. As shown in Exhibit SBT-28B, ESI O&M expense represents 21.50% of total company O&M expense, which is below the peer group average of 26.33%. As shown in Exhibit SBT-28C, ESI O&M expense represents 9.49% of total company revenue, which is below the peer group average of 10.77%. As shown in Exhibit SBT-28D, ESI O&M expense represents 1.79% of total company assets, which is below the peer group average of 2.05%. Lastly, as shown in Exhibit SBT-28E, ESI O&M expense is $220,325 per ESI employee, which is below the peer group average of $248,142 per service company employee.

Q. HOW SHOULD COMPARATIVE PERFORMANCE RELATIVE TO A PEER GROUP, AS CALCULATED THROUGH BENCHMARKING, BE VIEWED?

A. In general, service company costs that are at or better than average provide an indication that a company is providing services in a cost effective manner.

Q. WHAT DO YOU CONCLUDE FROM THE BENCHMARKING ANALYSIS THAT YOU PERFORMED?

A. The overall benchmarking analysis indicated that ESI performed slightly better than the peer group average. As a result of my benchmarking

analysis, I have concluded that ESI's costs are generally in line with those of peer service companies, which supports the conclusion that ESI costs charged to ETI are reasonable.

## XII.   CONCLUSION

Q.   DOES THIS CONCLUDE YOUR DIRECT TESTIMONY?

A.   Yes, at this time.

Entergy Non-Regulated
Affiliate Per Book Billings to Regulated Affiliates by Project/Activity
For the Twelve Months Ended, June 30, 2011
Amounts in Dollars

Exhibit SBT-25
2011 TX Rate Case
1 of 3

| Billing Company | Project/Activity | Description | EAI | EGSLA | ELL | EMI | EOI | ESI | ETI | SERI | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Non Regulated | | | - | - | - | - | - | 163,034 | - | - | 163,034 |
| Non Regulated | C1PPFI5207 | Payroll Time & Labor - Phase I | - | - | - | - | - | 893 | - | - | 893 |
| Non Regulated | C6PCN32144 | GRAND GULF EXTENDED POWER UPRA | - | - | - | - | - | 68,512 | - | - | 68,512 |
| Non Regulated | C6PCN66105 | DRY FUEL STORAGE - STUDY PHASE | - | - | 6,846 | - | - | - | - | - | 6,846 |
| Non Regulated | C6PCN70858 | RIVER BEND EXTENDED POWER UPRA | - | 63,312 | - | - | - | - | - | - | 63,312 |
| Non Regulated | C6PPN32689 | Security:SOCA Camera/Video Sys | - | - | - | - | - | 14,625 | - | - | 14,625 |
| Non Regulated | C6PPN66800 | Misc Security Mods | - | - | - | - | - | 14,625 | - | - | 14,625 |
| Non Regulated | C6PPN71535 | SECURITY: MISC. SECURITY MODS | - | - | - | - | - | 14,625 | - | - | 14,625 |
| Non Regulated | C6PPN71638 | B33-PC001A SEAL REPLACEMENT RF | - | - | - | - | 17,856 | - | - | - | 17,856 |
| Non Regulated | C6PPN87125 | ANOC Monitoring,Detection,CAS/ | - | - | - | - | - | 14,625 | - | - | 14,625 |
| Non Regulated | E1PCN01631 | U1-General Mechanical | 1,084 | - | - | - | - | - | - | - | 1,084 |
| Non Regulated | E1PCN01632 | U1-General Electrical | 330 | - | - | - | - | - | - | - | 330 |
| Non Regulated | E1PCN01702 | U2-Refueling & Fuel Handling | - | - | - | - | 9,062 | - | - | - | 9,062 |
| Non Regulated | E1PCN01715 | U2-Motor Operated Valves (MOV) | - | - | - | - | 15,036 | - | - | - | 15,036 |
| Non Regulated | E1PCN01718 | U2-Emergency Diesel Generators | 8,120 | - | - | - | 19,115 | - | - | - | 27,234 |
| Non Regulated | E1PCN01721 | U2-General Mechanical | 35,357 | - | - | - | - | - | - | - | 35,357 |
| Non Regulated | E1PCN01723 | U2-General Instruments & Contr | - | - | - | - | 12,478 | - | - | - | 12,478 |
| Non Regulated | E1PCN07539 | OUTAGE INDUSTRIAL SAFETY | - | - | - | - | 208 | - | - | - | 208 |
| Non Regulated | E1PCN07540 | OUTAGE IN/OUT PROCESSING | - | - | - | - | 16,756 | - | - | - | 16,756 |
| Non Regulated | E1PCN07552 | REFUELNG/FUEL HANDLNG | - | - | - | - | 16,312 | - | - | - | 16,312 |
| Non Regulated | E1PCN07553 | TURBINE GENERATOR & AUXILIARIE | - | - | - | - | 26,757 | - | - | - | 26,757 |
| Non Regulated | E1PCN07562 | OUTAGE OPERATIONS WORK | - | - | - | - | 12,481 | - | - | - | 12,481 |
| Non Regulated | E1PCN07564 | OUTAGE SUPPORT ACTIVITIES | - | 17,867 | - | - | 87,807 | - | - | - | 105,673 |
| Non Regulated | E1PCN07578 | INSERVICE INSPECTION/IWE-IWL P | - | - | - | - | 2,573 | - | - | - | 2,573 |
| Non Regulated | E1PCN07579 | HEALTH PHYSICS OUTAGE WORK | - | - | - | - | 24,086 | - | - | - | 24,086 |
| Non Regulated | E1PCN07580 | MECHANICAL OUTAGE WORK | - | - | - | - | 14,614 | - | - | - | 14,614 |
| Non Regulated | E1PCN07581 | ELECTRICAL OUTAGE WORK | - | - | - | - | 71,336 | - | - | - | 71,336 |
| Non Regulated | E1PCN07582 | I&C OUTAGE WORK | - | 8,027 | - | - | 128,794 | - | - | - | 136,821 |
| Non Regulated | E1PCN08301 | REFUELING AND FUEL HANDLING | - | - | 9,606 | - | 18,897 | - | - | - | 28,503 |
| Non Regulated | E1PCN08304 | MAINTENANCE SUPPORT OUTAGE WOR | - | - | 1,784 | - | - | - | - | - | 1,784 |
| Non Regulated | E1PCN08315 | REACTOR COOLANT PUMPS / MOTORS | - | - | 30,152 | - | - | - | - | - | 30,152 |
| Non Regulated | E1PCN08320 | GENERAL CONTAINMENT OUTAGE SUP | - | - | 5,148 | - | - | - | - | - | 5,148 |
| Non Regulated | E1PCN08322 | OUTAGE IN-PROCESS / OUT-PROCES | - | - | 9,978 | - | - | - | - | - | 9,978 |
| Non Regulated | E1PCN08323 | OUTAGE SUPPORT ACTIVITIES | - | - | 33,525 | - | 19,403 | - | - | - | 52,928 |
| Non Regulated | E1PCN08324 | OUTAGE SCAFFOLDING WORK | - | - | 18,470 | - | - | - | - | - | 18,470 |
| Non Regulated | E1PCN08325 | MECHANICAL OUTAGE WORK | - | - | 4,100 | - | 10,407 | - | - | - | 14,507 |
| Non Regulated | E1PCN08326 | ELECTRICAL OUTAGE WORK | - | - | 59,973 | - | 4,231 | - | - | - | 64,203 |
| Non Regulated | E1PCN08329 | HEALTH PHYSICS WORK | - | - | 29,647 | - | - | - | - | - | 29,647 |
| Non Regulated | E1PCN08350 | STEAM GENERATORS / PRESSURIZER | - | - | 14,707 | - | - | - | - | - | 14,707 |
| Non Regulated | E1PCN08353 | HEAT EXCHANGER TESTING / MAINT | - | - | - | - | 15,583 | - | - | - | 15,583 |
| Non Regulated | E1PCNN5413 | NUCLEAR BUSINESS DEVELOPMENT | - | - | - | - | - | 2,548 | - | - | 2,548 |
| Non Regulated | E1PPN01741 | U2-Performance Incentive-Staff | - | - | - | - | 13,785 | - | - | - | 13,785 |
| Non Regulated | E1PPN01744 | U2-Switchyard/Transformers >13 | 6,129 | - | - | - | - | - | - | - | 6,129 |

Amounts may not add or tie to other schedules due to rounding.

Entergy Non-Regulated
Affiliate Per Book Billings to Regulated Affiliates by Project/Activity
For the Twelve Months Ended, June 30, 2011
Amounts in Dollars

Exhibit SBT-25
2011 TX Rate Case
2 of 3

| Billing Company | Project/Activity | Description | EAI | EGSLA | ELL | EMI | EOI | ESI | ETI | SERI | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|
| Non Regulated | E1PPN09155 | OUTAGE PERFORMANCE INCENTIVE | - | 241 | - | - | 38,112 | - | - | - | 38,353 |
| Non Regulated | E1PPN09295 | TURBINE ROTOR REPAIR - RF16 | - | - | - | - | 3,297 | - | - | - | 3,297 |
| Non Regulated | E1PPNG6768 | OUTAGE STAFF PERFORMANCE INCEN | - | - | - | - | 12,982 | - | - | - | 12,982 |
| Non Regulated | F3PC380000 | MISC. BASE TASK EXPENDITURES | 296 | 97,002 | 467 | - | - | - | - | - | 97,765 |
| Non Regulated | F3PC380347 | DOWNPOWERS OVERTIME | - | - | - | - | - | 3,767 | - | - | 3,767 |
| Non Regulated | F3PC4R0000 | SAP MAPPING DEFAULT | 8,292 | 1,969 | 4,243 | - | - | - | - | 1,865 | 16,368 |
| Non Regulated | F3PC5WAREH | WAREHOUSE OPERATIONS | 3,507 | 8,122 | 891 | - | - | - | - | - | 12,520 |
| Non Regulated | F3PC6H0026 | NORTHEAST MGMT OVERSITE IP2/IP | - | - | - | - | - | 3,055 | - | - | 3,055 |
| Non Regulated | F3PC6H00JF | DIRECT SUPPORT TO JAF | - | - | - | - | - | 29,135 | - | - | 29,135 |
| Non Regulated | F3PC6H00PN | DIRECT SUPPORT TO PILGRIM NPS | - | - | - | - | - | 29,707 | - | - | 29,707 |
| Non Regulated | F3PC6H00VY | VERMONT YANKEE 100% | - | - | - | - | - | 40,584 | - | - | 40,584 |
| Non Regulated | F3PC6HENNE | ENN EQUAL SPLIT | - | - | - | - | - | 142 | - | - | 142 |
| Non Regulated | F3PC7RWRHS | JAF MATERIAL CONTROL | 2,364 | 8,832 | 8,091 | - | - | - | - | (4,840) | 14,447 |
| Non Regulated | F3PCCPM001 | CORPORATE PERFORMANCE MANAGEME | - | - | - | - | - | 173 | - | - | 173 |
| Non Regulated | F3PCF99180 | CORP. COMPLIANCE TRACKING SYS | - | - | - | - | - | 91 | - | - | 91 |
| Non Regulated | F3PCF99182 | RECORDS MANAGEMENT | - | - | - | - | - | 82 | - | - | 82 |
| Non Regulated | F3PCFACALL | FACILITIES SVCS- ALL COS | - | - | - | - | - | 424 | - | - | 424 |
| Non Regulated | F3PCHRSALL | HR SERVICES- ALL COMPANIES | - | - | - | - | - | 2,450 | - | - | 2,450 |
| Non Regulated | F3PCN07072 | RBS MP&C OUTAGE SUPPORT | - | - | - | - | 26,608 | - | - | - | 26,608 |
| Non Regulated | F3PCN07096 | SECURITY HEIGHTENED AWARENESS | - | 7 | - | - | - | - | - | - | 7 |
| Non Regulated | F3PCN07606 | RBN GENERAL SUPPORT | - | 4,185 | - | - | - | - | - | - | 4,185 |
| Non Regulated | F3PCN20701 | ESI NUCLEAR EMPLOYEES | 405 | 405 | 405 | - | - | - | - | 405 | 1,620 |
| Non Regulated | F3PCN20707 | NUCLEAR FUEL MANAGEMENT - UNIT | - | - | - | - | - | 175,409 | - | - | 175,409 |
| Non Regulated | F3PCN20780 | ESI NUCLEAR EMPLOYEES - ANO | 11,411 | - | - | - | - | 7,409 | - | - | 18,821 |
| Non Regulated | F3PCN20781 | ESI NUCLEAR EMPLOYEES - GGNS | - | - | - | - | - | 10,102 | - | - | 10,102 |
| Non Regulated | F3PCN20782 | ESI NUCLEAR EMPLOYEES - RB | - | - | - | - | - | 6,199 | - | - | 6,199 |
| Non Regulated | F3PCN20783 | ESI NUCLEAR EMPLOYEES - WF3 | - | - | - | - | - | 633 | - | - | 633 |
| Non Regulated | F3PCN26004 | METHOD 004 - SERI | - | - | - | - | 48,419 | - | - | - | 48,419 |
| Non Regulated | F3PCN26031 | METHOD 031 - RIVER BEND | - | - | - | - | 3,616 | - | - | - | 3,616 |
| Non Regulated | F3PCN90445 | Unit 2 Diesel Outages A&B | 4,176 | - | - | - | - | - | - | - | 4,176 |
| Non Regulated | F3PCN90726 | NRC Graded Force on Force Exer | 5,275 | - | - | - | - | - | - | - | 5,275 |
| Non Regulated | F3PCN91075 | ANO MP&C ADMINISTRATION | 113 | - | - | - | 65,278 | - | - | - | 65,392 |
| Non Regulated | F3PCN91483 | INPO/WANO Preps | 2,752 | - | - | - | - | - | - | - | 2,752 |
| Non Regulated | F3PCN91590 | O & M BUDGETING/COST TRACKING | 400 | - | - | - | - | - | - | - | 400 |
| Non Regulated | F3PP6H0PAL | Direct Support to Palisades | - | - | - | - | - | 9,073 | - | - | 9,073 |
| Non Regulated | F3PP6WAREH | MATERIAL CONTROL | 2,483 | 879 | 9,911 | - | - | - | - | 464 | 13,737 |
| Non Regulated | F3PPCOO001 | CHIEF OPERATING OFFICER | - | - | - | - | - | 10,812 | - | - | 10,812 |
| Non Regulated | F3PPINTAUD | Internal Audit Services | - | - | - | - | - | 86 | - | - | 86 |
| Non Regulated | F3PPIR0001 | ST (STRAIGHT TIME) PAYROLL - I | - | - | - | - | 1,087 | - | - | - | 1,087 |
| Non Regulated | F3PPM08001 | WATERFORD 3 GENERAL SUPPORT | - | - | 2,635 | - | - | - | - | - | 2,635 |
| Non Regulated | F3PPM08235 | SECURITY SERVICES AT WATERFORD | - | - | 7,987 | - | - | - | - | - | 7,987 |
| Non Regulated | F3PPM08268 | AWARDS PROGRAM | - | - | - | - | 405 | - | - | - | 405 |
| Non Regulated | F3PPM08956 | MAINTENANCE TRAINING PROGRAM | - | - | 3,392 | - | - | - | - | - | 3,392 |

Amounts may not add or tie to other schedules due to rounding.

Entergy Non-Regulated
Affiliate Per Book Billings to Regulated Affiliates by Project/Activity
For the Twelve Months Ended, June 30, 2011
Amounts in Dollars

| Billing Company | Project/Activity | Description | EAI | EGSLA | ELL | EMI | EOI | ESI | ETI | SERI | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|
| Non Regulated | F3PPN08511 | NRC Triennial Force on Force E | - | - | 5,386 | - | 404 | - | - | - | 5,791 |
| Non Regulated | F3PPN09260 | RBS PO-10-01 RX RECIRC B SEAL- | - | - | - | - | 1,966 | - | - | - | 1,966 |
| Non Regulated | F3PPN20713 | ESI Nuclear - Site Split | - | - | - | - | - | 20,314 | - | - | 20,314 |
| Non Regulated | F3PPN90022 | NRC Security Investigation | - | - | - | - | - | 5,193 | - | - | 5,193 |
| Non Regulated | F3PPNTLGGG | TLG Decom Support for GG | - | - | - | - | - | - | - | 83,863 | 83,863 |
| Non Regulated | F3PPNTLGRB | TLG Decom Support for RBS | - | 5,448 | - | - | - | - | - | - | 5,448 |
| Non Regulated | F3PPRES001 | Regulated Utility Electric Rel | - | - | - | - | - | 323 | - | - | 323 |
| Non Regulated | F3PPTPAL01 | Plant Support | - | - | 2,711 | - | 19,017 | - | - | - | 21,727 |
| Non Regulated | F3PPTRINVE | Inventory Receipt | 8,211 | 6,766 | 11,731 | - | - | - | - | 1,261 | 27,968 |
| Non Regulated | F3PPWCBNNE | Wholesale Commodity Business - | - | - | - | - | - | 12,883 | - | - | 12,883 |
| Non Regulated | F5PC6H0IP2 | DIRECT SUPPORT TO IP2 | - | - | - | - | - | 1,086 | - | - | 1,086 |
| Non Regulated | F5PCZPTOXX | PAID TIME OFF | - | - | - | - | - | 13,444 | - | - | 13,444 |
| Non Regulated | F5PCZUBENF | BENEFITS | 32 | (60) | 200 | - | 60 | 1,300 | - | - | 1,533 |
| Non Regulated | F5PCZUPRTX | PAYROLL TAX | (226) | (22) | (24) | - | (168) | (719) | - | - | (1,159) |
| Non Regulated | F5PCZZ4040 | TEAMSHARE INCENTIVE COMPENSATI | 165 | 276 | 101 | - | 144 | 2,483 | - | - | 3,168 |
| Non Regulated | F5PCZZ4070 | IMPACT AWARDS | - | 254 | - | - | 541 | - | - | - | 795 |
| Non Regulated | F5PP5PERCX | 5% Surcharge | (12,992) | (8,170) | (2,261) | (1,274) | - | - | (2,475) | (3,739) | (30,912) |
| Non Regulated | F5PPFALCON | Project Falcon | - | - | - | - | - | 1,010 | - | - | 1,010 |
| Non Regulated | F5PPWE0495 | Carbon Capture Study | - | - | - | - | - | 272 | - | - | 272 |
| Non Regulated | SAPCP25910 | PC&R OVERHEAD POOL CHARGES | - | - | - | - | - | 808 | - | - | 808 |
| Non Regulated | SNPCN30001 | Capital Overheads - Grand Gulf | - | - | - | - | 242 | - | - | - | 242 |
| Non Regulated | SNPCP8SUSP | CAPITAL SUSPENSE - ENUCO 80 | - | - | - | - | - | 3,091 | - | - | 3,091 |
| | | | 87,684 | 215,339 | 279,799 | (1,274) | 779,586 | 684,308 | (2,475) | 79,278 | 2,122,246 |

Amounts may not add or tie to other schedules due to rounding.

Entergy Arkansas, Inc.
Affiliate Per Book Billings by Project/Activity
For the Twelve Months Ended, June 30, 2011
Amounts in Dollars

| Billing Company | Project/Activity | Description | EGSLA | ELL | EMI | EEI | ENOI | EOI | ESI | ETI | SERI | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| EAI | BDCW | Disconn & Reconn El Met-Nonpay | - | 1,607 | - | - | - | - | - | - | - | 1,607 |
| EAI | C1PPFI7287 | Dist-Gas SCADA Replacement | - | - | - | - | - | - | 4,872 | - | - | 4,872 |
| EAI | C1PPFI7292 | My Account Online-Serv Initiat | - | - | - | - | - | - | 87 | - | - | 87 |
| EAI | C1PPFIB203 | 21GTX Replacement 2011 | - | - | - | - | - | - | 2,834 | - | - | 2,834 |
| EAI | C1PPFIB211 | Integrated Voice Solutions-PBX | - | - | - | - | - | - | 3,966 | - | - | 3,966 |
| EAI | C1PPFIB229 | Rplcmnt Low Level NonFiber Equ | - | - | - | - | - | - | 750 | - | - | 750 |
| EAI | C1PPFIB230 | Strategic 1/0 DACS Replacment | - | - | - | - | - | - | 1,151 | - | - | 1,151 |
| EAI | C1PPFIB231 | Voice Mail Expansion & DR-Jack | - | - | - | - | - | - | 1,291 | - | - | 1,291 |
| EAI | C1PPFIB64A | Reliability of DC Power System | - | - | - | - | - | - | 35,006 | - | - | 35,006 |
| EAI | C1PPFII042 | Replacement of Smartzone Radio | - | - | - | - | - | - | 646 | - | - | 646 |
| EAI | C1PPFII043 | Relocate Gretna Telecom Hub | - | - | - | - | - | - | 1,604 | - | - | 1,604 |
| EAI | C1PPFII056 | Backbone Ovebld Expnsn North D | - | - | - | - | - | - | 36,795 | - | - | 36,795 |
| EAI | C1PPFII061 | Video Conferencing Expansion | - | - | - | - | - | - | 111 | - | - | 111 |
| EAI | C1PPFII26W | CFI Jackson - Repl Gretna Voic | - | - | - | - | - | - | 7,234 | - | - | 7,234 |
| EAI | C1PPFII62P | IVS-PBX Replacement | - | - | - | - | - | - | 22,969 | - | - | 22,969 |
| EAI | C1PPTD3002 | 2008 NERC Cyber Security Compl | - | - | - | - | - | - | 1,478 | - | - | 1,478 |
| EAI | C1PPTD3303 | LRDC EMS NETWORK (SOC) | - | - | - | - | - | - | 355 | - | - | 355 |
| EAI | C1PPTD3318 | LRDC - TOC Post Cutover Projec | - | - | - | - | - | - | 33,512 | - | - | 33,512 |
| EAI | C1PPTD3330 | SOC-PB SWITCHGEAR INSTALLATION | - | - | - | - | - | - | 32,368 | - | - | 32,368 |
| EAI | C1PPTD3332 | DR SMP CHANNEL BANK EQUIPMT | - | - | - | - | - | - | 10,621 | - | - | 10,621 |
| EAI | C1PPTD3334 | Fire Protection - SOC PB | - | - | - | - | - | - | 304 | - | - | 304 |
| EAI | C1PPTD3502 | DNA Fusion Redundant Server | - | - | - | - | - | - | 462 | - | - | 462 |
| EAI | C1PPWC218G | WPO PDS Software | - | - | - | 23,671 | - | - | - | - | - | 23,671 |
| EAI | C2PP5CA20C | Installation of Spare Transfor | - | - | - | 7,725 | - | - | - | - | - | 7,725 |
| EAI | C2PPWC218A | IP2 - PDS Software | - | - | - | 23,671 | - | - | - | - | - | 23,671 |
| EAI | C2PPWC218B | IP3 PDS Software | - | - | - | 23,671 | - | - | - | - | - | 23,671 |
| EAI | C2PPWC218C | Pilgrim PDS Software | - | - | - | 23,671 | - | - | - | - | - | 23,671 |
| EAI | C2PPWC218D | JAF PDS Software | - | - | - | 23,671 | - | - | - | - | - | 23,671 |
| EAI | C2PPWC218E | VY PDS Software | - | - | - | 23,671 | - | - | - | - | - | 23,671 |
| EAI | C2PPWC218F | Palisades PDS Software | - | - | - | 23,671 | - | - | - | - | - | 23,671 |
| EAI | C5DB476007 | INSTALL GAS MAIN AND SERVICES | - | - | - | - | 571 | - | - | - | - | 571 |
| EAI | C5DB476138 | UPPERLINE STCHARLES PART2 | - | - | - | - | 366 | - | - | - | - | 366 |
| EAI | C5DB476203 | 5627 MARAIS | - | - | - | - | 147 | - | - | - | - | 147 |
| EAI | C6DB275195 | IMPROVE,STERL.,N1710,BUILD RIV | - | 91,436 | - | - | - | - | - | - | - | 91,436 |
| EAI | C6DB275248 | GEORGETOWN RECONDUCTOR | - | 46,741 | - | - | - | - | - | - | - | 46,741 |
| EAI | C6DB275295 | IMP. HWY RELOC. PROJECT #083-0 | - | 10,031 | - | - | - | - | - | - | - | 10,031 |
| EAI | C6DB275868 | IMPROVE, MONROE, N4203, PLANNI | - | 16,435 | - | - | - | - | - | - | - | 16,435 |
| EAI | C6DB275937 | REV, MONROE, N5004, REROUTE N5 | - | (9,589) | - | - | - | - | - | - | - | (9,589) |
| EAI | C6DB276007 | IMPROVE,LUNA,N1908,RECONDUCT 2 | - | 3,033 | - | - | - | - | - | - | - | 3,033 |
| EAI | C6DB276065 | REV DUNN N1005 RECONDUCTOR EXI | - | (2,881) | - | - | - | - | - | - | - | (2,881) |
| EAI | C6DB276148 | CUSTOMER N0254 MINDEN-INSTALL | - | 53,506 | - | - | - | - | - | - | - | 53,506 |
| EAI | C6DB276153 | REV NO256 CAMP MINDEN-RTI CENT | - | 34,621 | - | - | - | - | - | - | - | 34,621 |
| EAI | C6DB276158 | REV NO256 CAMP MINDEN-RTI NORT | - | 66,514 | - | - | - | - | - | - | - | 66,514 |
| EAI | C6DB276159 | REV NO256 CAMP MINDEN-RTI SOUT | - | 10,201 | - | - | - | - | - | - | - | 10,201 |
| EAI | C6DB276164 | REV, MONROE, N4154, UG TO BYER | - | 29,748 | - | - | - | - | - | - | - | 29,748 |
| EAI | C6DB276166 | REV BNVL N4954 CONVERT 3 MILES | - | 90,616 | - | - | - | - | - | - | - | 90,616 |
| EAI | C6DB276171 | REV MON N2705 INSTALL UNDERGOU | - | 25,383 | - | - | - | - | - | - | - | 25,383 |
| EAI | C6DB276173 | REV BNVL N4954 BLD 34.5KV TO S | - | 41,996 | - | - | - | - | - | - | - | 41,996 |
| EAI | C6DB276180 | REV/N1005 AMERICOLD LOGISTICS | - | 48,222 | - | - | - | - | - | - | - | 48,222 |

Amounts may not add or tie to other schedules due to rounding.

Entergy Arkansas, Inc.
Affiliate Per Book Billings by Project/Activity
For the Twelve Months Ended, June 30, 2011
Amounts in Dollars

Exhibit SBT-20
2011 TX Rate Case
2 of 8

| Billing Company | Project/Activity | Description | EGSLA | ELL | EMI | EEI | ENOI | EOI | ESI | ETI | SERI | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| EAI | C6DB276182 | REV N3005 SERVICE TO PLUM TREE | - | 16,715 | - | - | - | - | - | - | - | 16,715 |
| EAI | C6DB276197 | REV BNVL N4954 INST 3000 KVA 3 | - | 35,943 | - | - | - | - | - | - | - | 35,943 |
| EAI | C6DB276200 | REV RNGGLD N2303 INST 2500KVA | - | 47,166 | - | - | - | - | - | - | - | 47,166 |
| EAI | C6DB276204 | CUST, MONROE, N4166, RELOCATE | - | 9,819 | - | - | - | - | - | - | - | 9,819 |
| EAI | C6DB276213 | TEMP SERVICE TO MYRIANT PLANT- | - | 10,263 | - | - | - | - | - | - | - | 10,263 |
| EAI | C6DB276238 | UGC MO N5053 CHANGING OUT U.G. | - | 9,355 | - | - | - | - | - | - | - | 9,355 |
| EAI | C6DB276241 | REV CHTHM N2208 INST 2500KVA P | - | 140,070 | - | - | - | - | - | - | - | 140,070 |
| EAI | C6DB276242 | REV CHTM N2208 BLD 3 PH SER TO | - | 7,168 | - | - | - | - | - | - | - | 7,168 |
| EAI | C6DB276243 | REV, RAYVILLE, N3005, INSTALL | - | 24,256 | - | - | - | - | - | - | - | 24,256 |
| EAI | C6DB276245 | DENBURY RESOURCES SITE 1-571 A | - | 6,420 | - | - | - | - | - | - | - | 6,420 |
| EAI | C6DB276251 | REV N1308 SERVICE TO VANDEVEN | - | 33,044 | - | - | - | - | - | - | - | 33,044 |
| EAI | C6DB276252 | REV N1308 SERVICE TO VANDEVEN | - | 31,939 | - | - | - | - | - | - | - | 31,939 |
| EAI | C6DB276257 | REV-COLUMBIA-N2004-CONVERT SIN | - | 8,952 | - | - | - | - | - | - | - | 8,952 |
| EAI | C6DB276260 | REV,WM,N3103,Ser. to VERSAILLE | - | 19,342 | - | - | - | - | - | - | - | 19,342 |
| EAI | C6DB276283 | RECABLE SPACES ESTATES UG SUBD | - | 9,228 | - | - | - | - | - | - | - | 9,228 |
| EAI | C6DB276290 | IMPROVE, Delhi, N1006, Install | - | 27,838 | - | - | - | - | - | - | - | 27,838 |
| EAI | C6DB276302 | IMPROVE, DELHI, N1005, RECONDU | - | 6,530 | - | - | - | - | - | - | - | 6,530 |
| EAI | C6DB276315 | BKBN, MONROE, N4154, RELIABILI | - | 18,899 | - | - | - | - | - | - | - | 18,899 |
| EAI | C6DB276316 | REV WINNS N1209 INSTALL SERVIC | - | 30,769 | - | - | - | - | - | - | - | 30,769 |
| EAI | C6DB276317 | BKBN, MONROE, N5055, RELIABILI | - | 8,960 | - | - | - | - | - | - | - | 8,960 |
| EAI | C6DB276320 | REV, MERROUGE, N0903, INSTALL | - | 35,428 | - | - | - | - | - | - | - | 35,428 |
| EAI | C6DB276385 | REV, MONROE, N4103, INSTALL UG | - | 26,979 | - | - | - | - | - | - | - | 26,979 |
| EAI | C6DB276432 | REV-COLUMBIA-N2004-INSTALL 200 | - | 28,921 | - | - | - | - | - | - | - | 28,921 |
| EAI | C6DB276443 | REL DOWNS N3303 AC11-003T INST | - | 43,593 | - | - | - | - | - | - | - | 43,593 |
| EAI | C6DB276448 | REV, MONROE, N5054, INSTALL UG | - | 18,395 | - | - | - | - | - | - | - | 18,395 |
| EAI | C6DB276453 | REV WSTN N4417 PULL 250' A2U I | - | 3,656 | - | - | - | - | - | - | - | 3,656 |
| EAI | C6DB276468 | REV LSVL N6108 INST 250' A10U3 | - | 3,271 | - | - | - | - | - | - | - | 3,271 |
| EAI | C6DB374344 | extending phase | - | - | 8,907 | - | - | - | - | - | - | 8,907 |
| EAI | C6DB374405 | SENATOBIA - JONESTOWN SE10-002 | - | - | 1,496 | - | - | - | - | - | - | 1,496 |
| EAI | C6DB374407 | SH10-005A 2010 PROJECT.  LOAD | - | - | 53,930 | - | - | - | - | - | - | 53,930 |
| EAI | C6DB374428 | CONSTRUCT 795 ACSR 12.47 KV LI | - | - | 2,688 | - | - | - | - | - | - | 2,688 |
| EAI | C6DB374526 | REPLACE 3-4/0 ACSR WITH 3-795 | - | - | 31,982 | - | - | - | - | - | - | 31,982 |
| EAI | C6DB374597 | INSTALL URD SERVICE TO VILLAGE | - | - | 17,532 | - | - | - | - | - | - | 17,532 |
| EAI | C6DB374608 | INSTALL UNDERGROUND DISTRIBUTI | - | - | 37,855 | - | - | - | - | - | - | 37,855 |
| EAI | C6DB374621 | MID POINT SWITCHING - INSTALL | - | - | 1,283 | - | - | - | - | - | - | 1,283 |
| EAI | C6DB374622 | MID POINT SWITCHING - INSTALL | - | - | 1,171 | - | - | - | - | - | - | 1,171 |
| EAI | C6DB374623 | MID POINT SWITCHING - INSTALL | - | - | 1,264 | - | - | - | - | - | - | 1,264 |
| EAI | C6DB374625 | MID POINT SWITCHING - INSTALL | - | - | 1,387 | - | - | - | - | - | - | 1,387 |
| EAI | C6DB374626 | MID POINT SWITCHING - INSTALL | - | - | 1,007 | - | - | - | - | - | - | 1,007 |
| EAI | C6DB374627 | MID POINT SWITCHING - INSTALL | - | - | 2,638 | - | - | - | - | - | - | 2,638 |
| EAI | C6DB374628 | MID POINT SWITCHING - INSTALL | - | - | 1,283 | - | - | - | - | - | - | 1,283 |
| EAI | C6DB374629 | MID POINT SWITCHING - INSTALL | - | - | 1,007 | - | - | - | - | - | - | 1,007 |
| EAI | C6DB374674 | REMOVE 45/5, 40/5, INSTALL (2) | - | - | 36,950 | - | - | - | - | - | - | 36,950 |
| EAI | C6DB374764 | PROVIDE NEW SERVICE TO SCHULZ | - | - | 56,671 | - | - | - | - | - | - | 56,671 |
| EAI | C6DB374765 | PROVIDE NEW SERVICE TO SCHULZ | - | - | 95,313 | - | - | - | - | - | - | 95,313 |
| EAI | C6DB374782 | 2010 PHASE 3 RELIABILITY-CIRCU | - | - | 2,026 | - | - | - | - | - | - | 2,026 |
| EAI | C6DB374785 | 2010 PHASE 3 RELIABILITY - CIR | - | - | 524 | - | - | - | - | - | - | 524 |
| EAI | C6DB374786 | 2010 PHASE 3 RELIABILITY-CIRCU | - | - | 3,764 | - | - | - | - | - | - | 3,764 |
| EAI | C6DB374811 | SUNNYBROOK SUB, CONVERT D-LINE | - | - | 166 | - | - | - | - | - | - | 166 |

Amounts may not add or tie to other schedules due to rounding.

Entergy Arkansas, Inc.
Affiliate Per Book Billings by Project/Activity
For the Twelve Months Ended, June 30, 2011
Amounts in Dollars

Exhibit SBT-20
2011 TX Rate Case
3 of 8

| Billing Company | Project/Activity | Description | EGSLA | ELL | EMI | EEI | ENOI | EOI | ESI | ETI | SERI | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| EAI | C6DB374826 | RELOCATE FACILITIES HWY 4 AND | - | - | 5,188 | - | - | - | - | - | - | 5,188 |
| EAI | C6DB374832 | INSTALL-THREE 333KVA REGULATOR | - | - | 39,328 | - | - | - | - | - | - | 39,328 |
| EAI | C6DB374833 | REMOVE (8) 35/5's, (9) 40/5's, | - | - | 9,942 | - | - | - | - | - | - | 9,942 |
| EAI | C6DB374837 | Install  (6) 50-3 wood poles, | - | - | 36,815 | - | - | - | - | - | - | 36,815 |
| EAI | C6DB374854 | INSTALL 3- 328 AMP REGULATORS | - | - | 35,459 | - | - | - | - | - | - | 35,459 |
| EAI | C6DB374859 | 2011 CAPACITOR PROJECT | - | - | 6,578 | - | - | - | - | - | - | 6,578 |
| EAI | C6DB374860 | 2011 CAPACITOR PROJECT | - | - | 6,578 | - | - | - | - | - | - | 6,578 |
| EAI | C6DB374862 | 2011 CAPACITOR PROJECT | - | - | 6,608 | - | - | - | - | - | - | 6,608 |
| EAI | C6DB374897 | Reconductor 1.4 miles of 8A CW | - | - | 9,491 | - | - | - | - | - | - | 9,491 |
| EAI | C6DB374911 | Install 1800 KVAR CAP BANK | - | - | 7,848 | - | - | - | - | - | - | 7,848 |
| EAI | C6DB374916 | INSTALL (1) 1800 KVAR 35KV CAP | - | - | 7,529 | - | - | - | - | - | - | 7,529 |
| EAI | C6DB374975 | OSMOSE POLE REPLACEMENT PROJEC | - | - | 499 | - | - | - | - | - | - | 499 |
| EAI | C6DB374986 | 2011 RELIABILITY - PHASE 2 - C | - | - | 6,610 | - | - | - | - | - | - | 6,610 |
| EAI | C6DB374987 | Install U/G 3ph and 1500kva 3p | - | - | 23,204 | - | - | - | - | - | - | 23,204 |
| EAI | C6DB374992 | INSTALL 5 MI. 1/0 SHIELD CIRCU | - | - | 96 | - | - | - | - | - | - | 96 |
| EAI | C6DB375013 | 2011 INFRARED REPAIRS - CLINTO | - | - | 40 | - | - | - | - | - | - | 40 |
| EAI | C6DB375029 | REMOVE PRIMARY METERING, 35/5, | - | - | 14,674 | - | - | - | - | - | - | 14,674 |
| EAI | C6DB771606 | WO11-0271, 768AL IN-LINE DISCO | - | - | - | - | - | - | - | 26 | - | 26 |
| EAI | C6DB869845 | GULF HWY. 190SL RECONDUCTOR - | 313 | - | - | - | - | - | - | - | - | 313 |
| EAI | C6DB869994 | REV ZA WINDSOR PLACE | 134 | - | - | - | - | - | - | - | - | 134 |
| EAI | C6PC249000 | DIST. LINES REVENUE BLANKET - | - | 1,129,935 | - | - | - | - | - | - | - | 1,129,935 |
| EAI | C6PC249020 | DIST. LINES REVENUE BLANKET - | - | 998,471 | - | - | - | - | - | - | - | 998,471 |
| EAI | C6PC249050 | REVENUE STREET LIGHTS | - | 63,056 | - | - | - | - | - | - | - | 63,056 |
| EAI | C6PC249060 | REVENUE PRIVATE AREA LIGHTS | - | 20,184 | - | - | - | - | - | - | - | 20,184 |
| EAI | C6PC249100 | DISTB LINES IMP BLANKET-POLE R | - | 291 | - | - | - | - | - | - | - | 291 |
| EAI | C6PC249103 | DISTB LINES IMP BLANKET-OTHER | - | 19,369 | - | - | - | - | - | - | - | 19,369 |
| EAI | C6PC249104 | DL BATCH JOBS FOR FAILURE REPL | - | 97,225 | - | - | - | - | - | - | - | 97,225 |
| EAI | C6PC249105 | LOAD RELATED RELIABILITY | - | 27,708 | - | - | - | - | - | - | - | 27,708 |
| EAI | C6PC249108 | NON-MANDATED RELOCATIONS ELL | - | 12,865 | - | - | - | - | - | - | - | 12,865 |
| EAI | C6PC249120 | JOINT USE - BELL | - | 22,102 | - | - | - | - | - | - | - | 22,102 |
| EAI | C6PC249121 | JOINT USE - CABLE | - | 3,657 | - | - | - | - | - | - | - | 3,657 |
| EAI | C6PC249140 | DL DESIGN JOBS - EMERGENCY REP | - | 53,713 | - | - | - | - | - | - | - | 53,713 |
| EAI | C6PC249150 | NON-TARGET CIRCUIT BACKBONE IM | - | 110,502 | - | - | - | - | - | - | - | 110,502 |
| EAI | C6PC249180 | DISTRIBUTION TRUCK STOCK | - | 836,319 | - | - | - | - | - | - | - | 836,319 |
| EAI | C6PC249703 | TACTICS: TARGET LINE DEVICES | - | 1,552 | - | - | - | - | - | - | - | 1,552 |
| EAI | C6PC249708 | TACTICS: TARGETED CIRCUITS/FEE | - | 19,702 | - | - | - | - | - | - | - | 19,702 |
| EAI | C6PC349000 | DISB. LINES REVENUE BLANKET - | - | - | 119,369 | - | - | - | - | - | - | 119,369 |
| EAI | C6PC349020 | DIST. LINES REVENUE BLANKET - | - | - | 463,476 | - | - | - | - | - | - | 463,476 |
| EAI | C6PC349050 | REVENUE STREET LIGHTS | - | - | 6,308 | - | - | - | - | - | - | 6,308 |
| EAI | C6PC349060 | REVENUE PRIVATE ARE LIGHTS | - | - | 3,143 | - | - | - | - | - | - | 3,143 |
| EAI | C6PC349103 | DISTB. LINES IMP BLANKET-OTHER | - | - | 5,093 | - | - | - | - | - | - | 5,093 |
| EAI | C6PC349104 | DL BATCH JOBS FOR FAILURE REPL | - | - | 64,920 | - | - | - | - | - | - | 64,920 |
| EAI | C6PC349108 | NON-MANDATED RELOCATIONS EMI | - | - | 34,565 | - | - | - | - | - | - | 34,565 |
| EAI | C6PC349120 | JOINT USE - BELL | - | - | 2,403 | - | - | - | - | - | - | 2,403 |
| EAI | C6PC349140 | DL DESIGN JOBS - EMERGENCY REP | - | - | 23,042 | - | - | - | - | - | - | 23,042 |
| EAI | C6PC349180 | DISTRIBUTION TRUCK STOCK | - | - | 319,404 | - | - | - | - | - | - | 319,404 |
| EAI | C6PC349200 | DISTB LINES BLANKET-GOVT MAND. | - | - | 263 | - | - | - | - | - | - | 263 |
| EAI | C6PC349703 | TACTICS: TARGET LINE DEVICES | - | - | 3,236 | - | - | - | - | - | - | 3,236 |
| EAI | C6PC349705 | ENTERGY RENEWAL-EQUIPMENT MAIN | - | - | 951 | - | - | - | - | - | - | 951 |

Amounts may not add or tie to other schedules due to rounding.

Entergy Arkansas, Inc.
Affiliate Per Book Billings by Project/Activity
For the Twelve Months Ended, June 30, 2011
Amounts in Dollars

Exhibit SBT-20
2011 TX Rate Case
4 of 8

| Billing Company | Project/Activity | Description | EGSLA | ELL | EMI | EEI | ENOI | EOI | ESI | ETI | SERI | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| EAI | C6PC449000 | DIST. LINES REVENUE BLANKET - | - | - | - | - | 1,467 | - | - | - | - | 1,467 |
| EAI | C6PC449020 | DIST. LINES REVENUE BLANKET - | - | - | - | - | 305 | - | - | - | - | 305 |
| EAI | C6PC449102 | DISTB LINES-IMP BLANKET-UNDG C | - | - | - | - | 147 | - | - | - | - | 147 |
| EAI | C6PC449103 | DISTB LINES-IMP BLANKET - OTHE | - | - | - | - | 653 | - | - | - | - | 653 |
| EAI | C6PC449104 | DL BATCH JOBS FOR FAILURE REPL | - | - | - | - | 996 | - | - | - | - | 996 |
| EAI | C6PC449706 | ENTERGY RENEWAL - LINE MAINTEN | - | - | - | - | 1,107 | - | - | - | - | 1,107 |
| EAI | C6PC849000 | DIST. LINES REVENUE BLANKET - | 5,745 | - | - | - | - | - | - | - | - | 5,745 |
| EAI | C6PC849020 | DIST. LINES REVENUE BLANKET - | 332 | - | - | - | - | - | - | - | - | 332 |
| EAI | C6PC849100 | DISTRIBUTION - IMP - POLE REPL | 4,154 | - | - | - | - | - | - | - | - | 4,154 |
| EAI | C6PC849104 | DL BATCH JOBS FOR FAILURE REPL | 886 | - | - | - | - | - | - | - | - | 886 |
| EAI | C6PC849106 | STREET LIGHTING MAINT BLANKET | 214 | - | - | - | - | - | - | - | - | 214 |
| EAI | C6PC849108 | NON-MANDATED RELOCATIONS LA-EG | 450 | - | - | - | - | - | - | - | - | 450 |
| EAI | C6PC849180 | DISTRIBUTION TRUCK STOCK | (70) | - | - | - | - | - | - | - | - | (70) |
| EAI | C6PC849705 | ENTERGY RENEWAL EQUIPMENT MAIN | 35 | - | - | - | - | - | - | - | - | 35 |
| EAI | C6PP749010 | Distr Lines Revenue Blnk Non-D | - | - | - | - | - | - | - | 4,310 | - | 4,310 |
| EAI | C6PP749030 | Distr Line Revenue Blanket Des | - | - | - | - | - | - | - | 165 | - | 165 |
| EAI | C6PP749113 | D-Line Internal Request Improv | - | - | - | - | - | - | - | 125 | - | 125 |
| EAI | C6PP749114 | Distr Lines Failures Blanket T | - | - | - | - | - | - | - | 584 | - | 584 |
| EAI | C6PP749118 | D-Line Customer Requested Proj | - | - | - | - | - | - | - | 194 | - | 194 |
| EAI | C6PP749713 | D-Lines TACTICS Target Line De | - | - | - | - | - | - | - | 793 | - | 793 |
| EAI | C6PPCAPARK | AR Warehouse Capital Improv 20 | - | 50,008 | 13,544 | - | - | - | - | 12,502 | - | 76,054 |
| EAI | C6PPD40220 | Crystal Springs: Inst Fiber Eq | - | - | 4,683 | - | - | - | - | - | - | 4,683 |
| EAI | C6PPD40221 | Charity Church: Inst Fiber Equ | - | - | 4,597 | - | - | - | - | - | - | 4,597 |
| EAI | C6PPD40223 | Lula: Inst Fiber Equip | - | - | 2,614 | - | - | - | - | - | - | 2,614 |
| EAI | C6PPD40261 | Clarksdale: Rpl Fld 1W22 Regul | - | - | 148 | - | - | - | - | - | - | 148 |
| EAI | C6PPERG204 | Systemwide Ergonomics Capital | - | 17,539 | - | - | - | - | - | - | - | 17,539 |
| EAI | C6PPERG206 | Systemwide Ergonomics Capital | - | - | 6,465 | - | - | - | - | - | - | 6,465 |
| EAI | C6PPFIB20A | NS ANO - Cabling | - | - | - | - | - | - | 2,140 | - | - | 2,140 |
| EAI | C6PPFIB20C | NS ANO PBX | - | - | - | - | - | - | 67,489 | - | - | 67,489 |
| EAI | C6PPFIB26K | Microwave Replacement EAI 2011 | - | - | - | - | - | - | 646 | - | - | 646 |
| EAI | C6PPSHOPGS | Capture Transformer Costs LG | (29,317) | - | - | - | - | - | - | - | - | (29,317) |
| EAI | C6PPSHOPLA | Capture Transf Shop Cost LA | - | (40,741) | - | - | - | - | - | - | - | (40,741) |
| EAI | C6PPSHOPMS | Capture Transformer Cost MS | - | - | 4,188 | - | - | - | - | - | - | 4,188 |
| EAI | C6PPT60176 | Greenville: Inst Fiber Equip | - | - | 3,117 | - | - | - | - | - | - | 3,117 |
| EAI | C6PPT60180 | Horn Lake: Inst Fiber Equip | - | - | 4,100 | - | - | - | - | - | - | 4,100 |
| EAI | C6PPT60196 | Vicksburg: Inst Fiber Equip | - | - | 10,128 | - | - | - | - | - | - | 10,128 |
| EAI | C6PPTC2001 | Waterways-Vicksburg 115 CAP | - | - | 181 | - | - | - | - | - | - | 181 |
| EAI | C6PPTD3304 | LR TOC Mapboard Display (Ph3) | - | - | - | - | - | - | 41 | - | - | 41 |
| EAI | C6PPTFRSLA | Capture Transformer Shop Cost | - | 22,244 | - | - | - | - | - | - | - | 22,244 |
| EAI | C6PPTFRSMS | Capture Transformer Cost MS | - | - | 16,000 | - | - | - | - | - | - | 16,000 |
| EAI | C6PPTL4236 | Inf10: L109 Rilla-Riverton | - | 112 | - | - | - | - | - | - | - | 112 |
| EAI | C6PPTL4237 | Inf10: L110 Standard-Red Gum | - | 2,665 | - | - | - | - | - | - | - | 2,665 |
| EAI | C6PPTL4238 | Inf10: L121 Hodge-Station E | - | 154 | - | - | - | - | - | - | - | 154 |
| EAI | C6PPTL6969 | Shield Rep: Devil Swamp-Port H | 12,140 | - | - | - | - | - | - | - | - | 12,140 |
| EAI | C6PPTL7175 | Sterlington-IPCO 115: Upgrade | - | 2,402 | - | - | - | - | - | - | - | 2,402 |
| EAI | C6PPTL7176 | IPCO-Bastrop 115: Upgrade Line | - | 2,136 | - | - | - | - | - | - | - | 2,136 |
| EAI | C6PPTL7177 | Bastrop-Log Cabin 115: Upgr Li | - | 6,101 | - | - | - | - | - | - | - | 6,101 |
| EAI | C6PPTL7295 | PCue10:L372 Nesser Tap-Harelso | 2,710 | - | - | - | - | - | - | - | - | 2,710 |
| EAI | C6PPTL9378 | El Dor-Longwd: Cut-in Sarepta | - | 2,740 | - | - | - | - | - | - | - | 2,740 |

Amounts may not add or tie to other schedules due to rounding.

Entergy Arkansas, Inc.
Affiliate Per Book Billings by Project/Activity
For the Twelve Months Ended, June 30, 2011
Amounts in Dollars

Exhibit SBT-20
2011 TX Rate Case
5 of 8

| Billing Company | Project/Activity | Description | EGSLA | ELL | EMI | EEI | ENOI | EOI | ESI | ETI | SERI | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| EAI | C6PPTLG201 | CLECO Sellers Road to LUS Labb | 1,183 | - | - | - | - | - | - | - | - | 1,183 |
| EAI | C6PPTLP183 | L183: Install Cut-in to Colleg | - | - | - | - | - | - | - | 1,158 | - | 1,158 |
| EAI | C6PPTLZ002 | Hartburg-McLewis: Upgrade to 7 | - | - | - | - | - | - | - | 17,563 | - | 17,563 |
| EAI | C6PPTS2194 | Lewis Creek: Install Transform | - | - | - | - | - | - | - | 228 | - | 228 |
| EAI | C6PPTS9370 | Sarepta 345kV: Build New Sw. S | - | 3,656 | - | - | - | - | - | - | - | 3,656 |
| EAI | C6PPTSA707 | L.R. West, Repl Breakers on T1 | - | - | - | - | - | - | 62 | - | - | 62 |
| EAI | C6PPTSA807 | Rohwer, Repl fld 115kV Switch | - | - | - | - | - | - | 220 | - | - | 220 |
| EAI | C6PPTSA951 | Ark Grid, Trailer 15kv Mble Bk | - | - | - | - | - | - | 60 | - | - | 60 |
| EAI | C6PPTSG104 | Richard Sub: Install 500kV POD | 3,551 | - | - | - | - | - | - | - | - | 3,551 |
| EAI | C6PPTSHOPL | Capture Transf Shop Cost LA | - | 33,227 | - | - | - | - | - | - | - | 33,227 |
| EAI | C6PPTSHOPM | Capture Transformer Cost MS | - | - | 12,574 | - | - | - | - | - | - | 12,574 |
| EAI | C6PPTSK107 | Sterlington 115: Bus Split/Upg | - | 264 | - | - | - | - | - | - | - | 264 |
| EAI | C6PPTSK291 | SAREPTA PT FAILURE | - | 2,128 | - | - | - | - | - | - | - | 2,128 |
| EAI | C6PPTSK371 | BASTROP CCVT | - | 6,082 | - | - | - | - | - | - | - | 6,082 |
| EAI | C6PPTSP999 | College Station Junction: Buil | - | - | - | - | - | - | - | 36 | - | 36 |
| EAI | C6PPTSV003 | Hamlet: XFMR Upgrade | - | - | - | - | - | - | 124 | - | - | 124 |
| EAI | C6PPTSX004 | Lewis Creek 138kV: Install brk | - | - | - | - | - | - | - | 1,338 | - | 1,338 |
| EAI | C6PPWGB005 | OP3-OUA007 - Off Engine Monito | 56,834 | - | - | - | - | - | - | - | - | 56,834 |
| EAI | C6PPWGB028 | OP3-OUA015.014-HRSG Air Attemp | 72,863 | - | - | - | - | - | - | - | - | 72,863 |
| EAI | C6PPWHCAPL | LA Warehouse Capital Improv 20 | - | 5,920 | - | - | - | - | - | - | - | 5,920 |
| EAI | C6PPWMD170 | GA1 Replace Fire Post Valves | - | - | 2,749 | - | - | - | - | - | - | 2,749 |
| EAI | C7PPSJ1254 | STORM DL ARK DIST EAI 5/19-5/2 | - | - | - | - | - | - | - | 88 | - | 88 |
| EAI | C7PPSJ2452 | ELL DIST STORM 06/18 - 06/20/1 | - | 5,744 | - | - | - | - | - | - | - | 5,744 |
| EAI | C7PPSJ2453 | STORM DMG ELL 6/28/10 to 6/29/ | - | 11,461 | - | - | - | - | - | - | - | 11,461 |
| EAI | C7PPSJ2454 | STORM DMG LA 7/16 to 7/17 | - | 17,600 | - | - | - | - | - | - | - | 17,600 |
| EAI | C7PPSJ2455 | STORM DMG ELL 8-4 THRU 8-5-10 | - | 1,230 | - | - | - | - | - | - | - | 1,230 |
| EAI | C7PPSJ2458 | STORM DMG ELL  8/22/10 THRU 8/ | - | 2,733 | - | - | - | - | - | - | - | 2,733 |
| EAI | C7PPSJ2462 | STORM DMG LA DIST ELL 1/8/11 I | - | 8,818 | - | - | - | - | - | - | - | 8,818 |
| EAI | C7PPSJ2463 | STORM DMG LA 2-1-11 | - | 85,326 | - | - | - | - | - | - | - | 85,326 |
| EAI | C7PPSJ2464 | STORM DMG LA DIST ELL  ISS 2/2 | - | 3,351 | - | - | - | - | - | - | - | 3,351 |
| EAI | C7PPSJ2469 | STORM DMG LA DIST ELL ISS 3/30 | - | 425 | - | - | - | - | - | - | - | 425 |
| EAI | C7PPSJ2470 | STORM DMG LA DIST ELL 4 4 - 4 | - | 174,902 | - | - | - | - | - | - | - | 174,902 |
| EAI | C7PPSJ2471 | STORM DMG LA ELL 4/15/11 - 4/1 | - | 45,183 | - | - | - | - | - | - | - | 45,183 |
| EAI | C7PPSJ2474 | STORM Dmg ELL 4/25 to 4/27/11 | - | 180,915 | - | - | - | - | - | 50 | - | 180,965 |
| EAI | C7PPSJ2475 | ELL-LA STORM (5/13 - 5/14/11) | - | 13 | - | - | - | - | - | - | - | 13 |
| EAI | C7PPSJ2476 | ELL-LA STORM (6/4 - 6/6/11) | - | 5,089 | - | - | - | - | - | - | - | 5,089 |
| EAI | C7PPSJ2479 | STORM DMG LA ELI (Jun 10-13, 2 | - | 4,065 | - | - | - | - | - | - | - | 4,065 |
| EAI | C7PPSJ2480 | STORM DMG LA 6/21-6/22 ELL Sto | - | 4,681 | - | - | - | - | - | - | - | 4,681 |
| EAI | C7PPSJ3183 | EMI 04/24/10 Tornadoes Distr O | - | - | 180 | - | - | - | - | - | - | 180 |
| EAI | C7PPSJ3185 | EMI 08/11/10 Trop Depress5 Dis | - | - | 79,319 | - | - | - | - | - | - | 79,319 |
| EAI | C7PPSJ3190 | EMI July 2010 Storm Dist Ops-M | - | - | 7,847 | - | - | - | - | - | - | 7,847 |
| EAI | C7PPSJ3195 | EMI Oct 2010 Storm Distr Ops-M | - | - | 4,722 | - | - | - | - | - | - | 4,722 |
| EAI | C7PPSJ3197 | EMI Storm DistOps 12/31/10 Tor | - | - | 392 | - | - | - | - | - | - | 392 |
| EAI | C7PPSJ3198 | EMI Storm Distr Ops 1/7/11Wint | - | - | 43,820 | - | - | - | - | - | - | 43,820 |
| EAI | C7PPSJ3199 | EMI February 2011 Storm DistrO | - | - | 10,657 | - | - | - | - | - | - | 10,657 |
| EAI | C7PPSJ3202 | EMI APRIL 2011 Storm Distr Ops | - | - | 99,848 | - | - | - | - | - | - | 99,848 |
| EAI | C7PPSJ3203 | EMI Storm Distr Ops 4/15/11 | - | - | 774 | - | - | - | - | - | - | 774 |
| EAI | C7PPSJ3204 | EMI StormTornadoes DistrOps 4/ | - | - | 97,729 | - | - | - | - | - | - | 97,729 |
| EAI | C7PPSJ3205 | EMIStormMSRiverFlood DistrOp4/ | - | - | 4,887 | - | - | - | - | - | - | 4,887 |

Amounts may not add or tie to other schedules due to rounding.

Entergy Arkansas, Inc.
Affiliate Per Book Billings by Project/Activity
For the Twelve Months Ended, June 30, 2011
Amounts in Dollars

Exhibit SBT-20
2011 TX Rate Case
6 of 8

| Billing Company | Project/Activity | Description | EGSLA | ELL | EMI | EEI | ENOI | EOI | ESI | ETI | SERI | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| EAI | C7PPSJ3207 | EMI MAY 2011 Storm Distr Ops-M | - | - | 752 | - | - | - | - | - | - | 752 |
| EAI | C7PPSJ3209 | EMI JUNE 2011 Storm Distr Ops- | - | - | 31,596 | - | - | - | - | - | - | 31,596 |
| EAI | C7PPSJ4088 | STORM DMG LA DIST OPS ENOI ISS | - | - | - | - | 35 | - | - | - | - | 35 |
| EAI | C7PPSJ4089 | STORM DMG LA DIST OPS ENOI ISS | - | - | - | - | 62 | - | - | - | - | 62 |
| EAI | C7PPSJ7231 | Storm Dmg Dist ETI 1/9/11 | - | - | - | - | - | - | - | 86 | - | 86 |
| EAI | C7PPSJ7232 | Storm Dmg Dist ETI 2/1/11 | - | - | - | - | - | - | - | 1,208 | - | 1,208 |
| EAI | C7PPSJ7233 | Storm Dmg Dist ETI 2/4/11 | - | - | - | - | - | - | - | 397 | - | 397 |
| EAI | C7PPSJ7234 | Storm Dmg Dist ETI 4/26/11 | - | - | - | - | - | - | - | 725 | - | 725 |
| EAI | C7PPSJ7237 | Storm Dmg Dist ETI 6/6/11 | - | - | - | - | - | - | - | 1,575 | - | 1,575 |
| EAI | C7PPSJ8399 | STM DMG TS BONNIE LA DIST OPS | 238 | - | - | - | - | - | - | - | - | 238 |
| EAI | C7PPSJ8409 | WINTER STORM DMG LA 2/3 TO 2/5 | 189 | - | - | - | - | - | - | - | - | 189 |
| EAI | C7PPSJ8413 | STORM DMG LA DIST EGSL 4 4 - 4 | 1,129 | - | - | - | - | - | - | - | - | 1,129 |
| EAI | C7PPSJ8414 | STORM DMG LA EGSL 4/15/11 - 4/ | 122 | - | - | - | - | - | - | - | - | 122 |
| EAI | C7PPSJ8415 | STM DMG LA EGSL 4/25 - 4/27/11 | 954 | - | - | - | - | - | 19 | - | - | 973 |
| EAI | C7PPSJ8417 | STM DMG EGSL 6/4/11 - 6/9/11 | 753 | - | - | - | - | - | - | - | - | 753 |
| EAI | C8PPTL7416 | Storm6411: Nelson-Richard | 891,048 | - | - | - | - | - | - | - | - | 891,048 |
| EAI | E1PCR56226 | Sales & Mktg - ALL JURIS | - | - | - | - | - | - | 360 | - | - | 360 |
| EAI | E1PCR73457 | TRAINING & PROCESS IMPROVEMENT | - | - | - | - | - | - | 457 | - | - | 457 |
| EAI | E2PPSJ3188 | T-Grid Storm Damage EMI 1/7/11 | - | - | 2,064 | - | - | - | - | - | - | 2,064 |
| EAI | E2PPSJSCC1 | System Command Center costs | - | - | - | - | - | - | 7,372 | - | - | 7,372 |
| EAI | F3PC7RWRHS | JAF MATERIAL CONTROL | - | - | - | 24 | - | - | - | - | - | 24 |
| EAI | F3PCE75021 | SYSTEM GOVERNMENTAL AFFAIRS -- | - | - | - | - | - | - | 37 | - | - | 37 |
| EAI | F3PCE99795 | GROUP PRES - UTILITY OPERATION | - | - | - | - | - | - | 871 | - | - | 871 |
| EAI | F3PCF99180 | CORP. COMPLIANCE TRACKING SYS | - | - | - | - | - | - | 87 | - | - | 87 |
| EAI | F3PCF99182 | RECORDS MANAGEMENT | - | - | - | - | - | - | 44 | - | - | 44 |
| EAI | F3PCFACALL | FACILITIES SVCS- ALL COS | - | - | - | - | - | - | 450 | - | - | 450 |
| EAI | F3PCFIBERO | OPER. & MAINT. OF FIBER OPTIC | - | - | - | - | - | - | 2,318 | - | - | 2,318 |
| EAI | F3PCFT9023 | ETC FIBER O&M SUPPORT | - | - | - | 4,683 | - | - | - | - | - | 4,683 |
| EAI | F3PCHRSALL | HR SERVICES- ALL COMPANIES | - | - | - | - | - | - | 81 | - | - | 81 |
| EAI | F3PCN07071 | RBS STORES/WAREHOUSE OPERATION | 11,004 | - | - | - | - | - | - | - | - | 11,004 |
| EAI | F3PCR10360 | CUSTOMER ACCOUNTING | - | - | - | - | - | - | 270 | - | - | 270 |
| EAI | F3PCR10362 | MAJOR ACCOUNTS BILLING | - | - | - | - | - | - | 836 | - | - | 836 |
| EAI | F3PCR10370 | CUST ACCTG SRVS - EMI WORK ALL | - | - | 148 | - | - | - | - | - | - | 148 |
| EAI | F3PCR40128 | ENTERGY ARKANSAS COMMUNICATION | - | - | - | - | - | - | 87 | - | - | 87 |
| EAI | F3PCR56240 | BILLING & PAYMENT SOLUTIONS - | - | - | - | - | - | - | 65 | - | - | 65 |
| EAI | F3PCR57265 | INTERVAL BILLING DATA - ESI | - | - | - | - | - | - | 87 | - | - | 87 |
| EAI | F3PCR73320 | SYSTEM DEVELOP. & PROJ MGMT | - | - | - | - | - | - | 476 | - | - | 476 |
| EAI | F3PCR73323 | FIELD METER READING SUPPORT, A | - | - | - | - | - | - | 90 | - | - | 90 |
| EAI | F3PCR73326 | CUSTOMER SERVICE CENTER SUPPOR | - | - | - | - | - | - | 448 | - | - | 448 |
| EAI | F3PCR73328 | FIELD METER READING SUPPORT - | - | - | - | - | - | - | 257 | - | - | 257 |
| EAI | F3PCR73330 | FIELD METER READING - ELI | - | 15,910 | - | - | - | - | - | - | - | 15,910 |
| EAI | F3PCR73332 | FIELD METER READING - ENOI | - | - | - | - | - | - | 1,830 | - | - | 1,830 |
| EAI | F3PCR73336 | FEILD METER READING - EMI | - | - | 9,044 | - | - | - | - | - | - | 9,044 |
| EAI | F3PCR73350 | LOAD RESEARCH - EAI | - | - | - | - | - | - | 451 | - | - | 451 |
| EAI | F3PCR73382 | West Monroe Customer Service C | - | - | - | - | - | - | 141 | - | - | 141 |
| EAI | F3PCR73390 | CUSTOMER SVS CTL - ENTERGY BUS | - | - | - | - | - | - | 13 | - | - | 13 |
| EAI | F3PCR73401 | FIELD METER READING - EGSI -LA | 2,264 | - | - | - | - | - | - | - | - | 2,264 |
| EAI | F3PCRCCS03 | CCS SYSTEM SUPPORT | - | - | - | - | - | - | 224 | - | - | 224 |
| EAI | F3PCRNTACA | Nat'l Accts Sales & Mktg - EAI | - | - | - | - | - | - | 270 | - | - | 270 |

Amounts may not add or tie to other schedules due to rounding.

Entergy Arkansas, Inc.
Affiliate Per Book Billings by Project/Activity
For the Twelve Months Ended, June 30, 2011
Amounts in Dollars

Exhibit SBT-20
2011 TX Rate Case
7 of 8

| Billing Company | Project/Activity | Description | EGSLA | ELL | EMI | EEI | ENOI | EOI | ESI | ETI | SERI | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| EAI | F3PCT53062 | TRANSPORTATION SERVICES | - | - | - | - | - | - | 548 | - | - | 548 |
| EAI | F3PCT53084 | ENVIRONMENTAL SUPPORT - ELI | - | 3,749 | - | - | - | - | - | - | - | 3,749 |
| EAI | F3PCT53085 | OPN, MGR, ENVIRONMENTAL MGMT | - | - | - | - | - | - | 5,905 | - | - | 5,905 |
| EAI | F3PCT53088 | ENVIRONMENTAL SUPPORT - EMI | - | - | 977 | - | - | - | - | - | - | 977 |
| EAI | F3PCT53130 | OPN,MGR, CLAIMS MANAGEMENT | - | - | - | - | - | - | 888 | - | - | 888 |
| EAI | F3PCT53250 | ENVIRN MGMNT TRANS SUPPORT - E | - | - | - | - | - | - | 121 | - | - | 121 |
| EAI | F3PCT53251 | ENVIRN MGMT TRANSMISSION SUPP | - | - | - | - | - | - | 13 | - | - | 13 |
| EAI | F3PCTDTR08 | SKILLS TRAINING - LOUISIANA EL | - | - | - | - | - | - | 606 | - | - | 606 |
| EAI | F3PCW29608 | TRANSMISSION POWER SYSTEM OPER | - | - | - | - | - | - | 1,158 | - | - | 1,158 |
| EAI | F3PCW58030 | ENVIRONMENTAL SUPPORT - AR | - | - | - | - | - | - | 224 | - | - | 224 |
| EAI | F3PCY10395 | JACKSON / WEST SUBSTATION, MIS | - | - | 3,041 | - | - | - | - | - | - | 3,041 |
| EAI | F3PCZGASAG | GAS ADMINISTRATIVE | - | - | - | - | - | - | 125 | - | - | 125 |
| EAI | F3PP361923 | General I&C Outage Work | - | - | - | 13 | - | - | - | - | - | 13 |
| EAI | F3PPCPLITA | 2009 Fall Lighting Campaign EA | - | - | - | - | - | - | 28,348 | - | - | 28,348 |
| EAI | F3PPCPLITG | 2009 Fall Lighting Campaign EG | - | - | - | - | - | - | 679 | - | - | 679 |
| EAI | F3PPCPLITL | 2009 Fall Lighting Campaign EL | - | 11 | - | - | - | - | 1,580 | - | - | 1,591 |
| EAI | F3PPCPLITM | 2009 Fall Lighting Campaign EM | - | - | 822 | - | - | - | 2,108 | - | - | 2,929 |
| EAI | F3PPCPLITN | Lighting Campaign ENOI | - | - | - | - | - | - | 107 | - | - | 107 |
| EAI | F3PPCYBERV | Cyber Vulnerability Assessment | - | - | - | - | - | - | 103 | - | - | 103 |
| EAI | F3PPE9974S | Utl ECI Continuing Improve ESI | - | - | - | - | - | - | 5,179 | - | - | 5,179 |
| EAI | F3PPLTTX10 | 2010 Winter Lighting Promo Tex | - | - | - | - | - | - | 91 | - | - | 91 |
| EAI | F3PPN91067 | Inventory | 26,452 | 139,389 | 1,579 | 79,117 | - | - | - | - | 19,204 | 265,741 |
| EAI | F3PPR103LA | CUSTOMER ACCT SVCS- LA (L,LG,N | - | - | - | - | - | - | 133 | - | - | 133 |
| EAI | F3PPR733CA | Central Administration Costs | - | - | - | - | - | - | 61,123 | - | - | 61,123 |
| EAI | F3PPR733LR | Little Rock Customer Service C | - | - | - | - | - | - | 16,950 | - | - | 16,950 |
| EAI | F3PPREALL2 | Residential Market Dev - ALL J | - | - | - | - | - | - | 13,469 | - | - | 13,469 |
| EAI | F3PPTDDS39 | TRANSPORTATION - EAI billing | - | - | - | - | - | - | 732 | - | - | 732 |
| EAI | F3PPTDERSD | MISO Transition ALL OPCO | - | - | - | - | - | - | 1,292 | - | - | 1,292 |
| EAI | F3PPWE0305 | Fossil IT- EAI Support | - | - | - | - | - | - | 771 | - | - | 771 |
| EAI | F3PPWE0425 | Dir. Northwest Region-EAI Foss | - | - | - | - | - | - | 90 | - | - | 90 |
| EAI | F3PPZG2282 | GA 2010 SPRING OUTAGE | - | - | 1,066 | - | - | - | - | - | - | 1,066 |
| EAI | F3PPZG2532 | OP3-GT Bore Scope & Rel Out-Fa | 743 | - | - | - | - | - | - | - | - | 743 |
| EAI | F3PPZG2534 | OP3-GT Spring Reliability Outa | 16,068 | - | - | - | - | - | - | - | - | 16,068 |
| EAI | F3PPZG2786 | BU8 Forced Outage | - | 3,394 | - | - | - | - | - | - | - | 3,394 |
| EAI | F3PPZG2797 | GA1 EMERGENCY OUTAGE: BOILER T | - | - | 536 | - | - | - | - | - | - | 536 |
| EAI | F3PPZW8193 | DL1 UNIT STARTUP | - | - | 4,735 | - | - | - | - | - | - | 4,735 |
| EAI | F5PCCSS01V | PS VEGETATION MANAGEMENT FOR L | - | 34 | - | - | - | - | - | - | - | 34 |
| EAI | F5PCCSS04C | CCS CUSTOMER BILL - LE -CUSTOM | - | - | 443,048 | - | - | - | - | - | - | 443,048 |
| EAI | F5PCCSS06L | CSC non-ESI loaned labor to LE | 618,515 | 1,043,039 | 653,890 | - | 290,106 | - | - | 449,778 | - | 3,055,328 |
| EAI | F5PCCSS17L | PS MANAGE TRANSPORTATION | - | 229 | - | - | - | - | - | - | - | 229 |
| EAI | F5PCE13631 | GENERAL LITIGATION- EMI | - | - | 2,675 | - | - | - | - | - | - | 2,675 |
| EAI | F5PCERRMOM | EQUIP. REFURBISHMENT & REPAIR | - | 31 | 31 | - | - | - | - | - | - | 61 |
| EAI | F5PCFPR062 | 5% SURCHARGE ON SERVICES TO ET | - | - | - | 234 | - | - | - | - | - | 234 |
| EAI | F5PCFPR07A | 5% SURCHARGE ON SERVICES TO IP | - | - | - | 1,833 | - | - | - | - | - | 1,833 |
| EAI | F5PCFPR080 | 5% SURCHARGE ON SERVICES TO EN | - | - | - | 1,184 | - | - | - | - | - | 1,184 |
| EAI | F5PCLIHPPC | CONSUMER EDUCATION PROGRAMS | - | - | - | - | - | - | 1,798 | - | - | 1,798 |
| EAI | F5PCMATCOM | MATERIALS TESTING AND COMPLIAN | 28,345 | 259,915 | 68,728 | - | - | - | - | 75,923 | - | 432,910 |
| EAI | F5PCSAFTEE | SAFTEY TRAINING LOADER ELECTRI | - | - | - | - | - | - | 116 | - | - | 116 |
| EAI | F5PCSCMMOM | SUPPLY CHAIN MATERIALS MGMNT O | - | 37,699 | 4,317 | - | - | - | - | (147) | - | 41,869 |

Amounts may not add or tie to other schedules due to rounding.

Entergy Arkansas, Inc.
Affiliate Per Book Billings by Project/Activity
For the Twelve Months Ended, June 30, 2011
Amounts in Dollars

Exhibit SBT-20
2011 TX Rate Case
8 of 8

| Billing Company | Project/Activity | Description | EGSLA | ELL | EMI | EEI | ENOI | EOI | ESI | ETI | SERI | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| EAI | F5PCZD7387 | LAKE CHARLES MGP SITE | 10,583 | - | - | - | - | - | - | - | - | 10,583 |
| EAI | F5PCZFCTRN | REGULATD NON-BACKBONE FIBER | - | 1,445 | - | - | - | - | 3,216 | - | - | 4,661 |
| EAI | F5PCZPTOXX | PAID TIME OFF | 20 | 78 | 1,822 | 3 | 1 | - | 829 | 68 | - | 2,819 |
| EAI | F5PCZUBENF | BENEFITS | (389) | 755 | (1,642) | (21) | 13 | - | 1,667 | (292) | - | 91 |
| EAI | F5PCZUPRTX | PAYROLL TAX | (41) | (53) | (657) | (3) | (0) | - | (218) | (106) | - | (1,079) |
| EAI | F5PCZY323L | ROUTINE SPILL RESPONSE(CS-LP&L | - | 462 | - | - | - | - | - | - | - | 462 |
| EAI | F5PCZZ4040 | TEAMSHARE INCENTIVE COMPENSATI | 368 | 122 | 802 | 10 | 3 | - | 563 | 457 | - | 2,324 |
| EAI | F5PCZZ4070 | IMPACT AWARDS | 610 | - | 2,081 | - | - | - | 1,686 | - | - | 4,376 |
| EAI | F5PPACCADM | Access Administration - O&M | - | - | - | - | - | - | 231 | - | - | 231 |
| EAI | F5PPCIPRMP | CIP Related Mitigation Plan & | - | - | - | - | - | - | 115 | - | - | 115 |
| EAI | F5PPCIPUNC | General Unclassified CIP Costs | - | - | - | - | - | - | 2,721 | - | - | 2,721 |
| EAI | F5PPERG100 | Systemwide Ergonomics Initiati | - | - | - | - | - | - | 62 | - | - | 62 |
| EAI | F5PPFPR0NA | 5% SURCHARGE ON SERVICES TO EN | - | - | - | 1,982 | - | - | - | - | - | 1,982 |
| EAI | F5PPFPRO57 | 5% SURCHARGE ON SERVICES TO EN | - | - | - | 1,884 | - | - | - | - | - | 1,884 |
| EAI | F5PPFPRO72 | 5% Surcharge on Services to EN | - | - | - | 1,187 | - | - | - | - | - | 1,187 |
| EAI | F5PPFPRO77 | 5% Surcharge on Svcs to IP3 | - | - | - | 3,273 | - | - | - | - | - | 3,273 |
| EAI | F5PPFPRO78 | 5% Surcharge on Svcs to 78 | - | - | - | 1,416 | - | - | - | - | - | 1,416 |
| EAI | F5PPLOGMON | Log Monitoring & Alerting - O& | - | - | - | - | - | - | 58 | - | - | 58 |
| EAI | F5PPPATCYB | Patch of Cyber Assets - O&M | - | - | - | - | - | - | 577 | - | - | 577 |
| EAI | F5PPPHYACC | Physical Access Sys Maint Test | - | - | - | - | - | - | 1,369 | - | - | 1,369 |
| EAI | F5PPRTUCLT | RTU Comm Line Testing & Coor R | - | - | - | - | - | - | 23 | - | - | 23 |
| EAI | F5PPWE0450 | Safety Recognition Program - S | 305 | 450 | 1,561 | - | - | - | - | - | - | 2,316 |
| EAI | GINP | Purc Gen Invent Items-Passport | 122,658 | 3,539,912 | 1,899,633 | 2,594 | 26,249 | - | - | 273,940 | 370 | 5,865,356 |
| EAI | MSRM | Supervise & Manage Records Mgt | - | - | 1,094 | - | - | - | - | - | - | 1,094 |
| EAI | MTBS | Repair Buildings | - | - | 7,683 | - | - | - | - | - | - | 7,683 |
| EAI | MTOF | Perf Elec Meter Serv Wk-On/Off | - | 1,418 | - | - | - | - | - | - | - | 1,418 |
| EAI | RENP | Process Recpts Not Invoiced-Pp | 15,967 | - | - | - | - | - | - | - | - | 15,967 |
| EAI | SAPCP25910 | PC&R OVERHEAD POOL CHARGES | - | - | - | - | - | - | 2,295 | (33) | - | 2,261 |
| EAI | SAPCPCPLGL | PC&R OVERHEAD POOL - EGSI - EL | (187) | - | - | - | - | - | - | - | - | (187) |
| EAI | SAPCPCPLLP | PC&R OVERHEAD POOL | - | 1,471 | - | - | - | - | - | - | - | 1,471 |
| EAI | SAPCPCPLMP | PC&R OVERHEAD POOL | - | - | (339) | - | - | - | - | - | - | (339) |
| EAI | SAPCPCPLNE | PC&R OVERHEAD POOL - ENOI - EL | - | - | - | - | 98 | - | - | - | - | 98 |
| EAI | SAPCPCPLNG | PC&R OVERHEAD POOL - ENOI - GA | - | - | - | - | 54 | - | - | - | - | 54 |
| EAI | STPCT30030 | ELL Capital Suspense Transmiss | - | 1,888 | - | - | - | - | - | - | - | 1,888 |
| EAI | STPPTD0ELL | Capital Suspense T&D Grid ELL | - | 14,235 | - | - | - | - | - | - | - | 14,235 |
| EAI | STPPTX7900 | Texas Trans Capital Suspense | - | - | - | - | - | - | - | 58 | - | 58 |
| EAI | XLAW | Repair Waste Wtr Trt&Setl Sys | - | - | 739 | - | - | - | - | - | - | 739 |
| EAI | XMCK | Maintain Boiler Startup&Hydro | - | - | 793 | - | - | - | - | - | - | 793 |
| EAI | XMCR | Maintain Other Boiler Plant Eq | - | - | 875 | - | - | - | - | - | - | 875 |
| EAI | XMDP | Maintain Feedwater Treating Sy | - | - | 1,813 | - | - | - | - | - | - | 1,813 |
| EAI | XMDW | Maintain Upflow Filter System | - | - | 110 | - | - | - | - | - | - | 110 |
| EAI | XMDX | Maintain Demineralizer System | - | - | 2,125 | - | - | - | - | - | - | 2,125 |
| EAI | XNAM | Maintain Condensate/Hotwell Sy | - | - | 643 | - | - | - | - | - | - | 643 |
| EAI | XNAP | Maintain Circulating Water Sys | - | - | 187 | - | - | - | - | - | - | 187 |
| EAI | XNAR | Maintain Oth Cooling Water Eq | - | - | 625 | - | - | - | - | - | - | 625 |
| EAI | XVAA | Operate & Maintain Fuel Oil Eq | - | - | 216 | - | - | - | - | - | - | 216 |
| | | | 1,879,878 | 10,370,950 | 5,207,982 | 272,836 | 322,378 | - | 446,426 | 842,657 | 19,575 | 19,362,682 |

Amounts may not add or tie to other schedules due to rounding.

Entergy Gulf States Louisiana, L.L.C.
Affiliate Per Book Billings by Project/Activity
For the Twelve Months Ended, June 30, 2011
Amounts in Dollars

| Billing Company | Project/Activity | Description | EAI | ELL | EMI | EEI | ENOI | EOI | ESI | ETI | SERI | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|
| EGSLA | AARP | Admin Awards & Recog Program | - | 475 | - | - | - | - | - | - | - | 475 |
| EGSLA | ASAB | Reward Safe Behavior | - | - | - | - | - | - | - | - | - | - |
| EGSLA | ATTR | Attend Training | - | - | - | - | - | - | - | - | - | - |
| EGSLA | C1PPFIB175 | Strategic 1/0  DCS Rplmt 2010 | - | - | - | - | - | - | 426 | - | - | 426 |
| EGSLA | C1PPFIB201 | Core Router-ASR Router Inserti | - | - | - | - | - | - | 1,099 | - | - | 1,099 |
| EGSLA | C1PPFIB203 | 21GTX Replacement 2011 | - | - | - | - | - | - | 4,199 | - | - | 4,199 |
| EGSLA | C1PPFIB211 | Integrated Voice Solutions-PBX | - | - | - | - | - | - | 818 | - | - | 818 |
| EGSLA | C1PPFIB64A | Reliability of DC Power System | - | - | - | - | - | - | 11,919 | - | - | 11,919 |
| EGSLA | C1PPFIB74A | Distributed Network Upgrades 2 | - | - | - | - | - | - | 1,659 | - | - | 1,659 |
| EGSLA | C1PPFII043 | Relocate Gretna Telecom Hub | - | - | - | - | - | - | 1,247 | - | - | 1,247 |
| EGSLA | C1PPFII26W | CFI Jackson - Repl Gretna Voic | - | - | - | - | - | - | 2,044 | - | - | 2,044 |
| EGSLA | C5DB476270 | INSTALL GAS MAIN AND SERVICE O | - | - | - | - | 524 | - | - | - | - | 524 |
| EGSLA | C5PC449603 | GAS MANDATED NON REIMBURSABLE | - | - | - | - | - | - | - | - | - | - |
| EGSLA | C5PC449608 | GAS TRUCK STOCK | - | - | - | - | 68 | - | - | - | - | 68 |
| EGSLA | C6DB276175 | INTERNL-COLUMBIA-N2954-TAKE OU | - | 843 | - | - | - | - | - | - | - | 843 |
| EGSLA | C6DB276191 | HWY WK W0713 ALGIERS RELOCATE | - | 1,424 | - | - | - | - | - | - | - | 1,424 |
| EGSLA | C6DB276234 | INT WK W0514 GRETNA RELOCATE F | - | 569 | - | - | - | - | - | - | - | 569 |
| EGSLA | C6DB374779 | Install 3 Phase Intelliruptor | - | - | 2,286 | - | - | - | - | - | - | 2,286 |
| EGSLA | C6DB770435 | INSTALL UNDERGROUND FACILITIES | - | - | - | - | - | - | - | - | - | - |
| EGSLA | C6DB771616 | PROJECT #CN11-051T CONAIR/EGYP | - | - | - | - | - | - | - | 468 | - | 468 |
| EGSLA | C6PC149000 | DISTB LINES REVENUE BLANKET NO | 4 | - | - | - | - | - | - | - | - | 4 |
| EGSLA | C6PC149020 | DIST. LINES REVENUE BLANKET - | - | - | - | - | - | - | - | - | - | - |
| EGSLA | C6PC149100 | DISTB. LINES IMP BLANKET-POLE | - | - | - | - | - | - | - | - | - | - |
| EGSLA | C6PC149103 | DISTB. LINES IMP BLANKET-OTHER | 2,857 | - | - | - | - | - | - | - | - | 2,857 |
| EGSLA | C6PC149104 | DL BATCH JOB FOR FAILURE REPLA | 3,996 | - | - | - | - | - | - | - | - | 3,996 |
| EGSLA | C6PC149105 | LOAD RELATED RELIABILITY | 604 | - | - | - | - | - | - | - | - | 604 |
| EGSLA | C6PC149124 | JOINT USE - OTHER | 232 | - | - | - | - | - | - | - | - | 232 |
| EGSLA | C6PC149140 | DL DESIGN JOBS - EMERGENCY REP | 636 | - | - | - | - | - | - | - | - | 636 |
| EGSLA | C6PC149708 | TACTICS: TARGETED CIRCUITS/FEE | 36 | - | - | - | - | - | - | - | - | 36 |
| EGSLA | C6PC249000 | DIST. LINES REVENUE BLANKET - | - | 1,521 | - | - | - | - | - | - | - | 1,521 |
| EGSLA | C6PC249100 | DISTB LINES IMP BLANKET-POLE R | - | 80 | - | - | - | - | - | - | - | 80 |
| EGSLA | C6PC249103 | DISTB LINES IMP BLANKET-OTHER | - | 530 | - | - | - | - | - | - | - | 530 |
| EGSLA | C6PC249104 | DL BATCH JOBS FOR FAILURE REPL | - | 846 | - | - | - | - | - | - | - | 846 |
| EGSLA | C6PC249108 | NON-MANDATED RELOCATIONS ELL | - | 510 | - | - | - | - | - | - | - | 510 |
| EGSLA | C6PC249150 | NON-TARGET CIRCUIT BACKBONE IM | - | 663 | - | - | - | - | - | - | - | 663 |
| EGSLA | C6PC349104 | DL BATCH JOBS FOR FAILURE REPL | - | - | 2,808 | - | - | - | - | - | - | 2,808 |
| EGSLA | C6PC349140 | DL DESIGN JOBS - EMERGENCY REP | - | - | 74 | - | - | - | - | - | - | 74 |
| EGSLA | C6PC349703 | TACTICS: TARGET LINE DEVICES | - | - | - | - | - | - | - | - | - | - |
| EGSLA | C6PC449020 | DIST. LINES REVENUE BLANKET - | - | - | - | - | - | - | - | - | - | - |
| EGSLA | C6PC449140 | DL DESIGN JOBS - EMERGENCY REP | - | - | - | - | 1,966 | - | - | - | - | 1,966 |
| EGSLA | C6PCTL3744 | LOBLOLLY-HAMMOND NEW L-200 230 | - | 11,973 | - | - | - | - | - | - | - | 11,973 |
| EGSLA | C6PP149141 | DL Repair Public Inflicted Dam | 985 | - | - | - | - | - | - | - | - | 985 |
| EGSLA | C6PP749114 | Distr Lines Failures Blanket T | - | - | - | - | - | - | - | 656 | - | 656 |
| EGSLA | C6PP749713 | D-Lines TACTICS Target Line De | - | - | - | - | - | - | - | 2,044 | - | 2,044 |
| EGSLA | C6PPBB0336 | EGS LLC:Replace LTC on Meaux T | - | - | - | - | - | - | 831 | - | - | 831 |
| EGSLA | C6PPD40221 | Charity Church: Inst Fiber Equ | - | - | 406 | - | - | - | - | - | - | 406 |
| EGSLA | C6PPD40222 | Livingston Rd: Inst Fiber Equi | - | - | 772 | - | - | - | - | - | - | 772 |
| EGSLA | C6PPDW0395 | Fort Polk:Feasibility & Map Sy | - | 126 | - | - | - | - | - | - | - | 126 |
| EGSLA | C6PPFIB14T | Microwave Replacement Texas 20 | - | - | - | - | - | - | 554 | - | - | 554 |

Amounts may not add or tie to other schedules due to rounding.

Entergy Gulf States Louisiana, L.L.C.
Affiliate Per Book Billings by Project/Activity
For the Twelve Months Ended, June 30, 2011
Amounts in Dollars

Exhibit SBT-21
2011 TX Rate Case
2 of 6

| Billing Company | Project/Activity | Description | EAI | ELL | EMI | EEI | ENOI | EOI | ESI | ETI | SERI | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| EGSLA | C6PPFIB220 | Fiber-Backbone North Blvd Dive | - | - | - | - | - | - | 2,878 | - | - | 2,878 |
| EGSLA | C6PPMR3809 | Holiday: repl.Gtype switch wit | - | 196 | - | - | - | - | - | - | - | 196 |
| EGSLA | C6PPMR3826 | Holiday ; replace S3102 with s | - | 196 | - | - | - | - | - | - | - | 196 |
| EGSLA | C6PPN71159 | STX TRANSFORMER REFURBISHMENT | - | - | - | - | - | 418 | - | - | - | 418 |
| EGSLA | C6PPN71215 | CONSTRUCTION LOOP PANELS | - | - | - | - | - | 25,592 | - | - | - | 25,592 |
| EGSLA | C6PPN71573 | FORCE-ON-FORCE PREPARATION | - | - | - | - | - | - | - | - | - | - |
| EGSLA | C6PPSP0045 | SPO Real Time Calcasieu RTU | - | - | - | - | - | - | 1,373 | - | - | 1,373 |
| EGSLA | C6PPT60177 | Jackson, South: Inst Fiber Equ | - | - | 1,376 | - | - | - | - | - | - | 1,376 |
| EGSLA | C6PPTD3265 | Voice Recorder - Baton Rouge D | - | - | - | - | - | - | - | - | - | - |
| EGSLA | C6PPTL1147 | Oakville_Alliance:Build 230kV | - | - | - | - | - | - | - | - | - | - |
| EGSLA | C6PPTL4214 | Fail09:L115 Springfield-Fr. Se | - | - | - | - | - | - | - | - | - | - |
| EGSLA | C6PPTL4215 | Fail09: Golden Meadow-Leeville | - | - | - | - | - | - | - | - | - | - |
| EGSLA | C6PPTL4216 | Fail09: L158 Port Nickel-Poydr | - | - | - | - | - | - | - | - | - | - |
| EGSLA | C6PPTL4219 | Fail09: L229 9-Mile-Gretna-Har | - | - | - | - | - | - | - | - | - | - |
| EGSLA | C6PPTL4220 | Fail09: L148 Golden Meadow-Lee | - | - | - | - | - | - | - | - | - | - |
| EGSLA | C6PPTL4224 | LineBase10: L94 Michoud-Gulf O | - | - | - | - | - | - | - | - | - | - |
| EGSLA | C6PPTL4225 | LinesBase10: L98 Michoud-Claib | - | - | - | - | - | - | - | - | - | - |
| EGSLA | C6PPTL4234 | Mand10: Golden Meadow-Leeville | - | 7,871 | - | - | - | - | - | - | - | 7,871 |
| EGSLA | C6PPTL4483 | Fail10: L186 Willow Glen-Webre | - | - | - | - | - | - | - | - | - | - |
| EGSLA | C6PPTL4503 | SW10: L168 Carlisle-Port Nicke | - | 4,594 | - | - | - | - | - | - | - | 4,594 |
| EGSLA | C6PPTL4554 | WP2010: 9Mile-American Cyanami | - | (8,856) | - | - | - | - | - | - | - | (8,856) |
| EGSLA | C6PPTL4555 | WP2010: 9Mile-Waggaman | - | 2,326 | - | - | - | - | - | - | - | 2,326 |
| EGSLA | C6PPTL4563 | Imprvment to Bridge City Laydn | - | 1,134 | - | - | - | - | - | - | - | 1,134 |
| EGSLA | C6PPTL4571 | Fail10:L165 Jena-Midway | - | 4,608 | - | - | - | - | - | - | - | 4,608 |
| EGSLA | C6PPTL4582 | Inf11: L158 Port Nickel-Poydra | - | 461 | - | - | - | - | - | - | - | 461 |
| EGSLA | C6PPTL4583 | Inf11: L162 Amite-Gilsburg | - | 327 | - | - | - | - | - | - | - | 327 |
| EGSLA | C6PPTL5591 | Line 591:  Upgrade Line | - | - | - | - | - | - | - | - | - | - |
| EGSLA | C6PPTL7202 | IronMan-Tezcuco: Build New Lin | - | 1,121 | - | - | - | - | - | - | - | 1,121 |
| EGSLA | C6PPTL7352 | INF11: 9Mile-Barataria | - | 120 | - | - | - | - | - | - | - | 120 |
| EGSLA | C6PPTL7356 | INF11: 9Mile-Estelle | - | 203 | - | - | - | - | - | - | - | 203 |
| EGSLA | C6PPTL7368 | MAN11: Arcadia-Trusssell'sCros | - | 12,760 | - | - | - | - | - | - | - | 12,760 |
| EGSLA | C6PPTL7373 | Reimb11: Amite - Gilsburg | - | 327 | - | - | - | - | - | - | - | 327 |
| EGSLA | C6PPTL7376 | INF11: Gretna - 9Mile | - | 743 | - | - | - | - | - | - | - | 743 |
| EGSLA | C6PPTL7389 | Man11: Selman-Canal | - | 3,500 | - | - | - | - | - | - | - | 3,500 |
| EGSLA | C6PPTL7500 | Line 186: Cut In Bayou Labutte | - | 760 | - | - | - | - | - | - | - | 760 |
| EGSLA | C6PPTL7502 | Line 269: Build New 230kV Line | - | 4,489 | - | - | - | - | - | - | - | 4,489 |
| EGSLA | C6PPTL7504 | Line 730: Relocate 230kV Lines | - | 53 | - | - | - | - | - | - | - | 53 |
| EGSLA | C6PPTL7505 | Line 740: Relocate 230kV Line | - | 1,335 | - | - | - | - | - | - | - | 1,335 |
| EGSLA | C6PPTL8471 | L-295 Replace Broken Guys | - | - | - | - | - | - | - | 326 | - | 326 |
| EGSLA | C6PPTL8472 | L-296 Replace Broken Arm | - | - | - | - | - | - | - | 241 | - | 241 |
| EGSLA | C6PPTLK002 | Loblolly to Hammond (ELL porti | - | 4,084 | - | - | - | - | - | - | - | 4,084 |
| EGSLA | C6PPTLK003 | Independence - Yogi, build new | - | 9,402 | - | - | - | - | - | - | - | 9,402 |
| EGSLA | C6PPTLK004 | Behrman - Gretna move poles fo | - | 671 | - | - | - | - | - | - | - | 671 |
| EGSLA | C6PPTLK005 | Behrman-Ptrs Rd move poles for | - | 671 | - | - | - | - | - | - | - | 671 |
| EGSLA | C6PPTLK006 | Bmn-Ptrs Rd move poles for JP- | - | 654 | - | - | - | - | - | - | - | 654 |
| EGSLA | C6PPTLK007 | Bhmn-Port Nickel move poles fo | - | 1,156 | - | - | - | - | - | - | - | 1,156 |
| EGSLA | C6PPTLM002 | Daisy Line- ExxonMobile 69kVPO | - | - | - | - | - | - | - | 5,450 | - | 5,450 |
| EGSLA | C6PPTLM005 | Gladys - Line 114 New 69kV POD | - | - | - | - | - | - | - | 9,856 | - | 9,856 |
| EGSLA | C6PPTLZ002 | Hartburg-McLewis: Upgrade to 7 | - | - | - | - | - | - | - | 20,326 | - | 20,326 |

Amounts may not add or tie to other schedules due to rounding.

Entergy Gulf States Louisiana, L.L.C.
Affiliate Per Book Billings by Project/Activity
For the Twelve Months Ended, June 30, 2011
Amounts in Dollars

Exhibit SBT-21
2011 TX Rate Case
3 of 6

| Billing Company | Project/Activity | Description | EAI | ELL | EMI | EEI | ENOI | EOI | ESI | ETI | SERI | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| EGSLA | C6PPTS7618 | Total Petrochemicals:Sabine Sw | - | - | - | - | - | - | - | - | - | - |
| EGSLA | C6PPTS7636 | Fawil: Upgrade Autotransformer | - | - | - | - | - | - | - | - | - | - |
| EGSLA | C6PPTSF312 | Moril 69KV cap bank & relay pa | - | - | - | - | - | - | 407 | - | - | 407 |
| EGSLA | C6PPTSF528 | Alsen add mos's to line sw's | - | - | - | - | - | - | 538 | - | - | 538 |
| EGSLA | C6PPTSF536 | Northdale add mos to line sw's | - | - | - | - | - | - | 538 | - | - | 538 |
| EGSLA | C6PPTSF537 | seventy second add mos to line | - | - | - | - | - | - | 538 | - | - | 538 |
| EGSLA | C6PPTSG102 | Meaux: Install 400MVA AutoXFMR | - | - | - | - | - | - | 1,344 | - | - | 1,344 |
| EGSLA | C6PPTSG104 | Richard Sub: Install 500kV POD | - | - | - | - | - | - | (1) | - | - | (1) |
| EGSLA | C6PPTSK183 | Bogue Chitto - Build 500 switc | - | - | - | - | - | - | - | - | - | - |
| EGSLA | C6PPTSK250 | Bayou Labutte: Build 500kV Sub | - | 4,531 | - | - | - | - | - | - | - | 4,531 |
| EGSLA | C6PPTSK283 | Point Pleasant design oversign | - | 7,169 | - | - | - | - | - | - | - | 7,169 |
| EGSLA | C6PPTSK322 | Luling Sub - Add two feeders f | - | 8,382 | - | - | - | - | - | - | - | 8,382 |
| EGSLA | C6PPTSK324 | Yogi - Build new substation | - | 1,879 | - | - | - | - | - | - | - | 1,879 |
| EGSLA | C6PPTSM004 | Daisy Sub- ExxonMobile 69kVPOD | - | - | - | - | - | - | - | 11,360 | - | 11,360 |
| EGSLA | C6PPTSM999 | Gladys: Sub 69kv POD | - | - | - | - | - | - | - | 15,070 | - | 15,070 |
| EGSLA | C6PPTSP292 | Federal: Upgrade RTU | - | - | - | - | - | - | - | - | - | - |
| EGSLA | C6PPTSP465 | Union: Low Side T1 Bushing | - | - | - | - | - | - | - | 5,250 | - | 5,250 |
| EGSLA | C6PPTSX003 | S.BMT 138KV Replace Breakers a | - | - | - | - | - | - | - | 754 | - | 754 |
| EGSLA | C6PPTSX008 | upgrade 230kv bus Mid -County | - | - | - | - | - | - | - | 17,092 | - | 17,092 |
| EGSLA | C6PPTSZ006 | McLewis: Rpl Switches & Risers | - | - | - | - | - | - | - | 4,901 | - | 4,901 |
| EGSLA | C7PPSJ1185 | ICE STORM DL ARK DIST EAI 01/2 | - | - | - | - | - | - | - | - | - | - |
| EGSLA | C7PPSJ1196 | STORM DL ARK DIST EAI 06/10/09 | - | - | - | - | - | - | - | - | - | - |
| EGSLA | C7PPSJ1212 | STORM DL ARK DIST EAI 10/29/09 | - | - | - | - | - | - | - | - | - | - |
| EGSLA | C7PPSJ1214 | WINTER STORM DL EAI DIST 01/26 | (312) | - | - | - | - | - | - | - | - | (312) |
| EGSLA | C7PPSJ1218 | WINTER STORM DL EAI DIST 02/08 | - | - | - | - | - | - | - | - | - | - |
| EGSLA | C7PPSJ1219 | STORM DL ARK DIST EAI 03/10/10 | - | - | - | - | - | - | - | - | - | - |
| EGSLA | C7PPSJ1222 | STORM DL ARK DIST EAI 04/23/10 | - | - | - | - | - | - | - | - | - | - |
| EGSLA | C7PPSJ1244 | STORM DL ARK DIST EAI 1/7/11 I | 1,180 | - | - | - | - | - | - | - | - | 1,180 |
| EGSLA | C7PPSJ1247 | STORM DL ARK DIST EAI 2/24-2/2 | 651 | - | - | - | - | - | - | - | - | 651 |
| EGSLA | C7PPSJ1248 | STORM DL ARK DIST EAI 4/3/11 | 1,086 | - | - | - | - | - | - | - | - | 1,086 |
| EGSLA | C7PPSJ1250 | STORM DL EAI DIST 4/19/11-4/24 | 151,457 | - | - | - | - | - | - | - | - | 151,457 |
| EGSLA | C7PPSJ1251 | TORNADOES DL EAI DIST 4/25/11 | 47,831 | - | - | - | - | - | - | - | - | 47,831 |
| EGSLA | C7PPSJ1254 | STORM DL ARK DIST EAI 5/19-5/2 | 440 | - | - | - | - | - | - | - | - | 440 |
| EGSLA | C7PPSJ2431 | STORM DMG ELI 12/24 - 12/27/09 | - | - | - | - | - | - | - | - | - | - |
| EGSLA | C7PPSJ2432 | STORM DMG ELI 1/4 - 1/5/10 | - | - | - | - | - | - | - | - | - | - |
| EGSLA | C7PPSJ2437 | Storm dmg La ELI 2 12 10 Snow | - | - | - | - | - | - | - | - | - | - |
| EGSLA | C7PPSJ2441 | N La Tornado & Storms 4/23-4/2 | - | - | - | - | - | - | - | - | - | - |
| EGSLA | C7PPSJ2444 | STM DMG TS Bonnie LA DIST OPS | - | 19,573 | - | - | - | - | - | - | - | 19,573 |
| EGSLA | C7PPSJ2454 | STORM DMG LA 7/16 to 7/17 | - | 331 | - | - | - | - | - | - | - | 331 |
| EGSLA | C7PPSJ2455 | STORM DMG ELL 8-4 THRU 8-5-10 | - | 5,996 | - | - | - | - | - | - | - | 5,996 |
| EGSLA | C7PPSJ2456 | ELL DIST 08/11/10 TROPICAL DEP | - | 27,577 | - | - | - | - | - | - | - | 27,577 |
| EGSLA | C7PPSJ2462 | STORM DMG LA DIST ELL 1/8/11 I | - | 115,191 | - | - | - | - | - | - | - | 115,191 |
| EGSLA | C7PPSJ2463 | STORM DMG LA 2-1-11 | - | 3,117 | - | - | - | - | - | - | - | 3,117 |
| EGSLA | C7PPSJ2464 | STORM DMG LA DIST ELL ISS 2/2 | - | 181 | - | - | - | - | - | - | - | 181 |
| EGSLA | C7PPSJ2469 | STORM DMG LA DIST ELL ISS 3/30 | - | 50,310 | - | - | - | - | - | - | - | 50,310 |
| EGSLA | C7PPSJ2470 | STORM DMG LA DIST ELL 4 4 - 4 | - | 1,293 | - | - | - | - | - | - | - | 1,293 |
| EGSLA | C7PPSJ2474 | STORM Dmg ELL 4/25 to 4/27/11 | - | 399,195 | - | - | - | - | - | - | - | 399,195 |
| EGSLA | C7PPSJ2476 | ELL-LA STORM (6/4 - 6/6/11) | - | 947 | - | - | - | - | - | - | - | 947 |
| EGSLA | C7PPSJ3171 | EMI May 2009 Storm Dist Ops-MS | - | - | - | - | - | - | - | - | - | - |

Amounts may not add or tie to other schedules due to rounding.

Entergy Gulf States Louisiana, L.L.C.
Affiliate Per Book Billings by Project/Activity
For the Twelve Months Ended, June 30, 2011
Amounts in Dollars

Exhibit SBT-21
2011 TX Rate Case
4 of 6

| Billing Company | Project/Activity | Description | EAI | ELL | EMI | EEI | ENOI | EOI | ESI | ETI | SERI | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| EGSLA | C7PPSJ3180 | EMI 02/11/10 Winter Storm Dist | - | - | - | - | - | - | - | - | - | - |
| EGSLA | C7PPSJ3183 | EMI 04/24/10 Tornadoes Distr O | - | - | 251 | - | - | - | - | - | - | 251 |
| EGSLA | C7PPSJ3197 | EMI Storm DistOps 12/31/10 Tor | - | - | 79 | - | - | - | - | - | - | 79 |
| EGSLA | C7PPSJ3198 | EMI Storm Distr Ops 1/7/11Wint | - | - | 363 | - | - | - | - | - | - | 363 |
| EGSLA | C7PPSJ3202 | EMI APRIL 2011 Storm Distr Ops | - | - | 1,887 | - | - | - | - | - | - | 1,887 |
| EGSLA | C7PPSJ3203 | EMI Storm Distr Ops 4/15/11 | - | - | 82,666 | - | - | - | - | - | - | 82,666 |
| EGSLA | C7PPSJ3204 | EMI StormTornadoes DistrOps 4/ | - | - | 2,382 | - | - | - | - | - | - | 2,382 |
| EGSLA | C7PPSJ3207 | EMI MAY 2011 Storm Distr Ops-M | - | - | 185 | - | - | - | - | - | - | 185 |
| EGSLA | C7PPSJ3209 | EMI JUNE 2011 Storm Distr Ops- | - | - | 102 | - | - | - | - | - | - | 102 |
| EGSLA | C7PPSJ4088 | STORM DMG LA DIST OPS ENOI ISS | - | - | - | - | 1,792 | - | - | - | - | 1,792 |
| EGSLA | C7PPSJ4089 | STORM DMG LA DIST OPS ENOI ISS | - | - | - | - | 50 | - | - | - | - | 50 |
| EGSLA | C7PPSJ7231 | Storm Dmg Dist ETI 1/9/11 | - | - | - | - | - | - | - | 877 | - | 877 |
| EGSLA | C7PPSJ7234 | Storm Dmg Dist ETI 4/26/11 | - | - | - | - | - | - | - | 357 | - | 357 |
| EGSLA | C7PPSJ7237 | Storm Dmg Dist ETI 6/6/11 | - | - | - | - | - | - | - | 853 | - | 853 |
| EGSLA | C8PPTL4472 | North La. Storm: L181 Perrvll- | - | 11,659 | - | - | - | - | - | - | - | 11,659 |
| EGSLA | C8PPTL4473 | NLA Storm10: L212 Tallulah-Dar | - | 4,769 | - | - | - | - | - | - | - | 4,769 |
| EGSLA | C8PPTSJ002 | Keith Lake - Rebuild | - | - | - | - | - | - | - | - | - | - |
| EGSLA | CONF | Suppt Compliance W Env Reg&Per | - | 2,954 | - | - | - | - | - | - | - | 2,954 |
| EGSLA | E1PCN01722 | U2-General Electrical | 36 | - | - | - | - | - | - | - | - | 36 |
| EGSLA | E1PCN07581 | ELECTRICAL OUTAGE WORK | - | - | - | - | - | 91,359 | - | - | - | 91,359 |
| EGSLA | E1PCR56015 | CUSTOM SALES & SERVICE UNIT - | - | - | - | - | - | - | 213 | - | - | 213 |
| EGSLA | E1PCT00076 | PROCESS LEAKING EQUIPMENT FOR | - | 20,968 | - | - | - | - | - | - | - | 20,968 |
| EGSLA | E1PPN01674 | U1-Switchyard/Transformers >13 | - | - | - | - | - | - | - | - | - | - |
| EGSLA | E1PPN09152 | SWITCHYARD/TRANSFORMERS >13.8 | - | - | - | - | - | 3,679 | - | - | - | 3,679 |
| EGSLA | E1PPN09155 | OUTAGE PERFORMANCE INCENTIVE | - | - | - | - | - | 6,511 | - | - | - | 6,511 |
| EGSLA | E2PPSJ1221 | T-Grid Storm Damage EAI 1/26/1 | - | - | - | - | - | - | - | - | - | - |
| EGSLA | E2PPSJ2447 | T-Grid Storm O&M ELL 1/7/201 I | - | 2,120 | - | - | - | - | - | - | - | 2,120 |
| EGSLA | E2PPSJ2466 | 2/4/11 Winter Storm - ELL | - | 13 | - | - | - | - | - | - | - | 13 |
| EGSLA | E2PPSJ2478 | T-Grid Storm - ELL 4/25 - 4/27 | - | 2,584 | - | - | - | - | - | - | - | 2,584 |
| EGSLA | F3PC5MTCRP | MAINTENANCE - REACTOR PLANT | - | - | - | - | - | - | - | - | - | - |
| EGSLA | F3PC9158X3 | POYDRAS  SUB TO PORT  NICKLE | - | 3,588 | - | - | - | - | - | - | - | 3,588 |
| EGSLA | F3PC9210X0 | BAGATELLE TO BAYOU CONWAY | - | 951 | - | - | - | - | - | - | - | 951 |
| EGSLA | F3PCCEPLOU | CONSUMER ED PROGRAMS - LOUISIA | - | - | - | - | - | - | 4,984 | - | - | 4,984 |
| EGSLA | F3PCCPM001 | CORPORATE PERFORMANCE MANAGEME | - | - | - | - | - | - | 829 | - | - | 829 |
| EGSLA | F3PCE99750 | PRES- ENT. LA-GEN'L OPS-ELI/EG | - | - | - | - | - | - | 3,673 | - | - | 3,673 |
| EGSLA | F3PCF23442 | PAYROLL PROCESSING | - | - | - | - | - | - | 522 | - | - | 522 |
| EGSLA | F3PCF23941 | BUSINESS EVENT PROCESSING-ACCT | - | - | - | - | - | - | 506 | - | - | 506 |
| EGSLA | F3PCFIBERO | OPER. & MAINT. OF FIBER OPTIC | - | - | - | 263 | - | - | - | - | - | 263 |
| EGSLA | F3PCFT9023 | ETC FIBER O&M SUPPORT | - | - | - | 13,118 | - | - | - | - | - | 13,118 |
| EGSLA | F3PCFT9333 | ETC - FIBER CAPITAL COSTS | - | - | - | 809 | - | - | - | - | - | 809 |
| EGSLA | F3PCG10345 | GAS DIVISION DIRECTOR - ENOI E | - | - | - | - | - | - | 2,086 | - | - | 2,086 |
| EGSLA | F3PCG10347 | GAS DIVISION DIRECTOR - EGSI E | - | - | - | - | - | - | 2,081 | - | - | 2,081 |
| EGSLA | F3PCHRSALL | HR SERVICES- ALL COMPANIES | - | - | - | - | - | - | 181 | - | - | 181 |
| EGSLA | F3PCN07050 | EMERGENT WORK ACTIVITIES (UNBU | - | - | - | - | - | - | - | - | - | - |
| EGSLA | F3PCN07071 | RBS STORES/WAREHOUSE OPERATION | 30,053 | 100,231 | - | 149,090 | - | - | 323 | 816 | 127,083 | 407,597 |
| EGSLA | F3PCN07606 | RBN GENERAL SUPPORT | - | - | - | - | - | - | - | - | - | - |
| EGSLA | F3PCN14999 | GRAND GULF GENERAL SUPPORT | - | - | - | - | - | - | - | - | 571 | 571 |
| EGSLA | F3PCN91561 | RELAY MAINTENANCE | - | - | - | - | - | - | - | - | - | - |
| EGSLA | F3PCN91683 | U1 MECHANICAL MAINTENANCE | 186 | - | - | - | - | - | - | - | - | 186 |

Amounts may not add or tie to other schedules due to rounding.

Entergy Gulf States Louisiana, L.L.C.
Affiliate Per Book Billings by Project/Activity
For the Twelve Months Ended, June 30, 2011
Amounts in Dollars

Exhibit SBT-21
2011 TX Rate Case
5 of 6

| Billing Company | Project/Activity | Description | EAI | ELL | EMI | EEI | ENOI | EOI | ESI | ETI | SERI | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| EGSLA | F3PCR12575 | LA ECONOMIC DEVELOPMENT PROGRA | - | - | - | - | - | - | 590 | - | - | 590 |
| EGSLA | F3PCR29324 | REVENUE ASSURANCE - ADM. | - | - | - | - | - | - | 341 | - | - | 341 |
| EGSLA | F3PCR53013 | BATON ROUGE LEAD CSM - ESI | - | - | - | - | - | - | 515 | - | - | 515 |
| EGSLA | F3PCR56240 | BILLING & PAYMENT SOLUTIONS - | 56,798 | - | - | - | - | - | - | - | - | 56,798 |
| EGSLA | F3PCR56241 | BILLING & PAYMENT SOLUTIONS - | - | 22,068 | - | - | - | - | - | - | - | 22,068 |
| EGSLA | F3PCR56245 | BILLING & PAYMENT SOLUTIONS - | - | - | - | - | - | - | - | 74,869 | - | 74,869 |
| EGSLA | F3PCR73323 | FIELD METER READING SUPPORT, A | - | - | - | - | - | - | 128 | - | - | 128 |
| EGSLA | F3PCR73326 | CUSTOMER SERVICE CENTER SUPPOR | - | - | - | - | - | - | - | - | - | - |
| EGSLA | F3PCR73330 | FIELD METER READING - ELI | - | - | - | - | - | - | 41 | - | - | 41 |
| EGSLA | F3PCR73372 | LOUISIANA CUSTOMER SERVICE CEN | - | - | - | - | - | - | 131 | - | - | 131 |
| EGSLA | F3PCR73401 | FIELD METER READING - EGSI -LA | - | - | - | - | - | - | 165 | - | - | 165 |
| EGSLA | F3PCT10322 | SOUTHERN FRANCHISE DISTR OPER | - | - | - | - | - | - | 1,823 | - | - | 1,823 |
| EGSLA | F3PCT53062 | TRANSPORTATION SERVICES | - | - | - | - | - | - | 419 | - | - | 419 |
| EGSLA | F3PCT53084 | ENVIRONMENTAL SUPPORT - ELI | - | 16,811 | - | - | - | - | - | - | - | 16,811 |
| EGSLA | F3PCT53130 | OPN,MGR, CLAIMS MANAGEMENT | - | - | - | - | - | - | 165 | - | - | 165 |
| EGSLA | F3PCTDPM01 | SYS SERV PROJECT MANAGEMENT - | - | - | - | - | - | - | 8,465 | - | - | 8,465 |
| EGSLA | F3PCTDS006 | PROCESS TRAINING - TEXAS | - | - | - | - | - | - | - | - | - | - |
| EGSLA | F3PCTDS010 | PROCESS & SKILLS TRAINING ADMI | - | - | - | - | - | - | 17 | - | - | 17 |
| EGSLA | F3PCTTDS12 | TRANSMISSION  LINES O&M EXPENS | - | - | - | - | - | - | 8,465 | - | - | 8,465 |
| EGSLA | F3PCTTDS17 | Substation Maintenance EGSI LA | - | - | - | - | - | - | 523 | - | - | 523 |
| EGSLA | F3PCTTDS20 | SUBSTATION MAINTENANCE | - | - | - | - | - | - | 12,720 | - | - | 12,720 |
| EGSLA | F3PCTTDS30 | DISTRIBUTION O&M EXPENSE -EGSI | - | - | - | - | - | - | 20 | - | - | 20 |
| EGSLA | F3PCTTDS47 | DISTR O&M EXPENSE - LOUISIANA | - | - | - | - | - | - | 3,329 | - | - | 3,329 |
| EGSLA | F3PCWE0057 | BRAO & TECH SUPPORT ROUTINE/DI | - | - | - | - | - | - | - | - | - | - |
| EGSLA | F3PCY20621 | PARKIN SUBSTATION, ARKANSAS | - | - | - | - | - | - | - | - | - | - |
| EGSLA | F3PCZGASAG | GAS ADMINISTRATIVE | - | - | - | - | - | - | 42 | - | - | 42 |
| EGSLA | F3PP451921 | GENERAL MECHANICAL | - | - | - | - | - | - | - | - | - | - |
| EGSLA | F3PPCPLITA | 2009 Fall Lighting Campaign EA | - | - | - | - | - | - | 1,840 | - | - | 1,840 |
| EGSLA | F3PPCPLITG | 2009 Fall Lighting Campaign EG | - | - | - | - | - | - | 10,954 | - | - | 10,954 |
| EGSLA | F3PPCPLITL | 2009 Fall Lighting Campaign EL | - | - | - | - | - | - | 2,366 | - | - | 2,366 |
| EGSLA | F3PPCPLITM | 2009 Fall Lighting Campaign EM | - | - | - | - | - | - | 1,218 | - | - | 1,218 |
| EGSLA | F3PPCPLITN | Lighting Campaign ENOI | - | - | - | - | - | - | 220 | - | - | 220 |
| EGSLA | F3PPLTTX10 | 2010 Winter Lighting Promo Tex | - | - | - | - | - | - | 200 | - | - | 200 |
| EGSLA | F3PPM08001 | WATERFORD 3 GENERAL SUPPORT | - | 220 | - | - | - | 420 | - | - | - | 641 |
| EGSLA | F3PPR1031G | CUSTOMER RELATIONS - EGSL | - | - | - | - | - | - | 171 | - | - | 171 |
| EGSLA | F3PPR733BR | Baton Rouge Customer Service C | - | - | - | - | - | - | 9,422 | - | - | 9,422 |
| EGSLA | F3PPREALL2 | Residential Market Dev - ALL J | - | - | - | - | - | - | 6,209 | - | - | 6,209 |
| EGSLA | F3PPZB0241 | LGC Fuel Oil Unloading/Handlin | - | 178 | - | - | - | - | - | - | - | 178 |
| EGSLA | F3PPZG2281 | LG2 Turbine Valve& Generator O | - | - | - | - | - | - | - | - | - | - |
| EGSLA | F5PCE13751 | GENERAL LITIGATION- EGSI-LA | - | - | - | - | - | - | 69 | - | - | 69 |
| EGSLA | F5PCFPR062 | 5% SURCHARGE ON SERVICES TO ET | - | - | - | 716 | - | - | - | - | - | 716 |
| EGSLA | F5PCFPR07A | 5% SURCHARGE ON SERVICES TO IP | - | - | - | - | - | - | - | - | - | - |
| EGSLA | F5PCSAFTEG | SAFTEY TRAINING LOADER GAS CUS | - | - | - | - | 285 | - | - | - | - | 285 |
| EGSLA | F5PCZFCTRN | REGULATD NON-BACKBONE FIBER | - | - | - | - | - | - | 609 | - | - | 609 |
| EGSLA | F5PCZPTOXX | PAID TIME OFF | (266) | (263) | (162) | (6) | (59) | (2) | 1,662 | (123) | - | 780 |
| EGSLA | F5PCZUBENF | BENEFITS | (3,837) | (45,379) | 3,821 | 83 | (5,009) | (38) | (1,923) | 2,174 | - | (50,109) |
| EGSLA | F5PCZUPRTX | PAYROLL TAX | (1,643) | (2,282) | (1,312) | (46) | (422) | (41) | (326) | (871) | - | (6,943) |
| EGSLA | F5PCZY323L | ROUTINE SPILL RESPONSE(CS-LP&L | - | 21,059 | - | - | - | - | - | - | - | 21,059 |
| EGSLA | F5PCZZ4040 | TEAMSHARE INCENTIVE COMPENSATI | 66 | 994 | 267 | 98 | 13 | 140 | 939 | 1 | - | 2,517 |

Amounts may not add or tie to other schedules due to rounding.

Entergy Gulf States Louisiana, L.L.C.
Affiliate Per Book Billings by Project/Activity
For the Twelve Months Ended, June 30, 2011
Amounts in Dollars

Exhibit SBT-21
2011 TX Rate Case
6 of 6

| Billing Company | Project/Activity | Description | EAI | ELL | EMI | EEI | ENOI | EOI | ESI | ETI | SERI | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| EGSLA | F5PCZZ4070 | IMPACT AWARDS | 27 | 1,992 | - | - | - | - | 422 | - | - | 2,441 |
| EGSLA | F5PPFAC009 | FAC-009 Mitigation Plan Data A | - | - | - | - | - | - | - | - | - | - |
| EGSLA | F5PPFPR0NA | 5% SURCHARGE ON SERVICES TO EN | - | - | - | 37 | - | - | - | - | - | 37 |
| EGSLA | F5PPFPRO57 | 5% SURCHARGE ON SERVICES TO EN | - | - | - | 1,860 | - | - | - | - | - | 1,860 |
| EGSLA | F5PPFPRO72 | 5% Surcharge on Services to EN | - | - | - | 6 | - | - | - | - | - | 6 |
| EGSLA | F5PPFPRO77 | 5% Surcharge on Svcs to IP3 | - | - | - | 5,221 | - | - | - | - | - | 5,221 |
| EGSLA | F5PPFPRO78 | 5% Surcharge on Svcs to 78 | - | - | - | 331 | - | - | - | - | - | 331 |
| EGSLA | F5PPIBWG10 | 2010 IBEW-EGSL Contract Negoti | - | - | - | - | - | - | - | - | - | - |
| EGSLA | F5PPNNELSN | NELSON 6 PLANT COSTS | - | - | - | - | - | - | - | 8,925,811 | - | 8,925,811 |
| EGSLA | F5PPWE0450 | Safety Recognition Program - S | - | 489 | - | - | - | - | - | - | - | 489 |
| EGSLA | F5PPZUWELL | Entergy Wellness Program | - | - | - | - | - | - | - | - | - | - |
| EGSLA | GINP | Purc Gen Invent Items-Passport | 28,776 | 93,458 | 3,543 | - | 2,176 | - | - | 60,259 | - | 188,211 |
| EGSLA | PCCC | Provide Call Center Contact | 537,563 | 562,736 | 386,966 | - | 166,521 | - | - | 248,657 | - | 1,902,443 |
| EGSLA | RENP | Process Recpts Not Invoiced-Pp | - | - | 20,666 | - | - | - | - | - | - | 20,666 |
| EGSLA | RTCF | Investigate E Servic Diversion | - | 4,337 | - | - | - | - | - | - | - | 4,337 |
| EGSLA | SAPCP25910 | PC&R OVERHEAD POOL CHARGES | - | - | - | - | - | - | (678) | 358 | - | (320) |
| EGSLA | SAPCPCPLAP | PC&R OVERHEAD POOL | (34) | - | - | - | - | - | - | - | - | (34) |
| EGSLA | SAPCPCPLLP | PC&R OVERHEAD POOL | - | (2,872) | - | - | - | - | - | - | - | (2,872) |
| EGSLA | SAPCPCPLMP | PC&R OVERHEAD POOL | - | - | 14 | - | - | - | - | - | - | 14 |
| EGSLA | SAPCPCPLNE | PC&R OVERHEAD POOL - ENOI - EL | - | - | - | - | (189) | - | - | - | - | (189) |
| EGSLA | SDPCL79005 | CAP SUSPENSE, DISTR ESI, LA-G, | - | - | - | - | - | - | 119 | - | - | 119 |
| EGSLA | SDPCT59005 | CAPITAL SUSPENSE, ELEC DISTRIB | - | - | - | - | 12,209 | - | - | - | - | 12,209 |
| EGSLA | SDPCTA0528 | DISTRIBUTION CAPITAL SUSPENSE | - | - | - | - | - | - | 26,807 | - | - | 26,807 |
| EGSLA | SFPCW30010 | FOSSIL CAPITAL SUSPENSE - ELI | - | 1,651 | - | - | - | - | - | - | - | 1,651 |
| EGSLA | SGPCG59006 | GAS DISTRIBUTION ENOI  O/H GAS | - | - | - | - | - | - | 231 | - | - | 231 |
| EGSLA | SGPCR79008 | GAS DISTRIBUTION EGSI O/H-CHAR | - | - | - | - | - | - | 224 | - | - | 224 |
| EGSLA | SJLG | Prov Logistics During Maj Stms | - | - | 125 | - | - | - | - | - | - | 125 |
| EGSLA | SNPCN79003 | RIVERBEND SITE OVERHEAD ENG & | - | - | - | - | - | (126) | - | - | - | (126) |
| EGSLA | STPCTA0527 | TRANSMISSION CAPITAL SUSPENSE | - | - | - | - | - | - | 26,814 | - | - | 26,814 |
| EGSLA | STPPTD0ELL | Capital Suspense T&D Grid ELL | - | 2,572 | - | - | - | - | - | - | - | 2,572 |
| EGSLA | STPPTDS527 | Capital Suspense TGrid ESI all | - | - | - | - | - | - | 26,799 | - | - | 26,799 |
| EGSLA | XFAB | Provide Plant Office Support | - | - | - | - | - | - | - | 6,333 | - | 6,333 |
| EGSLA | XFAD | Manage Genl Plant Operations | - | - | - | - | - | - | - | - | - | - |
| EGSLA | XKAA | Provide Maintenance Supervisn | - | 14,861 | - | - | - | - | - | - | - | 14,861 |
| EGSLA | XNAA | Maintain Accessory Electric Eq | - | - | - | - | - | - | - | - | - | - |
| EGSLA | XNBC | Maintain Generator System | - | - | - | - | - | - | - | - | - | - |
| EGSLA | XVAA | Operate & Maintain Fuel Oil Eq | - | - | - | - | - | - | - | - | - | - |
| | | | 859,408 | 1,562,606 | 509,565 | 171,579 | 179,925 | 127,910 | 200,073 | 9,414,163 | 127,654 | 13,152,884 |

Amounts may not add or tie to other schedules due to rounding.

Entergy Louisiana, LLC
Affiliate Per Book Billings by Project/Activity
For the Twelve Months Ended, June 30, 2011
Amounts in Dollars

| Billing Company | Project/Activity | Description | EAI | EEI | EGSLA | EMI | ENOI | EOI | ESI | ETI | SERI | SFI | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ELL | ASAM | Attend Safety Meetings | 513 | - | - | - | - | - | - | - | - | - | 513 |
| ELL | ATTR | Attend Training | 42,170 | - | - | - | 435 | - | - | - | - | - | 42,605 |
| ELL | BDGM | Disconn/Reconn Gas Meter-Nonpy | - | - | - | - | 6,987 | - | - | - | - | - | 6,987 |
| ELL | CMOH | Perf El Dist Corr Mnt O/H Wire | - | - | - | - | 13 | - | - | - | - | - | 13 |
| ELL | EMCO | Communicate With Employees | - | - | - | 1,820 | - | - | - | - | - | - | 1,820 |
| ELL | GTOF | Perform Gas Met Svc-Turn On/Of | - | - | - | - | 20,024 | - | - | - | - | - | 20,024 |
| ELL | HFMT | Repair Elec Meters In Field | - | - | - | - | 124 | - | - | - | - | - | 124 |
| ELL | HVAC | Repair HVAC Systems | 29 | - | - | - | - | - | - | - | - | - | 29 |
| ELL | MACO | Maintain Condenser | 1,542 | - | - | - | - | - | - | - | - | - | 1,542 |
| ELL | MCEF | Monit&Cont Permitted Effluents | 1,507 | - | - | - | - | - | - | - | - | - | 1,507 |
| ELL | MEDG | Manage Gas Distribution Oper | - | - | - | - | 7,471 | - | - | - | - | - | 7,471 |
| ELL | MESM | Manage Distr Subs Maintenance | - | - | - | - | 42,328 | - | - | - | - | - | 42,328 |
| ELL | MFPT | Repair Fire Protection System | 20,213 | - | 2,494 | - | - | - | - | - | - | - | 22,706 |
| ELL | MGMT | Manage Stred Matl/Iss Supplies | 21,729 | - | - | - | - | - | - | - | - | - | 21,729 |
| ELL | MTBS | Repair Buildings | 13,678 | - | 5,270 | - | - | - | - | - | - | - | 18,948 |
| ELL | MTFC | Maintain Misc Facilities & Str | 1,935 | - | - | - | - | - | - | - | - | - | 1,935 |
| ELL | MTFG | Repair Yards & Grounds | 617 | - | 4,034 | - | - | - | - | - | - | - | 4,650 |
| ELL | MTOF | Perf Elec Meter Serv Wk-On/Off | - | - | - | - | 474 | - | - | - | - | - | 474 |
| ELL | PBUD | Prep Budget & Pe (Indiv Org) | - | - | - | - | - | - | - | - | - | - | - |
| ELL | PEER | Peer Group Meetings | 54 | - | - | - | - | - | - | - | - | - | 54 |
| ELL | PUGL | Perform Underground Loc Maint | - | - | - | - | 121,443 | - | - | - | - | - | 121,443 |
| ELL | RACM | Receive & Check Materials | - | - | - | - | 444 | - | - | - | - | - | 444 |
| ELL | RENP | Process Recpts Not Invoiced-Pp | - | - | - | - | 8,580 | - | - | - | - | - | 8,580 |
| ELL | RERD | Re-Read Misread Meters | - | - | - | - | 20,312 | - | - | - | - | - | 20,312 |
| ELL | RRDD | Reread E Metr-DistField-Not CI | - | - | - | - | 62 | - | - | - | - | - | 62 |
| ELL | RTCF | Investigate E Servic Diversion | - | - | - | - | - | - | - | - | - | - | - |
| ELL | TEDP | Troubleshoot El Dist Prob-Cust | - | - | - | - | 1,306 | - | - | - | - | - | 1,306 |
| ELL | TMET | Test Electric Meters In Field | - | - | - | - | 2,288 | - | - | - | - | - | 2,288 |
| ELL | WAST | Provide Waste Disposal Service | 669 | - | - | - | - | - | - | - | - | - | 669 |
| ELL | XBAA | Operate Boiler Plant | 601,325 | - | 95,663 | - | - | - | - | - | - | - | 696,988 |
| ELL | XBAD | Operate Water Plant System | 11,370 | - | 2,629 | - | - | - | - | - | - | - | 13,998 |
| ELL | XBAK | Operate Environmental Eq& Proc | 4,334 | - | 2,458 | - | - | - | - | - | - | - | 6,791 |
| ELL | XEAA | Operate Other Electric Plt Eq | 270,450 | - | 86,638 | - | 726 | - | - | - | - | - | 357,814 |
| ELL | XKAA | Provide Maintenance Supervisn | 27,957 | - | 13,980 | - | - | - | - | - | - | - | 41,938 |
| ELL | XLAU | Repair Cranes | 4,828 | - | 1,433 | - | - | - | - | - | - | - | 6,261 |
| ELL | XLAW | Repair Waste Wtr Trt&Setl Sys | 30,653 | - | 3,876 | - | - | - | - | - | - | - | 34,530 |
| ELL | XMCB | Perform Boiler Chemical Clean | - | - | - | - | - | - | - | - | - | - | - |
| ELL | XMCD | Maintain Safety Valves | - | - | 1,429 | - | - | - | - | - | - | - | 1,429 |
| ELL | XMCE | Maintain Auxily Startup Boiler | - | - | 11,648 | - | - | - | - | - | - | - | 11,648 |
| ELL | XMCF | Maint Waterwall, Casing&Refrac | - | - | 8,116 | - | - | - | - | - | - | - | 8,116 |
| ELL | XMCG | Maintain Desuperheater System | 593 | - | 548 | - | - | - | - | - | - | - | 1,141 |
| ELL | XMCH | Mnt Deaerator,Flsh Evp&Drum Sy | - | - | 1,717 | - | - | - | - | - | - | - | 1,717 |
| ELL | XMCL | Maintain Reheater System | - | - | - | - | - | - | - | - | - | - | - |
| ELL | XMCR | Maintain Other Boiler Plant Eq | 1,699 | - | - | - | - | - | - | - | - | - | 1,699 |
| ELL | XMCU | Maintain Forced Draft Air Syst | - | - | 8,219 | - | - | - | - | - | - | - | 8,219 |
| ELL | XMCW | Maintain Air Preheater System | - | - | 3,440 | - | - | - | - | - | - | - | 3,440 |
| ELL | XMDH | Maint Fuel Oil Tank Farm&Tra E | - | - | 206 | - | - | - | - | - | - | - | 206 |
| ELL | XMDK | Maint Gas Supply Line Eq&Contr | 4,689 | - | - | - | - | - | - | - | - | - | 4,689 |
| ELL | XMDM | Maintain Condensate Booster Sy | 1,711 | - | 13 | - | - | - | - | - | - | - | 1,724 |
| ELL | XMDP | Maintain Feedwater Treating Sy | - | - | 10,738 | - | - | - | - | - | - | - | 10,738 |
| ELL | XMDR | Maint Feedwtr Piping&Blowdown | - | - | - | - | - | - | - | - | - | - | - |
| ELL | XMDT | Maintain Other Feedwater Syst | 215 | - | - | - | - | - | - | - | - | - | 215 |

Amounts may not add or tie to other schedules due to rounding.

Entergy Louisiana, LLC
Affiliate Per Book Billings by Project/Activity
For the Twelve Months Ended, June 30, 2011
Amounts in Dollars

Exhibit SBT-22
2011 TX Rate Case
2 of 23

| Billing Company | Project/Activity | Description | EAI | EEI | EGSLA | EMI | ENOI | EOI | ESI | ETI | SERI | SFI | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ELL | XMDV | Maintain Water Plant System | - | - | 4,631 | - | - | - | - | - | - | - | 4,631 |
| ELL | XMDX | Maintain Demineralizer System | 13,906 | - | 7,468 | - | - | - | - | - | - | - | 21,374 |
| ELL | XMDY | Maintain Turbine Gas Fuel Syst | 1,677 | - | 978 | - | - | - | - | - | - | - | 2,655 |
| ELL | XNAB | Maintain Aux Gen&Stategic Bat | 7,092 | - | 1,640 | - | - | - | - | - | - | - | 8,733 |
| ELL | XNAC | Maintain Proc Ctrl&Data Acq Sy | 2,851 | - | 1,068 | - | - | - | - | - | - | - | 3,919 |
| ELL | XNAE | Maintain Elec Instr & Controls | 2,332 | - | 232 | - | - | - | - | - | - | - | 2,564 |
| ELL | XNAF | Maintain Hrsg, Inst & Controls | 8,735 | - | 5,885 | - | - | - | - | - | - | - | 14,619 |
| ELL | XNAG | Maintain Misc E Pl Valves&Pipe | 56 | - | - | - | - | - | - | - | - | - | 56 |
| ELL | XNAK | Maintain Cl Cooling Water Syst | 766 | - | 139 | - | - | - | - | - | - | - | 904 |
| ELL | XNAL | Maintain Cooling Tower Mech Eq | 1,973 | - | 1,326 | - | - | - | - | - | - | - | 3,299 |
| ELL | XNAM | Maintain Condensate/Hotwell Sy | 554 | - | 4,627 | - | - | - | - | - | - | - | 5,181 |
| ELL | XNAN | Maintain Cooling Tower Struct | 3,182 | - | 341 | - | 97 | - | - | - | - | - | 3,620 |
| ELL | XNAP | Maintain Circulating Water Sys | 4,225 | - | 978 | - | - | - | - | - | - | - | 5,203 |
| ELL | XNAR | Maintain Oth Cooling Water Eq | - | - | 128 | - | - | - | - | - | - | - | 128 |
| ELL | XNAT | Maintain Gas Turb Hot Section | 16,139 | - | 7,276 | - | - | - | - | - | - | - | 23,415 |
| ELL | XNAU | Maintian Gas Turb Compress Sys | 2,276 | - | 1,693 | - | - | - | - | - | - | - | 3,969 |
| ELL | XNAV | Maintain Gas Turb Air Intake S | 406 | - | 114 | - | - | - | - | - | - | - | 520 |
| ELL | XNBE | Maint Turbine Valve& Governor | 721 | - | 58 | - | - | - | - | - | - | - | 779 |
| ELL | XNBF | Maintain Other Turbine Equip | 3,515 | - | 1,218 | - | - | - | - | - | - | - | 4,733 |
| ELL | XNBJ | Repair  Auxiliary Transform513 | 6,822 | - | 1,381 | - | - | - | - | - | - | - | 8,203 |
| ELL | XNBK | Maintain Oth Misc Eq Assoc Sto | 1,572 | - | 809 | - | - | - | - | - | - | - | 2,381 |
| ELL | XPAD | Maint Tools,Genl Stn&Mobile Eq | 3,743 | - | 1,584 | - | - | - | - | - | - | - | 5,327 |
| ELL | XPAF | Maintain Misc Power Plant Eq | 10,759 | - | - | - | - | - | - | - | - | - | 10,759 |
| ELL | XQAA | Provide Operations Supervision | 363,277 | - | 154,856 | - | - | - | - | - | - | - | 518,134 |
| ELL | XSAD | Provide Mechanical Eq Consult | 101 | - | - | - | - | - | - | - | - | - | 101 |
| ELL | XSAH | Provide Plant Proj/Outage Mgmt | - | - | - | - | - | - | - | - | - | - | - |
| ELL | XWAB | Maintain Plant Veh& Mobile Eq | 322 | - | - | - | - | - | - | - | - | - | 322 |
| ELL | XYAA | Maintain Main Stepup Transform | 2,629 | - | 1,474 | - | - | - | - | - | - | - | 4,104 |
| ELL | F3PPCPLITG | 2009 Fall Lighting Campaign EG | - | - | - | - | - | - | - | - | - | - | - |
| ELL | F3PPCPLITL | 2009 Fall Lighting Campaign EL | - | - | - | - | - | - | 18,384 | - | - | - | 18,384 |
| ELL | F3PPCPLITM | 2009 Fall Lighting Campaign EM | - | - | - | - | - | - | (364) | - | - | - | (364) |
| ELL | C6PPDW010N | 2010 Cap Tools D-Line ENOI | - | - | - | - | 70,913 | - | - | - | - | - | 70,913 |
| ELL | C6PPDW011N | 2011 CA Tools/Equip ENOI Distr | - | - | - | - | 10,616 | - | - | - | - | - | 10,616 |
| ELL | F5PPIBWG11 | 2011 IBEW-EGSL Contract Negoti | - | - | 2,082 | - | - | - | - | - | - | - | 2,082 |
| ELL | C6DB869894 | 2011 PLANNED PROJECT.  702ML. | - | - | 2,260 | - | - | - | - | - | - | - | 2,260 |
| ELL | C6DB869885 | 2011 PLANNED PROJECT.IMPROVE.7 | - | - | 10,234 | - | - | - | - | - | - | - | 10,234 |
| ELL | C6DB869887 | 2011 PLANNED PROJECT.IMPROVE.9 | - | - | 16,481 | - | - | - | - | - | - | - | 16,481 |
| ELL | C6DB869961 | 2011 PLANNED PROJECT.IMPROVE.9 | - | - | 34,917 | - | - | - | - | - | - | - | 34,917 |
| ELL | C1PPFIB203 | 21GTX Replacement 2011 | - | - | - | - | - | - | 1,388 | - | - | - | 1,388 |
| ELL | F5PP5PERCX | 5% Surcharge | - | 7 | - | - | - | - | - | - | - | - | 7 |
| ELL | F5PPFPR0NA | 5% SURCHARGE ON SERVICES TO EN | - | 105 | - | - | - | - | - | - | - | - | 105 |
| ELL | F5PPFPRO57 | 5% SURCHARGE ON SERVICES TO EN | - | 146 | - | - | - | - | - | - | - | - | 146 |
| ELL | F5PPFPRO72 | 5% Surcharge on Services to EN | - | - | - | - | - | - | - | - | - | - | - |
| ELL | F5PCFPR008 | 5% SURCHARGE ON SERVICES TO EP | - | 563 | - | - | - | - | - | - | - | - | 563 |
| ELL | F5PCFPR062 | 5% SURCHARGE ON SERVICES TO ET | - | 156 | - | - | - | - | - | - | - | - | 156 |
| ELL | F5PCFPR07A | 5% SURCHARGE ON SERVICES TO IP | - | 542 | - | - | - | - | - | - | - | - | 542 |
| ELL | F5PPFPRO78 | 5% Surcharge on Svcs to 78 | - | 273 | - | - | - | - | - | - | - | - | 273 |
| ELL | F5PPFPRO77 | 5% Surcharge on Svcs to IP3 | - | 693 | - | - | - | - | - | - | - | - | 693 |
| ELL | C1PPHHQ821 | 639 Interior Upgrades | - | - | - | - | - | - | 113 | - | - | - | 113 |
| ELL | C6DB869866 | 852 MA. RELOCATE (3) SPANS OF | - | - | 3,188 | - | - | - | - | - | - | - | 3,188 |
| ELL | F3PCFX3350 | A/R & BILLING SUPPORT | - | - | - | - | - | - | 9 | - | - | - | 9 |
| ELL | F3PCF23425 | ACCOUNTS PAYABLE PROCESSING | - | - | - | - | - | - | 24 | - | - | - | 24 |

Amounts may not add or tie to other schedules due to rounding.

Entergy Louisiana, LLC
Affiliate Per Book Billings by Project/Activity
For the Twelve Months Ended, June 30, 2011
Amounts in Dollars

Exhibit SBT-22
2011 TX Rate Case
3 of 23

| Billing Company | Project/Activity | Description | EAI | EEI | EGSLA | EMI | ENOI | EOI | ESI | ETI | SERI | SFI | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ELL | C6PPTSF344 | Addis 21755 mech failure | - | - | 5,450 | - | - | - | - | - | - | - | 5,450 |
| ELL | C6PPTSF254 | Addis L392 replace failed pane | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPTSF593 | Addis regasket T4 | - | - | 11,911 | - | - | - | - | - | - | - | 11,911 |
| ELL | C6PPTSF265 | Addis Replace DPU 200F | - | - | 10,004 | - | - | - | - | - | - | - | 10,004 |
| ELL | C6PPTSF836 | addis replace failed fans | - | - | 3,237 | - | - | - | - | - | - | - | 3,237 |
| ELL | C6PPTSF517 | Addis replace failed fans T2 | - | - | - | - | - | - | - | - | - | - | - |
| ELL | AARP | Admin Awards & Recog Program | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPTSF563 | Air Products replace bushing | - | - | 24,822 | - | - | - | - | - | - | - | 24,822 |
| ELL | C6PPMR3718 | Air Products: replace CT's | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPTSG002 | Airline Sub: 230kV DEMCO POD | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPTSF259 | Alaska 282F replace DPU | - | - | 3,225 | - | - | - | - | - | - | - | 3,225 |
| ELL | C6PPTSF395 | Alaska enable UF feeder 281F | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPTSF515 | Alchem replace failed fans T1 | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPTLZ005 | Alchem-Mono(L397): Upgrade 275 | - | - | 159,529 | - | - | - | - | - | - | - | 159,529 |
| ELL | C6PPMR3798 | Almonaster : repl. breaker bus | - | - | - | - | - | - | - | - | - | - | - |
| ELL | F3PC9096X2 | ALMONASTER SUB.TO CURRAN SUB. | - | - | - | - | 2,677 | - | - | - | - | - | 2,677 |
| ELL | F3PCY30006 | ALMONASTER SUBSTATION, NEW ORL | - | - | - | - | 86 | - | - | - | - | - | 86 |
| ELL | C6PPRA1253 | Almonaster:Replace 6T1-6, | - | - | - | - | 1,208 | - | - | - | - | - | 1,208 |
| ELL | C6PPRA1254 | Almonaster:Replace 6T2-6 | - | - | - | - | 3,303 | - | - | - | - | - | 3,303 |
| ELL | C8PPMR3816 | Almonaster; minor add; Hurrica | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPTSF528 | Alsen add mos's to line sw's | - | - | 17,327 | - | - | - | - | - | - | - | 17,327 |
| ELL | C6DB870052 | ALT,NIB,922DU,REPLACE 40 WITH | - | - | 27,343 | - | - | - | - | - | - | - | 27,343 |
| ELL | F3PPAMISTG | AMI Strategy Expense | - | - | - | - | - | - | 17 | - | - | - | 17 |
| ELL | F3PCY30980 | ANGOLA SUBSTATION, GSU-LA | - | - | 3,029 | - | - | - | - | - | - | - | 3,029 |
| ELL | C6PPTSV001 | ANO PHVII (2010) | 1,730 | - | - | - | - | - | - | - | - | - | 1,730 |
| ELL | F3PPD10128 | ARCS/Itron/MV90 Support | - | - | - | - | - | - | 6 | - | - | - | 6 |
| ELL | F3PPZG1900 | AT1: Outage | - | - | - | 2,176 | - | - | - | - | - | - | 2,176 |
| ELL | F3PCFX3695 | ATPR SUPPORT | - | - | - | - | - | - | 7 | - | - | - | 7 |
| ELL | C5DB476123 | AUDUBON BLVD STREET PAVING PRO | - | - | - | - | 331 | - | - | - | - | - | 331 |
| ELL | F3PCY30026 | AVENUE C SUBSTATION, NEW ORLEA | - | - | - | - | 4,607 | - | - | - | - | - | 4,607 |
| ELL | C6DB476106 | BACKBONE 1010 RELABILITY WALK | - | - | - | - | 14,891 | - | - | - | - | - | 14,891 |
| ELL | C6DB476100 | BACKBONE 1702-2 RELIABILITY WAL | - | - | - | - | 5,982 | - | - | - | - | - | 5,982 |
| ELL | C6DB476104 | BACKBONE 615-2 RELIABILITY WAL | - | - | - | - | 3,714 | - | - | - | - | - | 3,714 |
| ELL | C6DB476103 | BACKBONE 627-2 RELIABILITY WALK | - | - | - | - | 7,343 | - | - | - | - | - | 7,343 |
| ELL | C1PPFII056 | Backbone Ovebld Expnsn North D | - | - | - | - | - | - | 10,272 | - | - | - | 10,272 |
| ELL | C6DB476065 | BACKBONE TU 2135 REPAIR PROBLE | - | - | - | - | 24,623 | - | - | - | - | - | 24,623 |
| ELL | C6PPTSF530 | Baker add mos sw 14057 | - | - | 7,124 | - | - | - | - | - | - | - | 7,124 |
| ELL | C6PPTSF229 | Baker repl ls sws with S&C on | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPTSF615 | Baker replace arresters T1 | - | - | 2,482 | - | - | - | - | - | - | - | 2,482 |
| ELL | C6PPTSF616 | Baker replace arresters T2 | - | - | 2,482 | - | - | - | - | - | - | - | 2,482 |
| ELL | C6PPTSF833 | Baker replace failed fans | - | - | 2,406 | - | - | - | - | - | - | - | 2,406 |
| ELL | F3PCY30998 | BAKER SUBSTATION, GSU-LA | - | - | 346 | - | - | - | - | - | - | - | 346 |
| ELL | F3PPR733BR | Baton Rouge Customer Service C | - | - | - | - | - | - | 877 | - | - | - | 877 |
| ELL | C6PPTSK250 | Bayou Labutte: Build 500kV Sub | - | - | - | - | - | - | 1,216 | - | - | - | 1,216 |
| ELL | F3PCY32457 | BAYOU SAUVAGE NEW ORLEANS EAST | - | - | - | - | 2,045 | - | - | - | - | - | 2,045 |
| ELL | F3PCY31012 | BELFAIR SUBSTATION, GSU-LA | - | - | 5,778 | - | - | - | - | - | - | - | 5,778 |
| ELL | F5PCZUBENF | BENEFITS | (4,853) | (26) | (5,136) | (421) | 1,537 | 31 | 93 | (124) | - | (100) | (8,997) |
| ELL | C6PPTSJ003 | Bentwater - Build 138-34.5 Sub | - | - | - | - | - | - | - | - | - | - | - |
| ELL | F3PPD10129 | Billing Determinate Proc/Major | - | - | - | - | - | - | 6 | - | - | - | 6 |
| ELL | C6DB476085 | BKB TU 1913 REPAIR PROBLEMS ID | - | - | - | - | 14,023 | - | - | - | - | - | 14,023 |
| ELL | C6DB475821 | BKB TU 1923 CP TRAC # TU10-021 | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6DB475824 | bkb tu 2015 cp trac # tu10-023 | - | - | - | - | 2,302 | - | - | - | - | - | 2,302 |

Amounts may not add or tie to other schedules due to rounding.

Entergy Louisiana, LLC
Affiliate Per Book Billings by Project/Activity
For the Twelve Months Ended, June 30, 2011
Amounts in Dollars

Exhibit SBT-22
2011 TX Rate Case
4 of 23

| Billing Company | Project/Activity | Description | EAI | EEI | EGSLA | EMI | ENOI | EOI | ESI | ETI | SERI | SFI | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ELL | C6DB476081 | BKB TU 2026 REPAIR PROBLEMS ID | - | - | - | - | 544 | - | - | - | - | - | 544 |
| ELL | C6DB476083 | BKB TU 2147 REPAIR PROBLEMS ID | - | - | - | - | 3,849 | - | - | - | - | - | 3,849 |
| ELL | C6DB476080 | BKBONE 2017 REPAIR PROBLEMS ID | - | - | - | - | 36,302 | - | - | - | - | - | 36,302 |
| ELL | C6DB476146 | BKBONE,EO,1002,R/P BAD OR DEFE | - | - | - | - | 11,049 | - | - | - | - | - | 11,049 |
| ELL | C6DB476094 | BKBONE,EO,2346,R/P DEFECTIVE E | - | - | - | - | 21,164 | - | - | - | - | - | 21,164 |
| ELL | C6DB476127 | BKBONE,EO,611,R/P BAD OR DEFEC | - | - | - | - | 11,600 | - | - | - | - | - | 11,600 |
| ELL | C6DB476128 | BKBONE,EO,613,R/P BAD OR DEFEC | - | - | - | - | 6,041 | - | - | - | - | - | 6,041 |
| ELL | C6DB475877 | BKBONE,EO,621,622,612,623,R/P | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6DB476068 | BKBONE,EO,621,R/P BAD OR DEFEC | - | - | - | - | 47,729 | - | - | - | - | - | 47,729 |
| ELL | C6DB476062 | BKBONE,EO,622,R/P BAD EQUIPMEN | - | - | - | - | 9,915 | - | - | - | - | - | 9,915 |
| ELL | C6DB476064 | BKBONE,EO,623,R/P BAD OR FAULT | - | - | - | - | 10,688 | - | - | - | - | - | 10,688 |
| ELL | C6DB475820 | bkn tu 1914 CP Trac # TU10-020 | - | - | - | - | 4,313 | - | - | - | - | - | 4,313 |
| ELL | C6PPTSF564 | Blount replace 13 kv pin & cap | - | - | 5,568 | - | - | - | - | - | - | - | 5,568 |
| ELL | C6PPTSF840 | Blount replace contacts bkr 14 | - | - | 12,083 | - | - | - | - | - | - | - | 12,083 |
| ELL | C6PPTSF560 | Blount replace contacts ltc t2 | - | - | 10,937 | - | - | - | - | - | - | - | 10,937 |
| ELL | C6PPTSF526 | Blount replace failed insulato | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPTSF632 | Blount replace failed T1 | - | - | 2,470 | - | - | - | - | - | - | - | 2,470 |
| ELL | F3PCY31020 | BLOUNT SUBSTATION, GSU-LA | - | - | 1,355 | - | - | - | - | - | - | - | 1,355 |
| ELL | C6PPTSF415 | BR Relay test set upgrade | - | - | 8,982 | - | - | - | - | - | - | - | 8,982 |
| ELL | C6DB869759 | BR REV 700ZO-BURLINGTON LAKES | - | - | 82,445 | - | - | - | - | - | - | - | 82,445 |
| ELL | C6DB869549 | BR STREET LIGHTS BLITZ | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6DB869550 | BR STREET LIGHTS BLITZ - CONTR | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6DB869515 | BR-773PE REV INSTALL UG FACILI | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPTSF607 | Brady Heights parallel LTC | - | - | 15,805 | - | - | - | - | - | - | - | 15,805 |
| ELL | F3PCY31023 | BRADY HEIGHTS SUBSTATION, GSU- | - | - | 8,190 | - | - | - | - | - | - | - | 8,190 |
| ELL | F3PCY31032 | BROUSSARD SUBSTATION, GSU-LA | - | - | 1,069 | - | - | - | - | - | - | - | 1,069 |
| ELL | F3PCY31033 | BROWN SUBSTATION, GSU-LA | - | - | 724 | - | - | - | - | - | - | - | 724 |
| ELL | C6DB869472 | BR-REV 728 GARDERE - INSTALL U | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6DB869721 | BR-REV 728 GARDERE - INSTALL U | - | - | 70,955 | - | - | - | - | - | - | - | 70,955 |
| ELL | C6DB869809 | BR-REV 728 GARDERE - INSTALL U | - | - | 49,583 | - | - | - | - | - | - | - | 49,583 |
| ELL | C6DB869875 | BR-REV 728 GARDERE - INSTALL U | - | - | 69,561 | - | - | - | - | - | - | - | 69,561 |
| ELL | C6DB869538 | BR-REV-724GR-INSTALL UG FACILI | - | - | 2,091 | - | - | - | - | - | - | - | 2,091 |
| ELL | F3PCF73027 | BUDGET SYSTEM MAINTENANCE | - | - | - | - | - | - | 19 | - | - | - | 19 |
| ELL | C6PPTSF474 | Bulldog Sub T1 Animal Mitigati | - | - | 932 | - | - | - | - | - | - | - | 932 |
| ELL | F3PCR56136 | BUSINESS OFFICE STUDY - ENOI | - | - | - | - | 3,192 | - | - | - | - | - | 3,192 |
| ELL | SDPCM79005 | CAP SUSPENSE, DISTR ESI, METRO | - | - | - | - | - | - | 10,302 | - | - | - | 10,302 |
| ELL | STPPTDEGSL | Capital Suspense T&D Grid EGSL | - | - | 867 | - | - | - | - | - | - | - | 867 |
| ELL | STPPTDENOI | Capital Suspense T&D Grid ENOI | - | - | - | - | 85,058 | - | - | - | - | - | 85,058 |
| ELL | SDPCT30070 | CAPITAL SUSPENSE, DISTR WIRES, | - | - | - | - | - | - | - | - | - | - | - |
| ELL | SDPCT59005 | CAPITAL SUSPENSE, ELEC DISTRIB | - | - | - | - | 76,014 | - | - | - | - | - | 76,014 |
| ELL | C6PPSHOPMS | Capture Transformer Cost MS | - | - | - | (202,988) | - | - | - | - | - | - | (202,988) |
| ELL | C6PPTFRSMS | Capture Transformer Cost MS | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPTSHOPM | Capture Transformer Cost MS | - | - | - | (80,364) | - | - | - | - | - | - | (80,364) |
| ELL | C6PPTFRSGS | Capture Transformer Costs GSU | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPSHOPGS | Capture Transformer Costs LG | - | - | (84,615) | - | - | - | - | - | - | - | (84,615) |
| ELL | C6PPTSHOPG | Capture Transformer Costs LG | - | - | (65,366) | - | - | - | - | - | - | - | (65,366) |
| ELL | C6PPSHOPAR | Capture Transformer Shop Cost | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPSHOPNO | Capture Transformer Shop Cost | - | - | - | - | (47,198) | - | - | - | - | - | (47,198) |
| ELL | C6PPSHOPTX | Capture Transformer Shop Cost | - | - | - | - | - | - | - | (181,689) | - | - | (181,689) |
| ELL | C6PPTFRSAR | Capture Transformer Shop Cost | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPTFRSNO | Capture Transformer Shop Cost | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPTFRSTX | Capture Transformer Shop Cost | - | - | - | - | - | - | - | - | - | - | - |

Amounts may not add or tie to other schedules due to rounding.

Entergy Louisiana, LLC
Affiliate Per Book Billings by Project/Activity
For the Twelve Months Ended, June 30, 2011
Amounts in Dollars

Exhibit SBT-22
2011 TX Rate Case
5 of 23

| Billing Company | Project/Activity | Description | EAI | EEI | EGSLA | EMI | ENOI | EOI | ESI | ETI | SERI | SFI | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ELL | C6PPTSHOPA | Capture Transformer Shop Cost | (2,628) | - | - | - | - | - | - | - | - | - | (2,628) |
| ELL | C6PPTSHOPN | Capture Transformer Shop Cost | - | - | - | - | (17,683) | - | - | - | - | - | (17,683) |
| ELL | C6PPTSHOPT | Capture Transformer Shop Cost | - | - | - | - | - | - | - | (38,665) | - | - | (38,665) |
| ELL | C6PPTSP454 | Carlyss 230 - Replace Sws & ju | - | - | 48,473 | - | - | - | - | - | - | - | 48,473 |
| ELL | C6PPTSF404 | Carlyss T1 transf life extensi | - | - | 17,391 | - | - | - | - | - | - | - | 17,391 |
| ELL | C6PPTSG305 | Carter Upgrade Cap Bank | - | - | 27,415 | - | - | - | - | - | - | - | 27,415 |
| ELL | C6PPDS9846 | Casino:Build 69/13.2kV Sub EGL | - | - | (10,199) | - | - | - | - | - | - | - | (10,199) |
| ELL | C6PPTLF001 | Casino-Contraband, Cut in Casi | - | - | (27,306) | - | - | - | - | - | - | - | (27,306) |
| ELL | C6PPTLF002 | Casino-Lake Street, Cut in Cas | - | - | (25,737) | - | - | - | - | - | - | - | (25,737) |
| ELL | F3PPD10158 | CCS Agent Care System | - | - | - | - | - | - | 1 | - | - | - | 1 |
| ELL | C6PPTSF218 | Cecelia replace feeder breaker | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPTSF219 | Cecelia replace feeder breaker | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6DB869402 | CENT-REV 718ZO INSTALL UG FACI | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C1PPFII26W | CFI Jackson - Repl Gretna Voic | - | - | - | - | - | - | 30,739 | - | - | - | 30,739 |
| ELL | C1PPFII26P | CFI-Jackson TelecomApps-Call C | - | - | - | - | - | - | - | - | - | - | - |
| ELL | F3PPD10131 | CIS/AIS & Core Support | - | - | - | - | - | - | 6 | - | - | - | 6 |
| ELL | C6PPBU1091 | Claiborne - replace OCB N9821 | - | - | - | - | 28,429 | - | - | - | - | - | 28,429 |
| ELL | F3PCY30129 | CLAIBORNE SUBSTATION, NEW ORLE | - | - | - | - | 3,383 | - | - | - | - | - | 3,383 |
| ELL | F3PC9091X4 | CLAIBORNE TAPTOPATERSON | - | - | - | - | 5,558 | - | - | - | - | - | 5,558 |
| ELL | F3PC9098X4 | CLAIBORNE TO DELTA | - | - | - | - | 52 | - | - | - | - | - | 52 |
| ELL | C6PPVS1002 | CLAIBORNE: 115KV CAP RELAY UPG | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPTSF535 | Claire add mos to line switche | - | - | 5,473 | - | - | - | - | - | - | - | 5,473 |
| ELL | C6PPTLG201 | CLECO Sellers Road to LUS Labb | - | - | 821,406 | - | - | - | - | - | - | - | 821,406 |
| ELL | C6PPTSF508 | cofel repl failed batteries,ch | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPTSF512 | Cofel replace failed fans | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPTSF834 | Cohen replace failed fans | - | - | 4,088 | - | - | - | - | - | - | - | 4,088 |
| ELL | C6PPTSF542 | cohen replace failed fans t1 | - | - | 5,062 | - | - | - | - | - | - | - | 5,062 |
| ELL | C6PPDSG042 | Colton Sub-Site Purchase & Sco | - | - | 3,181 | - | - | - | - | - | - | - | 3,181 |
| ELL | C6PPTSF273 | Coly L342 replace Primary rela | - | - | 18,459 | - | - | - | - | - | - | - | 18,459 |
| ELL | C6PPTSF429 | Coly L741 Replace relaying | - | - | 416 | - | - | - | - | - | - | - | 416 |
| ELL | C6PPTSF529 | Coly replace batteries&charge | - | - | 27,650 | - | - | - | - | - | - | - | 27,650 |
| ELL | C6PPTSF226 | Coly Replace failed 500 bushin | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPTS2069 | Coly sub modify - new 230kV li | - | - | 134,322 | - | - | - | - | - | - | - | 134,322 |
| ELL | F3PCY31082 | COLY SUBSTATION, GSU-LA | - | - | 15,593 | - | - | - | - | - | - | - | 15,593 |
| ELL | C6PPTLH999 | Coly-Jones Creek,Relocate 69kV | - | - | 239 | - | - | - | - | - | - | - | 239 |
| ELL | C6PPTL1212 | COLY-LOBLOLLY, build new 69kV | - | - | 31,304 | - | - | - | - | - | - | - | 31,304 |
| ELL | C6PPTSF534 | Concord replace failed batt ch | - | - | 3,740 | - | - | - | - | - | - | - | 3,740 |
| ELL | F3PCY31084 | CONCORD SUBSTATION, GSU-LA | - | - | 346 | - | - | - | - | - | - | - | 346 |
| ELL | C6PPN71215 | CONSTRUCTION LOOP PANELS | - | - | 86,405 | - | - | - | - | - | - | - | 86,405 |
| ELL | F5PCLIHPPC | CONSUMER EDUCATION PROGRAMS | - | - | - | - | - | - | 515 | - | - | - | 515 |
| ELL | E2PPSJCIP1 | Contractor Invoice Processing | - | - | - | - | - | - | 315 | - | - | - | 315 |
| ELL | F3PCY31089 | CONWAY SUBSTATION, GSU-LA | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPTSF845 | Copol replace failed charger | - | - | 4,127 | - | - | - | - | - | - | - | 4,127 |
| ELL | F3PCY31090 | COPOL SUBSTATION, GSU-LA | - | - | 378 | - | - | - | - | - | - | - | 378 |
| ELL | C1PPFIB201 | Core Router-ASR Router Inserti | - | - | - | - | - | - | 582 | - | - | - | 582 |
| ELL | F3PCF21600 | CORP RPTG ANALYSIS & POLICY AL | - | - | - | - | - | - | 285 | - | - | - | 285 |
| ELL | F3PCCPM001 | CORPORATE PERFORMANCE MANAGEME | - | - | - | - | - | - | 1 | - | - | - | 1 |
| ELL | F3PCFX3450 | CORPORATE REPORTING SYSTEM SUP | - | - | - | - | - | - | 0 | - | - | - | 0 |
| ELL | C6PPTSZ030 | Cosmar Cust Control House Relo | - | - | 477 | - | - | - | - | - | - | - | 477 |
| ELL | C6PPTSF598 | Cosmar install oil filter T2 I | - | - | 6,734 | - | - | - | - | - | - | - | 6,734 |
| ELL | C6PPTSF832 | Cosmar replace failerd fans | - | - | 3,957 | - | - | - | - | - | - | - | 3,957 |
| ELL | F3PCY31094 | COSMAR SUBSTATION, GSU-LA | - | - | 1,037 | - | - | - | - | - | - | - | 1,037 |

Amounts may not add or tie to other schedules due to rounding.

Entergy Louisiana, LLC
Affiliate Per Book Billings by Project/Activity
For the Twelve Months Ended, June 30, 2011
Amounts in Dollars

Exhibit SBT-22
2011 TX Rate Case
6 of 23

| Billing Company | Project/Activity | Description | EAI | EEI | EGSLA | EMI | ENOI | EOI | ESI | ETI | SERI | SFI | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ELL | C6PPTSF847 | Cosmar t2 repl failed ltc cont | - | - | 13,479 | - | - | - | - | - | - | - | 13,479 |
| ELL | C6PPTL9599 | Courtableau line cut-in | - | - | - | - | - | - | - | - | - | - | - |
| ELL | F3PCY31100 | CROWN ZELLERBACH SUBSTATION, G | - | - | 2,615 | - | - | - | - | - | - | - | 2,615 |
| ELL | C6PPD40220 | Crystal Springs: Inst Fiber Eq | - | - | - | 899 | - | - | - | - | - | - | 899 |
| ELL | F3PCY30160 | CURRAN SUBSTATION, NEW ORLEANS | - | - | - | - | 5,717 | - | - | - | - | - | 5,717 |
| ELL | C6PPMR3789 | Curran: replace VBU | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPRA1294 | Curran:Replace Feeder 2215 | - | - | - | - | 2,803 | - | - | - | - | - | 2,803 |
| ELL | C6DB869909 | CUST BR 725GR INST NEW FEED AN | - | - | 21,369 | - | - | - | - | - | - | - | 21,369 |
| ELL | C6DB870024 | CUST BR 726GR PROVIDE CUSTOMER | - | - | 1,644 | - | - | - | - | - | - | - | 1,644 |
| ELL | C6DB869749 | CUST BR RIVER CENTER GALLERIA | - | - | 16,988 | - | - | - | - | - | - | - | 16,988 |
| ELL | C6DB475847 | CUST TU 1553 ROUTE FEEDER AROU | - | - | - | - | 3,357 | - | - | - | - | - | 3,357 |
| ELL | C6DB869763 | CUST,784DL,DEL,PUT BOAT SLIP C | - | - | 8,784 | - | - | - | - | - | - | - | 8,784 |
| ELL | C6DB476263 | Cust. 406 replace TV# 13 with | - | - | - | - | 1,892 | - | - | - | - | - | 1,892 |
| ELL | C6DB476264 | Cust. 406 replace TV# 13 with | - | - | - | - | 1,927 | - | - | - | - | - | 1,927 |
| ELL | C6DB476039 | CUST. 408 REPLACE TV#21 INSTAL | - | - | - | - | 2,646 | - | - | - | - | - | 2,646 |
| ELL | C6DB475708 | CUST. 408 REPLACE TV#21 WITH S | - | - | - | - | 2,412 | - | - | - | - | - | 2,412 |
| ELL | C6DB475816 | CUST. 409 TEMPORARY REMOVE UG | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6DB475813 | CUST. FDR. 409 INSTALL TEMP. O | - | - | - | - | 268 | - | - | - | - | - | 268 |
| ELL | E1PCR56015 | CUSTOM SALES & SERVICE UNIT - | - | - | - | - | - | - | 253 | - | - | - | 253 |
| ELL | F3PCR10360 | CUSTOMER ACCOUNTING | - | - | - | - | - | - | - | - | - | - | - |
| ELL | F3PPR103LA | CUSTOMER ACCT SVCS- LA (L,LG,N | - | - | - | - | - | - | 211 | - | - | - | 211 |
| ELL | F3PPD10130 | Customer Care System Interface | - | - | - | - | - | - | 8 | - | - | - | 8 |
| ELL | F3PCD10105 | CUSTOMER CARE SYSTEM SUPPORT | - | - | - | - | - | - | 6 | - | - | - | 6 |
| ELL | F3PCR10310 | CUSTOMER RELATIONS - SOUTHERN | - | - | - | - | - | - | 140 | - | - | - | 140 |
| ELL | F3PCTDDS26 | CUSTOMER SERVICE SUPPORT - O&M | - | - | - | - | - | - | 338 | - | - | - | 338 |
| ELL | C6DB475741 | CUSTOMR,EO,1001,RELOCATE FACIL | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6DB475942 | CUSTOMR,EO,1009/1010,I/S POLES | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6DB475994 | CUSTOMR,EO,1010,RE-INSTALL O.H | - | - | - | - | 210 | - | - | - | - | - | 210 |
| ELL | C6DB476235 | CUSTOMR,EO,1204,TEMP.RE-ROUTE | - | - | - | - | 1,184 | - | - | - | - | - | 1,184 |
| ELL | F3PCF72271 | DATA WAREHOUSE | - | - | - | - | - | - | 9 | - | - | - | 9 |
| ELL | C6PPTS7338 | Dell Reactor Replacement | 76 | - | - | - | - | - | - | - | - | - | 76 |
| ELL | C6PPTSF379 | Delmont install D400S RTU | - | - | 31,687 | - | - | - | - | - | - | - | 31,687 |
| ELL | F3PCY30174 | DELTA SUBSTATION, NEW ORLEANS | - | - | - | - | 10,482 | - | - | - | - | - | 10,482 |
| ELL | C6PPRA1264 | Delta:Upgrade Market Line Rela | - | - | - | - | 23,201 | - | - | - | - | - | 23,201 |
| ELL | C6PPBU1069 | Delta-replace damaged N-side d | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPBU1079 | Delta-Replace N0213 Ckt Switch | - | - | - | - | 4,047 | - | - | - | - | - | 4,047 |
| ELL | F3PC9091X2 | DELTATOCLAIBORNE TAP | - | - | - | - | 4,013 | - | - | - | - | - | 4,013 |
| ELL | F3PCY31113 | DENHAM SPRINGS SUBSTATION, GSU | - | - | 1,752 | - | - | - | - | - | - | - | 1,752 |
| ELL | F3PC9097X5 | DERBIGNY SUB. TO TRICOU SUB. | - | - | - | - | 9,277 | - | - | - | - | - | 9,277 |
| ELL | F3PCY30176 | DERBIGNY SUBSTATION, NEW ORLEA | - | - | - | - | 6,108 | - | - | - | - | - | 6,108 |
| ELL | C6PPRA1266 | Derbigny:Ninemile Relay Upgrad | - | - | - | - | 40,227 | - | - | - | - | - | 40,227 |
| ELL | C6PPRA1286 | Derbigny:Replace OCB 1554 | - | - | - | - | 660 | - | - | - | - | - | 660 |
| ELL | C6PPRA1261 | Derbigny:Upgrade Market Line P | - | - | - | - | 12,195 | - | - | - | - | - | 12,195 |
| ELL | F3PCY31116 | DEVIL SWAMP SUBSTATION, GSU-LA | - | - | 378 | - | - | - | - | - | - | - | 378 |
| ELL | C6PC349000 | DISB. LINES REVENUE BLANKET - | - | - | - | 7,632 | - | - | - | - | - | - | 7,632 |
| ELL | C6PPDS9972 | Dist Briarwood 230/34.5kV Sub | - | - | 4,410 | - | - | - | - | - | - | - | 4,410 |
| ELL | F3PPD10120 | Dist Oper Appl O&M-AM/FM Suppo | - | - | - | - | - | - | 22 | - | - | - | 22 |
| ELL | F3PPD10123 | Dist Oper Appl O&M-EPO&SAISO S | - | - | - | - | - | - | 3 | - | - | - | 3 |
| ELL | F3PPD10124 | Dist Oper Appl O&M-PDD/ECOS Sp | - | - | - | - | - | - | 0 | - | - | - | 0 |
| ELL | C6PPDS9971 | Dist Wintz New 230/34.5 EGSILA | - | - | (712) | - | - | - | - | - | - | - | (712) |
| ELL | F3PPD10119 | Dist Work Mgmt O&M-CTS Contrac | - | - | - | - | - | - | 3 | - | - | - | 3 |
| ELL | F3PPD10115 | Dist Work Mgmt O&M-DIS/DSS/ADS | - | - | - | - | - | - | 19 | - | - | - | 19 |

Amounts may not add or tie to other schedules due to rounding.

Entergy Louisiana, LLC
Affiliate Per Book Billings by Project/Activity
For the Twelve Months Ended, June 30, 2011
Amounts in Dollars

Exhibit SBT-22
2011 TX Rate Case
7 of 23

| Billing Company | Project/Activity | Description | EAI | EEI | EGSLA | EMI | ENOI | EOI | ESI | ETI | SERI | SFI | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ELL | F3PPD10146 | Dist Work Mgmt-Cyndrus Support | - | - | - | - | - | - | 1 | - | - | - | 1 |
| ELL | C6PC149020 | DIST. LINES REVENUE BLANKET - | 3,096 | - | - | - | - | - | - | - | - | - | 3,096 |
| ELL | C6PC249000 | DIST. LINES REVENUE BLANKET - | - | - | - | - | - | - | 114 | - | - | - | 114 |
| ELL | C6PC349020 | DIST. LINES REVENUE BLANKET - | - | - | - | 11,363 | - | - | - | - | - | - | 11,363 |
| ELL | C6PC449000 | DIST. LINES REVENUE BLANKET - | - | - | - | - | 829,057 | - | - | - | - | - | 829,057 |
| ELL | C6PC449020 | DIST. LINES REVENUE BLANKET - | - | - | - | - | 444,310 | - | - | - | - | - | 444,310 |
| ELL | C6PC849000 | DIST. LINES REVENUE BLANKET - | - | - | 755,216 | - | - | - | - | - | - | - | 755,216 |
| ELL | C6PC849020 | DIST. LINES REVENUE BLANKET - | - | - | 1,847,445 | - | - | - | - | - | - | - | 1,847,445 |
| ELL | C6PC449200 | DISTB LINES BLANKET-GOVT MAND. | - | - | - | - | 42,478 | - | - | - | - | - | 42,478 |
| ELL | C6PC449100 | DISTB LINES IMP BLANKET-POLE R | - | - | - | - | 3,917 | - | - | - | - | - | 3,917 |
| ELL | C6PC149000 | DISTB LINES REVENUE BLANKET NO | 5,124 | - | - | - | - | - | - | - | - | - | 5,124 |
| ELL | C6PC449103 | DISTB LINES-IMP BLANKET - OTHE | - | - | - | - | (22,352) | - | - | - | - | - | (22,352) |
| ELL | C6PC449102 | DISTB LINES-IMP BLANKET-UNDG C | - | - | - | - | 4,030 | - | - | - | - | - | 4,030 |
| ELL | C6PC149103 | DISTB. LINES IMP BLANKET-OTHER | (167,716) | - | - | - | - | - | - | - | - | - | (167,716) |
| ELL | C6PC349103 | DISTB. LINES IMP BLANKET-OTHER | - | - | - | (205,073) | - | - | - | - | - | - | (205,073) |
| ELL | C6PC149100 | DISTB. LINES IMP BLANKET-POLE | 127 | - | - | - | - | - | - | - | - | - | 127 |
| ELL | C1PPFI7287 | Dist-Gas SCADA Replacement | - | - | - | - | - | - | 270 | - | - | - | 270 |
| ELL | C6PP849310 | Distr Auto Load Transfer EGSL | - | - | 23,476 | - | - | - | - | - | - | - | 23,476 |
| ELL | C6PP749114 | Distr Lines Failures Blanket T | - | - | - | - | - | - | - | 167 | - | - | 167 |
| ELL | C6PP749010 | Distr Lines Revenue Blnk Non-D | - | - | - | - | - | - | - | 3,807 | - | - | 3,807 |
| ELL | C6PP749055 | Distr Lines Revenue Street Lig | - | - | - | - | - | - | - | 176 | - | - | 176 |
| ELL | F3PCTTDS47 | DISTR O&M EXPENSE - LOUISIANA | - | - | - | - | - | - | 3,419 | - | - | - | 3,419 |
| ELL | C6PP849320 | Distr Sectionalizing Program E | - | - | 15,771 | - | - | - | - | - | - | - | 15,771 |
| ELL | C6PC849200 | DISTRIBUTION - GOV MANDATED(NO | - | - | 7,440 | - | - | - | - | - | - | - | 7,440 |
| ELL | C6PC849100 | DISTRIBUTION - IMP - POLE REPL | - | - | 1,016 | - | - | - | - | - | - | - | 1,016 |
| ELL | C6PC849102 | DISTRIBUTION - IMP - UG CABLE | - | - | 19,997 | - | - | - | - | - | - | - | 19,997 |
| ELL | C6PC849103 | DISTRIBUTION - IMPROVEMENT - O | - | - | (10,092) | - | - | - | - | - | - | - | (10,092) |
| ELL | C6PC849113 | DISTRIBUTION - IMPROVEMENT - O | - | - | - | - | - | - | - | (1,738) | - | - | (1,738) |
| ELL | F3PCTTDS46 | DISTRIBUTION O&M EXP - METRO E | - | - | - | - | - | - | 4,298 | - | - | - | 4,298 |
| ELL | F3PCTTDS30 | DISTRIBUTION O&M EXPENSE -EGSI | - | - | - | - | - | - | - | - | - | - | - |
| ELL | F3PCTTDS29 | DISTRIBUTION O&M EXPENSE -ELI | - | - | - | - | - | - | 374 | - | - | - | 374 |
| ELL | C6PC149180 | DISTRIBUTION TRUCK STOCK | 1,770 | - | - | - | - | - | - | - | - | - | 1,770 |
| ELL | C6PC249180 | DISTRIBUTION TRUCK STOCK | - | - | - | - | - | - | 3,092 | - | - | - | 3,092 |
| ELL | C6PC349180 | DISTRIBUTION TRUCK STOCK | - | - | - | 1,445 | - | - | - | - | - | - | 1,445 |
| ELL | C6PC449180 | DISTRIBUTION TRUCK STOCK | - | - | - | - | 1,009,657 | - | - | - | - | - | 1,009,657 |
| ELL | C6PC849180 | DISTRIBUTION TRUCK STOCK | - | - | 867,527 | - | - | - | - | - | - | - | 867,527 |
| ELL | C6PC149104 | DL BATCH JOB FOR FAILURE REPLA | 2,816 | - | - | - | - | - | - | - | - | - | 2,816 |
| ELL | C6PC349104 | DL BATCH JOBS FOR FAILURE REPL | - | - | - | 1,080 | - | - | - | - | - | - | 1,080 |
| ELL | C6PC449104 | DL BATCH JOBS FOR FAILURE REPL | - | - | - | - | 198,368 | - | - | - | - | - | 198,368 |
| ELL | C6PC849104 | DL BATCH JOBS FOR FAILURE REPL | - | - | 323,890 | - | - | - | - | - | - | - | 323,890 |
| ELL | C6PC149140 | DL DESIGN JOBS - EMERGENCY REP | 1,672 | - | - | - | - | - | - | - | - | - | 1,672 |
| ELL | C6PC349140 | DL DESIGN JOBS - EMERGENCY REP | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PC449140 | DL DESIGN JOBS - EMERGENCY REP | - | - | - | - | 23,553 | - | - | - | - | - | 23,553 |
| ELL | C6PP149141 | DL Repair Public Inflicted Dam | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PP749118 | D-Line Customer Requested Proj | - | - | - | - | - | - | - | 1,249 | - | - | 1,249 |
| ELL | C6PP749713 | D-Lines TACTICS Target Line De | - | - | - | - | - | - | - | - | - | - | - |
| ELL | F3PCY31127 | DOWNTOWN SUBSTATION, GSU-LA | - | - | 2,564 | - | - | - | - | - | - | - | 2,564 |
| ELL | C6PPTS7590 | DOWNTOWN T-2 LOWSIDE INTERUPPT | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPTSF396 | Drusilla enable UF 291F & 294F | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPTSF841 | Drusilla replace contacts bkr | - | - | 8,688 | - | - | - | - | - | - | - | 8,688 |
| ELL | C6PPTSF575 | Drusilla replace disc&bypass s | - | - | 19,968 | - | - | - | - | - | - | - | 19,968 |
| ELL | C6PPTS6764 | DSG Waggaman: Fdns For New Bus | - | - | - | - | - | - | - | - | - | - | - |

Amounts may not add or tie to other schedules due to rounding.

Entergy Louisiana, LLC
Affiliate Per Book Billings by Project/Activity
For the Twelve Months Ended, June 30, 2011
Amounts in Dollars

Exhibit SBT-22
2011 TX Rate Case
8 of 23

| Billing Company | Project/Activity | Description | EAI | EEI | EGSLA | EMI | ENOI | EOI | ESI | ETI | SERI | SFI | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ELL | C6PPTL2623 | DSG: Gypsy-Claytonia 115kV Upg | - | - | 223,316 | - | - | - | - | - | - | - | 223,316 |
| ELL | C6PPTSF309 | Duboin L223 install relay pane | - | - | 13,455 | - | - | - | - | - | - | - | 13,455 |
| ELL | C6PPTSF473 | Duboin Sub T1 Animal Mitigatio | - | - | 1,065 | - | - | - | - | - | - | - | 1,065 |
| ELL | C6PPTSF548 | Duplesis replace capacitors | - | - | 4,595 | - | - | - | - | - | - | - | 4,595 |
| ELL | C6PPTSF516 | Duplesis replace failed fans t | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPTSF394 | Duplessis install Feeder Fault | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPTSF472 | Duson Sub T1 Animal Mitigation | - | - | 932 | - | - | - | - | - | - | - | 932 |
| ELL | F3PCWE0200 | E&C Technical Support-SU1 | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPTSF809 | East replace arrestors | - | - | 2,482 | - | - | - | - | - | - | - | 2,482 |
| ELL | C6PPTSF580 | East replace breaker 995 | - | - | 21,875 | - | - | - | - | - | - | - | 21,875 |
| ELL | F3PCY31140 | EAST SUBSTATION, GSU-LA | - | - | 4,021 | - | - | - | - | - | - | - | 4,021 |
| ELL | F3PPE997LA | ECI Continue Improve LA (G,L,N | - | - | - | - | - | - | 14 | - | - | - | 14 |
| ELL | F3PCFX2815 | EDMS PRODUCT LINE SUPPORT | - | - | - | - | - | - | 6 | - | - | - | 6 |
| ELL | F5PPTEEI02 | EEI - LA HYDRO | - | 6,501 | - | - | - | - | - | - | - | - | 6,501 |
| ELL | C6PPBB0413 | EGS LLC:Purch 350mcm Grounds | - | - | 51,170 | - | - | - | - | - | - | - | 51,170 |
| ELL | C6PPBB0362 | EGS LLC:Refurb 500kV GCB at We | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPBB0456 | EGS LLC:Refurbish 500/230 Auto | - | - | 21,873 | - | - | - | - | - | - | - | 21,873 |
| ELL | C7PPSJ8406 | EGSI DIST 08/11/10 TROPICAL DE | - | - | 8,197 | - | - | - | - | - | - | - | 8,197 |
| ELL | F3PCT00227 | EGSI LA OIL AND PCB SPILL RESP | - | - | 677 | - | - | - | - | - | - | - | 677 |
| ELL | C6PCTL6172 | EGSI-LA NORTH CROWLEY-RICHARD | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C7PPSJ8402 | EGSL_Thunderstorms 5/29-5/31/1 | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPBB0361 | EL LLC:Repl Fiber CTs at Hooke | - | - | - | - | - | - | 10,462 | - | - | - | 10,462 |
| ELL | F3PPD10132 | Electronic Data Interchange Su | - | - | - | - | - | - | 1 | - | - | - | 1 |
| ELL | F3PPWEOLGN | ELI-Engineering- Tech Support | - | - | - | - | - | - | 2,850 | - | - | - | 2,850 |
| ELL | STPCT30030 | ELL Capital Suspense Transmiss | - | - | - | - | - | - | 1,114 | - | - | - | 1,114 |
| ELL | C7PPSJ2476 | ELL-LA STORM (6/4 - 6/6/11) | - | - | - | - | - | - | 309 | - | - | - | 309 |
| ELL | C7PPSJ3183 | EMI 04/24/10 Tornadoes Distr O | - | - | - | (37) | - | - | - | - | - | - | (37) |
| ELL | C7PPSJ3202 | EMI APRIL 2011 Storm Distr Ops | - | - | - | 3,370 | - | - | - | - | - | - | 3,370 |
| ELL | STPCT60006 | EMI Capital Suspense Transmiss | - | - | - | - | - | - | 1,666 | - | - | - | 1,666 |
| ELL | C7PPSJ3189 | EMI June 2010 Storm Distr Ops- | - | - | - | 20,476 | - | - | - | - | - | - | 20,476 |
| ELL | C7PPSJ3198 | EMI Storm Distr Ops 1/7/11Wint | - | - | - | 253,470 | - | - | - | - | - | - | 253,470 |
| ELL | C7PPSJ3203 | EMI Storm Distr Ops 4/15/11 | - | - | - | 149,832 | - | - | - | - | - | - | 149,832 |
| ELL | C7PPSJ3204 | EMI StormTornadoes DistrOps 4/ | - | - | - | 1,032 | - | - | - | - | - | - | 1,032 |
| ELL | F3PCWE0063 | EMO APPLICATION SUPPORT | - | - | - | - | - | - | 1 | - | - | - | 1 |
| ELL | F3PP6HHOST | ENNE Hosting/server support/SO | - | - | - | - | - | - | 8 | - | - | - | 8 |
| ELL | C6PPAMIN02 | ENO AMI: Bsns Proc, Require, D | - | - | - | - | 4,085 | - | - | - | - | - | 4,085 |
| ELL | C6PPAMIN03 | ENO AMI: Information Technolog | - | - | - | - | 14,187 | - | - | - | - | - | 14,187 |
| ELL | STPCT59004 | ENOI Capital Suspense Transmis | - | - | - | - | 6,595 | - | - | - | - | - | 6,595 |
| ELL | C7PPSJ4086 | ENOI DIST 08/11/10 TROPICAL DE | - | - | - | - | 28,011 | - | - | - | - | - | 28,011 |
| ELL | C6PPBB0447 | ENOI:Purch spare 145kV GCB | - | - | - | - | 71,826 | - | - | - | - | - | 71,826 |
| ELL | C6PPBB0429 | ENOI:Refurbish bushings on XFM | - | - | - | - | 1,212 | - | - | - | - | - | 1,212 |
| ELL | C6PPBB0310 | ENOI:Replace Bus Tie Breaker | - | - | - | - | - | - | - | - | - | - | - |
| ELL | F3PCF10445 | ENTERGY CONSOLIDATED TAX SERVI | - | - | - | - | - | - | 0 | - | - | - | 0 |
| ELL | C6PC449706 | ENTERGY RENEWAL - LINE MAINTEN | - | - | - | - | 29 | - | - | - | - | - | 29 |
| ELL | C6PC849705 | ENTERGY RENEWAL EQUIPMENT MAIN | - | - | 38,798 | - | - | - | - | - | - | - | 38,798 |
| ELL | C6PC449705 | ENTERGY RENEWAL-EQUIPMENT MAIN | - | - | - | - | 20,184 | - | - | - | - | - | 20,184 |
| ELL | F5PPZUWELL | Entergy Wellness Program | - | - | - | - | - | - | - | - | - | - | - |
| ELL | F3PCFCQEAI | ENTERPRISE APPLICATION INTEGRA | - | - | - | - | - | - | 37 | - | - | - | 37 |
| ELL | C1PPHHQ548 | ENTOT1: FITNESS CENTER BUILD O | - | - | - | - | - | - | 3,485 | - | - | - | 3,485 |
| ELL | F3PCT53095 | ENVIRONMENTAL SUPPORT - EGSI-L | - | - | 5,161 | - | - | - | - | - | - | - | 5,161 |
| ELL | F3PCT53089 | ENVIRONMENTAL SUPPORT - ENOI | - | - | - | - | 40,774 | - | - | - | - | - | 40,774 |
| ELL | F3PPD10161 | ePlus (Web Self Service) Suppo | - | - | - | - | - | - | 17 | - | - | - | 17 |

Amounts may not add or tie to other schedules due to rounding.

Entergy Louisiana, LLC
Affiliate Per Book Billings by Project/Activity
For the Twelve Months Ended, June 30, 2011
Amounts in Dollars

Exhibit SBT-22
2011 TX Rate Case
9 of 23

| Billing Company | Project/Activity | Description | EAI | EEI | EGSLA | EMI | ENOI | EOI | ESI | ETI | SERI | SFI | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ELL | F5PCERRMOM | EQUIP. REFURBISHMENT & REPAIR | 12,298 | - | 12,598 | 12,482 | 3,215 | - | - | 9,478 | - | - | 50,071 |
| ELL | F3PCN20528 | ERD SUPPORT (MAINTENANCE) | - | - | - | - | - | - | 58 | - | - | - | 58 |
| ELL | F3PCR53291 | ESI REMITTANCE PROCESSING | - | - | - | - | - | - | 3 | - | - | - | 3 |
| ELL | F3PCF10414 | ESI TAX SERVICES | - | - | - | - | - | - | 0 | - | - | - | 0 |
| ELL | C6PPTSF800 | Esso install oil filter t1 ltc | - | - | 6,734 | - | - | - | - | - | - | - | 6,734 |
| ELL | C6PPTSF599 | Esso install oil filter t2 ltc | - | - | 6,734 | - | - | - | - | - | - | - | 6,734 |
| ELL | C6PPTSF554 | Esso replace failed batteies b | - | - | 14,485 | - | - | - | - | - | - | - | 14,485 |
| ELL | F3PCY31157 | ESSO SUBSTATION, GSU-LA | - | - | 3,227 | - | - | - | - | - | - | - | 3,227 |
| ELL | C6DB869479 | est dh 470lk relocate existing | - | - | (8,434) | - | - | - | - | - | - | - | (8,434) |
| ELL | C6DB870046 | EST- SUBD. THE BRIARS | - | - | 6,407 | - | - | - | - | - | - | - | 6,407 |
| ELL | C6DB869598 | EST- THE GLYNNS | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6DB869731 | EST. 1 OH .BURGESS RD OUTSIDED | - | - | 1,823 | - | - | - | - | - | - | - | 1,823 |
| ELL | F3PCFX3790 | ESTER SUPPORT | - | - | - | - | - | - | 9 | - | - | - | 9 |
| ELL | F3PCFT9023 | ETC FIBER O&M SUPPORT | - | 3,125 | - | - | - | - | - | - | - | - | 3,125 |
| ELL | F3PCQ730X0 | EVERGREEN TO WILLOW GLENN LINE | - | - | 3,290 | - | - | - | - | - | - | - | 3,290 |
| ELL | F3PCY31722 | EXXON PIPELINE SUBSTATION GULF | - | - | 1,037 | - | - | - | - | - | - | - | 1,037 |
| ELL | F4PPGS0462 | Fac Sty Georgia Pacific Reloc | - | - | 2,519 | - | - | - | - | - | - | - | 2,519 |
| ELL | F4PPGS0474 | Fac Sty PL Olefins LLC Petrolo | - | - | 494 | - | - | - | - | - | - | - | 494 |
| ELL | F4PPTX0053 | Fac Sty SWPP Oasis 74597193 & | - | - | - | - | - | - | - | 164 | - | - | 164 |
| ELL | F4PPGS0466 | Fac Sty SWPP PID 246 | - | - | 159 | - | - | - | - | - | - | - | 159 |
| ELL | F4PPGS0465 | Fac Sty Westlake Vinyls Geisma | - | - | 967 | - | - | - | - | - | - | - | 967 |
| ELL | F5PPFAC009 | FAC-009 Mitigation Plan Data A | - | - | - | - | 70 | - | - | - | - | - | 70 |
| ELL | F3PCFACALL | FACILITIES SVCS- ALL COS | - | - | - | - | - | - | 21 | - | - | - | 21 |
| ELL | C6PPTL1297 | Fail09: L86 Pauger-Pontchartra | - | - | - | - | 259 | - | - | - | - | - | 259 |
| ELL | C6PPTL7302 | Fail10: L12 Chlomal-Iowa Tap | - | - | 339 | - | - | - | - | - | - | - | 339 |
| ELL | C6PPTL7300 | Fail10: L13 Compton-Elton | - | - | 721 | - | - | - | - | - | - | - | 721 |
| ELL | C6PPTL7279 | Fail10: L15 Catalyst-Choupique | - | - | 314 | - | - | - | - | - | - | - | 314 |
| ELL | C6PPTL7308 | Fail10: L18 Jennings -Scott | - | - | 276 | - | - | - | - | - | - | - | 276 |
| ELL | C6PPTL7301 | Fail10: L220 Cade-New Iberia | - | - | 551 | - | - | - | - | - | - | - | 551 |
| ELL | C6PPTL7307 | Fail10: L225 Ceceila-New Iberi | - | - | 325 | - | - | - | - | - | - | - | 325 |
| ELL | C6PPTL7298 | Fail10: L232 Scott-Judice | - | - | 127 | - | - | - | - | - | - | - | 127 |
| ELL | C6PPTL7297 | Fail10: L249 Meaux-Scott | - | - | 464 | - | - | - | - | - | - | - | 464 |
| ELL | C6PPTL7309 | Fail10: L253 Mossville-Alfol | - | - | 184 | - | - | - | - | - | - | - | 184 |
| ELL | C6PPTL7319 | Fail10: L254 Lake Charles Bulk | - | - | 325 | - | - | - | - | - | - | - | 325 |
| ELL | C6PPTL7316 | Fail10: L300 Willow Glen-Gonza | - | - | 197 | - | - | - | - | - | - | - | 197 |
| ELL | C6PPTL7296 | Fail10: L343 Waterford-Willow | - | - | 4,823 | - | - | - | - | - | - | - | 4,823 |
| ELL | C6PPTL7320 | Fail10: L611 Jennings-Church | - | - | 298 | - | - | - | - | - | - | - | 298 |
| ELL | C6PPTL7322 | Fail10: L612 Champagne-Gulf KS | - | - | 151 | - | - | - | - | - | - | - | 151 |
| ELL | C6PPTL7259 | Fail10: L613 East Broad-Solac | - | - | 122 | - | - | - | - | - | - | - | 122 |
| ELL | C6PPTL7306 | Fail10: L625 St. Johns-New Ibe | - | - | 325 | - | - | - | - | - | - | - | 325 |
| ELL | C6PPTL7323 | Fail10: L707 Alchem-Willow Gle | - | - | 688 | - | - | - | - | - | - | - | 688 |
| ELL | C6PPTL7332 | Fail10: L734 McKnight-Plant Da | - | - | 1,400 | - | - | - | - | - | - | - | 1,400 |
| ELL | C6PPTL7318 | Fail10: L739 Turnerville-Bourb | - | - | 161 | - | - | - | - | - | - | - | 161 |
| ELL | C6PPTL7315 | Fail10: L749 Coly-Lockhart | - | - | 187 | - | - | - | - | - | - | - | 187 |
| ELL | C6PPTL7289 | Fail10: L768 Crown Zellerbach- | - | - | 1,613 | - | - | - | - | - | - | - | 1,613 |
| ELL | C6PPTL7312 | Fail10:L714 Port Hudson-Thomas | - | - | 635 | - | - | - | - | - | - | - | 635 |
| ELL | C6PPTL7388 | Fail11: Michoud-Claiborne | - | - | - | - | 5,179 | - | - | - | - | - | 5,179 |
| ELL | C6PPTL7409 | Fail11: Nelson-Moss Bluff | - | - | 1,387 | - | - | - | - | - | - | - | 1,387 |
| ELL | C6PPTL7370 | FAIL11: Richard-Scott Sleeves | - | - | 32,727 | - | - | - | - | - | - | - | 32,727 |
| ELL | C6PPTL7347 | Fail11:L372 Nesser Tap Switch | - | - | 19,889 | - | - | - | - | - | - | - | 19,889 |
| ELL | C6PPTL7364 | FAIL11:Michoud-Front Street | - | - | - | - | 666 | - | - | - | - | - | 666 |
| ELL | C6DB475759 | FAILURE,EO,1001,COST FOR U.G. | - | - | - | - | 1,393 | - | - | - | - | - | 1,393 |

Amounts may not add or tie to other schedules due to rounding.

Entergy Louisiana, LLC
Affiliate Per Book Billings by Project/Activity
For the Twelve Months Ended, June 30, 2011
Amounts in Dollars

Exhibit SBT-22
2011 TX Rate Case
10 of 23

| Billing Company | Project/Activity | Description | EAI | EEI | EGSLA | EMI | ENOI | EOI | ESI | ETI | SERI | SFI | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ELL | C6DB476098 | FAILURE,EO,1205,R/P BAD XFMR P | - | - | - | - | 15,472 | - | - | - | - | - | 15,472 |
| ELL | C6DB476072 | FAILURE,EO,2214,R/P FAILED #1 | - | - | - | - | 16,258 | - | - | - | - | - | 16,258 |
| ELL | C6DB475777 | FAILURE,EO,2214,REPLACE FAILED | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6DB476071 | FAILURE,EO,2216,R/P FAILED #1 | - | - | - | - | 501 | - | - | - | - | - | 501 |
| ELL | C6DB475793 | FAILURE,EO,513,REPLACE FAILED | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6DB475937 | FAILURE,EO,611,R/P FAILED EXIT | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPTSF803 | Fairgrounds inst S&C Alldui-ru | - | - | 10,447 | - | - | - | - | - | - | - | 10,447 |
| ELL | C6PPTSF849 | Fairgrounds repl failed transf | - | - | 9,698 | - | - | - | - | - | - | - | 9,698 |
| ELL | C6PPTSP452 | Fancy Point - Upgrade L354 bay | - | - | 4,598 | - | - | - | - | - | - | - | 4,598 |
| ELL | C6PPTSF603 | Fancy Point add D400S comm pro | - | - | 21,613 | - | - | - | - | - | - | - | 21,613 |
| ELL | C6PPTSF518 | Fancy Point repl failed fans T | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPTSF501 | Fancy Point replace failed bat | - | - | 21,097 | - | - | - | - | - | - | - | 21,097 |
| ELL | F3PCY31165 | FANCY POINT SUBSTATION, GSU-LA | - | - | 4,861 | - | - | - | - | - | - | - | 4,861 |
| ELL | F3PCR73336 | FEILD METER READING - EMI | - | - | - | 3,216 | - | - | - | - | - | - | 3,216 |
| ELL | C1PPFIB221 | Fiber Replcment of Mid Level E | - | - | - | - | - | - | 1,073 | - | - | - | 1,073 |
| ELL | F3PCD10006 | FIELD DEVELOPMENT | - | - | - | - | - | - | 0 | - | - | - | 0 |
| ELL | F3PCR73401 | FIELD METER READING - EGSI -LA | - | - | 25,855 | - | - | - | 112 | - | - | - | 25,967 |
| ELL | F3PCR73330 | FIELD METER READING - ELI | - | - | - | - | - | - | - | - | - | - | - |
| ELL | F3PCR73332 | FIELD METER READING - ENOI | - | - | - | - | 9,616 | - | 23,360 | - | - | - | 32,975 |
| ELL | F3PCR73328 | FIELD METER READING SUPPORT - | 106,622 | - | - | - | - | - | - | - | - | - | 106,622 |
| ELL | F3PCR73400 | FIELD METER READING -TX DISTRI | - | - | - | - | - | - | - | 1,020 | - | - | 1,020 |
| ELL | F3PCF24666 | FINANCIAL PROCESS MANAGEMENT - | - | - | - | - | - | - | 318 | - | - | - | 318 |
| ELL | C6PPTL7403 | Flood11: Francis-Grant | - | - | 2,288 | - | - | - | - | - | - | - | 2,288 |
| ELL | F3PCY31173 | FLORIDA SUBSTATION, GSU-LA | - | - | 1,415 | - | - | - | - | - | - | - | 1,415 |
| ELL | C6PPTSF509 | Florida T2 repl failing ls bus | - | - | - | - | - | - | - | - | - | - | - |
| ELL | F3PCF74585 | FOSSIL APPLICATION SUPPORT | - | - | - | - | - | - | 5 | - | - | - | 5 |
| ELL | SFPCE29000 | FOSSIL CAPITAL SUSPENSE - EAI | 71,022 | - | - | - | - | - | - | - | - | - | 71,022 |
| ELL | SFPPL79002 | FOSSIL CAPITAL SUSPENSE - EGSL | - | - | 9,678 | - | - | - | - | - | - | - | 9,678 |
| ELL | F3PCF74515 | FOSSIL MAINTENANCE MANAGEMENT | - | - | - | - | - | - | 3 | - | - | - | 3 |
| ELL | C6PPTL7271 | Fund10: L717 Port Hudson-Repap | - | - | 4,037 | - | - | - | - | - | - | - | 4,037 |
| ELL | C6PPTSF540 | Gardere replace bushing T2 | - | - | 1,251 | - | - | - | - | - | - | - | 1,251 |
| ELL | C6PPTSF513 | Gardere replace failed fans t1 | - | - | - | - | - | - | - | - | - | - | - |
| ELL | F3PCY31181 | GARDERE SUBSTATION, GSU-LA | - | - | 8,975 | - | - | - | - | - | - | - | 8,975 |
| ELL | C5PP449606 | Gas Serv Storm Rebuild Replace | - | - | - | - | 66,290 | - | - | - | - | - | 66,290 |
| ELL | C5PC449608 | GAS TRUCK STOCK | - | - | - | - | 18,903 | - | - | - | - | - | 18,903 |
| ELL | C6PPTSF544 | Geigy add animal mitigation | - | - | 2,523 | - | - | - | - | - | - | - | 2,523 |
| ELL | C6PPTSF500 | Geigy replace failed batteries | - | - | - | - | - | - | - | - | - | - | - |
| ELL | F3PCY31185 | GEIGY SUBSTATION, GSU-LA | - | - | 378 | - | - | - | - | - | - | - | 378 |
| ELL | C6PPDS9969 | Geismar 138/34.5kV Sub Install | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPTSF241 | Geismar replace arrestors T1 | - | - | 88,564 | - | - | - | - | - | - | - | 88,564 |
| ELL | C6PPTSF514 | Geismar replace failed fans on | - | - | - | - | - | - | - | - | - | - | - |
| ELL | F3PCF72670 | GENERAL ACCOUNTING SYSTEM MAIN | - | - | - | - | - | - | 77 | - | - | - | 77 |
| ELL | C5DB475738 | GENTILLY - MANDEVILLE TO VENUS | - | - | - | - | - | - | - | - | - | - | - |
| ELL | F3PCY30251 | GENTILLY SUBSTATION, NEW ORLEA | - | - | - | - | 665 | - | - | - | - | - | 665 |
| ELL | C6PPMR3779 | Gentilly: replace batteries & | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPTSF397 | Gloria enable UF 920F & 921F | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPTL5509 | Gold Creek - Gravel Ridge, Rep | 2,623 | - | - | - | - | - | - | - | - | - | 2,623 |
| ELL | C6PPTSF519 | Gonzales replace failed fans t | - | - | - | - | - | - | - | - | - | - | - |
| ELL | F3PCY31196 | GONZALES SUBSTATION, GSU-LA | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPTSP332 | Goslin: Line Relaying L-803 | - | - | - | - | - | - | - | 6,180 | - | - | 6,180 |
| ELL | C6PPTSF233 | Goudchaux pin and cap insulato | - | - | 1,385 | - | - | - | - | - | - | - | 1,385 |
| ELL | C6PPTSF581 | Goudchaux replace breaker 590 | - | - | 24,857 | - | - | - | - | - | - | - | 24,857 |

Amounts may not add or tie to other schedules due to rounding.

Entergy Louisiana, LLC
Affiliate Per Book Billings by Project/Activity
For the Twelve Months Ended, June 30, 2011
Amounts in Dollars

Exhibit SBT-22
2011 TX Rate Case
11 of 23

| Billing Company | Project/Activity | Description | EAI | EEI | EGSLA | EMI | ENOI | EOI | ESI | ETI | SERI | SFI | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ELL | F3PCY31204 | GRACE SUBSTATION, GSU-LA | - | - | 756 | - | - | - | - | - | - | - | 756 |
| ELL | C6PPTSA382 | Grandview: Build New Sub | 6,290 | - | - | - | - | - | - | - | - | - | 6,290 |
| ELL | C6PCTS6303 | GRAYWOOD: BUILD NEW 230KV SUBS | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPTS9398 | Graywood: Substation Expansion | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPTSF591 | Greenwell Springs replace dive | - | - | 16,998 | - | - | - | - | - | - | - | 16,998 |
| ELL | C6PPTSF617 | Greenwell Springs replace T2 a | - | - | 2,482 | - | - | - | - | - | - | - | 2,482 |
| ELL | F3PCY31208 | GREENWELL SPRINGS SUBSTATION, | - | - | 4,296 | - | - | - | - | - | - | - | 4,296 |
| ELL | F3PPFCQGTH | Gretna Telecom Hub Ground Leas | - | - | - | - | - | - | 911 | - | - | - | 911 |
| ELL | C6PPTSF520 | Grosse Tete repl failed fans T | - | - | - | - | - | - | - | - | - | - | - |
| ELL | F3PCY30292 | GULF OUTLET SUBSTATION, NEW OR | - | - | - | - | 1,049 | - | - | - | - | - | 1,049 |
| ELL | C6PPTSF317 | Gulf Oxygen De-energize statio | - | - | 1,154 | - | - | - | - | - | - | - | 1,154 |
| ELL | F3PPYSCGLA | Gulf States LA Service Center | - | - | 22,905 | - | - | - | - | - | - | - | 22,905 |
| ELL | STPPGL7900 | Gulf States LA Transm Cap Susp | - | - | 1,832 | - | - | - | - | - | - | - | 1,832 |
| ELL | C6PPMR3820 | Gulfoutlet: repl. 115kv interr | - | - | - | - | 871 | - | - | - | - | - | 871 |
| ELL | C7PPSJ837A | H.Gustav Damaged Levee, Hender | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPBU1117 | Harahan - Cinder Block Wall | - | - | - | - | - | - | 2,289 | - | - | - | 2,289 |
| ELL | C6PPTSF398 | Harelson enable UF325-326-328F | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPTSF502 | Harelson repl failed battery | - | - | - | - | - | - | - | - | - | - | - |
| ELL | F3PCY31233 | HARELSON SUBSTATION, GSU-LA | - | - | 4,774 | - | - | - | - | - | - | - | 4,774 |
| ELL | C6PPTL5514 | Harr. W - Green Forest, Rep ST | 2,955 | - | - | - | - | - | - | - | - | - | 2,955 |
| ELL | C6PPTSF245 | Hazel animal mitigation | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPTS7836 | Hazel install animal mitigatio | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPTSF583 | Hazel replace breaker 346 | - | - | 18,311 | - | - | - | - | - | - | - | 18,311 |
| ELL | C6PPTSF584 | Hazel replace breaker 347 | - | - | 18,311 | - | - | - | - | - | - | - | 18,311 |
| ELL | C6PPTSF588 | Highland replace disc and bypa | - | - | 12,992 | - | - | - | - | - | - | - | 12,992 |
| ELL | C6DB869611 | HIGHWAY GN 717GI --POLE RELOCA | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6DB476211 | HIGHWAY,1610,EO,TRENCH 220' OF | - | - | - | - | 520 | - | - | - | - | - | 520 |
| ELL | C6DB476179 | HIGHWAY,EO,1002,R/L FACILITIES | - | - | - | - | 15,405 | - | - | - | - | - | 15,405 |
| ELL | C6DB476005 | HIGHWAY,EO,1002,R/L O.H. FACIL | - | - | - | - | 86,665 | - | - | - | - | - | 86,665 |
| ELL | C6DB476046 | HIGHWAY,EO,612,R/L FACILITIES | - | - | - | - | 11,755 | - | - | - | - | - | 11,755 |
| ELL | C6DB476078 | HIGHWAY,EO,612,R/L FDR.FOR SW& | - | - | - | - | 27,843 | - | - | - | - | - | 27,843 |
| ELL | C6DB476161 | HIGHWAY,EO,616,R/L FDR.FOR SW& | - | - | - | - | 34,210 | - | - | - | - | - | 34,210 |
| ELL | C6DB869847 | HIGHWAY,WKS,958BW,RELOCATE ENT | - | - | 26,456 | - | - | - | - | - | - | - | 26,456 |
| ELL | C6DB869846 | HIGHWAY,WKS,958BW,REPACE AND R | - | - | 1,726 | - | - | - | - | - | - | - | 1,726 |
| ELL | F4PPNP0614 | Hill Bro De-energize Paterson/ | - | - | - | - | 665 | - | - | - | - | - | 665 |
| ELL | C1PPHHQ822 | HQ.FLOOR 23 INTERIOR RENOVATIO | - | - | - | - | - | - | 180 | - | - | - | 180 |
| ELL | C1PPHHQ823 | HQ3 - Interior Renovations MOC | - | - | - | - | - | - | 152 | - | - | - | 152 |
| ELL | F3PCHRSALL | HR SERVICES- ALL COMPANIES | - | - | - | - | - | - | 36 | - | - | - | 36 |
| ELL | C6DB167652 | HS09-019A   IMPROVEMENT CKT Y4 | 2,407 | - | - | - | - | - | - | - | - | - | 2,407 |
| ELL | C6DB869486 | HWY BR 318HR MOVE ALL ELECTRIC | - | - | (7,207) | - | - | - | - | - | - | - | (7,207) |
| ELL | C6DB869485 | HWY BR 318HR MOVE ALL U.G. ELE | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6DB869433 | HWY BR 330WE MOVE DIST. LINE F | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6DB869330 | HWY BR 410PE/731PE RELOCATE OV | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6DB869413 | HWY BR 510BR RELOCATION OF FEE | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6DB869931 | HWY BR 630DA MOVE FEEDER FOR N | - | - | 68,021 | - | - | - | - | - | - | - | 68,021 |
| ELL | C6DB869934 | HWY BR 632DA MOVE FEEDER BACK | - | - | 93,312 | - | - | - | - | - | - | - | 93,312 |
| ELL | C6DB869803 | HWY BR 880 72ND MOVE PRI FEEDE | - | - | 40,227 | - | - | - | - | - | - | - | 40,227 |
| ELL | C6DB869696 | HWY DS 854DH RE-ROUTE THREE PH | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6DB870057 | HWY GN 432DU SET 27 POLES, HAN | - | - | 27,242 | - | - | - | - | - | - | - | 27,242 |
| ELL | C6DB869504 | HWY GN 811PT RELOCATE POLES AN | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6DB870021 | HWY ZA 826ZA POPE RD. HWY. REL | - | - | 8,766 | - | - | - | - | - | - | - | 8,766 |
| ELL | F5PPICCCSV | ICC - Customer Service | 592 | - | - | - | - | - | 1,498 | - | - | - | 2,090 |

Amounts may not add or tie to other schedules due to rounding.

Entergy Louisiana, LLC
Affiliate Per Book Billings by Project/Activity
For the Twelve Months Ended, June 30, 2011
Amounts in Dollars

Exhibit SBT-22
2011 TX Rate Case
12 of 23

| Billing Company | Project/Activity | Description | EAI | EEI | EGSLA | EMI | ENOI | EOI | ESI | ETI | SERI | SFI | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ELL | C7PPSJ1185 | ICE STORM DL ARK DIST EAI 01/2 | - | - | - | - | - | - | - | - | - | - | - |
| ELL | F3PCN20521 | IDEAS MAINTENANCE | - | - | - | - | - | - | 3 | - | - | - | 3 |
| ELL | C6DB869575 | IMP 588FR: PROJ DS09-006V | - | - | 18,133 | - | - | - | - | - | - | - | 18,133 |
| ELL | C6DB869895 | IMP,760AV,MIL,RECONDUCTOR 4 MI | - | - | 46,673 | - | - | - | - | - | - | - | 46,673 |
| ELL | C6DB869962 | IMP,760AV,MIL,RECONDUCTOR 4 MI | - | - | 167,731 | - | - | - | - | - | - | - | 167,731 |
| ELL | C6DB869963 | IMP,760AV,MIL,RECONDUCTOR 4 MI | - | - | 92,886 | - | - | - | - | - | - | - | 92,886 |
| ELL | C6DB869952 | IMP,760AV,MIL,TRANSFER UNDERGR | - | - | 12,044 | - | - | - | - | - | - | - | 12,044 |
| ELL | C6DB869910 | IMP,761CH,PTB,RECON 1 MILE ON | - | - | 51,228 | - | - | - | - | - | - | - | 51,228 |
| ELL | C6DB869923 | IMP,919OP,OPEL,RECONDUCTOR 290 | - | - | 12,897 | - | - | - | - | - | - | - | 12,897 |
| ELL | C6DB869687 | IMP.HWY.RELOC.PROJECT LAFAYETT | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6DB869814 | IMP.HWY.RELOC.PROJECT TOWN OF | - | - | 30,028 | - | - | - | - | - | - | - | 30,028 |
| ELL | C6DB869578 | IMP.HWY.RELOC.PROJECT, LA 92 @ | - | - | - | - | - | - | - | - | - | - | - |
| ELL | F5PCZZ4070 | IMPACT AWARDS | 2,435 | - | 171 | - | 2,928 | - | 555 | - | - | - | 6,088 |
| ELL | C6DB168045 | IMPROVEMENT PROJECT FOR CIRCUI | 244 | - | - | - | - | - | - | - | - | - | 244 |
| ELL | F3PP6HINDS | Indus Passport | - | - | - | - | - | - | 42 | - | - | - | 42 |
| ELL | F3PPN20536 | INDUS Software Maintenance | - | - | - | - | - | - | 37 | - | - | - | 37 |
| ELL | C6PPTL7251 | Inf10: L16 Carter-Serpent | - | - | 1,472 | - | - | - | - | - | - | - | 1,472 |
| ELL | C6PPTL7284 | Inf10: L259 Lafayette-Gecko | - | - | 37,000 | - | - | - | - | - | - | - | 37,000 |
| ELL | C6PPTL7233 | Inf10: L295 Mossville-Orange | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPTL7272 | Inf10: L349 Addis-Pam | - | - | 153 | - | - | - | - | - | - | - | 153 |
| ELL | C6PPTL7273 | Inf10: L396 Geismar-Wyandotte | - | - | 5,720 | - | - | - | - | - | - | - | 5,720 |
| ELL | C6PPTL7262 | Inf10: L761 St. Gabriel-Licar | - | - | 7,135 | - | - | - | - | - | - | - | 7,135 |
| ELL | C6PPTL7382 | INF11: Big Cajun-Fancy Point | - | - | 38,266 | - | - | - | - | - | - | - | 38,266 |
| ELL | C6PPTL7367 | INF11: Jennings-Chruch | - | - | 26,400 | - | - | - | - | - | - | - | 26,400 |
| ELL | C6PPTL7321 | Inf11: L300 Willow Glen-Gonzal | - | - | 1,129 | - | - | - | - | - | - | - | 1,129 |
| ELL | C6PPTL7348 | Inf11: L371 Grnwell Sprgs.-Har | - | - | 22,143 | - | - | - | - | - | - | - | 22,143 |
| ELL | C6PPTL7327 | Inf11: L395 Willow Glen-Harels | - | - | 12,633 | - | - | - | - | - | - | - | 12,633 |
| ELL | C6PPTL7390 | INF11: Michoud - Gulf Outlet | - | - | - | - | 2,588 | - | - | - | - | - | 2,588 |
| ELL | C6PPTL7353 | INF11: Mossville-Orange | - | - | 28,690 | - | - | - | - | - | - | - | 28,690 |
| ELL | C6PPTL7383 | INF11: Turnerville-Irion | - | - | 29,542 | - | - | - | - | - | - | - | 29,542 |
| ELL | C6PPTL7330 | Inf2011: L232 Scott-Judice | - | - | 3,887 | - | - | - | - | - | - | - | 3,887 |
| ELL | C6PPTL7325 | Inf2011: L331Willow Glen-Shena | - | - | 45,533 | - | - | - | - | - | - | - | 45,533 |
| ELL | C6PPTL7328 | Inf2011: L618 Meaux-Judice | - | - | 3,899 | - | - | - | - | - | - | - | 3,899 |
| ELL | C6PPTL7331 | Inf2011:L767 Mickens-Brown | - | - | 19,231 | - | - | - | - | - | - | - | 19,231 |
| ELL | C6PPTL7253 | Infr10: L314 La. Station-Thoma | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPTSF574 | Infrared cameras, purchase thr | - | - | 41,938 | - | - | - | - | - | - | - | 41,938 |
| ELL | C6DB869689 | INST. NEW FEEDED FOR PRI. METE | - | - | (1,386) | - | - | - | - | - | - | - | (1,386) |
| ELL | C6DB770394 | INSTALL 25 KVA XFMR 35' LIFT P | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6DB374367 | INSTALL 3-438 AMP REGULATORS | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPTLP991 | Install DE Structure - AAC SS | - | - | 588 | - | - | - | - | - | - | - | 588 |
| ELL | C6DB869607 | INT,CAD,871NI,INST 3PH UG @ EP | - | - | - | - | - | - | - | - | - | - | - |
| ELL | F3PPE9981S | Integrated Energy Mgmt ESI | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C1PPFIB211 | Integrated Voice Solutions-PBX | - | - | - | - | - | - | 250 | - | - | - | 250 |
| ELL | C6DB869716 | INTERN, YNG, 712BI,YOUNGSVILLE | - | - | 25,624 | - | - | - | - | - | - | - | 25,624 |
| ELL | F3PPD10133 | Internet Bill Presentment & Pm | - | - | - | - | - | - | 2 | - | - | - | 2 |
| ELL | C6DB869128 | INTERNL,CRO,741CR,RE-CONDUCTOR | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6DB475829 | INTERNL,EO,2214,RAISE HH, & TR | - | - | - | - | 44,098 | - | - | - | - | - | 44,098 |
| ELL | C6DB869586 | INTERNL,LFY,932LF,RE-CONDUCTOR | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6DB869587 | INTERNL,LFY,932LF,RE-CONDUCTOR | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6DB869530 | INTERNL,SCT,903SC,RE-CONDUCTOR | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6DB869812 | INTL BR DOWNTOWN NETWORK VAULT | - | - | 130 | - | - | - | - | - | - | - | 130 |
| ELL | C6DB869817 | INTL BR DOWNTOWN NETWORK VAULT | - | - | 130 | - | - | - | - | - | - | - | 130 |

Amounts may not add or tie to other schedules due to rounding.

Entergy Louisiana, LLC
Affiliate Per Book Billings by Project/Activity
For the Twelve Months Ended, June 30, 2011
Amounts in Dollars

Exhibit SBT-22
2011 TX Rate Case
13 of 23

| Billing Company | Project/Activity | Description | EAI | EEI | EGSLA | EMI | ENOI | EOI | ESI | ETI | SERI | SFI | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ELL | C6DB869194 | INTL BR UNIVERSITY CLUB (CLOSE | - | - | 48,983 | - | - | - | - | - | - | - | 48,983 |
| ELL | C6DB869984 | INTL CORBIN AVE. LINE CROSSING | - | - | 5,379 | - | - | - | - | - | - | - | 5,379 |
| ELL | C6DB869848 | INTL PA COMMERCIAL DR. SWITCH | - | - | 11,177 | - | - | - | - | - | - | - | 11,177 |
| ELL | C6DB869876 | INTL PECUE SITE  750AL BURIAL | - | - | 41,121 | - | - | - | - | - | - | - | 41,121 |
| ELL | F3PPFX3259 | Inventory Planning System Supp | - | - | - | - | - | - | 4 | - | - | - | 4 |
| ELL | F3PPTRINVE | Inventory Receipt | - | 267 | - | - | - | - | - | - | - | - | 267 |
| ELL | C6PPTSF291 | Irion install Fiber Optics | - | - | 1,564 | - | - | - | - | - | - | - | 1,564 |
| ELL | C6PPTSK164 | Iron Man 230: Build New Statio | - | - | 1,800 | - | - | - | - | - | - | - | 1,800 |
| ELL | F3PCF74341 | ISB MAINT | - | - | - | - | - | - | 1 | - | - | - | 1 |
| ELL | F3PCF15260 | IT - BUSINESS & PROJECT SUPPOR | - | - | - | - | - | - | 1 | - | - | - | 1 |
| ELL | C1PPEMRG11 | IT Bus Unit Emerging Projects | - | - | - | - | - | - | 3,372 | - | - | - | 3,372 |
| ELL | F3PCFX3701 | IT INFRASTRUCTURE/SHARED SERVI | - | - | - | - | - | - | 127 | - | - | - | 127 |
| ELL | C6DB374327 | JACKSON NW-REPLACE LEAD CABLE | - | - | - | - | - | - | - | - | - | - | - |
| ELL | F3PCY31267 | JACKSON SUBSTATION, GSU-LA | - | - | 756 | - | - | - | - | - | - | - | 756 |
| ELL | C6PPTLY002 | Jackson to Tejac: Reconductor | - | - | 1,838 | - | - | - | - | - | - | - | 1,838 |
| ELL | C6PPTSF343 | jaguar bkr 20875 replace bushi | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPTS2659 | Jaguar repl ccvt's looking lin | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPTSF835 | jaguar replace failed fans | - | - | 6,006 | - | - | - | - | - | - | - | 6,006 |
| ELL | F3PCY31268 | JAGUAR SUBSTATION, GSU-LA | - | - | 3,414 | - | - | - | - | - | - | - | 3,414 |
| ELL | C1PPTD3302 | JDC EMS NETWORK | - | - | - | - | - | - | 530 | - | - | - | 530 |
| ELL | C6PPTSF378 | Jefferson install D400S RTU | - | - | 45,678 | - | - | - | - | - | - | - | 45,678 |
| ELL | F3PCY31275 | JEFFERSON SUBSTATION, GSU-LA | - | - | 23,340 | - | - | - | - | - | - | - | 23,340 |
| ELL | C6PC449120 | JOINT USE - BELL | - | - | - | - | 3,777 | - | - | - | - | - | 3,777 |
| ELL | C6PC849120 | JOINT USE - BELL | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPBU1082 | Joliet - Replace Failed VCB 20 | - | - | - | - | 29,391 | - | - | - | - | - | 29,391 |
| ELL | C6PPBU1109 | Joliet- Feeder Fault Locator | - | - | - | - | 6,520 | - | - | - | - | - | 6,520 |
| ELL | F3PCY30401 | JOLIET SUBSTATION, NEW ORLEANS | - | - | - | - | 7,099 | - | - | - | - | - | 7,099 |
| ELL | C6PPRA1241 | Joliet:Replace 20T1-6 | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPRA1242 | Joliet:Replace 20T2-6 | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPTSF511 | Julia repl contacts bkr 234f | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPTSF582 | julia replace breaker 234 | - | - | 26,365 | - | - | - | - | - | - | - | 26,365 |
| ELL | C6PPTSF471 | Jungle Garden T1 Animal Mitiga | - | - | 932 | - | - | - | - | - | - | - | 932 |
| ELL | C6PPTSU105 | L.R. Alexander: 2x Bundle Bus | (24) | - | - | - | - | - | - | - | - | - | (24) |
| ELL | F3PCY31808 | LA CEMENT SUBSTATION, NEW ORLE | - | - | - | - | 95 | - | - | - | - | - | 95 |
| ELL | F3PPZG2515 | LA1 5A CT Major Outage 2Q10 | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C1PPTD3431 | Lab Equip: Test Set & Stand Re | - | - | - | - | - | - | 3,042 | - | - | - | 3,042 |
| ELL | C6PPTSF350 | Lake Charles & Lafayette Tools | - | - | 65,683 | - | - | - | - | - | - | - | 65,683 |
| ELL | C6PPTL7252 | Lake Project: Ln.614 Contraban | - | - | 3,428 | - | - | - | - | - | - | - | 3,428 |
| ELL | F3PPD10140 | Large Power Billing System for | - | - | - | - | - | - | 2 | - | - | - | 2 |
| ELL | C6DB870051 | LDT,NIB,922DU,INSTALL 800A REC | - | - | 9,048 | - | - | - | - | - | - | - | 9,048 |
| ELL | F3PPZW8372 | LE Compliance Culture Training | 7,147 | - | - | - | 209 | - | - | - | - | - | 7,356 |
| ELL | C6PPTS2194 | Lewis Creek: Install Transform | - | - | - | - | - | - | - | 681 | - | - | 681 |
| ELL | F3PPZB0123 | LG WG1 on-line expenditures 08 | - | - | 209,718 | - | - | - | - | - | - | - | 209,718 |
| ELL | F3PPZB0124 | LG WG2 On line expenditures 08 | - | - | 97,681 | - | - | - | - | - | - | - | 97,681 |
| ELL | F3PPZB0125 | LG WG4 On line Expenditures 08 | - | - | 361,608 | - | - | - | - | - | - | - | 361,608 |
| ELL | F3PPZG2341 | LG-LA1 4A CT Major(4Q09) | - | - | - | - | - | - | - | - | - | - | - |
| ELL | F3PPZW7304 | LG-LA1 5A Mark 6E Control Upgr | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPWGM540 | LG-NL6 '10 Rplc Main Transform | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPWGU322 | LG-WG2 Replace Burner Mgt Syst | - | - | - | - | - | - | - | - | - | - | - |
| ELL | F3PPCPLITN | Lighting Campaign ENOI | - | - | - | - | - | - | 15 | - | - | - | 15 |
| ELL | C6PPTLG202 | Line 255: Relocate poles for A | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPTLG203 | Line 256: Relocate pole for L- | - | - | 6,764 | - | - | - | - | - | - | - | 6,764 |

Amounts may not add or tie to other schedules due to rounding.

Entergy Louisiana, LLC
Affiliate Per Book Billings by Project/Activity
For the Twelve Months Ended, June 30, 2011
Amounts in Dollars

| Billing Company | Project/Activity | Description | EAI | EEI | EGSLA | EMI | ENOI | EOI | ESI | ETI | SERI | SFI | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ELL | C6PPTL5022 | Line 334 - 69kV Francis - Jack | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPTL5023 | Line 386 69kV Francis - Angola | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPTLG002 | Line 711 Cut-In Airline Substa | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPTL6957 | Line Base: #2 L698 Lake Charle | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPTL6956 | Line Base: L602 Lake Charles-E | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPTL4225 | LinesBase10: L98 Michoud-Claib | - | - | - | - | (14,432) | - | - | - | - | - | (14,432) |
| ELL | C6PPTSF179 | Livionia replace failed arrest | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPTSF837 | Livionia replace failed fans | - | - | 2,406 | - | - | - | - | - | - | - | 2,406 |
| ELL | C6PPTLP994 | Livonia-Colonial-Krotz repl sp | - | - | 6,501 | - | - | - | - | - | - | - | 6,501 |
| ELL | C6DB869824 | LOAD BR 730PE NEW FEEDER ON OL | - | - | 2,920 | - | - | - | - | - | - | - | 2,920 |
| ELL | C6DB869828 | LOAD BR WOMANS HOSPITAL- LOAD | - | - | 2,536 | - | - | - | - | - | - | - | 2,536 |
| ELL | C6DB869558 | LOAD DH 854DH RECON. NORTH SID | - | - | 2,627 | - | - | - | - | - | - | - | 2,627 |
| ELL | C6DB869655 | LOAD DH 854DH RECON. NORTH SID | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6DB869898 | LOAD DH 854DH RECON. NORTH SID | - | - | 65,092 | - | - | - | - | - | - | - | 65,092 |
| ELL | C6DB869499 | LOAD GN 725GR ADD POLES ON HW | - | - | (626) | - | - | - | - | - | - | - | (626) |
| ELL | C6DB869930 | LOAD GN 832GN RECON. E.WORTHEY | - | - | 66,193 | - | - | - | - | - | - | - | 66,193 |
| ELL | C6DB869213 | LOAD GN GEISMAR SUB - UG BORE | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6DB869495 | LOAD GZ 725GR PART 1 GET-AWAY | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6DB869502 | LOAD GZ 725GR PART 3 RECON. HW | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6DB869513 | LOAD GZ 725GR PART 4 OF WINTZ | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6DB869524 | LOAD GZ 725GR PART 5 OF NEW WI | - | - | (2,902) | - | - | - | - | - | - | - | (2,902) |
| ELL | C6PC149105 | LOAD RELATED RELIABILITY | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PC449105 | LOAD RELATED RELIABILITY | - | - | - | - | 2,018 | - | - | - | - | - | 2,018 |
| ELL | C6PC849105 | LOAD RELATED RELIABILITY | - | - | 60,985 | - | - | - | - | - | - | - | 60,985 |
| ELL | C6PPTS6887 | Loblolly Modify for new 230kV | - | - | 4,673 | - | - | - | - | - | - | - | 4,673 |
| ELL | C6PCTL3743 | LOBLOLLY-HAMMOND NEW LINE-200 | - | - | 221 | - | - | - | - | - | - | - | 221 |
| ELL | C6PPTL1144 | LOBLOLLY-HAMMOND NEW LINE-200 | - | - | 23,631 | - | - | - | - | - | - | - | 23,631 |
| ELL | C6PPTLH998 | Lone Star 69kV Tap,Insta OPGW | - | - | 238 | - | - | - | - | - | - | - | 238 |
| ELL | C1PPTD3303 | LRDC EMS NETWORK (SOC) | - | - | - | - | - | - | 61 | - | - | - | 61 |
| ELL | C8PPKBN126 | Magnolia Reconstruction | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C8PPKBN536 | Magnolia Street Roof Upgrades | - | - | - | - | 2,778 | - | - | - | - | - | 2,778 |
| ELL | E1PP691912 | Main Feed Pumps | - | 2,882 | - | - | - | - | - | - | - | - | 2,882 |
| ELL | XNBD | Maint Turb Turn Gear&Lube Oil | 21,487 | - | 5,732 | - | - | - | - | - | - | - | 27,219 |
| ELL | XNAA | Maintain Accessory Electric Eq | 34,984 | - | 7,716 | - | - | - | - | - | - | - | 42,700 |
| ELL | XMDN | Maintain Boiler Feed Pump Syst | 7,184 | - | 3,509 | - | - | - | - | - | - | - | 10,694 |
| ELL | XMCQ | Maintain Boiler Instr&Controls | - | - | 676 | - | - | - | - | - | - | - | 676 |
| ELL | XNBA | Maintain Ehc And Mhc Systems | 7,868 | - | 4,801 | - | - | - | - | - | - | - | 12,669 |
| ELL | XMDQ | Maintain Feedwater Heaters&Vlv | 372 | - | 1,364 | - | - | - | - | - | - | - | 1,736 |
| ELL | XMDJ | Maintain Fuel Burning Equip | - | - | 2,180 | - | - | - | - | - | - | - | 2,180 |
| ELL | XNBC | Maintain Generator System | 16,167 | - | 9,500 | - | - | - | - | - | - | - | 25,667 |
| ELL | XMCC | Maintain Stm Misc Vlves&Piping | - | - | 852 | - | - | - | - | - | - | - | 852 |
| ELL | XNAZ | Maintain Turbine | 1,800 | - | 1,187 | - | - | - | - | - | - | - | 2,987 |
| ELL | MEDM | Manage Electric Dist Maint | - | - | - | - | 115 | - | - | - | - | - | 115 |
| ELL | MEDO | Manage Electric Distr Ops | - | - | - | - | 28,921 | - | - | - | - | - | 28,921 |
| ELL | XFAD | Manage Genl Plant Operations | 20,424 | - | - | - | 61,204 | - | - | - | - | - | 81,628 |
| ELL | MGMA | Manage Maintenance | - | - | - | - | 48,944 | - | - | - | - | - | 48,944 |
| ELL | MMWS | Manage Matls Warehousing Svc | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPBU1061 | Market 115-Replace Bkr. N8103 | - | - | - | - | 2,409 | - | - | - | - | - | 2,409 |
| ELL | C6PPBU1049 | Market 13.8kV-replaceregulator | - | - | - | - | - | - | - | - | - | - | - |
| ELL | F3PCY30498 | MARKET 230 SUBSTATION, NEW ORL | - | - | - | - | 413 | - | - | - | - | - | 413 |
| ELL | C6PPRA1270 | Market 230:Fault Location Feed | - | - | - | - | 155 | - | - | - | - | - | 155 |
| ELL | F3PC9097X2 | MARKET STREET TO DERBIGNY SUB. | - | - | - | - | - | - | - | - | - | - | - |

Amounts may not add or tie to other schedules due to rounding.

Entergy Louisiana, LLC
Affiliate Per Book Billings by Project/Activity
For the Twelve Months Ended, June 30, 2011
Amounts in Dollars

| Billing Company | Project/Activity | Description | EAI | EEI | EGSLA | EMI | ENOI | EOI | ESI | ETI | SERI | SFI | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ELL | C6PPRA1258 | Market Street:Replace N2106 | - | - | - | - | 42,586 | - | - | - | - | - | 42,586 |
| ELL | F3PC9087X1 | MARKET STREETTONAPOLEON SUB. | - | - | - | - | 332 | - | - | - | - | - | 332 |
| ELL | F3PCY30495 | MARKET SUBSTATION, NEW ORLEANS | - | - | - | - | 507 | - | - | - | - | - | 507 |
| ELL | C6PPRA1263 | Market:Upgrade Delta Line Rela | - | - | - | - | 58,013 | - | - | - | - | - | 58,013 |
| ELL | C6PPRA1260 | Market:Upgrade Derbigny Line P | - | - | - | - | 28,572 | - | - | - | - | - | 28,572 |
| ELL | C6PPRA1265 | Market:Upgrade Ninemile Relayi | - | - | - | - | 32,038 | - | - | - | - | - | 32,038 |
| ELL | C6PPTLY001 | Marydale-Tejac: Reconductor 12 | - | - | 3,385 | - | - | - | - | - | - | - | 3,385 |
| ELL | F3PCMCMSOM | MATERIALS & CONTRACTS MGTMT SY | - | - | - | - | - | - | - | - | - | - | - |
| ELL | F5PCMATCOM | MATERIALS TESTING AND COMPLIAN | 1,469 | - | 1,641 | 26,051 | 877 | - | - | 1,183 | - | - | 31,221 |
| ELL | C6DB869476 | MAU,851MA,MAURICE,ATTACH TO NE | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPTSF325 | Maurice Substation - EGS-LA | - | - | - | - | - | - | - | - | - | - | - |
| ELL | F3PPZG1610 | MC2 Aux Outage 2010 | - | - | - | - | 612 | - | - | - | - | - | 612 |
| ELL | F3PPZG1924 | MC2 Aux Outage 2011 | - | - | - | - | 276 | - | - | - | - | - | 276 |
| ELL | F3PPZG1935 | MC3 Aux Outage 2011 | - | - | - | - | 33,726 | - | - | - | - | - | 33,726 |
| ELL | F3PPZG1934 | MC3 Auxiliary Outage 2010 | - | - | - | - | 280 | - | - | - | - | - | 280 |
| ELL | C6PPTSX100 | McAdams:Add 2nd Auto | - | - | - | - | - | - | 48 | - | - | - | 48 |
| ELL | C6PPTLX101 | McAdams-Pickens Ln:Upgr. Ln. 2 | - | - | - | 791 | - | - | - | - | - | - | 791 |
| ELL | C6PPTSF275 | McKnight L734 replace Pri. rel | - | - | 1,109 | - | - | - | - | - | - | - | 1,109 |
| ELL | C6PPTSF430 | McKnight L741 replace relaying | - | - | 416 | - | - | - | - | - | - | - | 416 |
| ELL | C6PPRA1180 | McKnight:Replace 500kv Switch | - | - | 860 | - | - | - | - | - | - | - | 860 |
| ELL | F5PPD10154 | MDT Wireless Telecom Serv | - | - | - | - | - | - | 35 | - | - | - | 35 |
| ELL | C6PPTLG101 | Meaux to Sellers Road: Bld T-L | - | - | 173,124 | - | - | - | - | - | - | - | 173,124 |
| ELL | C6PPTSG102 | Meaux: Install 400MVA AutoXFMR | - | - | 558,260 | - | - | - | - | - | - | - | 558,260 |
| ELL | F3PC4B5331 | MECHANICAL MAINTENANCE - VY | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPTSP987 | Merlin sub: build new sub | - | - | - | - | - | - | - | 357 | - | - | 357 |
| ELL | F3PCY30526 | MICHOUD | - | - | - | - | 6,733 | - | - | - | - | - | 6,733 |
| ELL | F3PC9096X0 | MICHOUD S.E.S.TO CURRAN SUB. | - | - | - | - | 58 | - | - | - | - | - | 58 |
| ELL | F3PC9098X1 | MICHOUD TO CLAIBORNE | - | - | - | - | 2,255 | - | - | - | - | - | 2,255 |
| ELL | C6PPMR3767 | Michoud: replace 230KV PT's | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPRA1321 | Michoud; Replace N9403 | - | - | - | - | 79,122 | - | - | - | - | - | 79,122 |
| ELL | F3PC9084X0 | MICHOUDTOSLIDELL | - | - | - | - | 3,201 | - | - | - | - | - | 3,201 |
| ELL | C6PPFIB14T | Microwave Replacement Texas 20 | - | - | - | - | - | - | 725 | - | - | - | 725 |
| ELL | C8PPTS5932 | Midtown Hurricane Katrina Rest | - | - | - | - | - | - | - | - | - | - | - |
| ELL | F3PCY30529 | MIDTOWN SUBSTATION, NEW ORLEAN | - | - | - | - | 2,793 | - | - | - | - | - | 2,793 |
| ELL | C6PPTSG311 | Minor Add - Acadia 36MVAr 138k | - | - | - | - | - | - | - | - | - | - | - |
| ELL | MEDS | Monit Elec Dist Sys(Load Disp) | - | - | - | - | 52 | - | - | - | - | - | 52 |
| ELL | C6PPTSF823 | monochem replace failed sw 448 | - | - | 2,129 | - | - | - | - | - | - | - | 2,129 |
| ELL | C6PPTSF222 | Monochem replace rusted radiat | - | - | - | - | - | - | - | - | - | - | - |
| ELL | F3PCY31360 | MONOCHEM SUBSTATION, GSU-LA | - | - | 2,606 | - | - | - | - | - | - | - | 2,606 |
| ELL | C6PPTSF312 | Moril 69KV cap bank & relay pa | - | - | 8,104 | - | - | - | - | - | - | - | 8,104 |
| ELL | C6PPTSG103 | Moril Sub: Install 138kV Termi | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPTSG203 | Moril Sub: Upgrade 69kV Brk & | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPTSF213 | Mossville repl 69 KV Capacitor | - | - | 8,631 | - | - | - | - | - | - | - | 8,631 |
| ELL | C6PPTSF214 | Mossville replace L660 relay p | - | - | 129 | - | - | - | - | - | - | - | 129 |
| ELL | C6PPVS1044 | NAPOLEON - RPL UNDERFREQ RELAY | - | - | - | - | 11,780 | - | - | - | - | - | 11,780 |
| ELL | F3PCY30571 | NAPOLEON SUBSTATION, NEW ORLEA | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPBU1055 | Napoleon-replacefailedbkrs19T2 | - | - | - | - | 25,456 | - | - | - | - | - | 25,456 |
| ELL | F3PCY30573 | NASA WEST SUBSTATION, NEW ORLE | - | - | - | - | - | - | - | - | - | - | - |
| ELL | F3PCRNTACL | Nat'l Accts Sales & Mktg - ELL | - | - | - | - | - | - | 131 | - | - | - | 131 |
| ELL | C6PPTSF230 | Nesser repl ls sw with S&C on | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPTSF327 | nesser replace failing bushing | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPTSF328 | Nesser replace failing bushing | - | - | - | - | - | - | - | - | - | - | - |

Amounts may not add or tie to other schedules due to rounding.

Entergy Louisiana, LLC
Affiliate Per Book Billings by Project/Activity
For the Twelve Months Ended, June 30, 2011
Amounts in Dollars

Exhibit SBT-22
2011 TX Rate Case
16 of 23

| Billing Company | Project/Activity | Description | EAI | EEI | EGSLA | EMI | ENOI | EOI | ESI | ETI | SERI | SFI | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ELL | C6PPTSF470 | New Iberia T1 Animal Mitigatio | - | - | 932 | - | - | - | - | - | - | - | 932 |
| ELL | F3PPR733NO | New Orleans Customer Service C | - | - | - | - | - | - | 338 | - | - | - | 338 |
| ELL | C6PC349108 | NON-MANDATED RELOCATIONS EMI | - | - | - | 145 | - | - | - | - | - | - | 145 |
| ELL | C6PC449108 | NON-MANDATED RELOCATIONS ENOI | - | - | - | - | 31,138 | - | - | - | - | - | 31,138 |
| ELL | C6PC849108 | NON-MANDATED RELOCATIONS LA-EG | - | - | 108,337 | - | - | - | - | - | - | - | 108,337 |
| ELL | C6PC449150 | NON-TARGET CIRCUIT BACKBONE IM | - | - | - | - | 4,202 | - | - | - | - | - | 4,202 |
| ELL | C6PPTSF536 | Northdale add mos to line sw's | - | - | 7,124 | - | - | - | - | - | - | - | 7,124 |
| ELL | C6PPTSF816 | Northdale repl batteries&charg | - | - | 12,407 | - | - | - | - | - | - | - | 12,407 |
| ELL | F3PCY30590 | NOTRE DAME | - | - | - | - | 3,618 | - | - | - | - | - | 3,618 |
| ELL | F3PCN20527 | NUCLEAR IT QUICK RESPONSE TEAM | - | - | - | - | - | - | 1 | - | - | - | 1 |
| ELL | F3PCN20858 | NUCLEAR IT QUICK RESPONSE TEAM | - | - | - | - | - | - | 0 | - | - | - | 0 |
| ELL | C6PPTSF277 | Oak Grove replace DPU 757F | - | - | 199 | - | - | - | - | - | - | - | 199 |
| ELL | C6PPTSF278 | Oak Grove replace DPU 758F | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPTSF595 | Oak Villa install oil filter T | - | - | 7,582 | - | - | - | - | - | - | - | 7,582 |
| ELL | C6PPTSF596 | Oak Villa install oil filter T | - | - | 2,686 | - | - | - | - | - | - | - | 2,686 |
| ELL | C6PPTSF361 | Oak Villa L302 add SEL311C | - | - | 4,417 | - | - | - | - | - | - | - | 4,417 |
| ELL | C6PPTSF521 | Oak Villa repl failed fans t1 | - | - | - | - | - | - | - | - | - | - | - |
| ELL | F3PCY31382 | OAK VILLA SUBSTATION, GSU-LA | - | - | 17,344 | - | - | - | - | - | - | - | 17,344 |
| ELL | F4PCT99002 | Occidental Chem Romeville Main | - | - | - | - | - | - | - | - | - | - | - |
| ELL | F3PPFRM127 | OCRO - Bus Cont Plan Managemen | - | - | - | - | - | - | 0 | - | - | - | 0 |
| ELL | C6PPWAU064 | OP1 - OUA0015.003 HP/IP Econom | - | - | - | - | - | - | - | - | - | - | - |
| ELL | F3PPZG2264 | OP1-GT Reliability Out-Spring- | 944 | - | - | - | - | - | - | - | - | - | 944 |
| ELL | F3PPZG2261 | OP1-GTSpring Reliability Outag | 79,610 | - | - | - | - | - | - | - | - | - | 79,610 |
| ELL | C6PPWAU069 | OP1-OUA001.002 - H2 Seals Upgr | 4,989 | - | - | - | - | - | - | - | - | - | 4,989 |
| ELL | C6PPWAU075 | OP1-OUA007-Off Engine Monitori | 628 | - | - | - | - | - | - | - | - | - | 628 |
| ELL | C6PPWAU070 | OP1-OUA015.008-Nitrogen Genera | 148 | - | - | - | - | - | - | - | - | - | 148 |
| ELL | C6PPWAU044 | OP1-OUA015.012-HRSG Air Attemp | 7,653 | - | - | - | - | - | - | - | - | - | 7,653 |
| ELL | F3PPZG2263 | OP1-ST Reliability Outage-Fall | 14,018 | - | - | - | - | - | - | - | - | - | 14,018 |
| ELL | C6PPWAU053 | OP2 - Futura Generation Totali | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPWAU076 | OP2 TK Blower Motor # 2 Replac | 310 | - | - | - | - | - | - | - | - | - | 310 |
| ELL | F3PPZG2266 | OP2-GT HGP Outage-Spring-2009 | - | - | - | - | - | - | - | - | - | - | - |
| ELL | F3PPZG2269 | OP2-GT Reliability Outage-Fall | 141 | - | - | - | - | - | - | - | - | - | 141 |
| ELL | F3PPZG2271 | OP2-GT Reliability Outage-Fall | 17,365 | - | - | - | - | - | - | - | - | - | 17,365 |
| ELL | F3PPZG2272 | OP2-GTSpring Reliability Outag | 83,552 | - | - | - | - | - | - | - | - | - | 83,552 |
| ELL | C6PPWAU068 | OP2-OUA001.003 - H2 Seal Upgra | 1,796 | - | - | - | - | - | - | - | - | - | 1,796 |
| ELL | C6PPWAU071 | OP2-OUA0015.009-Nitrogen Gener | 148 | - | - | - | - | - | - | - | - | - | 148 |
| ELL | C6PPWAU040 | OP2-OUA007-Off Engine Monitori | 435 | - | - | - | - | - | - | - | - | - | 435 |
| ELL | C6PPWAU045 | OP2-OUA015.013-HRSG Air Attemp | 2,280 | - | - | - | - | - | - | - | - | - | 2,280 |
| ELL | F3PPZG2260 | OP2-ST Reliability Out-Spring- | 340 | - | - | - | - | - | - | - | - | - | 340 |
| ELL | C6PPWGB003 | OP3 - OUA0015.002 HP/IP Econom | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPWGB034 | OP3-Futura Gen Totalizing Mtr | - | - | - | - | - | - | - | - | - | - | - |
| ELL | F3PPZG2533 | OP3-GT Bore Scope & Rel Outage | - | - | - | - | - | - | - | - | - | - | - |
| ELL | F3PPZG2532 | OP3-GT Bore Scope & Rel Out-Fa | - | - | 19,809 | - | - | - | - | - | - | - | 19,809 |
| ELL | F3PPZG2265 | OP3-GT Reliability Out-Fall 20 | - | - | - | - | - | - | - | - | - | - | - |
| ELL | F3PPZG2534 | OP3-GT Spring Reliability Outa | - | - | 20,005 | - | - | - | - | - | - | - | 20,005 |
| ELL | C6PPWGB041 | OP3-HP Primary SH Drain Valve | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPWGB005 | OP3-OUA007 - Off Engine Monito | - | - | 435 | - | - | - | - | - | - | - | 435 |
| ELL | C6PPWGB037 | OP3-OUA015.010-Nitrogen Genera | - | - | 131 | - | - | - | - | - | - | - | 131 |
| ELL | C6PPWGB028 | OP3-OUA015.014-HRSG Air Attemp | - | - | 7,118 | - | - | - | - | - | - | - | 7,118 |
| ELL | F3PPZB0185 | OP3-Overtime Payroll Baseline | - | - | - | - | - | - | - | - | - | - | - |
| ELL | F3PPZB0184 | OP3-Straight Time Payrol | - | - | 153,260 | - | - | - | - | - | - | - | 153,260 |
| ELL | F3PPZB0159 | OPC-Employee Developmental Trn | 35,701 | - | - | - | - | - | - | - | - | - | 35,701 |

Amounts may not add or tie to other schedules due to rounding.

Entergy Louisiana, LLC
Affiliate Per Book Billings by Project/Activity
For the Twelve Months Ended, June 30, 2011
Amounts in Dollars

Exhibit SBT-22
2011 TX Rate Case
17 of 23

| Billing Company | Project/Activity | Description | EAI | EEI | EGSLA | EMI | ENOI | EOI | ESI | ETI | SERI | SFI | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ELL | F3PPZW6812 | OPC-Employee Technical Trainin | 10,823 | - | - | - | - | - | - | - | - | - | 10,823 |
| ELL | C6PPWUA006 | OPC-OUA016 MIC Eval/Remediatio | 4,793 | - | - | - | - | - | - | - | - | - | 4,793 |
| ELL | F3PPZB0177 | OPC-Overtime Payroll | 3,490 | - | - | - | - | - | - | - | - | - | 3,490 |
| ELL | F3PPZB0157 | OPC-Peer Group-Team Meetings | 11,777 | - | - | - | - | - | - | - | - | - | 11,777 |
| ELL | F3PPZB0176 | OPC-Straight Time Payroll | 1,409,991 | - | - | - | - | - | - | - | - | - | 1,409,991 |
| ELL | F3PCT29400 | OPERATIONS SAFETY - HEADQUARTE | - | - | - | - | - | - | - | - | - | - | - |
| ELL | F3PCT53130 | OPN,MGR, CLAIMS MANAGEMENT | - | - | - | - | - | - | 1,244 | - | - | - | 1,244 |
| ELL | F3PCT54065 | OPNS OF PURCHASING & CONT-DCS | - | - | - | - | - | - | 0 | - | - | - | 0 |
| ELL | F3PCFX3785 | ORG, JES, BATS, ACBM SUPPORT | - | - | - | - | - | - | 0 | - | - | - | 0 |
| ELL | C6PPWUA025 | OUA009 - OPC - Plant Blowdown | 4,541 | - | - | - | - | - | - | - | - | - | 4,541 |
| ELL | C6PPWUA003 | OUA012 - OUACHITA IT/TELCOM UP | 5,848 | - | - | - | - | - | - | - | - | - | 5,848 |
| ELL | C6PPWUA010 | OUA014-Ouachita Water Plant Up | 7,403 | - | - | - | - | - | - | - | - | - | 7,403 |
| ELL | F3PPN20535 | P3E Scheduling Software Mainte | - | - | - | - | - | - | 19 | - | - | - | 19 |
| ELL | F5PCZPTOXX | PAID TIME OFF | (8,260) | (19) | (738) | (164) | 39,093 | - | 1,573 | (82) | - | - | 31,403 |
| ELL | F3PCY31387 | PAM SUBSTATION, GSU-LA | - | - | 5,433 | - | - | - | - | - | - | - | 5,433 |
| ELL | F3PC9088X0 | PARIS TAPTOAVE. C SUB. | - | - | - | - | 913 | - | - | - | - | - | 913 |
| ELL | C6PPTSF469 | Parks Sub T1 Animal Mitigation | - | - | 932 | - | - | - | - | - | - | - | 932 |
| ELL | F5PCMCMSCL | PASSPORT- SC MATERIALS MANAGEM | - | - | - | - | - | - | 31 | - | - | - | 31 |
| ELL | F3PC9085X1 | PATERSON S.E.S.TOSHERWOOD FORE | - | - | - | - | 3,174 | - | - | - | - | - | 3,174 |
| ELL | F3PCY30622 | PATERSON SUBSTATION, NEW ORLEA | - | - | - | - | 1,478 | - | - | - | - | - | 1,478 |
| ELL | F3PCY30623 | PAUGER SUBSTATION, NEW ORLEANS | - | - | - | - | 64 | - | - | - | - | - | 64 |
| ELL | C6PPVS1046 | PAUGER: RPL UNDERFREQ RELAY | - | - | - | - | - | - | - | - | - | - | - |
| ELL | F3PCF23442 | PAYROLL PROCESSING | - | - | - | - | - | - | 12 | - | - | - | 12 |
| ELL | F5PCZUPRTX | PAYROLL TAX | (5,155) | (18) | (2,122) | (262) | (1,642) | (78) | (246) | (90) | (87) | 85 | (9,615) |
| ELL | SAPCPCPLAP | PC&R OVERHEAD POOL | 652 | - | - | - | - | - | - | - | - | - | 652 |
| ELL | SAPCPCPLMP | PC&R OVERHEAD POOL | - | - | - | (153) | - | - | - | - | - | - | (153) |
| ELL | SAPCPCPLGL | PC&R OVERHEAD POOL - EGSI - EL | - | - | 1,325 | - | - | - | - | - | - | - | 1,325 |
| ELL | SAPCPCPLNE | PC&R OVERHEAD POOL - ENOI - EL | - | - | - | - | 5,012 | - | - | - | - | - | 5,012 |
| ELL | SAPCPCPLNG | PC&R OVERHEAD POOL - ENOI - GA | - | - | - | - | 19 | - | - | - | - | - | 19 |
| ELL | SAPCP25910 | PC&R OVERHEAD POOL CHARGES | - | - | - | - | - | - | 249 | 151 | - | - | 401 |
| ELL | F3PCN20522 | PCRS MAINTENANCE | - | - | - | - | - | - | 16 | - | - | - | 16 |
| ELL | C6PPTL7295 | PCue10:L372 Nesser Tap-Harelso | - | - | 22,258 | - | - | - | - | - | - | - | 22,258 |
| ELL | C6PPHBG933 | Pecue Lane SC Bldg. "E" | - | - | 12,790 | - | - | - | - | - | - | - | 12,790 |
| ELL | C6PPTSF262 | Pecue Replace DPU 732F | - | - | 3,225 | - | - | - | - | - | - | - | 3,225 |
| ELL | F3PCY31394 | PECUE SUBSTATION, GULF STATES | - | - | 378 | - | - | - | - | - | - | - | 378 |
| ELL | C1PPNXP2R1 | Phase 2 transition to full run | - | 147 | - | - | - | - | - | - | - | - | 147 |
| ELL | C6PPTLK009 | Point Pleasant Cut In | - | - | 60,095 | - | - | - | - | - | - | - | 60,095 |
| ELL | C6DB475935 | POLE,EO,626,VARIOUS PLS FROM T | - | - | - | - | - | - | - | - | - | - | - |
| ELL | F3PCY30639 | PONTCHARTRAIN PARK | - | - | - | - | 1,100 | - | - | - | - | - | 1,100 |
| ELL | C6PPTSF339 | Port Barre repl failed LTC con | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPTSF592 | Port Hudson regasket T3 | - | - | 18,038 | - | - | - | - | - | - | - | 18,038 |
| ELL | C6PPTSF331 | Port Hudson replace failed cap | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPTSF838 | Port Hudson replace failed fan | - | - | 2,479 | - | - | - | - | - | - | - | 2,479 |
| ELL | C6PPTSF410 | Port Hudson Replace Pnl L717 | - | - | 3,205 | - | - | - | - | - | - | - | 3,205 |
| ELL | F3PCY31413 | PORT HUDSON SUBSTATION, GULF S | - | - | 11,027 | - | - | - | - | - | - | - | 11,027 |
| ELL | C6PPTSF561 | Port Hudson t5 life extension | - | - | 7,996 | - | - | - | - | - | - | - | 7,996 |
| ELL | F3PCQ365X0 | PORT HUDSON TO JACKSON T-LINES | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPTSF848 | Port Vincent repl failed reclo | - | - | 20,446 | - | - | - | - | - | - | - | 20,446 |
| ELL | F3PCFX3265 | POWERBUILDER FRAMEWORK BASELOA | - | - | - | - | - | - | 1 | - | - | - | 1 |
| ELL | F3PCE99750 | PRES- ENT. LA-GEN'L OPS-ELI/EG | - | - | - | - | - | - | 5,749 | - | - | - | 5,749 |
| ELL | C6PC449107 | PRIVATE SECURITY LIGHTING MAIN | - | - | - | - | - | - | - | - | - | - | - |
| ELL | PSCL | Process Unit Price Adjustments | - | - | 267 | - | 12 | - | - | - | - | - | 279 |

Amounts may not add or tie to other schedules due to rounding.

Entergy Louisiana, LLC
Affiliate Per Book Billings by Project/Activity
For the Twelve Months Ended, June 30, 2011
Amounts in Dollars

Exhibit SBT-22
2011 TX Rate Case
18 of 23

| Billing Company | Project/Activity | Description | EAI | EEI | EGSLA | EMI | ENOI | EOI | ESI | ETI | SERI | SFI | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ELL | F3PCD10010 | PROGRAM MANAGEMENT - O&M | - | - | - | - | - | - | 1 | - | - | - | 1 |
| ELL | F3PCF24910 | PROPERTY ACCOUNTING- FIXED ASS | - | - | - | - | - | - | 7 | - | - | - | 7 |
| ELL | F3PCFX3355 | Property Software Support | - | - | - | - | - | - | 0 | - | - | - | 0 |
| ELL | F3PCF24001 | Property/Casualty Risk Finance | - | - | - | - | - | - | 14 | - | - | - | 14 |
| ELL | PCSO | Prov Cust Serv Office Contact | - | - | - | - | 131 | - | - | - | - | - | 131 |
| ELL | PMSS | Provide & Manage Safety Svcs | 63,456 | - | 2,097 | - | - | - | - | 348 | - | - | 65,902 |
| ELL | C6DB374765 | PROVIDE NEW SERVICE TO SCHULZ | - | - | - | 1,083 | - | - | - | - | - | - | 1,083 |
| ELL | XFAB | Provide Plant Office Support | 7,384 | - | - | - | - | - | - | - | - | - | 7,384 |
| ELL | F5PCCSS04D | PS CUST BILL LE - REV DATA INT | - | - | 1,057 | - | 22,365 | - | - | - | - | - | 23,422 |
| ELL | C6PPTLG003 | Pt Hudson-Sandy Creek Reroute | - | - | 9,803 | - | - | - | - | - | - | - | 9,803 |
| ELL | C6PPWNZ015 | PTC Retire & Demolish Patterso | - | - | - | - | 625 | - | - | - | - | - | 625 |
| ELL | GINP | Purc Gen Invent Items-Passport | 995,142 | - | 4,977,763 | 589,488 | 2,193,421 | - | - | 572,765 | - | - | 9,328,578 |
| ELL | F3PCH86010 | PURCHASING & CONTRACTS SUPPORT | - | - | - | - | - | - | 53 | - | - | - | 53 |
| ELL | C6DB476323 | RECABLE,EO,1605,R/P 2000' FAIL | - | - | - | - | 486 | - | - | - | - | - | 486 |
| ELL | C6DB475801 | RECABLE,EO,512,REPLACE UNDERGR | - | - | - | - | 108,705 | - | - | - | - | - | 108,705 |
| ELL | C6DB476195 | RECABLE. EO, FEEDER 1603 INSTA | - | - | - | - | 2,600 | - | - | - | - | - | 2,600 |
| ELL | C6DB476196 | RECABLE. EO, FEEDER 1603 INSTA | - | - | - | - | 132,046 | - | - | - | - | - | 132,046 |
| ELL | C6DB476197 | RECABLE. EO, FEEDER 1603 INSTA | - | - | - | - | 64,560 | - | - | - | - | - | 64,560 |
| ELL | F3PCF99182 | RECORDS MANAGEMENT | - | - | - | - | - | - | 43 | - | - | - | 43 |
| ELL | F3PCR10302 | REGION CUSTOMER SERVICES - SOU | - | - | - | - | - | - | 2,035 | - | - | - | 2,035 |
| ELL | F5PCZFCTRN | REGULATD NON-BACKBONE FIBER | - | - | 201 | - | - | - | 154 | - | - | - | 356 |
| ELL | F3PCD10049 | REGULATED RETAIL SYSTEMS - O&M | - | - | - | - | - | - | 1 | - | - | - | 1 |
| ELL | C6PPTL7240 | Reim10: L295 Marshall-Toomey | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPTL7261 | Reim10: L369 Gloria-Sharp | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPTL7369 | Reimb11:  Alaska-Tiger | - | - | 322 | - | - | - | - | - | - | - | 322 |
| ELL | C6DB869514 | REL,760AV,YNG,INSTALL 800A REC | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6DB869547 | RELIAB 713GI GN INSTALL 3 3PHA | - | - | 13,740 | - | - | - | - | - | - | - | 13,740 |
| ELL | C6DB869567 | RELIAB BR 325HR INSTALL INTELL | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6DB869551 | RELIAB GN 833GN RELOCATE AND I | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6DB476144 | RELIAB,EO,1205,RAISE 2 GRADE & | - | - | - | - | 4,603 | - | - | - | - | - | 4,603 |
| ELL | C6DB476006 | RELIAB,EO,611,621,2345,2346,TR | - | - | - | - | 155,030 | - | - | - | - | - | 155,030 |
| ELL | C6PC449170 | RELIABILITY PREVENTATIVE MAINT | - | - | - | - | 849,787 | - | - | - | - | - | 849,787 |
| ELL | C6DB476147 | RELIAB-INSTALL NEW 750 AL COND | - | - | - | - | 24,004 | - | - | - | - | - | 24,004 |
| ELL | C6DB476159 | RELIAB-INSTALL NEW 750 AL COND | - | - | - | - | 8,010 | - | - | - | - | - | 8,010 |
| ELL | C6PPTLK008 | Relocate Derbigny - Tricou Lin | - | - | - | - | 379 | - | - | - | - | - | 379 |
| ELL | C1PPFII043 | Relocate Gretna Telecom Hub | - | - | - | - | - | - | 107,670 | - | - | - | 107,670 |
| ELL | C6PPTSF411 | Repaco Replace L717 relaying | - | - | 3,205 | - | - | - | - | - | - | - | 3,205 |
| ELL | XMAR | Repair CEMS Equipment | 33,389 | - | 6,337 | - | - | - | - | - | - | - | 39,726 |
| ELL | XLAA | Repair Inst&Serv Air Comp Sys | 3,773 | - | 7,531 | - | - | - | - | - | - | - | 11,304 |
| ELL | C6PPTSP451 | Repapco - Pilot wire | - | - | 1,679 | - | - | - | - | - | - | - | 1,679 |
| ELL | C6PPTLRPH1 | Repapco/Port H-GP Line Relocat | - | - | 95,716 | - | - | - | - | - | - | - | 95,716 |
| ELL | C6PPTLP997 | Repapco/Zellerbach - GP Line r | - | - | 35,222 | - | - | - | - | - | - | - | 35,222 |
| ELL | C8PPTL5496 | Replace Storm Damages | 15,812 | - | - | - | - | - | - | - | - | - | 15,812 |
| ELL | C6DB869629 | REV 614CL PA INSTALL UG PRI. F | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6DB869779 | REV 732PE BR-INSTALL 11-100W. | - | - | 615 | - | - | - | - | - | - | - | 615 |
| ELL | C6DB869512 | REV 733PE BR INSTALL UG FACILI | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6DB869456 | REV BR  OLOL  HOSPITAL | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6DB869789 | REV BR 303TI - INSTALL 1PH 7.6 | - | - | 46,158 | - | - | - | - | - | - | - | 46,158 |
| ELL | C6DB870033 | REV BR 582EA INSTALL U.R.D.FAC | - | - | 28,132 | - | - | - | - | - | - | - | 28,132 |
| ELL | C6DB869695 | REV BR 724GR INSTALL U.R.D.FAC | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6DB869882 | REV BR 725GR INST. NEW FEEDER | - | - | 29,604 | - | - | - | - | - | - | - | 29,604 |
| ELL | C6DB870047 | REV BR 726GR INSTALL OVERHEAD | - | - | 16,282 | - | - | - | - | - | - | - | 16,282 |

Amounts may not add or tie to other schedules due to rounding.

Entergy Louisiana, LLC
Affiliate Per Book Billings by Project/Activity
For the Twelve Months Ended, June 30, 2011
Amounts in Dollars

Exhibit SBT-22
2011 TX Rate Case
19 of 23

| Billing Company | Project/Activity | Description | EAI | EEI | EGSLA | EMI | ENOI | EOI | ESI | ETI | SERI | SFI | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ELL | C6DB869750 | REV BR 726GR INSTALL U.R.D. FA | - | - | 74,446 | - | - | - | - | - | - | - | 74,446 |
| ELL | C6DB869509 | REV BR 871GR INSTALL UG PRI. F | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6DB869979 | REV BR PECUE SITE | - | - | 9,276 | - | - | - | - | - | - | - | 9,276 |
| ELL | C6DB869932 | REV BR PINNACLE CASINO | - | - | 43,756 | - | - | - | - | - | - | - | 43,756 |
| ELL | C6DB869429 | REV BR SPANISH LAKES | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6DB870004 | REV BR VILLAGE @ MADISON SQUAR | - | - | 2,479 | - | - | - | - | - | - | - | 2,479 |
| ELL | C6DB869988 | REV BR VILLAS AT JAMESTOWN | - | - | 40,408 | - | - | - | - | - | - | - | 40,408 |
| ELL | C6DB870026 | REV BR WILLOWBROOK TOWNHOMES | - | - | 3,280 | - | - | - | - | - | - | - | 3,280 |
| ELL | C6DB869468 | REV DS  SUMMA CONDO'S | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6DB869770 | REV DS CLEARLAKE SUBD. 4TH FIL | - | - | 14,776 | - | - | - | - | - | - | - | 14,776 |
| ELL | C6DB869518 | REV DS NORTH OAKS HOSPITAL | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6DB869861 | REV DS SANDLEWOOD | - | - | 33,871 | - | - | - | - | - | - | - | 33,871 |
| ELL | C6DB869925 | REV DS THE QUARTERS AT SATSUMA | - | - | 24,328 | - | - | - | - | - | - | - | 24,328 |
| ELL | C6DB869529 | REV DS THREE LAKES SUBD. | - | - | 37,318 | - | - | - | - | - | - | - | 37,318 |
| ELL | C6DB869583 | REV DS WOODLAND CROSSING 8TH F | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6DB869878 | REV GN LAKE SUMMERSET | - | - | 5,408 | - | - | - | - | - | - | - | 5,408 |
| ELL | C6DB869709 | REV GN MAGNOLIAL SPRINGS | - | - | 60,169 | - | - | - | - | - | - | - | 60,169 |
| ELL | C6DB870020 | REV MT. CARMEL SUBD. | - | - | 1,635 | - | - | - | - | - | - | - | 1,635 |
| ELL | C6DB870022 | REV PA. SUGARMILL PLANTATION 6 | - | - | 42,980 | - | - | - | - | - | - | - | 42,980 |
| ELL | C6DB475951 | REV TL 1708 I/S 2 WP50-3A,2 TB | - | - | - | - | 8,154 | - | - | - | - | - | 8,154 |
| ELL | C6DB476026 | REV TL 413 I/S 500KVA 277/480 | - | - | - | - | 12,669 | - | - | - | - | - | 12,669 |
| ELL | C6DB476030 | REV TU 1923 INSTALL 1000KVA 27 | - | - | - | - | 19,457 | - | - | - | - | - | 19,457 |
| ELL | C6DB475960 | REV TU 2125 I/S 3 750 120/208 | - | - | - | - | 60,478 | - | - | - | - | - | 60,478 |
| ELL | C6DB476255 | REV TUL 1703 UG TO SERVE ST. B | - | - | - | - | 4,230 | - | - | - | - | - | 4,230 |
| ELL | C6DB475795 | REV TUL 1703/04 UG JOB TO SERV | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6DB476009 | REV TUL 1704 PROVIDE UG SERVIC | - | - | - | - | 12,202 | - | - | - | - | - | 12,202 |
| ELL | C6DB869995 | REV ZA 330AL RECON. AND INST N | - | - | 12,525 | - | - | - | - | - | - | - | 12,525 |
| ELL | C6DB869994 | REV ZA WINDSOR PLACE | - | - | 61,521 | - | - | - | - | - | - | - | 61,521 |
| ELL | C6DB869626 | REV,701ML,NIB,PROVIDE CUSTOMER | - | - | (140) | - | - | - | - | - | - | - | (140) |
| ELL | C6DB869976 | REV,852MA,MAU,INSTALL 5 PADMOU | - | - | 23,011 | - | - | - | - | - | - | - | 23,011 |
| ELL | C6DB870014 | REV,COT,871NI,INSTALL UNDERGRO | - | - | 6,777 | - | - | - | - | - | - | - | 6,777 |
| ELL | C6DB869922 | REV,LAFAYETTE,743CR,INSTALL UG | - | - | 44,055 | - | - | - | - | - | - | - | 44,055 |
| ELL | C6DB869879 | REV,MTN,760AV,INSTALL STREET L | - | - | 10,442 | - | - | - | - | - | - | - | 10,442 |
| ELL | C6DB869874 | REV,MTN,760AV,INSTALL UNDERGRO | - | - | 55,367 | - | - | - | - | - | - | - | 55,367 |
| ELL | C6DB869384 | REV,OPL,912SU,INSTALL UNDERGRO | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6DB476408 | REV_1705 OVERHEAD WORK FOR LAF | - | - | - | - | 152 | - | - | - | - | - | 152 |
| ELL | C6DB476061 | REV-BIENVILLE NET- T.V. EQUIP | - | - | - | - | 1,231 | - | - | - | - | - | 1,231 |
| ELL | C6DB476059 | REV-CIVIL-CBD-BIENVILLE NETWOR | - | - | - | - | 403 | - | - | - | - | - | 403 |
| ELL | C6DB476023 | REVENUE- CIVIL - DERBIGNY-FDR | - | - | - | - | 878 | - | - | - | - | - | 878 |
| ELL | C6PC449060 | REVENUE PRIVATE AREA LIGHTS | - | - | - | - | 11,039 | - | - | - | - | - | 11,039 |
| ELL | C6PC849060 | REVENUE PRIVATE AREA LIGHTS | - | - | 59,306 | - | - | - | - | - | - | - | 59,306 |
| ELL | C6PC149050 | REVENUE STREET LIGHTS | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PC349050 | REVENUE STREET LIGHTS | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PC849050 | REVENUE STREET LIGHTS | - | - | 23,687 | - | - | - | - | - | - | - | 23,687 |
| ELL | C6DB475761 | REVENUE,EO,1202,RECONDUCTOR & | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6DB476010 | REVENUE,EO,1602,I/S U.G.CONDUI | - | - | - | - | 527 | - | - | - | - | - | 527 |
| ELL | C6DB475863 | REVENUE,EO,1610,I/S SW.GEAR & | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6DB475977 | REVENUE,EO,1612,I/S POLES,U.G | - | - | - | - | 24,327 | - | - | - | - | - | 24,327 |
| ELL | C6DB476231 | REVENUE,EO,2345, I/S AUTO TRAN | - | - | - | - | 19,825 | - | - | - | - | - | 19,825 |
| ELL | C6DB476174 | REVENUE,EO,2345,I/S AUTO TRANS | - | - | - | - | 2,030 | - | - | - | - | - | 2,030 |
| ELL | C6DB476058 | REVENUE,EO,621,SET 3PHS T.P. T | - | - | - | - | 32,666 | - | - | - | - | - | 32,666 |
| ELL | C6DB476234 | REVENUE,EO,623,I/S 167KVA BANK | - | - | - | - | 53,475 | - | - | - | - | - | 53,475 |

Amounts may not add or tie to other schedules due to rounding.

Entergy Louisiana, LLC
Affiliate Per Book Billings by Project/Activity
For the Twelve Months Ended, June 30, 2011
Amounts in Dollars

| Billing Company | Project/Activity | Description | EAI | EEI | EGSLA | EMI | ENOI | EOI | ESI | ETI | SERI | SFI | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ELL | C6DB869767 | REVENUE,ROANOKE,580LT,PROVIDE | - | - | 64,575 | - | - | - | - | - | - | - | 64,575 |
| ELL | C6DB167565 | REVENUE: FAYETTEVILLE EXPRESS | 4,616 | - | - | - | - | - | - | - | - | - | 4,616 |
| ELL | C6DB475528 | REVENUE_ N.O. C.J. PEETE REDEV | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6DB475878 | REVENUE_N.O. C.J. PEETE REDEVE | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6DB476092 | REVENUE_N.O. LAFITTE REDEVELOP | - | - | - | - | 22,563 | - | - | - | - | - | 22,563 |
| ELL | C6DB476155 | REVENUE-CABLE PULLING - DERB-F | - | - | - | - | 23,364 | - | - | - | - | - | 23,364 |
| ELL | C6DB476015 | REVENUE-DERBIGNY-LCRC T.V.#201 | - | - | - | - | 1,052 | - | - | - | - | - | 1,052 |
| ELL | C6PPTSP584 | Richard - Habetz bay | - | - | 6,478 | - | - | - | - | - | - | - | 6,478 |
| ELL | C6PPTSG104 | Richard Sub: Install 500kV POD | - | - | 779,620 | - | - | - | - | - | - | - | 779,620 |
| ELL | F5PCZY323N | ROUTINE SPILL REPONSE (CS-NOPS | - | - | - | - | 11,607 | - | - | - | - | - | 11,607 |
| ELL | F4PCT95189 | ROUTINE ST. LT. MAINT. FOR CNO | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C1PPRPRC10 | RPC Pymt Proc - Brk Fx 2010 | - | - | - | - | - | - | 515 | - | - | - | 515 |
| ELL | C6PPTD3570 | S.Grenada-Add Tillatoba LN Bay | - | - | - | 2,245 | - | - | - | - | - | - | 2,245 |
| ELL | F3PCW14172 | SAFETY GROUP SERVICES | - | - | - | - | - | - | 261 | - | - | - | 261 |
| ELL | F5PPWE0450 | Safety Recognition Program - S | 7,609 | - | 435 | - | - | - | - | - | - | - | 8,045 |
| ELL | F5PCSAFTEE | SAFTEY TRAINING LOADER ELECTRI | - | - | 14 | - | 72 | - | 227 | - | - | - | 313 |
| ELL | F5PCSAFTEG | SAFTEY TRAINING LOADER GAS CUS | - | - | - | - | - | - | - | - | - | - | - |
| ELL | F3PPWE0375 | SAIC Designated Srv for Fossil | - | - | - | - | - | - | 1 | - | - | - | 1 |
| ELL | F3PCY31438 | SALT DOME SUBSTATION, GULF STA | - | - | 756 | - | - | - | - | - | - | - | 756 |
| ELL | F3PCY31439 | SANDY CREEK SUBSTATION, GULF S | - | - | 691 | - | - | - | - | - | - | - | 691 |
| ELL | F5PPSUPDIS | SC- Distribution Procurement | - | - | - | - | - | - | - | - | - | - | - |
| ELL | F3PCY31442 | SCENIC SUBSTATION, GULF STATES | - | - | 691 | - | - | - | - | - | - | - | 691 |
| ELL | C6PPTSF468 | Scott Sub T4 Animal Mitigation | - | - | 932 | - | - | - | - | - | - | - | 932 |
| ELL | C6PPTSG204 | Scott Sub: Upgrade 69kV Breake | - | - | 73,507 | - | - | - | - | - | - | - | 73,507 |
| ELL | C6PPTSF808 | Sears replace arrestors | - | - | 2,482 | - | - | - | - | - | - | - | 2,482 |
| ELL | F3PCFX2850 | SECRETARIAT LEGAL SUPPORT | - | - | - | - | - | - | 0 | - | - | - | 0 |
| ELL | C6PPTSF537 | seventy second add mos to line | - | - | 7,124 | - | - | - | - | - | - | - | 7,124 |
| ELL | F3PCW51400 | SFI FUEL OIL O&M | - | - | - | - | - | - | - | - | - | 13,142 | 13,142 |
| ELL | C6PPTSF630 | Shenandoah brk 381F fail | - | - | 18,165 | - | - | - | - | - | - | - | 18,165 |
| ELL | C6PPTSF606 | Shenandoah replace RTU | - | - | 33,137 | - | - | - | - | - | - | - | 33,137 |
| ELL | F3PCY30712 | SHERWOOD FOREST SUBSTATION, NE | - | - | - | - | 1,744 | - | - | - | - | - | 1,744 |
| ELL | C6PPTL6969 | Shield Rep: Devil Swamp-Port H | - | - | 12,864 | - | - | - | - | - | - | - | 12,864 |
| ELL | F3PCTDTR08 | SKILLS TRAINING - LOUISIANA EL | - | - | - | - | - | - | 26,633 | - | - | - | 26,633 |
| ELL | C6DB869794 | SL BR 445OK INSTALL 15 UG STRE | - | - | 10,143 | - | - | - | - | - | - | - | 10,143 |
| ELL | C6PPDW741N | SmartSynch Meters ENOI | - | - | - | - | 2,368 | - | - | - | - | - | 2,368 |
| ELL | C6PPDW741G | SmartSynch Meters LA EGSL | - | - | 57,394 | - | - | - | - | - | - | - | 57,394 |
| ELL | F3PC9095X1 | SOUTHPORT SUB.TOJOLIET SUB. | - | - | - | - | 1,099 | - | - | - | - | - | 1,099 |
| ELL | C6PPTSF506 | Southwood rep ct's south bus | - | - | 1,287 | - | - | - | - | - | - | - | 1,287 |
| ELL | C5DB475780 | SPAIN-N GALVEZ TO N MIRO | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPSP0014 | SPO Ouachita Elec Meter Common | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPSP0015 | SPO Ouachita Elec Meter Unit 1 | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPSP0016 | SPO Ouachita Elec Meter Unit 2 | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPSP0019 | SPO Ouachita Elec Meter Unit 3 | - | - | 132 | - | - | - | - | - | - | - | 132 |
| ELL | C6PPSP0030 | SPO Ouachita Fuel Meter Common | 819 | - | - | - | - | - | - | - | - | - | 819 |
| ELL | F3PCD10033 | SSS PRELIMINARY PLANNING, SCOP | - | - | - | - | - | - | 0 | - | - | - | 0 |
| ELL | C6PPTSF150 | St Gabriel-Upgrade Wintz Line | - | - | - | - | - | - | - | - | - | - | - |
| ELL | F3PCY31471 | STARHILL SUBSTATION, GULF STAT | - | - | 756 | - | - | - | - | - | - | - | 756 |
| ELL | C6PPTSK585 | Stauffer:Install Resistors for | - | - | 7,590 | - | - | - | - | - | - | - | 7,590 |
| ELL | C7PPSJ8417 | STM DMG EGSL 6/4/11 - 6/9/11 | - | - | 43,676 | - | - | - | - | - | - | - | 43,676 |
| ELL | C7PPSJ4085 | STM DMG TS BONNIE LA DIST OPS | - | - | - | - | 10,049 | - | - | - | - | - | 10,049 |
| ELL | C7PPSJ8399 | STM DMG TS BONNIE LA DIST OPS | - | - | 970 | - | - | - | - | - | - | - | 970 |
| ELL | C7PPSJ1196 | STORM DL ARK DIST EAI 06/10/09 | - | - | - | - | - | - | - | - | - | - | - |

Amounts may not add or tie to other schedules due to rounding.

Entergy Louisiana, LLC
Affiliate Per Book Billings by Project/Activity
For the Twelve Months Ended, June 30, 2011
Amounts in Dollars

| Billing Company | Project/Activity | Description | EAI | EEI | EGSLA | EMI | ENOI | EOI | ESI | ETI | SERI | SFI | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ELL | C7PPSJ1235 | STORM DL ARK DIST EAI 07/11/10 | 27,145 | - | - | - | - | - | - | - | - | - | 27,145 |
| ELL | C7PPSJ1250 | STORM DL EAI DIST 4/19/11-4/24 | 303,033 | - | - | - | - | - | - | - | - | - | 303,033 |
| ELL | C7PPSJ8397 | Storm Dmg EGSI 1/5/10 - 1/9/10 | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C7PPSJ4083 | STORM DMG ENOI 1/15 -1/18/10 | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C7PPSJ4080 | STORM DMG ENOI 12/12 - 12/15/0 | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C7PPSJ2462 | STORM DMG LA DIST ELL 1/8/11 I | - | - | - | - | - | - | 343 | - | - | - | 343 |
| ELL | C7PPSJ8403 | STORM DMG LA DIST OPS EGSI 6/7 | - | - | 3,409 | - | - | - | - | - | - | - | 3,409 |
| ELL | C7PPSJ4088 | STORM DMG LA DIST OPS ENOI ISS | - | - | - | - | 2,547 | - | - | - | - | - | 2,547 |
| ELL | C7PPSJ4089 | STORM DMG LA DIST OPS ENOI ISS | - | - | - | - | 814 | - | - | - | - | - | 814 |
| ELL | C7PPSJ4084 | STORM DMG LA DIST OPS ENOI-5/1 | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C8PPTL7416 | Storm6411: Nelson-Richard | - | - | 7,525 | - | - | - | - | - | - | - | 7,525 |
| ELL | C6PC849106 | STREET LIGHTING MAINT BLANKET | - | - | 132,088 | - | - | - | - | - | - | - | 132,088 |
| ELL | C6PPTSA703 | Strong, rpl fld B0853 MOD 115k | 9,232 | - | - | - | - | - | - | - | - | - | 9,232 |
| ELL | F5PCZSDEPT | SUPERVISION & SUPPORT - SUPPLY | - | - | - | - | - | - | 379 | - | - | - | 379 |
| ELL | F3PPFX3685 | Supply Chain Applications Supp | - | - | - | - | - | - | 8 | - | - | - | 8 |
| ELL | F5PCSCMMOM | SUPPLY CHAIN MATERIALS MGMNT O | 7,710 | - | 20,939 | 33,996 | 13,855 | - | - | 86 | - | - | 76,586 |
| ELL | C6PPTL7246 | SW10: L13 Compton-Elton | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPTL4222 | SW10: L86 Pauger-Midtown | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPTL4223 | SW10: L90 Ave C.-Midtown | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPTL7359 | SW11: Gloria-Denham Springs | - | - | 75,957 | - | - | - | - | - | - | - | 75,957 |
| ELL | C6PPTL7363 | SW11: Gloria-Sharp | - | - | 31,168 | - | - | - | - | - | - | - | 31,168 |
| ELL | C6PPTL7324 | SW2011: L13 Compton-Elton | - | - | 61,339 | - | - | - | - | - | - | - | 61,339 |
| ELL | C6PPTSF285 | Swan 278F replace DPU | - | - | 3,225 | - | - | - | - | - | - | - | 3,225 |
| ELL | F3PCY31481 | SWAN SUBSTATION, GULF STATES L | - | - | 346 | - | - | - | - | - | - | - | 346 |
| ELL | C6PPWS0534 | System Planning Pet Coke Repow | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPERG205 | Systemwide Ergonomics Capital | - | - | 246 | - | - | - | - | - | - | - | 246 |
| ELL | C6PPERG206 | Systemwide Ergonomics Capital | - | - | - | 135 | - | - | - | - | - | - | 135 |
| ELL | C6PC349703 | TACTICS: TARGET LINE DEVICES | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PC449703 | TACTICS: TARGET LINE DEVICES | - | - | - | - | 1,484 | - | - | - | - | - | 1,484 |
| ELL | C6PC849703 | TACTICS: TARGET LINE DEVICES | - | - | 15,910 | - | - | - | - | - | - | - | 15,910 |
| ELL | C6PC149708 | TACTICS: TARGETED CIRCUITS/FEE | 315 | - | - | - | - | - | - | - | - | - | 315 |
| ELL | C6PC449708 | TACTICS: TARGETED CIRCUITS/FEE | - | - | - | - | 5,599 | - | - | - | - | - | 5,599 |
| ELL | C6PC849708 | TACTICS: TARGETED CIRCUITS/FEE | - | - | 28,166 | - | - | - | - | - | - | - | 28,166 |
| ELL | C6DB869948 | TARG BR 387GL UPGRADE FEEDER | - | - | 27,621 | - | - | - | - | - | - | - | 27,621 |
| ELL | C6DB869541 | TARG BR 726GR INST. ALT AT L17 | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6DB869542 | TARG BR 726GR REPL. CONTROLS A | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6DB475745 | TARG TL 2026 CPTRAC# TU10-009T | - | - | - | - | 4,189 | - | - | - | - | - | 4,189 |
| ELL | C6DB476292 | TARG TU 2013 IMPROVEMENT TO FE | - | - | - | - | 3,696 | - | - | - | - | - | 3,696 |
| ELL | C6DB476296 | TARG TU 2027 RELIABILITY WORK- | - | - | - | - | 66,746 | - | - | - | - | - | 66,746 |
| ELL | C6DB771280 | TARGETED CIRCUIT 333NC | - | - | - | - | - | - | - | 253 | - | - | 253 |
| ELL | F3PPD10150 | TaxWare Support | - | - | - | - | - | - | 6 | - | - | - | 6 |
| ELL | F5PCZZ4040 | TEAMSHARE INCENTIVE COMPENSATI | 26,674 | 335 | 10,646 | 174 | 9,445 | - | 141 | 78 | - | - | 47,494 |
| ELL | C6PPTSF507 | tejac replace pin and cap on s | - | - | - | - | - | - | - | - | - | - | - |
| ELL | F3PCY31484 | TEJAS CO SUBSTATION, GULF STAT | - | - | 2,537 | - | - | - | - | - | - | - | 2,537 |
| ELL | E2PPSJ1221 | T-Grid Storm Damage EAI 1/26/1 | - | - | - | - | - | - | - | - | - | - | - |
| ELL | F5PPCOPPER | Theft of Copper Wire Transmiss | - | - | 11,255 | - | - | - | - | - | - | - | 11,255 |
| ELL | C6PPTSF236 | Thomas replace capacitor bank | - | - | 21,186 | - | - | - | - | - | - | - | 21,186 |
| ELL | C6PPTSF356 | Thomas replace failed bkr 905f | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPTSF587 | Thomas replace failed S&C swit | - | - | 10,142 | - | - | - | - | - | - | - | 10,142 |
| ELL | C6PPTLG001 | Thompson Creek 138kV DEMCO POD | - | - | 26,573 | - | - | - | - | - | - | - | 26,573 |
| ELL | C6PPTSF602 | Tiger add D400S processor | - | - | 8,941 | - | - | - | - | - | - | - | 8,941 |
| ELL | C6PPTSF525 | Tiger replace  failed fans t1 | - | - | - | - | - | - | - | - | - | - | - |

Amounts may not add or tie to other schedules due to rounding.

Entergy Louisiana, LLC
Affiliate Per Book Billings by Project/Activity
For the Twelve Months Ended, June 30, 2011
Amounts in Dollars

Exhibit SBT-22
2011 TX Rate Case
22 of 23

| Billing Company | Project/Activity | Description | EAI | EEI | EGSLA | EMI | ENOI | EOI | ESI | ETI | SERI | SFI | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ELL | C6PPTSF235 | Tiger replace breaker 14325 | - | - | 6,452 | - | - | - | - | - | - | - | 6,452 |
| ELL | C6PPTSF370 | Tiger replace cap bank and rel | - | - | 2,910 | - | - | - | - | - | - | - | 2,910 |
| ELL | C6PPTL7385 | Tools11: Procurement for Line | - | - | 15,197 | - | - | - | - | - | - | - | 15,197 |
| ELL | C7PPSJ1226 | TORNADOES DL ARK DIST EAI 04/3 | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C7PPSJ1251 | TORNADOES DL EAI DIST 4/25/11 | 205,428 | - | - | - | - | - | - | - | - | - | 205,428 |
| ELL | E1PCR73457 | TRAINING & PROCESS IMPROVEMENT | - | - | - | - | - | - | 28 | - | - | - | 28 |
| ELL | E2PPSJ1188 | Trans. EAI Ice Storm 1/26/2009 | - | - | - | - | - | - | - | - | - | - | - |
| ELL | F3PCF74195 | TRANSMISSION APPLICATION SUPPO | - | - | - | - | - | - | 0 | - | - | - | 0 |
| ELL | STPCTA0527 | TRANSMISSION CAPITAL SUSPENSE | - | - | - | - | - | - | 3,219 | - | - | - | 3,219 |
| ELL | F3PCTDDS24 | TRANSPORTATION- ELI | - | - | - | - | - | - | - | - | - | - | - |
| ELL | F3PCT53062 | TRANSPORTATION SERVICES | - | - | - | - | - | - | 250 | - | - | - | 250 |
| ELL | F3PCF23428 | TREASURY SYSTEMS | - | - | - | - | - | - | 9 | - | - | - | 9 |
| ELL | F3PCY30773 | TRICOU SUBSTATION, NEW ORLEANS | - | - | - | - | 857 | - | - | - | - | - | 857 |
| ELL | C6PPRA1255 | Tricou: Replace 23T4-6 | - | - | - | - | 10,460 | - | - | - | - | - | 10,460 |
| ELL | C6PPRA1311 | Tricou:Add Feeder Breaker (234 | - | - | - | - | 44,336 | - | - | - | - | - | 44,336 |
| ELL | C6PPRA1296 | Tricou:Feeders 2347,2325 Insta | - | - | - | - | 48,129 | - | - | - | - | - | 48,129 |
| ELL | C6PPTSF735 | Trousdale failed VCB 461F | - | - | 471 | - | - | - | - | - | - | - | 471 |
| ELL | C8PPKBN534 | Tulane Ave. Construct New Ware | - | - | - | - | 7,522 | - | - | - | - | - | 7,522 |
| ELL | F3PCY31591 | TURNERVILLE SUBSTATION, GULF S | - | - | 346 | - | - | - | - | - | - | - | 346 |
| ELL | C6DB869967 | UGC BR RECABLE INTERLINE | - | - | 10,929 | - | - | - | - | - | - | - | 10,929 |
| ELL | C6DB870041 | UGC BR RECABLE CALAIS OFFICE P | - | - | 14,461 | - | - | - | - | - | - | - | 14,461 |
| ELL | C6DB869796 | UGC BR RECABLE PERKINS VILLAGE | - | - | 9,056 | - | - | - | - | - | - | - | 9,056 |
| ELL | C6DB869849 | UGC BR RECABLE S. CHOCTAW | - | - | 4,460 | - | - | - | - | - | - | - | 4,460 |
| ELL | C6DB869580 | UGC BR RECABLE SUNBELT | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6DB869915 | UGC BR. RECABLE  ST. JAMES PLA | - | - | 16,245 | - | - | - | - | - | - | - | 16,245 |
| ELL | F3PCFCQUNX | UNIX SERVERS | - | - | - | - | - | - | 675 | - | - | - | 675 |
| ELL | C6PPTLACJ1 | Upgrade Addis to Cajun line se | - | - | 44,591 | - | - | - | - | - | - | - | 44,591 |
| ELL | F3PPE9974S | Utl ECI Continuing Improve ESI | - | - | - | - | - | - | 14 | - | - | - | 14 |
| ELL | F3PCY30785 | VALENCE SUBSTATION, NEW ORLEAN | - | - | - | - | - | - | - | - | - | - | - |
| ELL | F3PPZW5880 | VAR Testing Preparation | 1,990 | - | - | - | - | - | - | - | - | - | 1,990 |
| ELL | C6PPTD3272 | Voice Recorder - WestMonroeTOC | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPTSF282 | Ward Creek 247F replace DPU | - | - | 3,225 | - | - | - | - | - | - | - | 3,225 |
| ELL | C6PPTSF399 | Ward Creek enable UF 248F | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPTSF503 | Ward Creek repl failed battery | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPTSF279 | Ward Creek replace DPU 245F | - | - | 2,048 | - | - | - | - | - | - | - | 2,048 |
| ELL | C6PPTSF281 | Ward Creek replace DPU 246F | - | - | 2,048 | - | - | - | - | - | - | - | 2,048 |
| ELL | F3PPM08001 | WATERFORD 3 GENERAL SUPPORT | 37,555 | 32,037 | 209,073 | - | - | 39,464 | - | - | 2,561 | - | 320,690 |
| ELL | C6PPTSF594 | Waterloo add oil filter to T2 | - | - | 7,582 | - | - | - | - | - | - | - | 7,582 |
| ELL | F3PCY31515 | WATERLOO SUBSTATION, GULF STAT | - | - | 378 | - | - | - | - | - | - | - | 378 |
| ELL | F5PCD10093 | WEB DEVELOPMENT SUPPORT | - | - | - | - | - | - | 1 | - | - | - | 1 |
| ELL | C6PPTSF257 | Weiner install D20 | - | - | 398 | - | - | - | - | - | - | - | 398 |
| ELL | C6PPTSF527 | Weiner rep bkr330f and charger | - | - | - | - | - | - | - | - | - | - | - |
| ELL | F3PCY31517 | WEINER SUBSTATION, GULF STATES | - | - | 3,080 | - | - | - | - | - | - | - | 3,080 |
| ELL | C6PPTSG202 | Wells: Install 500kV Terminal | - | - | 93,554 | - | - | - | - | - | - | - | 93,554 |
| ELL | F3PCR73382 | West Monroe Customer Service C | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPTSF597 | Westdale install oil filter t2 | - | - | 6,734 | - | - | - | - | - | - | - | 6,734 |
| ELL | C6PPTSF523 | Westdale replace failed fans T | - | - | - | - | - | - | - | - | - | - | - |
| ELL | F3PCY31520 | WESTDALE SUBSTATION, GULF STAT | - | - | 691 | - | - | - | - | - | - | - | 691 |
| ELL | F3PPZG2811 | WG2 Turbine Outage O+M | - | - | 36,019 | - | - | - | - | - | - | - | 36,019 |
| ELL | F3PPZW7422 | WGC-Willow Glen Life Extension | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPTLF004 | WG-Wintz, Install L718 @ Wintz | - | - | 21 | - | - | - | - | - | - | - | 21 |
| ELL | C6PPTSF255 | Wilbert failed relay panel | - | - | - | - | - | - | - | - | - | - | - |

Amounts may not add or tie to other schedules due to rounding.

Entergy Louisiana, LLC
Affiliate Per Book Billings by Project/Activity
For the Twelve Months Ended, June 30, 2011
Amounts in Dollars

Exhibit SBT-22
2011 TX Rate Case
23 of 23

| Billing Company | Project/Activity | Description | EAI | EEI | EGSLA | EMI | ENOI | EOI | ESI | ETI | SERI | SFI | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ELL | C6PPTSF237 | Wilbert replace capacitor bank | - | - | 3,015 | - | - | - | - | - | - | - | 3,015 |
| ELL | C6PPTSWBS1 | Wilbert Sub - Addis-BC 230_Upg | - | - | 12,799 | - | - | - | - | - | - | - | 12,799 |
| ELL | C6PPTSP549 | Willow Glen 500 kV | - | - | 226 | - | - | - | - | - | - | - | 226 |
| ELL | C6PPTSF827 | Willow Glen fans and pumps 500 | - | - | 13,185 | - | - | - | - | - | - | - | 13,185 |
| ELL | C6PPTSF550 | willow glen repl switches 1301 | - | - | 7,158 | - | - | - | - | - | - | - | 7,158 |
| ELL | C6PPTSF549 | Willow Glen replace failed swi | - | - | 7,158 | - | - | - | - | - | - | - | 7,158 |
| ELL | F3PCY31527 | WILLOW GLEN SUBSTATION, GULF S | - | - | 2,109 | - | - | - | - | - | - | - | 2,109 |
| ELL | C6PPTSF524 | Willow Glen t9318 &t9319 fans | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPTSK281 | Willow Glen: Replace Breakers | - | - | 507,639 | - | - | - | - | - | - | - | 507,639 |
| ELL | C6PPTL5099 | Willow Glen-Conway New 230kV L | - | - | 3,728 | - | - | - | - | - | - | - | 3,728 |
| ELL | C6PPTSF149 | Willow Glen-Upgrade L718 Relay | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C7PPSJ1214 | WINTER STORM DL EAI DIST 01/26 | (39,417) | - | - | - | - | - | - | - | - | - | (39,417) |
| ELL | C7PPSJ8409 | WINTER STORM DMG LA 2/3 TO 2/5 | - | - | 19,027 | - | - | - | - | - | - | - | 19,027 |
| ELL | C6PPTLF003 | Wintz-St Gabriel,Install L728@ | - | - | 192 | - | - | - | - | - | - | - | 192 |
| ELL | C6PPTL7260 | Wood10: L312 Livonia-Wilbert | - | - | 12,225 | - | - | - | - | - | - | - | 12,225 |
| ELL | C6PPTL7326 | Wood11: L395 Willow Glen-Harel | - | - | 44,210 | - | - | - | - | - | - | - | 44,210 |
| ELL | F3PCN20520 | WORK MANAGEMENT SYSTEM (WMS) M | - | - | - | - | - | - | 3 | - | - | - | 3 |
| ELL | C6PPTL7234 | WP10: L296 Orange-Nelson | - | - | 571 | - | - | - | - | - | - | - | 571 |
| ELL | C6PPTL7329 | WP11: L249 Meaux-Scott | - | - | 3,887 | - | - | - | - | - | - | - | 3,887 |
| ELL | C6PPTL7334 | WP2011: L380 Capitol-Northdale | - | - | 5,105 | - | - | - | - | - | - | - | 5,105 |
| ELL | C6PPTL7333 | WP2011: L706 Belfair-Northdale | - | - | 24,036 | - | - | - | - | - | - | - | 24,036 |
| ELL | C6PPTL7338 | WP2011:L254 LCB-Colonial Welsh | - | - | 25,103 | - | - | - | - | - | - | - | 25,103 |
| ELL | C6PPTL7335 | WP2011:L378 Capitol-Louisiana | - | - | 12,206 | - | - | - | - | - | - | - | 12,206 |
| ELL | C6PPDSF010 | Youngsville Sub Land Purchase | - | - | 439 | - | - | - | - | - | - | - | 439 |
| ELL | C6PPDSF011 | Youngsville-New 138/13.2kV Sub | - | - | 933,568 | - | - | - | - | - | - | - | 933,568 |
| ELL | C6PPTSF231 | Zachary repl ls sw with S&C | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPTSF342 | Zachary replace failed bkr 827 | - | - | - | - | - | - | - | - | - | - | - |
| ELL | C6PPTSF284 | Zoar 718F replace DPU relay | - | - | 5,472 | - | - | - | - | - | - | - | 5,472 |
| ELL | F3PCY31536 | ZOAR SUBSTATION, GULF STATES L | - | - | 1,146 | - | - | - | - | - | - | - | 1,146 |
| | | | 5,099,316 | 47,715 | 20,361,227 | 634,939 | 8,644,097 | 39,417 | 298,132 | 375,755 | 2,474 | 13,127 | 35,516,200 |

Amounts may not add or tie to other schedules due to rounding.

Entergy Mississippi, Inc.
Affiliate Per Book Billings by Project/Activity
For the Twelve Months Ended, June 30, 2011
Amounts in Dollars

Exhibit SBT-23
2011 TX Rate Case
1 of 5

| Billing Company | Project/Activity | Description | EAI | EGSLA | ELL | EEI | ENOI | EOI | ESI | ETI | SERI | SFI | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| EMI | C1PPFD7287 | GAS SCADA Busn DR in Baton Rou | - | - | - | - | - | - | 788 | - | - | - | 788 |
| EMI | C1PPFI7287 | Dist-Gas SCADA Replacement | - | - | - | - | - | - | 2,851 | - | - | - | 2,851 |
| EMI | C1PPFIB175 | Strategic 1/0 DCS Rplmt 2010 | - | - | - | - | - | - | 21,043 | - | - | - | 21,043 |
| EMI | C1PPFIB203 | 21GTX Replacement 2011 | - | - | - | - | - | - | 4,535 | - | - | - | 4,535 |
| EMI | C1PPFIB211 | Integrated Voice Solutions-PBX | - | - | - | - | - | - | 7,591 | - | - | - | 7,591 |
| EMI | C1PPFIB213 | UPS Coverage Enhancement 2010 | - | - | - | - | - | - | - | - | - | - | - |
| EMI | C1PPFIB74A | Distributed Network Upgrades 2 | - | - | - | - | - | - | 4,291 | - | - | - | 4,291 |
| EMI | C1PPFII033 | Jackson/LR to Jackson DWDM | - | - | - | - | - | - | - | - | - | - | - |
| EMI | C1PPFII043 | Relocate Gretna Telecom Hub | - | - | - | - | - | - | 5,349 | - | - | - | 5,349 |
| EMI | C1PPFII056 | Backbone Ovebld Expnsn North D | - | - | - | - | - | - | 48,669 | - | - | - | 48,669 |
| EMI | C1PPFII061 | Video Conferencing Expansion | - | - | - | - | - | - | 557 | - | - | - | 557 |
| EMI | C1PPFII26B | CFI-Jackson Data Center Buildi | - | - | - | - | - | - | - | - | - | - | - |
| EMI | C1PPFII26C | CFI-Jackson IT Equipment | - | - | - | - | - | - | (445) | - | - | - | (445) |
| EMI | C1PPFII26P | CFI-Jackson TelecomApps-Call C | - | - | - | - | - | - | - | - | - | - | - |
| EMI | C1PPFII26W | CFI Jackson - Repl Gretna Voic | - | - | - | - | - | - | 5,722 | - | - | - | 5,722 |
| EMI | C1PPFII62P | IVS-PBX Replacement | - | - | - | - | - | - | 7,047 | - | - | - | 7,047 |
| EMI | C6DB167938 | TACTICS:TARGET DEVICE 8303N,SE | 998 | - | - | - | - | - | - | - | - | - | 998 |
| EMI | C6DB167986 | REPLACE B/O UG PRIMARY AND SPL | 223 | - | - | - | - | - | - | - | - | - | 223 |
| EMI | C6DB168272 | IMPROVE:  DEWITT SUBSTATION IM | 587 | - | - | - | - | - | - | - | - | - | 587 |
| EMI | C6DB275993 | TARGETED CIRCUIT N0958 | - | - | - | - | - | - | - | - | - | - | - |
| EMI | C6DB276002 | LOAD WINNSBORO N1203 CONVERT F | - | - | 49,815 | - | - | - | - | - | - | - | 49,815 |
| EMI | C6DB276095 | REV/N1008 TOWN OF DELHI WATER | - | - | 13,721 | - | - | - | - | - | - | - | 13,721 |
| EMI | C6DB276096 | HWY/N1053 RELOCATE FACILITIES | - | - | - | - | - | - | - | - | - | - | - |
| EMI | C6DB276128 | REV/N1005 DENBURY RESOURCES-55 | - | - | 3,352 | - | - | - | - | - | - | - | 3,352 |
| EMI | C6DB276182 | REV N3005 SERVICE TO PLUM TREE | - | - | 4,227 | - | - | - | - | - | - | - | 4,227 |
| EMI | C6DB276302 | IMPROVE, DELHI, N1005, RECONDU | - | - | 83,845 | - | - | - | - | - | - | - | 83,845 |
| EMI | C6DB276307 | BKBONE, Winnsboro, N2903, 2011 | - | - | 3,701 | - | - | - | - | - | - | - | 3,701 |
| EMI | C6DB276399 | REV/N1055 INSTALL SERVICE TO 2 | - | - | 5,611 | - | - | - | - | - | - | - | 5,611 |
| EMI | C6DB770685 | REMOVE OLD ANCHORS DUE TO IKE. | - | - | - | - | - | - | - | - | - | - | - |
| EMI | C6DB771057 | HU10-027C - INSTALL SINGLE PHA | - | - | - | - | - | - | - | 1,163 | - | - | 1,163 |
| EMI | C6DB869962 | IMP,760AV,MIL,RECONDUCTOR 4 MI | - | 294 | - | - | - | - | - | - | - | - | 294 |
| EMI | C6PC149000 | DISTB LINES REVENUE BLANKET NO | - | - | - | - | - | - | - | - | - | - | - |
| EMI | C6PC149020 | DIST. LINES REVENUE BLANKET - | 763 | - | - | - | - | - | - | - | - | - | 763 |
| EMI | C6PC149103 | DISTB. LINES IMP BLANKET-OTHER | 714 | - | - | - | - | - | - | - | - | - | 714 |
| EMI | C6PC149104 | DL BATCH JOB FOR FAILURE REPLA | (2,009) | - | - | - | - | - | - | - | - | - | (2,009) |
| EMI | C6PC149120 | JOINT USE - BELL | - | - | - | - | - | - | - | - | - | - | - |
| EMI | C6PC149140 | DL DESIGN JOBS - EMERGENCY REP | 606 | - | - | - | - | - | - | - | - | - | 606 |
| EMI | C6PC149180 | DISTRIBUTION TRUCK STOCK | 1,024 | - | - | - | - | - | - | - | - | - | 1,024 |
| EMI | C6PC149703 | TACTICS: TARGET LINE DEVICES | 613 | - | - | - | - | - | - | - | - | - | 613 |
| EMI | C6PC149706 | ENTERGY RENEWAL - LINE MAINTEN | 3,284 | - | - | - | - | - | - | - | - | - | 3,284 |
| EMI | C6PC249000 | DIST. LINES REVENUE BLANKET - | - | - | 97,605 | - | - | - | - | - | - | - | 97,605 |
| EMI | C6PC249020 | DIST. LINES REVENUE BLANKET - | - | - | 281,179 | - | - | - | - | - | - | - | 281,179 |
| EMI | C6PC249100 | DISTB LINES IMP BLANKET-POLE R | - | - | 74 | - | - | - | - | - | - | - | 74 |
| EMI | C6PC249103 | DISTB LINES IMP BLANKET-OTHER | - | - | 5,335 | - | - | - | - | - | - | - | 5,335 |
| EMI | C6PC249104 | DL BATCH JOBS FOR FAILURE REPL | - | - | 33,896 | - | - | - | - | - | - | - | 33,896 |
| EMI | C6PC249108 | NON-MANDATED RELOCATIONS ELL | - | - | 2,806 | - | - | - | - | - | - | - | 2,806 |
| EMI | C6PC249120 | JOINT USE - BELL | - | - | 3,324 | - | - | - | - | - | - | - | 3,324 |
| EMI | C6PC249150 | NON-TARGET CIRCUIT BACKBONE IM | - | - | 58,470 | - | - | - | - | - | - | - | 58,470 |
| EMI | C6PC249180 | DISTRIBUTION TRUCK STOCK | - | - | 146,915 | - | - | - | - | - | - | - | 146,915 |
| EMI | C6PC249703 | TACTICS: TARGET LINE DEVICES | - | - | 23,893 | - | - | - | - | - | - | - | 23,893 |
| EMI | C6PC249705 | DIST EQUIPMENT MAINTENAN ELI | - | - | 70 | - | - | - | - | - | - | - | 70 |

Amounts may not add or tie to other schedules due to rounding.

Entergy Mississippi, Inc.
Affiliate Per Book Billings by Project/Activity
For the Twelve Months Ended, June 30, 2011
Amounts in Dollars

Exhibit SBT-23
2011 TX Rate Case
2 of 5

| Billing Company | Project/Activity | Description | EAI | EGSLA | ELL | EEI | ENOI | EOI | ESI | ETI | SERI | SFI | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| EMI | C6PC249706 | ENTERGY RENEWAL - LINE MAINTEN | - | - | - | - | - | - | - | - | - | - | - |
| EMI | C6PC249708 | TACTICS: TARGETED CIRCUITS/FEE | - | - | - | - | - | - | - | - | - | - | - |
| EMI | C6PC449104 | DL BATCH JOBS FOR FAILURE REPL | - | - | - | - | - | - | - | - | - | - | - |
| EMI | C6PC449108 | NON-MANDATED RELOCATIONS ENOI | - | - | - | - | 255 | - | - | - | - | - | 255 |
| EMI | C6PC849020 | DIST. LINES REVENUE BLANKET - | - | 1,804 | - | - | - | - | - | - | - | - | 1,804 |
| EMI | C6PC849060 | REVENUE PRIVATE AREA LIGHTS | - | - | - | - | - | - | - | - | - | - | - |
| EMI | C6PC849104 | DL BATCH JOBS FOR FAILURE REPL | - | 1,160 | - | - | - | - | - | - | - | - | 1,160 |
| EMI | C6PC849106 | STREET LIGHTING MAINT BLANKET | - | 2,613 | - | - | - | - | - | - | - | - | 2,613 |
| EMI | C6PP149141 | DL Repair Public Inflicted Dam | 2,822 | - | - | - | - | - | - | - | - | - | 2,822 |
| EMI | C6PP249360 | Distr Avian Protection Pgm ELL | - | - | 194 | - | - | - | - | - | - | - | 194 |
| EMI | C6PP749114 | Distr Lines Failures Blanket T | - | - | - | - | - | - | - | 393 | - | - | 393 |
| EMI | C6PP749713 | D-Lines TACTICS Target Line De | - | - | - | - | - | - | - | 566 | - | - | 566 |
| EMI | C6PPAMIN03 | ENO AMI: Information Technolog | - | - | - | - | 1,392 | - | - | - | - | - | 1,392 |
| EMI | C6PPAMIN05 | ENO AMI: Meter Purchase & Inst | - | - | - | - | - | - | 120 | - | - | - | 120 |
| EMI | C6PPDW010A | 2010 Cap Tools D-Line Arkansas | 1,104 | - | - | - | - | - | - | - | - | - | 1,104 |
| EMI | C6PPDW010L | 2010 Cap Tools D-Line ELL | - | - | 1,104 | - | - | - | - | - | - | - | 1,104 |
| EMI | C6PPDW010T | 2010 Cap Tools/Equip Texas D-L | - | - | - | - | - | - | - | 1,104 | - | - | 1,104 |
| EMI | C6PPERG204 | Systemwide Ergonomics Capital | - | - | 947 | - | - | - | - | - | - | - | 947 |
| EMI | C6PPFIB20C | NS ANO PBX | - | - | - | - | - | - | 1,259 | - | - | - | 1,259 |
| EMI | C6PPN32598 | Purchase Computer Equipment - | - | - | - | - | - | 2,362 | - | - | - | - | 2,362 |
| EMI | C6PPN32721 | Grand Gulf Heavy Haul Path Mod | - | - | - | - | - | 203 | - | - | - | - | 203 |
| EMI | C6PPN32731 | `EPU - Radial Well Addition (# | - | - | - | - | - | 18,174 | - | - | - | - | 18,174 |
| EMI | C6PPRA1180 | McKnight:Replace 500kv Switch | - | 1,728 | - | - | - | - | - | - | - | - | 1,728 |
| EMI | C6PPRA1209 | Leeville:Replace S5753 | - | - | 1,200 | - | - | - | - | - | - | - | 1,200 |
| EMI | C6PPSHOPLA | Capture Transf Shop Cost LA | - | - | 278 | - | - | - | - | - | - | - | 278 |
| EMI | C6PPTD3269 | Voice Recorder - Jackson DOC | - | - | - | - | - | - | - | - | - | - | - |
| EMI | C6PPTD3270 | Voice Recorder - Jackson TOC | - | - | - | - | - | - | - | - | - | - | - |
| EMI | C6PPTD3306 | SMP FRONTEND EQUIP-BATON ROUGE | - | 6,465 | - | - | - | - | - | - | - | - | 6,465 |
| EMI | C6PPTGA098 | ELD EHV Rplc 500kV B9207 ABSw | 852 | - | - | - | - | - | - | - | - | - | 852 |
| EMI | C6PPTL4492 | Calhoun: Build new 115 kV line | - | - | 292 | - | - | - | - | - | - | - | 292 |
| EMI | C6PPTL4552 | Fund10: L160 Little Gypsy-Madi | - | - | 435 | - | - | - | - | - | - | - | 435 |
| EMI | C6PPTL5430 | +Lowe's - Line Relocation | - | - | - | - | - | - | - | - | - | - | - |
| EMI | C6PPTL5503 | Mabelvale - Mayflower, Repl 7 | 2,198 | - | - | - | - | - | - | - | - | - | 2,198 |
| EMI | C6PPTL7175 | Sterlington-IPCO 115: Upgrade | - | - | 7,290 | - | - | - | - | - | - | - | 7,290 |
| EMI | C6PPTL7176 | IPCO-Bastrop 115: Upgrade Line | - | - | 4,991 | - | - | - | - | - | - | - | 4,991 |
| EMI | C6PPTL7177 | Bastrop-Log Cabin 115: Upgr Li | - | - | 9,018 | - | - | - | - | - | - | - | 9,018 |
| EMI | C6PPTL7178 | WalnutGrove-Swartz 115: Upgr L | - | - | 499 | - | - | - | - | - | - | - | 499 |
| EMI | C6PPTL7179 | Frostkraft-Rilla 115: Upgr Ln | - | - | (542) | - | - | - | - | - | - | - | (542) |
| EMI | C6PPTL7181 | Sterlington: Auto #2 Tie Ln Up | - | - | - | - | - | - | - | - | - | - | - |
| EMI | C6PPTL7184 | CarsonRd-Delhi 115: Reloc at D | - | - | - | - | - | - | - | - | - | - | - |
| EMI | C6PPTL7191 | Str-Drew: Reloc Ln at Sterling | - | - | 1,748 | - | - | - | - | - | - | - | 1,748 |
| EMI | C6PPTL7192 | Str Gen 7a/b: Reroute Line | - | - | 1,872 | - | - | - | - | - | - | - | 1,872 |
| EMI | C6PPTL9378 | El Dor-Longwd: Cut-in Sarepta | - | - | 773 | - | - | - | - | - | - | - | 773 |
| EMI | C6PPTL9379 | Sarepta-Sarepta: Build New 115 | - | - | 889 | - | - | - | - | - | - | - | 889 |
| EMI | C6PPTL9575 | Ster-Crossett N:Cut-In to N.Ba | - | - | 3,524 | - | - | - | - | - | - | - | 3,524 |
| EMI | C6PPTL9582 | N.Bastrop Tap Line: Upgrade | - | - | 5,231 | - | - | - | - | - | - | - | 5,231 |
| EMI | C6PPTLA202 | ANO to Russellville North Line | - | - | - | - | - | - | - | - | - | - | - |
| EMI | C6PPTLA273 | Tap Line No. 262 to Bartholome | - | - | 1,593 | - | - | - | - | - | - | - | 1,593 |
| EMI | C6PPTLSWB1 | Line Cut-in for Baskin S/S (LA | - | - | 14,556 | - | - | - | - | - | - | - | 14,556 |
| EMI | C6PPTLZ001 | Sterlington: Relocate Gen #7c | - | - | 2,010 | - | - | - | - | - | - | - | 2,010 |
| EMI | C6PPTS2194 | Lewis Creek: Install Transform | - | - | - | - | - | - | - | 2,139 | - | - | 2,139 |

Amounts may not add or tie to other schedules due to rounding.

Entergy Mississippi, Inc.
Affiliate Per Book Billings by Project/Activity
For the Twelve Months Ended, June 30, 2011
Amounts in Dollars

| Billing Company | Project/Activity | Description | EAI | EGSLA | ELL | EEI | ENOI | EOI | ESI | ETI | SERI | SFI | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| EMI | C6PPTS7374 | Delhi: Install 36MVAR Cap Bank | - | - | - | - | - | - | - | - | - | - | - |
| EMI | C6PPTS9370 | Sarepta 345kV: Build New Sw. S | - | - | 14,398 | - | - | - | - | - | - | - | 14,398 |
| EMI | C6PPTS9377 | Sarepta 115kV: Install New Lin | - | - | 14,778 | - | - | - | - | - | - | - | 14,778 |
| EMI | C6PPTS9575 | N.Bastrop 115kV Expand Sub | - | - | 39,025 | - | - | - | - | - | - | - | 39,025 |
| EMI | C6PPTSANG1 | LAGEN Sterlington (Koch): Inst | - | - | 8,860 | - | - | - | - | - | - | - | 8,860 |
| EMI | C6PPTSK057 | Lucky: Install 32.4MVAR Cap Ba | - | - | - | - | - | - | - | - | - | - | - |
| EMI | C6PPTSK107 | Sterlington 115: Bus Split/Upg | - | - | 26,271 | - | - | - | - | - | - | - | 26,271 |
| EMI | C6PPTSK108 | Sterlington 500: Replace Auto | - | - | 1,230 | - | - | - | - | - | - | - | 1,230 |
| EMI | C6PPTSK109 | Bastrop 115: Bkr/Sw/Relay Upgr | - | - | 5,483 | - | - | - | - | - | - | - | 5,483 |
| EMI | C6PPTSK110 | Walnut Grove 115: Modify Fiber | - | - | - | - | - | - | - | - | - | - | - |
| EMI | C6PPTSK111 | Riser 115kV: Add Cap Bank | - | - | 1,805 | - | - | - | - | - | - | - | 1,805 |
| EMI | C6PPTSK112 | Swartz 115: Str Ln Relay & Sw | - | - | 340 | - | - | - | - | - | - | - | 340 |
| EMI | C6PPTSK113 | Rilla 115: Repl Switch R1896 | - | - | - | - | - | - | - | - | - | - | - |
| EMI | C6PPTSK117 | Oak Grove 115: Bastrop Ln Rela | - | - | 1,354 | - | - | - | - | - | - | - | 1,354 |
| EMI | C6PPTSK131 | Delhi 115: Install Reactors | - | - | 9,714 | - | - | - | - | - | - | - | 9,714 |
| EMI | C6PPTSK143 | Frostkraft: Upg Ster Ln Relayi | - | - | 442 | - | - | - | - | - | - | - | 442 |
| EMI | C6PPTSK163 | Tallulah 115: Upgr BW Line Rel | - | - | 3,255 | - | - | - | - | - | - | - | 3,255 |
| EMI | C6PPTSK192 | NORTH BASTROP BREAKER | - | - | - | - | - | - | - | - | - | - | - |
| EMI | C6PPTSK586 | Minden: Replace 3 Breakers | - | - | 3,148 | - | - | - | - | - | - | - | 3,148 |
| EMI | C6PPTSP987 | Merlin sub: build new sub | - | - | - | - | - | - | - | 188 | - | - | 188 |
| EMI | C6PPTSWIN1 | Replace Transformer at Winnsbo | - | - | 4,733 | - | - | - | - | - | - | - | 4,733 |
| EMI | C6PPTSWIN2 | Inst. 20MVA Auto & 2 Feeder Br | - | - | 4,725 | - | - | - | - | - | - | - | 4,725 |
| EMI | C6PPTSZ003 | Sterlington:Relocate 7C to Bus | - | - | 17,979 | - | - | - | - | - | - | - | 17,979 |
| EMI | C7PPSJ1185 | ICE STORM DL ARK DIST EAI 01/2 | (3,771) | - | - | - | - | - | - | - | - | - | (3,771) |
| EMI | C7PPSJ1214 | WINTER STORM DL EAI DIST 01/26 | 724 | - | - | - | - | - | - | - | - | - | 724 |
| EMI | C7PPSJ1250 | STORM DL EAI DIST 4/19/11-4/24 | 91,458 | - | - | - | - | - | - | - | - | - | 91,458 |
| EMI | C7PPSJ1251 | TORNADOES DL EAI DIST 4/25/11 | 255 | - | - | - | - | - | - | - | - | - | 255 |
| EMI | C7PPSJ2431 | STORM DMG ELI 12/24 - 12/27/09 | - | - | - | - | - | - | - | - | - | - | - |
| EMI | C7PPSJ2432 | STORM DMG ELI 1/4 - 1/5/10 | - | - | - | - | - | - | - | - | - | - | - |
| EMI | C7PPSJ2436 | STORM DM LA ELL 1/29/10 - 2/1/ | - | - | - | - | - | - | - | - | - | - | - |
| EMI | C7PPSJ2437 | Storm dmg La ELI 2 12 10 Snow | - | - | - | - | - | - | - | - | - | - | - |
| EMI | C7PPSJ2438 | ELI_LA WINTER STORM 3/1 - 3/2/ | - | - | - | - | - | - | - | - | - | - | - |
| EMI | C7PPSJ2439 | STORM DMG LA ISSUED ELI 3/22/1 | - | - | - | - | - | - | - | - | - | - | - |
| EMI | C7PPSJ2441 | N La Tornado & Storms 4/23-4/2 | - | - | - | - | - | - | - | - | - | - | - |
| EMI | C7PPSJ2443 | STORM DMG ELI 5/1 thru 5/3/10 | - | - | - | - | - | - | - | - | - | - | - |
| EMI | C7PPSJ2444 | STM DMG TS Bonnie LA DIST OPS | - | - | 345 | - | - | - | - | - | - | - | 345 |
| EMI | C7PPSJ2445 | ELL DIST STORM 05/15 - 05/17/1 | - | - | - | - | - | - | - | - | - | - | - |
| EMI | C7PPSJ2446 | ELL DIST STORM 05/20 - 05/21/1 | - | - | - | - | - | - | - | - | - | - | - |
| EMI | C7PPSJ2450 | STORM DMG ELL 6/3/10 TO 6/6/10 | - | - | - | - | - | - | - | - | - | - | - |
| EMI | C7PPSJ2452 | ELL DIST STORM 06/18 - 06/20/1 | - | - | - | - | - | - | - | - | - | - | - |
| EMI | C7PPSJ2453 | STORM DMG ELL 6/28/10 to 6/29/ | - | - | 2,513 | - | - | - | - | - | - | - | 2,513 |
| EMI | C7PPSJ2454 | STORM DMG LA 7/16 to 7/17 | - | - | 745 | - | - | - | - | - | - | - | 745 |
| EMI | C7PPSJ2455 | STORM DMG ELL 8-4 THRU 8-5-10 | - | - | 7,265 | - | - | - | - | - | - | - | 7,265 |
| EMI | C7PPSJ2458 | STORM DMG ELL  8/22/10 THRU 8/ | - | - | 7,999 | - | - | - | - | - | - | - | 7,999 |
| EMI | C7PPSJ2459 | STORM DMG LA DIST ELL ISSUE 12 | - | - | 9,381 | - | - | - | - | - | - | - | 9,381 |
| EMI | C7PPSJ2462 | STORM DMG LA DIST ELL 1/8/11 I | - | - | 6,909 | - | - | - | - | - | - | - | 6,909 |
| EMI | C7PPSJ2463 | STORM DMG LA 2-1-11 | - | - | 29,322 | - | - | - | - | - | - | - | 29,322 |
| EMI | C7PPSJ2468 | STORM DMG LA DIST  ELL (3/8 -3 | - | - | 4,360 | - | - | - | - | - | - | - | 4,360 |
| EMI | C7PPSJ2469 | STORM DMG LA DIST ELL ISS 3/30 | - | - | 2,944 | - | - | - | - | - | - | - | 2,944 |
| EMI | C7PPSJ2470 | STORM DMG LA DIST ELL 4 4 - 4 | - | - | 42,776 | - | - | - | - | - | - | - | 42,776 |
| EMI | C7PPSJ2474 | STORM Dmg ELL 4/25 to 4/27/11 | - | - | 57,502 | - | - | - | - | - | - | - | 57,502 |

Amounts may not add or tie to other schedules due to rounding.

Entergy Mississippi, Inc.
Affiliate Per Book Billings by Project/Activity
For the Twelve Months Ended, June 30, 2011
Amounts in Dollars

| Billing Company | Project/Activity | Description | EAI | EGSLA | ELL | EEI | ENOI | EOI | ESI | ETI | SERI | SFI | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| EMI | C7PPSJ2475 | ELL-LA STORM (5/13 - 5/14/11) | - | - | 4,993 | - | - | - | - | - | - | - | 4,993 |
| EMI | C7PPSJ2476 | ELL-LA STORM (6/4 - 6/6/11) | - | - | 7,293 | - | - | - | - | - | - | - | 7,293 |
| EMI | C7PPSJ2479 | STORM DMG LA ELI (Jun 10-13, 2 | - | - | 876 | - | - | - | - | - | - | - | 876 |
| EMI | C7PPSJ2480 | STORM DMG LA 6/21-6/22 ELL Sto | - | - | 7,217 | - | - | - | - | - | - | - | 7,217 |
| EMI | C8PPTL5522 | Newport - ISES, Repl STR#44 | 266 | - | - | - | - | - | - | - | - | - | 266 |
| EMI | E1PCN01613 | U1-Turbine Generator & Auxilia | - | - | - | - | - | - | - | - | - | - | - |
| EMI | E1PPNG6772 | OUTAGE GENERAL SUPPORT | - | - | - | - | - | - | - | - | - | - | - |
| EMI | E1PPNG6834 | OUTAGE ELECTRICAL MAINTENANCE | - | - | - | - | - | - | - | - | - | - | - |
| EMI | E1PPNXCRP2 | Unwind - office | - | - | - | 1,543 | - | - | - | - | - | - | 1,543 |
| EMI | E2PPSJ1188 | Trans. EAI Ice Storm 1/26/2009 | - | - | - | - | - | - | - | - | - | - | - |
| EMI | E2PPSJ1221 | T-Grid Storm Damage EAI 1/26/1 | - | - | - | - | - | - | - | - | - | - | - |
| EMI | E2PPSJSCC1 | System Command Center costs | - | - | - | - | - | - | 1,824 | - | - | - | 1,824 |
| EMI | F3PCF99180 | CORP. COMPLIANCE TRACKING SYS | - | - | - | - | - | - | 42 | - | - | - | 42 |
| EMI | F3PCF99182 | RECORDS MANAGEMENT | - | - | - | - | - | - | 42 | - | - | - | 42 |
| EMI | F3PCFIBERO | OPER. & MAINT. OF FIBER OPTIC | - | - | - | 852 | - | - | 5,741 | - | - | - | 6,593 |
| EMI | F3PCFT9023 | ETC FIBER O&M SUPPORT | - | - | - | 22,991 | - | - | - | - | - | - | 22,991 |
| EMI | F3PCHRENUC | HR SERVICES - ENUCO - ALL | - | - | - | - | - | - | 1,494 | - | - | - | 1,494 |
| EMI | F3PCHREOIX | HUMAN RESOURCE SERVICES - EOI | - | - | - | - | - | - | 872 | - | - | - | 872 |
| EMI | F3PCN14999 | GRAND GULF GENERAL SUPPORT | - | - | - | - | - | 11,606 | - | - | - | - | 11,606 |
| EMI | F3PCN91683 | U1 MECHANICAL MAINTENANCE | - | - | - | - | - | - | - | - | - | - | - |
| EMI | F3PCR12573 | Nat'l Accts Sales & Mktg | - | - | - | - | - | - | 126 | - | - | - | 126 |
| EMI | F3PCR29324 | REVENUE ASSURANCE - ADM. | - | - | - | - | - | - | 47,529 | - | - | - | 47,529 |
| EMI | F3PCR73323 | FIELD METER READING SUPPORT, A | - | - | - | - | - | - | 128 | - | - | - | 128 |
| EMI | F3PCR73328 | FIELD METER READING SUPPORT - | 12,816 | - | - | - | - | - | - | - | - | - | 12,816 |
| EMI | F3PCR73330 | FIELD METER READING - ELI | - | - | 60,729 | - | - | - | - | - | - | - | 60,729 |
| EMI | F3PCR73332 | FIELD METER READING - ENOI | - | - | - | - | - | - | 3,669 | - | - | - | 3,669 |
| EMI | F3PCR73374 | Jackson Customer Service Cente | - | - | - | - | - | - | 4,449 | - | - | - | 4,449 |
| EMI | F3PCR73401 | FIELD METER READING - EGSI -LA | - | 4,485 | - | - | - | - | - | - | - | - | 4,485 |
| EMI | F3PCT53062 | TRANSPORTATION SERVICES | - | - | - | - | - | - | 169 | - | - | - | 169 |
| EMI | F3PCT53130 | OPN,MGR, CLAIMS MANAGEMENT | - | - | - | - | - | - | 698 | - | - | - | 698 |
| EMI | F3PCTDDS26 | CUSTOMER SERVICE SUPPORT - O&M | - | - | - | - | - | - | 84 | - | - | - | 84 |
| EMI | F3PCTDPM01 | SYS SERV PROJECT MANAGEMENT - | - | - | - | - | - | - | 18,289 | - | - | - | 18,289 |
| EMI | F3PCTTDS20 | SUBSTATION MAINTENANCE | - | - | - | - | - | - | 18,278 | - | - | - | 18,278 |
| EMI | F3PCTTDS38 | TRANSMISSION O&M MGMT/SUPPORT | - | - | - | - | - | - | 10,122 | - | - | - | 10,122 |
| EMI | F3PPCPLITL | 2009 Fall Lighting Campaign EL | - | - | - | - | - | - | 177 | - | - | - | 177 |
| EMI | F3PPCPLITM | 2009 Fall Lighting Campaign EM | - | - | - | - | - | - | 11,909 | - | - | - | 11,909 |
| EMI | F3PPN20713 | ESI Nuclear - Site Split | - | - | - | - | - | - | 1,171 | - | - | - | 1,171 |
| EMI | F3PPR103LA | CUSTOMER ACCT SVCS- LA (L,LG,N | - | - | - | - | - | - | 337 | - | - | - | 337 |
| EMI | F3PPREALL2 | Residential Market Dev - ALL J | - | - | - | - | - | - | 2 | - | - | - | 2 |
| EMI | F3PPTDDS37 | TRANSPORTATION - EMI | - | - | - | - | - | - | 277 | - | - | - | 277 |
| EMI | F3PPTDERSD | MISO Transition ALL OPCO | - | - | - | - | - | - | 5,267 | - | - | - | 5,267 |
| EMI | F3PPZB0124 | LG WG2 On line expenditures 08 | - | - | - | - | - | - | - | - | - | - | - |
| EMI | F3PPZB0125 | LG WG4 On line Expenditures 08 | - | - | - | - | - | - | - | - | - | - | - |
| EMI | F3PPZB0148 | Lynch - 2009 Baseline | - | - | - | - | - | - | - | - | - | - | - |
| EMI | F3PPZG2515 | LA1 5A CT Major Outage 2Q10 | - | - | - | - | - | - | - | - | - | - | - |
| EMI | F4PPIBEW9A | IBEW 2286-C LV OF ABSENCE TRAH | - | 6,155 | - | - | - | - | - | - | - | - | 6,155 |
| EMI | F5PCCSS17L | PS MANAGE TRANSPORTATION | - | - | 395 | - | - | - | - | - | - | - | 395 |
| EMI | F5PCFPR008 | 5% SURCHARGE ON SERVICES TO EP | - | - | - | - | - | - | - | - | - | - | - |
| EMI | F5PCFPR062 | 5% SURCHARGE ON SERVICES TO ET | - | - | - | 1,197 | - | - | - | - | - | - | 1,197 |
| EMI | F5PCLIHPPC | CONSUMER EDUCATION PROGRAMS | - | - | - | - | - | - | 1,400 | - | - | - | 1,400 |
| EMI | F5PCQQ4345 | WARREN POWER-O&M | - | - | - | - | - | - | - | - | - | - | - |

Amounts may not add or tie to other schedules due to rounding.

Entergy Mississippi, Inc.
Affiliate Per Book Billings by Project/Activity
For the Twelve Months Ended, June 30, 2011
Amounts in Dollars

Exhibit SBT-23
2011 TX Rate Case
5 of 5

| Billing Company | Project/Activity | Description | EAI | EGSLA | ELL | EEI | ENOI | EOI | ESI | ETI | SERI | SFI | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| EMI | F5PCSCMMOM | SUPPLY CHAIN MATERIALS MGMNT O | 5,330 | - | 4,420 | - | - | - | - | - | - | - | 9,750 |
| EMI | F5PCTTDS58 | TRANSMISSION OPERATIONS | - | - | - | - | - | - | 58 | - | - | - | 58 |
| EMI | F5PCZFCTRN | REGULATD NON-BACKBONE FIBER | - | - | - | - | - | - | - | - | - | - | - |
| EMI | F5PCZFVMAC | VOICE & VIDEO MOVES ADDS CHANG | - | - | - | - | - | - | - | - | - | - | - |
| EMI | F5PCZPTOXX | PAID TIME OFF | 944 | 146 | 66 | - | - | 73 | 563 | 3 | - | 196 | 1,991 |
| EMI | F5PCZUBENF | BENEFITS | (1,438) | 763 | (145) | - | - | (87) | (874) | 5 | - | 190 | (1,586) |
| EMI | F5PCZUPRTX | PAYROLL TAX | (103) | (22) | (94) | (20) | (7) | (10) | (113) | (0) | (7) | 20 | (356) |
| EMI | F5PCZVDEPT | SUPERVISION & SUPPORT - TRANSM | - | - | - | - | - | - | - | - | - | - | - |
| EMI | F5PCZZ4040 | TEAMSHARE INCENTIVE COMPENSATI | 2,827 | 140 | 158 | 120 | (8) | 40 | 195 | 2 | (8) | 134 | 3,602 |
| EMI | F5PCZZ4070 | IMPACT AWARDS | 42 | - | 43 | - | 87 | - | 5,189 | - | - | - | 5,362 |
| EMI | F5PP5PERCX | 5% Surcharge | - | - | - | 77 | - | - | - | - | - | - | 77 |
| EMI | F5PPCOPPER | Theft of Copper Wire Transmiss | - | 3,507 | - | - | - | - | - | - | - | - | 3,507 |
| EMI | F5PPICCCSV | ICC - Customer Service | - | - | - | - | - | - | 2,100 | - | - | - | 2,100 |
| EMI | F5PPWE0450 | Safety Recognition Program - S | 434 | - | - | - | - | - | - | - | - | - | 434 |
| EMI | F5PPZFVOIP | Voice Over IP Support | - | - | - | - | - | - | - | - | - | - | - |
| EMI | F5PPZUWELL | Entergy Wellness Program | - | - | - | - | - | - | - | - | - | - | - |
| EMI | GINP | Purc Gen Invent Items-Passport | 2,448,093 | 41,459 | 1,372,640 | - | 7,557 | - | - | 1,563,200 | - | - | 5,432,949 |
| EMI | HVAC | Repair HVAC Systems | - | - | - | - | - | - | - | - | - | - | - |
| EMI | MTBS | Repair Buildings | 2,572 | - | - | - | - | - | - | - | - | - | 2,572 |
| EMI | SAPCP25910 | PC&R OVERHEAD POOL CHARGES | - | - | - | - | - | - | (1,075) | 121 | - | - | (955) |
| EMI | SAPCPCPLAP | PC&R OVERHEAD POOL | 88 | - | - | - | - | - | - | - | - | - | 88 |
| EMI | SAPCPCPLGL | PC&R OVERHEAD POOL - EGSI - EL | - | 108 | - | - | - | - | - | - | - | - | 108 |
| EMI | SAPCPCPLLP | PC&R OVERHEAD POOL | - | - | (10,047) | - | - | - | - | - | - | - | (10,047) |
| EMI | SAPCPCPLNE | PC&R OVERHEAD POOL - ENOI - EL | - | - | - | - | (0) | - | - | - | - | - | (0) |
| EMI | SAPCPCPLNG | PC&R OVERHEAD POOL - ENOI - GA | - | - | - | - | - | - | - | - | - | - | - |
| EMI | SDPCTA0528 | DISTRIBUTION CAPITAL SUSPENSE | - | - | - | - | - | - | 27,433 | - | - | - | 27,433 |
| EMI | SFPCE29000 | FOSSIL CAPITAL SUSPENSE - EAI | 2,828 | - | - | - | - | - | - | - | - | - | 2,828 |
| EMI | SNPCN30001 | Capital Overheads - Grand Gulf | - | - | - | - | - | (21) | - | - | - | - | (21) |
| EMI | STAF | Dev,Coord&Mge Staff Level | - | - | - | - | - | - | - | - | - | - | - |
| EMI | STPCT60006 | EMI Capital Suspense Transmiss | - | - | - | - | - | - | 328 | - | - | - | 328 |
| EMI | STPCTA0527 | TRANSMISSION CAPITAL SUSPENSE | - | - | - | - | - | - | 27,433 | - | - | - | 27,433 |
| EMI | STPPTX7900 | Texas Trans Capital Suspense | - | - | - | - | - | - | - | (250) | - | - | (250) |
| EMI | XFAB | Provide Plant Office Support | 4,874 | - | - | - | - | - | - | - | - | - | 4,874 |
| EMI | XFAD | Manage Genl Plant Operations | 563 | - | - | - | - | - | - | - | - | - | 563 |
| EMI | XFAG | Manage Plant Environmental Ops | 119 | - | - | - | - | - | - | - | - | - | 119 |
| EMI | XKAA | Provide Maintenance Supervisn | 34,390 | - | - | - | - | - | - | - | - | - | 34,390 |
| EMI | XLAV | Repair Other Structures | 592 | - | - | - | - | - | - | - | - | - | 592 |
| EMI | XMAR | Repair CEMS Equipment | - | - | - | - | - | - | - | 1 | - | - | 1 |
| EMI | XMCW | Maintain Air Preheater System | - | - | - | - | - | - | - | - | - | - | - |
| EMI | XNAA | Maintain Accessory Electric Eq | 535 | - | - | - | - | - | - | - | - | - | 535 |
| EMI | XPAA | Maintain Plant Communictn Syst | 1,204 | - | - | - | - | - | - | - | - | - | 1,204 |
| EMI | XQAA | Provide Operations Supervision | 29,488 | - | - | - | - | - | - | - | - | - | 29,488 |
| EMI | XVAA | Operate & Maintain Fuel Oil Eq | - | - | - | - | - | - | - | - | - | 7,374 | 7,374 |
| | | | 2,648,907 | 70,805 | 2,653,885 | 26,760 | 9,277 | 32,340 | 304,709 | 1,568,632 | (15) | 7,914 | 7,323,214 |

Amounts may not add or tie to other schedules due to rounding.

Entergy New Orleans, Inc.
Affiliate Per Book Billings by Project/Activity
For the Twelve Months Ended, June 30, 2011
Amounts in Dollars

Exhibit SBT-24
2011 TX Rate Case
1 of 5

| Billing Company | Project/Activity | Description | EAI | EGSLA | ELL | EMI | ESI | ETI | SERI | SFI | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|
| ENOI | F3PPCPLITG | 2009 Fall Lighting Campaign EG | - | - | - | - | 32 | - | - | - | 32 |
| ENOI | F3PPCPLITL | 2009 Fall Lighting Campaign EL | - | - | - | - | 240 | - | - | - | 240 |
| ENOI | ATTR | Attend Training | - | - | - | - | - | - | - | - | - |
| ENOI | F5PCZUBENF | BENEFITS | 38 | (1,183) | 3,466 | (141) | 214 | - | - | (15) | 2,379 |
| ENOI | C6PPTLK007 | Bhmn-Port Nickel move poles fo | - | - | 182 | - | - | - | - | - | 182 |
| ENOI | C6PPTSK199 | Bogalusa:Replace Bkr S2520 | - | - | - | - | - | - | - | - | - |
| ENOI | F5PPBPOILS | BP Oil Spill | - | - | 557 | - | - | - | - | - | 557 |
| ENOI | C6DB869549 | BR STREET LIGHTS BLITZ | - | - | - | - | - | - | - | - | - |
| ENOI | SDPCM79005 | CAP SUSPENSE, DISTR ESI, METRO | - | - | - | - | - | - | - | - | - |
| ENOI | SDPCT30070 | CAPITAL SUSPENSE, DISTR WIRES, | - | - | 98,578 | - | - | - | - | - | 98,578 |
| ENOI | CUGD | Comp&Updt Gas Dist Maps&Prints | - | 125 | - | - | - | - | - | - | 125 |
| ENOI | F5PCLIHPPC | CONSUMER EDUCATION PROGRAMS | - | - | - | - | 1,302 | - | - | - | 1,302 |
| ENOI | F3PCF99180 | CORP. COMPLIANCE TRACKING SYS | - | - | - | - | 67 | - | - | - | 67 |
| ENOI | C6DB869749 | CUST BR RIVER CENTER GALLERIA | - | 31,382 | - | - | - | - | - | - | 31,382 |
| ENOI | C6DB275997 | CUST MERAUX W7133 RELOCATE POW | - | - | - | - | - | - | - | - | - |
| ENOI | C6DB276157 | CUST RE A0313 RELC. OF U/G FAC | - | - | 87 | - | - | - | - | - | 87 |
| ENOI | C6DB276199 | CUST RE BO516 RELOCATE PORTION | - | - | 25,337 | - | - | - | - | - | 25,337 |
| ENOI | F3PCR10360 | CUSTOMER ACCOUNTING | - | - | - | - | - | - | - | - | - |
| ENOI | F3PPR103LA | CUSTOMER ACCT SVCS- LA (L,LG,N | - | - | - | - | 41 | - | - | - | 41 |
| ENOI | C6PPMR3827 | Cytec; repl. 115 kv arresters | - | - | 81 | - | - | - | - | - | 81 |
| ENOI | BDCW | Disconn & Reconn El Met-Nonpay | - | - | 183 | - | - | - | - | - | 183 |
| ENOI | C6PC249705 | DIST EQUIPMENT MAINTENAN ELI | - | - | 207 | - | - | - | - | - | 207 |
| ENOI | C6PPDS9971 | Dist Wintz New 230/34.5 EGSILA | - | 2,621 | - | - | - | - | - | - | 2,621 |
| ENOI | C6PC149020 | DIST. LINES REVENUE BLANKET - | 265 | - | - | - | - | - | - | - | 265 |
| ENOI | C6PC249000 | DIST. LINES REVENUE BLANKET - | - | - | 8,913 | - | - | - | - | - | 8,913 |
| ENOI | C6PC249020 | DIST. LINES REVENUE BLANKET - | - | - | 3,539 | - | - | - | - | - | 3,539 |
| ENOI | C6PC249200 | DISTB LINES BLANKET-GOVT MAND. | - | - | 1,207 | - | - | - | - | - | 1,207 |
| ENOI | C6PC249103 | DISTB LINES IMP BLANKET-OTHER | - | - | 6,659 | - | - | - | - | - | 6,659 |
| ENOI | C6PC249100 | DISTB LINES IMP BLANKET-POLE R | - | - | 14,100 | - | - | - | - | - | 14,100 |
| ENOI | C6PC349100 | DISTB. LINES BLANKET POLE REPL | - | - | - | 545 | - | - | - | - | 545 |
| ENOI | F3PCTTDS47 | DISTR O&M EXPENSE - LOUISIANA | - | - | - | - | 1,532 | - | - | - | 1,532 |
| ENOI | F3PCTDPQ01 | DISTR POWER QUALITY ESI | - | - | - | - | 328 | - | - | - | 328 |
| ENOI | F3PCTTDS46 | DISTRIBUTION O&M EXP - METRO E | - | - | - | - | 1,460 | - | - | - | 1,460 |
| ENOI | F3PCTTDS29 | DISTRIBUTION O&M EXPENSE -ELI | - | - | - | - | 952 | - | - | - | 952 |
| ENOI | C6PC249180 | DISTRIBUTION TRUCK STOCK | - | - | 5,410 | - | - | - | - | - | 5,410 |
| ENOI | C6PC149104 | DL BATCH JOB FOR FAILURE REPLA | - | - | - | - | - | - | - | - | - |
| ENOI | C6PC249104 | DL BATCH JOBS FOR FAILURE REPL | - | - | 8,103 | - | - | - | - | - | 8,103 |
| ENOI | C6PC349104 | DL BATCH JOBS FOR FAILURE REPL | - | - | - | 2,097 | - | - | - | - | 2,097 |
| ENOI | C6PC849104 | DL BATCH JOBS FOR FAILURE REPL | - | 25,284 | - | - | - | - | - | - | 25,284 |
| ENOI | C7PPSJ2438 | ELI_LA WINTER STORM 3/1 - 3/2/ | - | - | - | - | - | - | - | - | - |
| ENOI | C7PPSJ2456 | ELL DIST 08/11/10 TROPICAL DEP | - | - | 167 | - | - | - | - | - | 167 |

Amounts may not add or tie to other schedules due to rounding.

Entergy New Orleans, Inc.
Affiliate Per Book Billings by Project/Activity
For the Twelve Months Ended, June 30, 2011
Amounts in Dollars

Exhibit SBT-24
2011 TX Rate Case
2 of 5

| Billing Company | Project/Activity | Description | EAI | EGSLA | ELL | EMI | ESI | ETI | SERI | SFI | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|
| ENOI | C7PPSJ2475 | ELL-LA STORM (5/13 - 5/14/11) | - | - | 1,200 | - | - | - | - | - | 1,200 |
| ENOI | C7PPSJ2476 | ELL-LA STORM (6/4 - 6/6/11) | - | - | - | - | 227 | - | - | - | 227 |
| ENOI | C7PPSJ3180 | EMI 02/11/10 Winter Storm Dist | - | - | - | - | - | - | - | - | - |
| ENOI | C7PPSJ3183 | EMI 04/24/10 Tornadoes Distr O | - | - | - | 316 | - | - | - | - | 316 |
| ENOI | C7PPSJ3198 | EMI Storm Distr Ops 1/7/11Wint | - | - | - | 6,056 | - | - | - | - | 6,056 |
| ENOI | C7PPSJ3203 | EMI Storm Distr Ops 4/15/11 | - | - | - | 50,516 | - | - | - | - | 50,516 |
| ENOI | C6PC349705 | ENTERGY RENEWAL-EQUIPMENT MAIN | - | - | - | 262 | - | - | - | - | 262 |
| ENOI | F5PPZUWELL | Entergy Wellness Program | - | - | - | - | - | - | - | - | - |
| ENOI | F3PCT53252 | ENVIRN MGMT TRANSMISSION SUPP | - | - | 483 | - | - | - | - | - | 483 |
| ENOI | F3PCT53084 | ENVIRONMENTAL SUPPORT - ELI | - | - | 136,832 | - | - | - | - | - | 136,832 |
| ENOI | F3PCFACALL | FACILITIES SVCS- ALL COS | - | - | - | - | 427 | - | - | - | 427 |
| ENOI | F3PCR73323 | FIELD METER READING SUPPORT, A | - | - | - | - | - | - | - | - | - |
| ENOI | C6PPTL4552 | Fund10: L160 Little Gypsy-Madi | - | - | 593 | - | - | - | - | - | 593 |
| ENOI | C5PC849600 | GAS DISTRIBUTION BLANKET - REV | - | 101,546 | - | - | - | - | - | - | 101,546 |
| ENOI | F3PCG10347 | GAS DIVISION DIRECTOR - EGSI E | - | - | - | - | 6,172 | - | - | - | 6,172 |
| ENOI | F3PCG10345 | GAS DIVISION DIRECTOR - ENOI E | - | - | - | - | 20,901 | - | - | - | 20,901 |
| ENOI | C5PC449602 | GAS FAILURES BLANKET | - | - | - | - | 35,563 | - | - | - | 35,563 |
| ENOI | C5PC849603 | GAS MANDATED-NON-REIMB | - | 261 | - | - | - | - | - | - | 261 |
| ENOI | C6PPBU1076 | Hammond- Ckt Switcher Foundati | - | - | 933 | - | - | - | - | - | 933 |
| ENOI | C6PPTS6886 | Hammond, modify for new 230kV | - | - | 9,872 | - | - | - | - | - | 9,872 |
| ENOI | F3PCY30337 | HOLIDAY SUBSTATION, LA-SOUTH | - | - | 419 | - | - | - | - | - | 419 |
| ENOI | F3PCHRSALL | HR SERVICES- ALL COMPANIES | - | - | - | - | 2,168 | - | - | - | 2,168 |
| ENOI | C6DB275916 | HWY RW X6713 PARADIS: RE-ROUTE | - | - | - | - | - | - | - | - | - |
| ENOI | C6DB275878 | HWY WK W1924 BELLE CHASSE:RELO | - | - | 420 | - | - | - | - | - | 420 |
| ENOI | C7PPSJ1185 | ICE STORM DL ARK DIST EAI 01/2 | - | - | - | - | - | - | - | - | - |
| ENOI | F5PCZZ4070 | IMPACT AWARDS | - | - | 395 | - | 347 | - | - | - | 742 |
| ENOI | C6DB276000 | IMPROVE G0623 LORANGER -- AM09 | - | - | - | - | - | - | - | - | - |
| ENOI | C6DB275999 | IMPROVE K0521 HAMMOND -- HM10- | - | - | - | - | - | - | - | - | - |
| ENOI | MNRG | Inspect, Test & Repair Gas Reg | - | 4,217 | - | - | - | - | - | - | 4,217 |
| ENOI | MNLM | Inspect,Test& Repair Lg Gas Mt | - | 24,824 | - | - | - | - | - | - | 24,824 |
| ENOI | MNSM | Inspect,Test&Repair Sm Gas Mt | - | 13,298 | - | - | - | - | - | - | 13,298 |
| ENOI | C5DB869728 | INSTALL 2105' OF 6" PE & 3142' | - | 1,342 | - | - | - | - | - | - | 1,342 |
| ENOI | C6DB167505 | INSTALL 500 KVA NETWORK XFMR, | - | - | - | - | - | - | - | - | - |
| ENOI | C6DB374677 | INSTALL 750AL & #2AL UG, PULLB | - | - | - | 20,507 | - | - | - | - | 20,507 |
| ENOI | C5DB869628 | INSTALL 8100' - 6" PE / INSTAL | - | 2,654 | - | - | - | - | - | - | 2,654 |
| ENOI | F5PPICC000 | Integrated Customer Communicat | - | - | - | - | - | - | - | - | - |
| ENOI | C6DB276163 | INTERNL BURAS: UNDERGROUND PO | - | - | 4,556 | - | - | - | - | - | 4,556 |
| ENOI | IRLM | Inv/Rep Leaks On Gas Mains | - | - | - | - | - | - | - | - | - |
| ENOI | RTCF | Investigate E Servic Diversion | - | - | - | - | - | - | - | - | - |
| ENOI | C6PC249120 | JOINT USE - BELL | - | - | - | - | - | - | - | - | - |
| ENOI | C6PC249121 | JOINT USE - CABLE | - | - | 763 | - | - | - | - | - | 763 |

Amounts may not add or tie to other schedules due to rounding.

Entergy New Orleans, Inc.
Affiliate Per Book Billings by Project/Activity
For the Twelve Months Ended, June 30, 2011
Amounts in Dollars

Exhibit SBT-24
2011 TX Rate Case
3 of 5

| Billing Company | Project/Activity | Description | EAI | EGSLA | ELL | EMI | ESI | ETI | SERI | SFI | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|
| ENOI | C6PC249124 | JOINT USE - OTHER | - | - | - | - | - | - | - | - | - |
| ENOI | C6PPDG0028 | Kast Traing Center for Gas Ops | - | - | 4,290 | - | - | - | - | - | 4,290 |
| ENOI | F3PCY30442 | LABARRE SUBSTATION (ELI), LA - | - | - | 998 | - | - | - | - | - | 998 |
| ENOI | F3PPZG2417 | LG2 Auxiliary Outage Repairs ( | - | - | - | - | - | - | - | - | - |
| ENOI | F3PPCPLITN | Lighting Campaign ENOI | - | - | - | - | 5,359 | - | - | - | 5,359 |
| ENOI | C6PC249105 | LOAD RELATED RELIABILITY | - | - | 13,786 | - | - | - | - | - | 13,786 |
| ENOI | C6PC349105 | LOAD-RELATED RELIABILITY | - | - | - | 1,690 | - | - | - | - | 1,690 |
| ENOI | F3PCY30470 | LOWER COAST SUBSTATION, LA - S | - | - | 419 | - | - | - | - | - | 419 |
| ENOI | XMDH | Maint Fuel Oil Tank Farm&Tra E | - | - | 2,902 | - | - | - | - | - | 2,902 |
| ENOI | MINV | Maint Gas Meter&Regul Records | - | 2,172 | - | - | - | - | - | - | 2,172 |
| ENOI | MTGR | Maint Gas Meter/Regul Records | - | 16,229 | - | - | - | - | - | - | 16,229 |
| ENOI | XNAA | Maintain Accessory Electric Eq | - | - | 46 | - | - | - | - | - | 46 |
| ENOI | XNBB | Maintain Exciter System | - | - | 366 | - | - | - | - | - | 366 |
| ENOI | XMDP | Maintain Feedwater Treating Sy | - | - | 153 | - | - | - | - | - | 153 |
| ENOI | XNAW | Maintain Gas Turb Start/Turn S | - | - | 401 | - | - | - | - | - | 401 |
| ENOI | XPAC | Maintain Lab Instrument/Equip | - | - | 20,017 | - | - | - | - | - | 20,017 |
| ENOI | XPAF | Maintain Misc Power Plant Eq | - | - | 276 | - | - | - | - | - | 276 |
| ENOI | XNAR | Maintain Oth Cooling Water Eq | - | - | 51 | - | - | - | - | - | 51 |
| ENOI | XMCR | Maintain Other Boiler Plant Eq | - | - | 154 | - | - | - | - | - | 154 |
| ENOI | XMCD | Maintain Safety Valves | - | - | 92 | - | - | - | - | - | 92 |
| ENOI | MEDO | Manage Electric Distr Ops | - | - | 248 | - | - | - | - | - | 248 |
| ENOI | XFAD | Manage Genl Plant Operations | - | - | 276 | - | - | - | - | - | 276 |
| ENOI | XFAG | Manage Plant Environmental Ops | - | - | 97 | - | - | - | - | - | 97 |
| ENOI | C5DB869474 | MEGA PROJECT-S. HARRELLS FERRY | - | 6,051 | - | - | - | - | - | - | 6,051 |
| ENOI | MSST | MS ACCTG-DEV, COOR & MNG STAFF | - | - | - | - | - | 1,149 | - | - | 1,149 |
| ENOI | F3PCY30585 | NINEMILE SUBSTATION, LA-SOUTH | - | - | 58 | - | - | - | - | - | 58 |
| ENOI | C6PPRA1316 | Ninemile: Replace Line Trap | - | - | 60 | - | - | - | - | - | 60 |
| ENOI | C6PPRA1345 | Ninemile: Replace OCB S6345 | - | - | 117 | - | - | - | - | - | 117 |
| ENOI | C6PPRA1318 | Ninemile:Replace CVT Barataria | - | - | 30 | - | - | - | - | - | 30 |
| ENOI | F3PPZG2853 | NM5 Spring Aux Outage - Elec A | - | - | 391 | - | - | - | - | - | 391 |
| ENOI | C6PC249108 | NON-MANDATED RELOCATIONS ELL | - | - | 3,947 | - | - | - | - | - | 3,947 |
| ENOI | XBAA | Operate Boiler Plant | - | - | 56,905 | - | - | - | - | - | 56,905 |
| ENOI | F5PCZPTOXX | PAID TIME OFF | - | 457 | 7,143 | 8 | 101 | - | - | 7 | 7,716 |
| ENOI | F3PCY30620 | PARIS SUBSTATION, LA-SOUTH | - | - | 109 | - | - | - | - | - | 109 |
| ENOI | F5PCZUPRTX | PAYROLL TAX | (1) | (155) | (639) | (224) | (107) | - | (1) | 2 | (1,126) |
| ENOI | SAPCPCPLAP | PC&R OVERHEAD POOL | 20 | - | - | - | - | - | - | - | 20 |
| ENOI | SAPCPCPLLP | PC&R OVERHEAD POOL | - | - | 8,805 | - | - | - | - | - | 8,805 |
| ENOI | SAPCPCPLMP | PC&R OVERHEAD POOL | - | - | - | 2 | - | - | - | - | 2 |
| ENOI | SAPCPCPLGL | PC&R OVERHEAD POOL - EGSI - EL | - | (14) | - | - | - | - | - | - | (14) |
| ENOI | SAPCPCPLUG | PC&R OVERHEAD POOL - EGSI - GA | - | (78) | - | - | - | - | - | - | (78) |
| ENOI | SAPCP25910 | PC&R OVERHEAD POOL CHARGES | - | - | - | - | - | - | - | - | - |

Amounts may not add or tie to other schedules due to rounding.

Entergy New Orleans, Inc.
Affiliate Per Book Billings by Project/Activity
For the Twelve Months Ended, June 30, 2011
Amounts in Dollars

Exhibit SBT-24
2011 TX Rate Case
4 of 5

| Billing Company | Project/Activity | Description | EAI | EGSLA | ELL | EMI | ESI | ETI | SERI | SFI | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|
| ENOI | CMOH | Perf El Dist Corr Mnt O/H Wire | - | - | - | - | - | - | - | - | - |
| ENOI | RIEP | Perf El Distr Insp-Priv Light | - | - | - | - | - | - | - | - | - |
| ENOI | MTOF | Perf Elec Meter Serv Wk-On/Off | - | - | 242 | - | - | - | - | - | 242 |
| ENOI | PUGL | Perform Underground Loc Maint | - | - | 1,864 | - | - | - | - | - | 1,864 |
| ENOI | PAPM | Pick & Pack Materials | - | 632 | - | - | - | - | - | - | 632 |
| ENOI | C6PC249107 | PRIVATE SECURITY LIGHTING MAIN | - | - | 111,190 | - | - | - | - | - | 111,190 |
| ENOI | E1PCT00076 | PROCESS LEAKING EQUIPMENT FOR | - | - | 57 | - | - | - | - | - | 57 |
| ENOI | C6PPTL7160 | Pros-GH-Dest: Mod Lns at Good | - | - | 557 | - | - | - | - | - | 557 |
| ENOI | PMSS | Provide & Manage Safety Svcs | - | - | 92 | - | - | - | - | - | 92 |
| ENOI | GMTS | Provide Gas Measuring Tech Sup | - | - | - | - | - | - | - | - | - |
| ENOI | SECR | Provide Security Serv-Facilit | - | - | 308 | - | - | - | - | - | 308 |
| ENOI | F5PCCSS01L | PS ASSET MANAGEMENT FOR LE | - | - | 7,488 | - | - | - | - | - | 7,488 |
| ENOI | F5PCCSS04D | PS CUST BILL LE - REV DATA INT | - | - | 126 | - | - | - | - | - | 126 |
| ENOI | GINP | Purc Gen Invent Items-Passport | 2,840 | 132,354 | 183,044 | - | - | 1,818 | - | - | 320,055 |
| ENOI | F3PCF99182 | RECORDS MANAGEMENT | - | - | - | - | 212 | - | - | - | 212 |
| ENOI | F5PCZFCTRN | REGULATD NON-BACKBONE FIBER | - | - | 58 | - | - | - | - | - | 58 |
| ENOI | C6PC249170 | RELIABILITY PREVENTATIVE MAINT | - | - | 119 | - | - | - | - | - | 119 |
| ENOI | XMAR | Repair CEMS Equipment | - | - | 92 | - | - | - | - | - | 92 |
| ENOI | XLAV | Repair Other Structures | - | - | - | - | - | - | - | - | - |
| ENOI | C5DB869821 | REPLACE 8" STEEL VALVE | - | 1,316 | - | - | - | - | - | - | 1,316 |
| ENOI | RRDD | Reread E Metr-DistField-Not CI | - | - | 962 | - | - | - | - | - | 962 |
| ENOI | RERD | Re-Read Misread Meters | - | - | 178 | - | - | - | - | - | 178 |
| ENOI | F3PPREALL2 | Residential Market Dev - ALL J | - | - | - | - | 610 | - | - | - | 610 |
| ENOI | C6DB275245 | REV,RE,A0955,PROVIDE 277/480V | - | - | 446 | - | - | - | - | - | 446 |
| ENOI | F3PCR29324 | REVENUE ASSURANCE - ADM. | - | - | - | - | 440 | - | - | - | 440 |
| ENOI | C6PC249060 | REVENUE PRIVATE AREA LIGHTS | - | - | - | - | - | - | - | - | - |
| ENOI | C6PC249050 | REVENUE STREET LIGHTS | - | - | - | - | - | - | - | - | - |
| ENOI | ASAB | Reward Safe Behavior | - | - | 518 | - | - | - | - | - | 518 |
| ENOI | F5PCZY323L | ROUTINE SPILL RESPONSE(CS-LP&L | - | - | 8,483 | - | - | - | - | - | 8,483 |
| ENOI | F3PCW14172 | SAFETY GROUP SERVICES | - | - | - | - | 522 | - | - | - | 522 |
| ENOI | F5PPWE0450 | Safety Recognition Program - S | - | - | 293 | - | - | - | - | - | 293 |
| ENOI | F5PCSAFTEE | SAFTEY TRAINING LOADER ELECTRI | - | - | 6,511 | - | - | - | - | - | 6,511 |
| ENOI | E1PCR56226 | Sales & Mktg - ALL JURIS | - | - | - | - | 593 | - | - | - | 593 |
| ENOI | F3PPYSCELI | Service Center - ELI | - | - | 1,815 | - | - | - | - | - | 1,815 |
| ENOI | F3PCW51400 | SFI FUEL OIL O&M | - | - | - | - | - | - | - | 6,816 | 6,816 |
| ENOI | F3PCTDTR09 | SKILLS TRAINING - ENOI ELECTRI | - | - | - | - | - | - | - | - | - |
| ENOI | F3PCTDTR08 | SKILLS TRAINING - LOUISIANA EL | - | - | - | - | 21 | - | - | - | 21 |
| ENOI | F3PCY30718 | SLIDELL SUBSTATION, LA - SOUTH | - | - | 582 | - | - | - | - | - | 582 |
| ENOI | F3PC9209X0 | SNAKEFARM SUB TO UNIVERSITY CI | - | - | - | - | - | - | - | - | - |
| ENOI | F3PC9146X7 | SNAKEFARM SUB.TO PONTCHARTRAIN | - | - | 117 | - | - | - | - | - | 117 |
| ENOI | C7PPSJ1196 | STORM DL ARK DIST EAI 06/10/09 | - | - | - | - | - | - | - | - | - |

Amounts may not add or tie to other schedules due to rounding.

Entergy New Orleans, Inc.
Affiliate Per Book Billings by Project/Activity
For the Twelve Months Ended, June 30, 2011
Amounts in Dollars

Exhibit SBT-24
2011 TX Rate Case
5 of 5

| Billing Company | Project/Activity | Description | EAI | EGSLA | ELL | EMI | ESI | ETI | SERI | SFI | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|
| ENOI | C7PPSJ1250 | STORM DL EAI DIST 4/19/11-4/24 | 111,274 | - | - | - | - | - | - | - | 111,274 |
| ENOI | C7PPSJ2432 | STORM DMG ELI 1/4 - 1/5/10 | - | - | - | - | - | - | - | - | - |
| ENOI | C7PPSJ2443 | STORM DMG ELI 5/1 thru 5/3/10 | - | - | - | - | - | - | - | - | - |
| ENOI | C7PPSJ2458 | STORM DMG ELL  8/22/10 THRU 8/ | - | - | 93 | - | - | - | - | - | 93 |
| ENOI | C7PPSJ2474 | STORM Dmg ELL 4/25 to 4/27/11 | - | - | 192,784 | - | - | - | - | - | 192,784 |
| ENOI | C7PPSJ2450 | STORM DMG ELL 6/3/10 TO 6/6/10 | - | - | - | - | - | - | - | - | - |
| ENOI | C7PPSJ2455 | STORM DMG ELL 8-4 THRU 8-5-10 | - | - | 959 | - | - | - | - | - | 959 |
| ENOI | C7PPSJ2463 | STORM DMG LA 2-1-11 | - | - | 36,775 | - | 120 | - | - | - | 36,895 |
| ENOI | C7PPSJ2468 | STORM DMG LA DIST  ELL (3/8 -3 | - | - | 2,555 | - | 222 | - | - | - | 2,777 |
| ENOI | C7PPSJ2462 | STORM DMG LA DIST ELL 1/8/11 I | - | - | 60,920 | - | - | - | - | - | 60,920 |
| ENOI | C7PPSJ2470 | STORM DMG LA DIST ELL 4 4 - 4 | - | - | 23,496 | - | - | - | - | - | 23,496 |
| ENOI | C7PPSJ2469 | STORM DMG LA DIST ELL ISS 3/30 | - | - | 29,929 | - | - | - | - | - | 29,929 |
| ENOI | C7PPSJ2467 | STORM DMG LA DIST ISSUED 3/6/1 | - | - | 278 | - | - | - | - | - | 278 |
| ENOI | C7PPSJ2435 | STORM DMG LA ELI 1/20 - 1/21/1 | - | - | - | - | - | - | - | - | - |
| ENOI | C7PPSJ2437 | Storm dmg La ELI 2 12 10 Snow | - | - | - | - | - | - | - | - | - |
| ENOI | C6PC249106 | STREET LIGHTING MAINT BLANKET | - | - | 290,099 | - | - | - | - | - | 290,099 |
| ENOI | F5PCSCMMOM | SUPPLY CHAIN MATERIALS MGMNT O | - | - | 2,347 | - | - | - | - | - | 2,347 |
| ENOI | C6PC249703 | TACTICS: TARGET LINE DEVICES | - | - | - | - | - | - | - | - | - |
| ENOI | C6PC349703 | TACTICS: TARGET LINE DEVICES | - | - | - | - | - | - | - | - | - |
| ENOI | C6PC849703 | TACTICS: TARGET LINE DEVICES | - | 174 | - | - | - | - | - | - | 174 |
| ENOI | C6PC249708 | TACTICS: TARGETED CIRCUITS/FEE | - | - | - | - | - | - | - | - | - |
| ENOI | F5PCZZ4040 | TEAMSHARE INCENTIVE COMPENSATI | 2 | 1,306 | 1,297 | 18 | 334 | - | 2 | 7 | 2,966 |
| ENOI | TMET | Test Electric Meters In Field | - | - | 916 | - | - | - | - | - | 916 |
| ENOI | C7PPSJ1251 | TORNADOES DL EAI DIST 4/25/11 | 33,009 | - | - | - | - | - | - | - | 33,009 |
| ENOI | F3PCTDDS24 | TRANSPORTATION- ELI | - | - | - | - | 135 | - | - | - | 135 |
| ENOI | TEDP | Troubleshoot El Dist Prob-Cust | - | - | 1,212 | - | - | - | - | - | 1,212 |
| ENOI | F5PCZFVMAC | VOICE & VIDEO MOVES ADDS CHANG | - | - | - | - | 276 | - | - | - | 276 |
| ENOI | F3PPZG1876 | WF1 Auxiliary Outage | - | - | - | - | - | - | - | - | - |
| ENOI | C6PPTSK281 | Willow Glen: Replace Breakers | - | 53,072 | - | - | - | - | - | - | 53,072 |
| ENOI | C7PPSJ1214 | WINTER STORM DL EAI DIST 01/26 | 166 | - | - | - | - | - | - | - | 166 |
| ENOI | C7PPSJ8409 | WINTER STORM DMG LA 2/3 TO 2/5 | - | 12,991 | - | - | - | - | - | - | 12,991 |
| | | | 147,612 | 432,878 | 1,423,534 | 81,652 | 80,813 | 2,967 | 1 | 6,816 | 2,176,273 |

Amounts may not add or tie to other schedules due to rounding.